**Subject:** PIIA and MNDA between dmarcian-inc and y'all
**From:** Tim Draegen <tim@dmarcian.com>
**Date:** 12/7/16, 4:12 PM
**To:** Martijn Groeneweg <martijn@dmarcian.com>, Alwin de Bruin <alwin@dmarcian.com>, Eline van der Vorm <eline@dmarcian.com>

Hi people in the Netherlands,

To square away dmarcian, inc. employee/contractor documentation, I need the PIIA forms from everyone, and the just the MNDA between dmarcian, inc. and Mailmerck to be signed.

dmarcian, inc's counsel is going through exercise to make sure the corporation can be defended if need be (can't have a competitor do discovery on us and learn that we don't have basic docs in place!). This is a step of larger effort to bring everyone "in house".

I'm emailing all of you as any issues are likely related to being in NL, so why not save some time and review them together at once?

=- Tim

Attachments:

| | |
|---|---|
| Form of Proprietary Information and Inventions Agreement.docx | 22.7 KB |
| Non-Disclosure Agreement - Mutual form.docx | 22.3 KB |



EXHIBIT
A
T. Draegen Dec

# PROPRIETARY INFORMATION
# AND INVENTIONS AGREEMENT

**DMARCIAN, INC.**

Dear dmarcian, inc.:

The following confirms an agreement between me and dmarcian, inc., a Delaware Corporation (the "Company" which term includes the Company's subsidiaries), which is a material part of the consideration for my employment by the Company or my retention by the Company as an independent contractor, as the case may be.

1. I recognize that the Company is engaged in a continuous program of research, development and production respecting its business, present and future, and that the Company possesses and will continue to create, discover, develop, learn, and possess information (including without limitation information created by, discovered or developed by, or made known to, me during the period of or arising out of my employment or retention by the Company) and/or in which property or proprietary rights have been assigned or otherwise conveyed to the Company, which such information has commercial value in the business in which the Company is engaged. All of the aforementioned information is hereinafter called "Proprietary Information." By way of illustration, but not limitation, Proprietary Information includes trade secrets, processes, formulas, product development efforts, data and know-how, hardware designs, software programs, improvements, inventions, techniques, marketing plans, strategies, financial and other forecasts, computer programs, copyrightable material, and customer lists.

2. I understand that my employment creates a relationship of confidence and trust between me and the Company with respect to any Proprietary Information:

   a. applicable to the business of the Company; or

   b. applicable to the business of any client, customer, vendor or affiliate of the Company, which may be made known to me by the Company or by any client, customer, vendor or affiliate of the Company, or learned by me during the period of my employment or retention.

3. In consideration of my continued employment or retention by the Company, as applicable, and the compensation received by me from the Company from time to time, I hereby agree as follows:

   a. All Proprietary Information shall be the sole property of the Company and its assigns, and the Company and its assigns shall be the sole owner of all patents, copyrights and other rights in connection therewith. I hereby assign to the Company any rights I may have or acquire in such Proprietary Information. I acknowledge that any copyrightable work written, authored, prepared, produced or developed by me, in whole or in part, individually or jointly with others, is a work made for hire for the Company, within the definition of Section 101 of Title 17 of the United States Code. At all times, both during my employment by the Company and after its termination, I will keep in confidence and trust all Proprietary Information, and will not use or disclose any

Proprietary Information or anything relating to such Proprietary Information without the written consent of the Company, except as may be necessary in the ordinary course of performing my duties for the Company.

        b.      All documents, records, apparatus, equipment and other physical property, whether or not pertaining to Proprietary Information, furnished to me by the Company or produced by myself or others in connection with my employment shall be and remain the sole property of the Company and shall be returned to the Company immediately as and when requested by the Company. Even if the Company does not so request, I shall return and deliver all such property upon termination of my employment by me or by the Company for any reason and I will not take with me any such property or any reproduction of such property upon such termination.

        c.      I will promptly disclose to the Company, or any persons designated by it, all improvements, inventions, formulas, ideas, processes, techniques, know-how and data, whether or not patentable, made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the term of my employment (or if a Consultant, relating to the services I render to the Company) and (subject to reasonable confidentiality restrictions) for six (6) months thereafter (all such improvements, inventions, formulas, ideas, processes, techniques, know-how and data shall be hereinafter collectively called "<u>Inventions</u>").

        d.      I agree that all Inventions which I develop or have developed (in whole or in part, either alone or jointly with others) and (i) use or have used equipment, supplies, facilities or Proprietary Information of the Company, or (ii) use or have used the hours or time for which I am to be or was compensated by the Company, or (iii) which relate to the business of the Company or to its actual or demonstrably anticipated research and development or (iv) which result in whole or in part, from work performed by me for the Company, shall be the sole property of the Company and its assigns, and the Company and its assigns shall be the sole owner of all patents, copyrights and other rights in connection therewith. I hereby assign to the Company any rights I may have or acquire in such Inventions. I acknowledge that any copyrightable work written, prepared, produced or developed by me, in whole or in part, individually or jointly with others, is a work made for hire for the Company, within the definition of Section 101 of Title 17 of the United States Code. I further agree as to all such Inventions and improvements to assist the Company in every reasonable way (but at the Company's expense) to obtain, and from time to time enforce, patents, copyrights or other rights in such Inventions and improvements in any and all countries, and to that end will execute all documents for use in applying for and obtaining such patents and copyrights thereon and enforcing same, as the Company may desire, together with any assignments thereof to the Company or persons designated by the Company. My obligation to assist the Company in obtaining and enforcing patents, copyrights or other proprietary rights for such Inventions and improvements in any and all countries shall continue beyond the termination of my employment, but the Company shall compensate me at a reasonable rate after such termination, for time actually spent by me at the Company's request on such assistance. In the event that the Company is unable for any reason whatsoever to secure my signature or execute any patent, copyright or other application with respect to such Inventions and improvements (including renewals, extensions, continuations, divisions or continuations in part thereof), I hereby irrevocably designate and appoint the Company and its duly

authorized officers and agents, as my agents and attorneys-in-fact to act for and in my behalf and instead of me, to execute and file any such application and to do all other lawfully permitted acts to further the prosecution and issuance of patents, copyrights or other rights thereon, with the same legal force and effect as if executed by me.

e. As a matter of record I attach hereto (in Exhibit A) a complete list of all Inventions or improvements relevant to the subject matter of my employment by the Company which have been made or conceived or first reduced to practice by me, alone or jointly with others, prior to my employment with the Company that I desire to remove from the operation of this Agreement, and I covenant that such list is complete. If no such list is attached to this Agreement, I represent that I have no such Inventions and improvements at the time of my signing this Agreement.

f. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict herewith.

g. I represent that execution of this Agreement, my employment with, or retention by, the Company and my performance of my proposed duties to the Company in the development of its business will not violate any obligations I may have to any former employer.

h. This Agreement does not require assignment of any Inventions which an employee cannot be obligated to assign under Section 2870 of the California Labor Code (hereinafter called "Section 2870"). However, I will disclose any Inventions to the Company as required by Section 3(c) hereof regardless of whether I believe the Invention is protected against required assignment by Section 2870. Such disclosure shall be received in confidence by the Company, to the extent that the Company has no interest in or ownership of the Information, Invention or other disclosure disclosed to the Company.

4. This Agreement shall be effective as of the date that I first provided services to the Company.

5. This Agreement shall be binding upon me, my heirs, executors, assigns, and administrators and shall inure to the benefit of the Company, its successors and assigns.

6. If I am employed by the Company, I understand that such employment is not for a specific term and can be terminated by myself or the Company at any time for any reason or for no reason, with or without cause, and for no cause. Any contrary representations which may have been made or which may be made by the Company or any agent or representative of the Company are superseded by this Section 6.

7. If I am providing services to the Company as an independent contractor, I acknowledge that I am not an employee of the Company, that I control the means by which I accomplish any tasks or projects assigned to me by the Company, that I am not an agent for or

- 3 -

Case 1:21-cv-00067-MR   Document 9-1   Filed 03/25/21   Page 4 of 10

representative of the Company and cannot represent or bind the Company and that this Agreement does not create any partnership, joint venture, employment or unincorporated association by or between myself and the Company.

        8.      Without limiting the foregoing, I understand that in the event I am not employed by the Company and not providing services as an independent contractor to the Company I will not be limited in owning, operating, managing, being employed by or otherwise being involved in a similar business.

**By:** _____

**Print Name:** _____

**Accepted and Agreed to by:**

**DMARCIAN, INC.**

**By:** _____
**Title:** _____

- 4 -

# EXHIBIT A

**DMARCIAN, INC.**

Dear dmarcian, inc.:

    1.    The following is a complete list of all inventions or improvements relevant to the subject matter of my employment by dmarcian, inc. (the "Company") that have been made or conceived or first reduced to practice by me, alone or jointly with others, prior to my employment or retention by the Company, that I desire to remove from the operation of the Company's Proprietary Information and Inventions Agreement.

_____    No inventions or improvements.

_____    See below: Any and all inventions regarding

_____    Additional sheets attached.

    2.    I propose to bring to my employment, or retention, as the case may be, the following materials and documents of a former employer:

_____    No materials or documents.

_____    See below:

 

_____
**Employee or Consultant**

# MUTUAL NONDISCLOSURE AGREEMENT

**THIS MUTUAL NONDISCLOSURE AGREEMENT** is made and entered into effective as of this _____ day of _____, 2016, by and between **dmarcian, inc.**, a Delaware corporation, and the person or company set forth on the signature page hereto with reference to the following:

**WHEREAS**, Each party hereto desires to obtain certain Confidential Information (as defined herein) from the other party hereto and, under the terms and conditions of this Agreement, each party is willing to provide such Confidential Information to the other; and

**WHEREAS**, each party acknowledges that the Confidential Information furnished and to be furnished by the other is and shall be secret, confidential and proprietary to the disclosing party; and

**WHEREAS**, the party disclosing such Confidential Information shall herein be referred to as the "Disclosing Party," and the party receiving Confidential Information from the other party hereto shall be referred to herein as the "Reviewer;"

**NOW, THEREFORE**, in consideration for each party hereto furnishing to the other party hereto Confidential Information and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1. Confidential Information. The term "Confidential Information" shall mean all trade secrets, concepts, designs and all other information of a secret, confidential and proprietary nature involving the Disclosing Party, derived from or in any way relating to, or to the existing and proposed business activities of, such Disclosing Party including, without limitation, all specifications, instructions, processes, formulas, systems, programs, instrumentation, schematics, source code, data, printouts, patterns, compilations, devices, methods, techniques, procedures and other technical information; products or services developed or sold by the Disclosing Party; the identity and other information regarding the Disclosing Party's existing and potential suppliers, customers, licensees or sublicensees; proprietary financial data regarding the Disclosing Party or any aspect of its business, including, without limitation, marketing plans, market research, market surveys, distribution plans, distribution agreements, corporate structure, information relating to the cost of its technology, products or services, its pricing, its employee compensation, its royalties or other consideration from customers, licensees or sublicensees; the existing and proposed business operating methods of the Disclosing Party; and all other information which, if known, would be of advantage to others competing with, or which may compete with, the Disclosing Party or would be of disadvantage to the Disclosing Party, whether or not subject to patent, trademark, trade secret, copyright or other statutory protection.

2. Receipt of Confidential Information. In consideration of being made privy to the Confidential Information, the Reviewer hereby acknowledges receipt of the Confidential Information, and agrees to all of the terms and conditions of this Agreement.

3. Proprietary Nature of Confidential Information. The Reviewer acknowledges that the Confidential Information is claimed as secret, confidential and proprietary to the Disclosing Party. The Reviewer shall have no claim, right, title, property or interest of any form in the Confidential Information disclosed by the Disclosing Party.

4. Confidentiality and Prohibition on Use. The Reviewer shall not use, apply, employ, practice, exploit or engage, in any fashion, any such Confidential Information disclosed by the Disclosing Party for any

- 1 -

purpose, without the express written authorization of the Disclosing Party. The Reviewer shall keep secret and confidential the Confidential Information disclosed by the Disclosing Party and shall not disclose, transfer, provide, give, disseminate, divulge, reveal, or permit any employee, affiliate or representative to disclose, transfer, provide, give, disseminate, divulge or reveal, any Confidential Information to any person or entity. The Reviewer shall take all reasonable steps necessary to prevent the unauthorized disclosure, copying or use of such Confidential Information.

5. <u>Efforts to Maintain Secrecy</u>. Reviewer acknowledges that, as between Reviewer and the Disclosing Party, the Confidential Information has been the subject of efforts by the Disclosing Party that were reasonable under the circumstances to maintain the secrecy of the Confidential Information.

6. <u>Return of Confidential Information</u>. Within three (3) business days following demand by the Disclosing Party, Reviewer shall return to the Disclosing Party all Confidential Information and any materials containing or relating to the Confidential Information. Reviewer shall not make any copies or reproduction of any Confidential Information, whether magnetic, digital, photocopy, handwritten notes, recorded, or otherwise, in any method or form, without the prior written approval of the Disclosing Party, exercisable in the Disclosing Party's absolute and sole discretion.

7. <u>Injunction</u>. Reviewer expressly acknowledges and agrees that any breach of any provision of this Agreement by Reviewer would immediately place the Disclosing Party in jeopardy of irreparable harm, that money damages would be inadequate and insufficient to compensate the Disclosing Party, and that the Disclosing Party should be awarded immediate temporary and preliminary injunctive relief. Reviewer further agrees that in the event of issuance of any injunction concerning or relating to misuse, wrongful disclosure or misappropriation of the Confidential Information, or other breach of this Agreement a bond or undertaking of no greater than Three Thousand Dollars ($3,000) shall provide full and adequate protection for Reviewer. Reviewer acknowledges that should Reviewer either intentionally or unintentionally misuse or disclose the Confidential Information, any balancing of the equities would weigh in the Disclosing Party's favor inasmuch as such misuse or disclosure is not permitted hereunder. This Section 7 shall not apply to information that is generally known to the public, customarily disclosed to others without restrictions on disclosure, obtained from a third party without breach of a non-disclosure obligation, or independently derived.

8. <u>Indemnification</u>. Reviewer shall indemnify and hold harmless the Disclosing Party and each of the Disclosing Party's employees, officers, directors and agents against any losses, damages, costs, liabilities, claims or actions (including, without limitation, any attorneys' fees and costs incurred in the defense of any such claims or actions, in seeking enforcement of this indemnity or otherwise), and shall pay to the Disclosing Party any compensation realized by Reviewer, as a result of, arising out of, or in connection with any breach by Reviewer of any provision of this Agreement.

9. <u>Notification</u>. Reviewer shall notify the Disclosing Party immediately of any circumstances of which it has notice concerning any access, possession or use of the Confidential Information not authorized by this Agreement. Such notification shall be made by Reviewer to the Disclosing Party at its principal office address, in the most expeditious fashion available.

10. <u>No Conflict</u>. Reviewer represents to the Disclosing Party that Reviewer is not a party to or otherwise bound by any agreement that could conflict in any manner with any of Reviewer's obligations hereunder. Reviewer shall not undertake to perform services for others that are in conflict with (or that, if Reviewer were to perform such services fully, would create a conflict with) any of such obligations.

11. **No Warranties.** Reviewer acknowledges and agrees that any Confidential Information provided to Reviewer hereunder is provided as is, where at, and with all faults; and that the Disclosing Party makes no representations or warranties, express or implied, concerning such Confidential Information, including no warranties of fitness for any particular purpose whether or not the Disclosing Party had been apprised of such particular purpose and no warranties of merchantability.

12. **Governing Law.** The terms of this Agreement shall be governed by and construed in accordance with the laws of the State of California excluding any conflicts-of-law principles or rules that might otherwise cause the laws of another jurisdiction to apply. All actions or proceedings with respect to, arising directly or indirectly in connection with, out of, related to or from this Agreement shall be litigated exclusively in courts having situs in the County of San Mateo, California. The parties hereby submit to the jurisdiction of any local, state or federal court located in the County of San Mateo, California.

13. **Invalidity.** In the event any provision of this Agreement or the application of such provision shall be held by a court of competent jurisdiction, for any reason, to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement.

14. **Attorneys' Fees.** In the event of litigation or arbitration arising out of, or concerning, this Agreement, or any asserted breach of this Agreement, the prevailing party shall be entitled to recover reasonable costs of suit and attorney's fees in addition to monetary damages or equitable relief.

15. **Entire Agreement; Amendments.** This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior agreements and understandings of the parties concerning the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party hereto, except as specifically set forth in this Agreement. No amendment or modification of this Agreement may be made except by an instrument in writing signed by both parties.

16. **Notices.** Except as otherwise provided in Section 9 hereof, all notices required to be given hereunder shall be in writing and shall be effective upon receipt.

17. **Headings.** The titles and subtitles of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

18. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

19. **No Assignment.** Neither party shall assign this Agreement, or the rights or obligations hereunder, except for any assignment pursuant to operation of law in connection with a merger, consolidation or sale of all or substantially all of the assets of either party. Except as otherwise expressly provided herein, the provisions hereof shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the parties hereto.

20. **No Rules of Construction.** No rules of construction are intended by the parties, nor shall be invoked or applied in the interpretation of this Agreement and, for all purposes hereunder, both parties shall be deemed to be the authors hereof.

21. **Subscription and Acceptance.** In the event that this Agreement is presented to Reviewer with or at the same time as the Confidential Information is provided to Reviewer and the Disclosing Party is unable to, or does not, confirm subscription by Reviewer to this Agreement and its terms and conditions by

signature, Reviewer expressly agrees to be bound by this Agreement and all of its terms and conditions, upon Reviewer's examination, review, acceptance or study of any of the Confidential Information, even in the event that Reviewer or an authorized agent of Reviewer does not sign and deliver this Agreement.

      **IN WITNESS WHEREOF,** the parties to this Agreement have duly executed it effective as of the day and year first above written.

**dmarcian, inc.,**
**a Delaware corporation**

**By:** _____
**Name:** _____
**Title:** _____

**COMPANY**

**By:** _____
**Name:** _____
**Address:** _____
_____

**Telephone:** _____
**Facsimile:** _____

- 4 -

Case 1:21-cv-00067-MR Document 9-1 Filed 03/25/21 Page 10 of 10