# Attachment 2

Exhibit A to Declaration of Hub J. Harmeling

# beschikking

**GERECHTSHOF AMSTERDAM**
**ONDERNEMINGSKAMER**

zaaknummer: 200.281.257/01 OK

beschikking van de Ondernemingskamer van 7 september 2020

inzake


de besloten vennootschap met beperkte aansprakelijkheid
**THE DIGITAL XPEDITION (TDX) HOLDING B.V.,**
gevestigd te Dordrecht,
**VERZOEKSTER,**
advocaten: **mr. M.C. Luiten**, **mr. V.R.M. Appelman** en **mr. L. Geldof**, allen
kantoorhoudende te Rotterdam,


t e g e n


de besloten vennootschap met beperkte aansprakelijkheid
**DMARCIAN EUROPE B.V.,**
gevestigd te Dordrecht,
**VERWEERSTER,**
advocaten: **mr. A. van Bunge** en **mr. J. Kloots**, beiden kantoorhoudende te Rotterdam,


e n t e g e n


**Timothy George DRAEGEN,**
wonende te Brevard, North Carolina, Verenigde Staten van Amerika,
**BELANGHEBBENDE,**
advocaten: **mr. F. Henke** en **mr. P.A. Josephus Jitta**, kantoorhoudende te Amsterdam
respectievelijk Den Haag.

Case 1:21-cv-00067-MR   Document 26-2   Filed 04/19/21   Page 2 of 29

## 1. Het verloop van het geding

1.1 Verzoekster, verweerster en belanghebbende worden hierna respectievelijk aangeduid met TDX, dmarcian Europe en Draegen.

1.2 TDX heeft bij op 28 juli 2020 ingekomen verzoekschrift met producties de Ondernemingskamer verzocht, na wijziging van haar verzoek bij op 17 augustus 2020 ingediende akte, bij beschikking uitvoerbaar bij voorraad, een onderzoek te bevelen naar het beleid en de gang van zaken van dmarcian Europe over de periode vanaf januari 2016 tot en met 17 augustus 2020 en bij wijze van onmiddellijke voorzieningen voor de duur van het geding, zakelijk weergegeven, primair:

i een derde persoon te benoemen tot bestuurder van dmarcian Europe met doorslaggevende stem en met bepaalde bijzondere taken;

ii te bepalen dat het bestuur bevoegd is om namens dmarcian Europe overeenkomsten met aandeelhouders en/of derden te sluiten zonder goedkeuring van de aandeelhouders, althans om de statuten zodanig (tijdelijk) aan te passen dat hierin wordt bepaald dat het bestuur de hiervoor genoemde bevoegdheid heeft en daarbij te bepalen dat de uitspraak van de Ondernemingskamer zo nodig ex art. 2:8 BW j° 3:300 BW dezelfde kracht heeft en kan dienen als vervanging van alle benodigde goedkeuringen, besluiten, afstandsverklaringen of rechtshandelingen van/door aandeelhouders (individueel of als vergadering);

iii te verbieden dat op de aandeelhoudersvergadering van 7 september 2020 (a) TDX wordt ontslagen als bestuurder van dmarcian Europe en (b) Vision Management Europe Ltd. (hierna: Vision), althans een derde, wordt benoemd tot bestuurder van dmarcian Europe, op straffe van het verbeuren van een dwangsom;

iv te bepalen dat de door de Ondernemingskamer te benoemen bestuurder bevoegd is een aandeelhoudersvergadering bijeen te roepen, met uitsluiting van de in artikel 22 lid 4, laatste zin van de statuten bepaalde bevoegdheid van een individuele aandeelhouder zelf een aandeelhoudersvergadering bijeen te roepen;

v het stemrecht op de aandelen van Draegen in het kapitaal van dmarcian Europe te schorsen althans deze aandelen ten titel van beheer over te dragen aan een door de Ondernemingskamer te benoemen beheerder;

subsidiair een andere voorziening te treffen die de Ondernemingskamer juist acht, en in beide gevallen om dmarcian Europe te veroordelen in de kosten van het geding.

1.3 Bij verweerschrift met producties van 11 augustus 2020 heeft dmarcian Europe de Ondernemingskamer verzocht, bij beschikking uitvoerbaar bij voorraad, het verzoek van

TDX toe te wijzen, met dien verstande dat het verzochte onderzoek wordt bevolen over de periode vanaf januari 2016 tot en met 20 augustus 2020.

1.4    Eveneens op 11 augustus 2020 heeft Draegen bij verweerschrift met producties, de Ondernemingskamer verzocht het verzoek van TDX af te wijzen en bij wijze van zelfstandig verzoek de Ondernemingskamer verzocht, bij beschikking uitvoerbaar bij voorraad, een onderzoek te bevelen naar het beleid en de gang van zaken van dmarcian Europe over de periode vanaf januari 2016 tot en met augustus 2020 en bij wijze van onmiddellijke voorzieningen voor de duur van het geding, zakelijk weergegeven,

- primair TDX te ontslaan en subsidiair TDX te schorsen als bestuurder van dmarcian Europe;
- een derde persoon te benoemen tot bestuurder van dmarcian Europe;
- de aandelen in het kapitaal van dmarcian Europe, met uitzondering van 49% van de aandelen van TDX en 49% van de aandelen van Draegen, althans een zodanig percentage als de Ondernemingskamer juist acht, ten titel van beheer over te dragen aan een door de Ondernemingskamer te benoemen beheerder;
- dan wel een andere voorziening te treffen die de Ondernemingskamer juist acht;

telkens met veroordeling van TDX in de kosten van het geding.

1.5    De verzoeken zijn behandeld ter openbare terechtzitting van de Ondernemingskamer van 20 augustus 2020. Bij die gelegenheid hebben de advocaten de standpunten van de onderscheiden partijen toegelicht aan de hand van aan de Ondernemingskamer en de wederpartij overgelegde aantekeningen en (wat mrs. Geldof en Van Bunge betreft) onder overlegging van – op voorhand aan de Ondernemingskamer en de wederpartij gezonden – nadere producties 34 tot en met 37 van de zijde van TDX en nadere producties 19 tot en met 34 van de zijde van dmarcian Europe. Partijen en hun advocaten hebben vragen van de Ondernemingskamer beantwoord en inlichtingen verstrekt.


## 2.    De feiten

De Ondernemingskamer gaat uit van de volgende feiten:

2.1    dmarcian Europe is op 21 maart 2013 opgericht en heette aanvankelijk Mailmerk B.V. TDX en Draegen houden respectievelijk 49,99% en 50,01% van de aandelen in dmarcian Europe. TDX is bestuurder van dmarcian Europe. Volgens de statuten van dmarcian Europe kunnen bestuurders door de algemene vergadering bij meerderheid van stemmen worden benoemd, geschorst en ontslagen.

2.2   Martijn Groeneweg (hierna: Groeneweg) en Herwert Jente Kalkman (hierna: Kalkman) zijn ieder via hun persoonlijke vennootschappen indirect houder van 50% van de aandelen in TDX en tevens indirect bestuurder van TDX.

2.3   dmarcian Europe werkt vanaf 2016 samen met dmarcian, Inc., een vennootschap naar het recht van Delaware (Verenigde Staten van Amerika). Beide vennootschappen drijven een onderneming die zich bezighoudt met het leveren van producten en diensten op het gebied van identiteitsbeveiliging van e-mailadressen. dmarcian Europe maakt daarbij gebruik van software die afkomstig is van dmarcian, Inc. Tevens doet dmarcian Europe aan product- en softwareontwikkeling. Zij heeft daartoe niet alleen zelf ontwikkelaars in dienst, maar maakt ook gebruik van ontwikkelingsactiviteiten in Bulgarije, aanvankelijk door tussenkomst van de Bulgaarse vennootschap BeLean OOD en vanaf 1 november 2018 door middel van dmarcian Bulgaria EOOD (hierna: dmarcian Bulgaria), een Bulgaarse vennootschap waarin dmarcian Europe alle aandelen houdt.

2.4   Draegen is CEO van dmarcian, Inc. en houdt de meerderheid van de aandelen in deze vennootschap. C. Swenberg (hierna: Swenberg), een per 31 mei 2018 ontslagen werknemer van dmarcian, Inc., houdt een minderheidsaandelenbelang in dmarcian, Inc. Swenberg is een gerechtelijke procedure begonnen tegen dmarcian, Inc., Draegen en Groeneweg, waarin hij onder meer aanspraak maakt op aandelen in dmarcian, Inc. die hij bij het voortduren van zijn dienstverband zou hebben ontvangen.

2.5   TDX en Draegen twisten over de afspraken die in 2016 aan de samenwerking tussen dmarcian Europe en dmarcian, Inc./Draegen ten grondslag zijn gelegd. Volgens TDX hebben dmarcian Europe, dmarcian, Inc., TDX en Draegen op 22 januari 2016 een mondelinge overeenkomst gesloten waarop hun samenwerking is gebaseerd. Volgens Draegen hebben partijen de in december 2016 gevoerde e-mailcorrespondentie tussen hem en Groeneweg over het formaliseren van hun samenwerking, waarbij Draegen documenten ter ondertekening heeft toegestuurd (die niet zijn ondertekend), altijd beschouwd als de basis van hun samenwerking. In ieder geval staat tussen partijen vast dat zij in 2016 ten minste zijn overeengekomen:
-   dat dmarcian Europe een licentie heeft voor het gebruik en de verkoop van software afkomstig van dmarcian, Inc.;
-   dat dmarcian Europe verantwoordelijk is voor de verkoop van die software (en het leveren van bijbehorende diensten) aan klanten in Europa, Rusland en Afrika;
-   dat dmarcian, Inc. en/of Draegen in ruil daarvoor het meerderheidsaandelenbelang in dmarcian Europe heeft kunnen kopen tegen betaling van € 1.

2.6    Op 6 augustus 2018 heeft Draegen Groeneweg onder meer het volgende gemaild:

"*There are 2 main parts to consider: 1. (...) 2. Where is global IP located? (...) About location of IP: since EU has been licensing tech, it is likely impossible to home IP into the EU by default.. even though EU is paying to continue to develop (as US is also paying developers – so it's sort of a mixed issue). This means that some sort of asset transfer has to be made (...) along with a proper valuation of said IP*".

2.7    Groeneweg heeft op 4 december 2019 aan Draegen een e-mail gezonden met onder meer de volgende inhoud:

"*This document describes the current situation that software owned by dmarcian Europe BV can't be sold by dmarcian, Inc. nor Dmarcian Asia Pacific Pty Ltd to customers as there's no license agreement in place to do so. Before this problem is solved new software including but not limited to DMARC delegation can't go live on other instances than the EU instance. This document describes a detailed solution for the above problem as well.*"

Als bijlage bevat de e-mail een document dat de volgende weergave van de volgens Groeneweg in 2016 gemaakte afspraken inhoudt:

"*(...) Operational and license agreement between dmarcian inc and Mailmerk BV*
*a. Perpetual and exclusive free license for SaaS Software from dmarcian, Inc. to Mailmerk BV.*
*b. dmarcian, Inc. will take care of software development.*
*c. Mailmerk BV becomes dmarcian Europe BV exclusively handling all dmarcian customers from Russia, Europe and Africa.*
*d. All revenue generated from dmarcian customers from Russia, Europe and Africa will be dmarcian Europe BV revenue.*
*e. Both dmarcian, Inc. and dmarcian Europe BV keep operating as separate entities under 1 brand.*"

Verder heeft Groeneweg in het document voorstellen gedaan voor toekomstige samenwerking met dmarcian, Inc. en Draegen alsook om TDX buiten schot te houden in de Swenberg-rechtszaak (2.4).

2.8    Draegen heeft eveneens op 4 december 2019 op het voorstel in het document van Groeneweg voor de toekomstige samenwerking gereageerd. Draegen schrijft: "*I agree we'll need a licensing agreement to be put into place. Without going into details over email, it makes sense to reflect the perpetual and exclusive license that Europe BV has enjoyed. (...) The proposed solution (...) isn't something I can support (...)*". Op 6 december 2019 heeft hij in een e-mail aan onder andere Groeneweg enkele "*rather unpleasant surprises*" uit het

document aan de orde gesteld. Draegen heeft daarbij opgemerkt: *"The initial terms described around 22 January 2016 are either wrong or inaccurate"*, waarna hij zijn visie heeft gegeven op hetgeen in 2016 is overeengekomen. In de afsluiting van de e-mail staat dat de fouten in het document van Groeneweg: *"have raised serious red flags"* en dat het document *"issues that cannot be ignored"* heeft doen ontstaan.

2.9 Draegen heeft tijdens een *all hands meeting* op vrijdag 6 december 2019 aan alle dmarcian-werknemers wereldwijd verklaard:

> *"(...) Right now, I wear two hats. The CEO of the US legal entity, and the majority owner of the Dutch BV. With my CEO hat on, I have to protect the assets of the US company, including intellectual property. (...) I have to protect the property of the company, and need to interpret the letter* [de e-mail van Groeneweg van 4 december 2019, toev. Ondernemingskamer] *as an attempt to replace existing terms with new ones. We're now in a legal limbo (...) BV employee access has to be suspended and pretty much everything related to resources provided to the BV by the US entity has to be suspended"*.

Tijdens de meeting werd aan alle werknemers van dmarcian Europe de toegang ontzegd tot de (computer)systemen. Deze toegang is grotendeels hersteld op maandag 9 december 2019 vóór kantooruren. Daarnaast heeft Draegen een *Director of Software* benoemd voor (onder andere) dmarcian Europe en dmarcian Bulgaria.

2.10 dmarcian Europe en Draegen/dmarcian, Inc. hebben vervolgens voorstellen gedaan om tot een oplossing te komen, maar die is er niet gekomen.

2.11 Draegen heeft bij e-mail van 3 juli 2020 aan Groeneweg en Kalkman verzocht een aandeelhoudersvergadering van dmarcian Europe bijeen te roepen, met op de agenda het voorstel TDX te ontslaan als bestuurder van dmarcian Europe en Vision als zodanig te benoemen. dmarcian Europe heeft, conform haar statuten, een aandeelhoudersvergadering bijeengeroepen voor 13 augustus 2020 waarvoor deze onderwerpen geagendeerd stonden. Met het oog op deze enquêteprocedure is de aandeelhoudersvergadering verplaatst naar 7 september 2020.

2.12 Op 29 juli 2020 heeft dmarcian Europe een *non-binding indicative offer* tot overname van de aandelen in dmarcian Europe ontvangen van Valimail, Inc., een in San Francisco, Verenigde Staten van Amerika, gevestigde concurrent van de dmarcian-vennootschappen. Het bod is toegevoegd aan de agenda van de aandeelhoudersvergadering van dmarcian Europe op 7 september 2020. Valimail, Inc. wenst een due diligence-onderzoek uit te voeren alvorens zij een bindend bod zal kunnen doen.

2.13  Tijdens de mondelinge behandeling op 20 augustus 2020 hebben partijen ermee ingestemd dat de voor 7 september 2020 bijeengeroepen aandeelhoudersvergadering van dmarcian Europe niet zal plaatsvinden voordat de Ondernemingskamer uitspraak heeft gedaan op de verzoeken van TDX en Draegen.

## 3.  De gronden van de beslissing

3.1  TDX heeft aan haar stelling dat er gegronde redenen zijn voor twijfel aan een juist beleid en een juiste gang van zaken van dmarcian Europe en dat gelet op de toestand van de vennootschap onmiddellijke voorzieningen dienen te worden getroffen, kort gezegd het volgende ten grondslag gelegd:

i  De verstandhouding tussen Draegen enerzijds en dmarcian Europe (inclusief haar werknemers) en TDX anderzijds is ernstig verstoord geraakt door gedragingen van Draegen in de afgelopen jaren en wordt inmiddels gekenmerkt door wantrouwen. Dit is veroorzaakt door de discussie tussen partijen over de intellectuele eigendom die vanaf 4 december 2019 is geïntensiveerd en ontspoord. dmarcian Europe heeft met betrekking tot de door haar (en dmarcian Bulgaria) zelf ontwikkelde software, waarin zij € 900.000 heeft geïnvesteerd, een overeenkomst voorgesteld aan dmarcian, Inc., waarbij – bij wijze van spiegelbeeld van de op 22 januari 2016 gesloten overeenkomst – aan dmarcian, Inc. een licentie voor het gebruik en de verkoop van die software wordt verleend. Draegen is daarop op ramkoers gaan liggen door van dmarcian Europe te verlangen dat de intellectuele eigendom op die software om niet wordt overgeheveld naar dmarcian, Inc. Met dat doel en dus oneigenlijk stuurt hij aan op ontslag van TDX als bestuurder van dmarcian Europe. Zodoende trekt hij ten onrechte de macht binnen dmarcian Europe naar zich toe. Door zich aldus te gedragen misbruikt Draegen zijn positie als meerderheidsaandeelhouder ten nadele van dmarcian Europe ten behoeve van zijn eigen positie als grootaandeelhouder van dmarcian, Inc. en is er sprake van ongeoorloofde belangenverstrengeling. Daarnaast heeft een geschil tussen TDX en Draegen over het dividendbeleid voor verstoring van de onderlinge verstandhouding gezorgd.

ii  Er is ook overigens sprake van ongewenste inmenging door Draegen in de dagelijkse bedrijfsvoering van dmarcian Europe. TDX heeft in dat kader gewezen op Draegens verklaring tijdens de *all hands meeting* van 6 december 2019 (2.9), het vervolgens ontzeggen van de toegang tot de vitale (computer)systemen aan werknemers van dmarcian Europe en het vooruitlopen door Draegen op het ontslag van TDX als bestuurder van dmarcian Europe. Hierdoor is grote onrust onder de werknemers van dmarcian Europe ontstaan. Daarnaast heeft Draegen klanten van dmarcian Europe

benaderd met de incorrecte boodschap dat dmarcian, Inc. alle software beheert en een *Director of Software* van dmarcian Europe en dmarcian Bulgaria aangesteld.

De verzochte onmiddellijke voorzieningen zijn nodig om te voorkomen dat Draegen een machtsgreep pleegt en de intellectuele eigendom van dmarcian Europe naar zich toe trekt.

3.2    dmarcian Europe onderschrijft het standpunt van TDX.

3.3    Draegen heeft gemotiveerd verweer gevoerd tegen het verzoek van TDX. De Ondernemingskamer zal hieronder waar nodig op dit verweer ingaan. Aan zijn zelfstandig verzoek heeft Draegen ten grondslag gelegd dat er andere gegronde redenen zijn voor twijfel aan een juist beleid en een juiste gang van zaken van dmarcian Europe en dat gelet op de toestand van de vennootschap onmiddellijke voorzieningen dienen te worden getroffen. Ter toelichting heeft hij – kort samengevat – het volgende naar voren gebracht:

a. TDX en dmarcian Europe claimen ten onrechte intellectuele eigendomsrechten op software die aan dmarcian, Inc. toebehoort. Hierdoor schenden TDX en dmarcian Europe de in 2016 tussen partijen gesloten overeenkomst op grond waarvan dmarcian Europe onder licentie van dmarcian, Inc. software gebruikt en verkoopt. TDX heeft door middel van zijn brief en document van 4 december 2019 (2.7) getracht die overeenkomst te herzien om er zelf beter van te worden. Hiermee heeft TDX een bom onder de samenwerking gelegd.

b. Verder is er sprake van falend bestuur door TDX, omdat dmarcian Europe heeft verzuimd met dmarcian Bulgaria een overeenkomst te sluiten over de intellectuele eigendom van door werknemers van dmarcian Bulgaria ontwikkelde software (voor zover deze los staat van de software afkomstig van dmarcian, Inc.). Hierdoor komen de intellectuele eigendomsrechten op deze software niet aan dmarcian Europe toe.

c. Aangezien Kalkman als softwareontwikkelaar niet in dienst is van dmarcian Europe en zijn managementovereenkomst met dmarcian Europe geen IP-assignmentclausule bevat, dreigt de intellectuele eigendom op door hem ontwikkelde software in TDX achter te blijven, zodat deze niet aan dmarcian Europe toekomt. Aangezien dit een bedreiging vormt voor dmarcian Europe, heeft Draegen meermaals om opheldering hierover verzocht, maar TDX en dmarcian Europe hebben deze niet verstrekt.

TDX heeft sinds december 2019 aangestuurd op een exit als aandeelhouder en heeft door een conflict over de intellectuele eigendomsrechten te veroorzaken en het bod van concurrent Valimail, Inc. uit te lokken, getracht de prijs van haar aandelen op te drijven. Hiermee laat TDX ten onrechte haar eigen belang zwaarder wegen dan het belang van dmarcian Europe, aldus Draegen.

3.4    De Ondernemingskamer overweegt als volgt. De controverse over de intellectuele eigendomsrechten op de door dmarcian Europe (en dmarcian Bulgaria) ontwikkelde software(applicaties) vormt de kern van het geschil tussen partijen. TDX stelt dat deze software(applicaties) los staat/staan van de door dmarcian, Inc. ontwikkelde software, zodanig dat de intellectuele eigendom daarvan aan dmarcian Europe toekomt. Aan het mogen gebruiken en verkopen van deze software(applicaties) door dmarcian, Inc. dient een door dmarcian Europe te verlenen licentie ten grondslag te liggen, aldus TDX. Daartegenover stelt Draegen dat de door dmarcian Europe (en dmarcian Bulgaria) ontwikkelde software niet meer omvat dan aanvullende *features* voor verbeterd gebruik van de van dmarcian, Inc. afkomstige software, zodat de intellectuele eigendom daarvan eveneens bij dmarcian, Inc. berust. De Ondernemingskamer stelt voorop dat voor de juridische beoordeling van dat geschil slechts de gewone burgerlijke rechter bevoegd is. Wel kan de Ondernemingskamer constateren dat dit geschil ontwrichtend is voor de onderneming van dmarcian Europe; het ontwikkelen en verkopen van software is haar *core business* en de samenwerking met dmarcian, Inc. is daarvoor een noodzakelijke voorwaarde. Desondanks is deze samenwerking noch in het algemeen, noch ter zake van de intellectuele eigendomsrechten op ontwikkelde en te ontwikkelen software(applicaties) en (de reikwijdte van) de in verband daarmee verleende/te verlenen licenties in het bijzonder, door partijen voldoende geregeld. Hierover zijn geen eenduidig vastgelegde afspraken voorhanden, met als gevolg dat de samenwerking op het spel is komen te staan door de huidige discussie daarover, hetgeen een serieuze belemmering vormt voor de bedrijfsvoering van dmarcian Europe. Naar het oordeel van de Ondernemingskamer levert het bestaan van voornoemde situatie voldoende gegronde redenen op om te twijfelen aan een juist beleid en een juiste gang van zaken van dmarcian Europe. De Ondernemingskamer zal, gelijk door zowel TDX als Draegen is verzocht, een onderzoek gelasten naar het beleid en de gang van zaken van dmarcian Europe, en wel vanaf 1 januari 2016 tot 20 augustus 2020.

3.5    Met partijen acht de Ondernemingskamer het met het oog op de toestand van dmarcian Europe noodzakelijk om bij wijze van onmiddellijke voorziening een derde tot bestuurder van dmarcian Europe met doorslaggevende stem te benoemen, die zelfstandig bevoegd is dmarcian Europe te vertegenwoordigen. Deze bestuurder mag het mede tot zijn taak rekenen te proberen duidelijkheid te verkrijgen over de vraag waar de intellectuele eigendom op de door dmarcian Europe (en dmarcian Burgaria) ontwikkelde software(applicaties) berust, althans daarover met dmarcian, Inc. voldoende duidelijke afspraken te maken en deze vast te leggen. De Ondernemingskamer ziet tevens aanleiding om de aandelen in dmarcian Europe – met uitzondering van één aandeel van ieder van de aandeelhouders – ten titel van beheer aan een door haar te benoemen beheerder over te dragen.

Case 1:21-cv-00067-MR   Document 26-2   Filed 04/19/21   Page 10 of 29

3.6 De te benoemen bestuurder mag het bovendien tot zijn taak rekenen een minnelijke regeling tussen partijen te beproeven.

3.7 Voor het treffen van andere onmiddellijke voorzieningen, zoals het schorsen van TDX als bestuurder van dmarcian Europe, ziet de Ondernemingskamer (vooralsnog) geen aanleiding.

3.8 De Ondernemingskamer zal de kosten van het onderzoek en de te benoemen bestuurder en beheerder ten laste brengen van dmarcian Europe.

3.9 De Ondernemingskamer zal de aanwijzing van een onderzoeker vooralsnog aanhouden opdat kan worden bezien of reeds door de te treffen onmiddellijke voorzieningen een oplossing van het geschil kan worden bereikt. Ieder der partijen of de door de Ondernemingskamer benoemde bestuurder dan wel beheerder kan op elk moment de Ondernemingskamer verzoeken de onderzoeker aan te wijzen.

3.10 De Ondernemingskamer zal het bedrag dat het onderzoek ten hoogste mag kosten niet aanstonds vaststellen. De Ondernemingskamer zal, nadat de onderzoeker zal zijn aangewezen, de onderzoeker vragen om binnen zes weken een plan van aanpak en een begroting van de kosten van het onderzoek te maken en deze aan de Ondernemingskamer toe te zenden. De Ondernemingskamer zal partijen in de gelegenheid stellen zich uit te laten over die begroting en vervolgens het bedrag vaststellen dat het onderzoek ten hoogste mag kosten.

3.11 De Ondernemingskamer acht ten slotte termen aanwezig de kosten van het geding tussen de verschenen partijen te compenseren zoals hierna te vermelden.

## 4. De beslissing

De Ondernemingskamer:

beveelt een onderzoek naar het beleid en de gang van zaken van dmarcian Europe B.V. over de periode vanaf 1 januari 2016 tot 20 augustus 2020 zoals omschreven in rechtsoverweging 3.4 van deze beschikking;

bepaalt dat de kosten van het onderzoek ten laste komen van dmarcian Europe B.V. en dat zij voor de betaling daarvan ten genoegen van de onderzoeker voor de aanvang van diens werkzaamheden zekerheid dient te stellen;

houdt in verband met het bepaalde in rechtsoverweging 3.10 de vaststelling van het bedrag dat het onderzoek ten hoogste mag kosten aan;

benoemt mr. A.J. Wolfs tot raadsheer-commissaris, zoals bedoeld in artikel 2:350 lid 4 BW;

benoemt bij wijze van onmiddellijke voorziening met onmiddellijke ingang en vooralsnog voor de duur van het geding – voor zover nodig in afwijking van de statuten – een nader aan te wijzen en aan partijen bekend te maken persoon tot bestuurder van dmarcian Europe B.V. met doorslaggevende stem en bepaalt dat deze bestuurder zelfstandig bevoegd is dmarcian Europe B.V. te vertegenwoordigen;

bepaalt vooralsnog voor de duur van het geding dat de aandelen in dmarcian Europe B.V. – met uitzondering van één aandeel van ieder van de aandeelhouders – ten titel van beheer met ingang van heden zijn overgedragen aan een nader aan te wijzen en aan partijen bekend te maken persoon;

bepaalt dat het salaris en de kosten van de bestuurder en de beheerder van aandelen ten laste komen van dmarcian Europe B.V. en bepaalt dat dmarcian Europe B.V. voor de betaling daarvan ten genoegen van de bestuurder en de beheerder zekerheid dient te stellen vóór de aanvang van hun werkzaamheden;

compenseert de kosten van het geding tussen de verschenen partijen aldus dat iedere partij de eigen kosten draagt;

verklaart deze beschikking uitvoerbaar bij voorraad;

wijst af hetgeen meer of anders is verzocht.

Deze beschikking is gegeven door mr. A.J. Wolfs, voorzitter, mr. A.W.H. Vink en mr. M.P. Nieuwe Weme, raadsheren, en drs. C. Smits-Nusteling RC en drs. J.S.T. Tiemstra RA, raden, in tegenwoordigheid van mr. F.L.A. Straathof, griffier, en in het openbaar uitgesproken op 7 september 2020.

# decision

AMSTERDAM COURT OF APPEAL
ENTERPRISE COURT


case number: 200.281.257/01 OK

decision of the Enterprise Court dated September 7, 2020

in the case of


the private company with limited liability
**THE DIGITAL XPEDITION (TDX) HOLDING B.V.,**
with its registered office in Dordrecht,
**APPLICANT,**
lawyers: **M.C. Luiten, V.R.M. Appelman** and **L. Geldof**, all with offices in Rotterdam,

versus

the private company with limited liability
**DMARCIAN EUROPE B.V.,**
with its registered office in Dordrecht,
**RESPONDENT,**
lawyers: **A. van Bunge** and **J. Kloots**, both with offices in Rotterdam,

and versus

**Timothy George DRAEGEN,**
residing in Brevard, North Carolina, United States of America,
**INTERESTED PARTY,**
lawyers: **F. Henke** and **P.A. Josephus Jitta**, with offices in Amsterdam and The Hague respectively.

## 1.     The course of the proceedings

1.1     The applicant, the respondent and the interested party are hereinafter referred to as TDX, dmarcian Europe and Draegen, respectively.

1.2     In its application with exhibits filed on July 28, 2020, TDX requested the Enterprise Court, after amending its application by deed filed on August 17, 2020, to order, by provisionally enforceable decision, an investigation into the policies and course of affairs of dmarcian Europe over the period from January 2016 to August 17, 2020, and by way of immediate relief for the duration of the proceedings, in essence, primarily:

i.     to appoint a third person as director of dmarcian Europe with a decisive vote and with certain special duties;

ii.     to rule that the board of directors is authorized to enter into agreements with shareholders and/or third parties on behalf of dmarcian Europe without the approval of the shareholders, or at least to amend the articles of association (temporarily) in such a way that it is determined therein that the board of directors has the aforementioned authority and to rule in this respect that, if necessary pursuant to Section 2:8 of the Dutch Civil Code in conjunction with Section 3:300 of the Dutch Civil Code. the ruling of the Enterprise Court has the same force and can serve as a substitute for all necessary approvals, resolutions, waivers or legal acts of/by shareholders (individually or as a meeting);

iii.     to prohibit that at the shareholders' meeting of September 7, 2020 (a) TDX is dismissed as a director of dmarcian Europe and (b) Vision Management Europe Ltd. (hereinafter to be referred to as Vision), or at least a third party, is appointed as a director of dmarcian Europe, subject to forfeiture of a penalty;

iv.     to rule that the director to be appointed by the Enterprise Court is authorized to convene a shareholders' meeting, excluding the power of an individual shareholder to convene a shareholders' meeting himself as provided for in Article 22, paragraph 4, last sentence of the articles of association;

v.     to suspend the voting rights on Draegen's shares in the capital of dmarcian Europe, or at least to transfer these shares in trust to an administrator to be appointed by the Enterprise Court; alternatively, to take such other measures as the Enterprise Court may deem appropriate, and in either case to order dmarcian Europe to pay the costs of the proceedings.

1.3     By statement of response with exhibits dated August 11, 2020, dmarcian Europe requested that the Enterprise Court, by provisionally enforceable decision, grant TDX's request, with the proviso that the requested investigation be ordered to cover the period from January 2016 through August 20, 2020.

1.4     Also on August 11, 2020, Draegen, by statement of response with exhibits, requested the
        Enterprise Court to reject TDX's request and, by way of independent request, requested the
        Enterprise Court to order, by provisionally enforceable decision, an investigation into the
        policies and course of affairs of dmarcian Europe over the period from January 2016 through
        August 2020 and by way of immediate relief for the duration of the proceedings, in essence,
        –     primarily to dismiss TDX and alternatively to suspend TDX as a director of dmarcian
              Europe;
        –     to appoint a third person as a director of dmarcian Europe;
        –     to transfer the shares in the capital of dmarcian Europe, with the exception of 49% of the
              shares of TDX and 49% of the shares of Draegen, or at least such a percentage as the
              Enterprise Court deems appropriate, in trust to an administrator to be appointed by the
              Enterprise Court;
        –     or to take such other measures as the Enterprise Court deems appropriate; in each case
              ordering TDX to pay the costs of the proceedings.

1.5     The applications were heard at the public hearing of the Enterprise Court on August 20, 2020.
        On that occasion, the lawyers clarified the positions of the various parties on the basis of notes
        submitted to the Enterprise Court and the counterparty and (as regards lawyers Geldof and Van
        Bunge) with submission of further exhibits 34 up to and including 37 on the part of TDX and
        further exhibits 19 up to and including 34 on the part of dmarcian Europe, sent to the Enterprise
        Court and the counterparty in advance. The parties and their lawyers answered questions from
        the Enterprise Court and provided information.

**2.      The facts**

The Enterprise Court assumes the following facts:

2.1     dmarcian Europe was incorporated on March 21, 2013 and was initially called Mailmerk B.V.
        TDX and Draegen hold 49.99% and 50.01% of the shares in dmarcian Europe, respectively. TDX is
        a director of dmarcian Europe. According to dmarcian Europe's articles of association, directors
        may be appointed, suspended and dismissed by the general meeting by a majority vote.

2.2     Martijn Groeneweg (hereinafter referred to as Groeneweg) and Herwert Jente Kalkman (hereinafter referred to as Kalkman) each indirectly hold 50% of the shares in TDX through their personal companies and are also indirect directors of TDX.

2.3     dmarcian Europe has partnered with dmarcian, Inc. as of 2016, a company incorporated under the laws of Delaware (United States of America). Both companies are engaged in conducting a business that provides products and services in the area of identity protection of email addresses. For this purpose, dmarcian Europe uses software originating from dmarcian, Inc. dmarcian Europe also engages in product and software development. To this end, it not only employs developers, but also uses development activities in Bulgaria, initially through the Bulgarian company BeLean OOD and, as of November 1, 2018, through dmarcian Bulgaria EOOD (hereinafter referred to as dmarcian Bulgaria), a Bulgarian company in which dmarcian Europe holds all shares.

2.4     Draegen is CEO of dmarcian, Inc. and holds the majority of the shares in this company. C. Swenberg (hereinafter referred to as Swenberg), an employee of dmarcian, Inc. who was dismissed as of May 31, 2018, holds a minority equity interest in dmarcian, Inc. Swenberg commenced legal proceedings against dmarcian, Inc., Draegen and Groeneweg, claiming, among other things, shares in dmarcian, Inc. that he would have received upon continued employment.

2.5     TDX and Draegen are disputing the agreements underlying the 2016 collaboration between dmarcian Europe and dmarcian, Inc./Draegen. According to TDX, on January 22, 2016, dmarcian Europe, dmarcian, Inc., TDX and Draegen entered into an oral agreement on which their cooperation is based. According to Draegen, the parties have always based their collaboration on the email correspondence of December 2016 between him and Groeneweg about formalizing their collaboration, in which Draegen sent documents for signature (which were not signed). In any event, it is undisputed between the parties that in 2016 they agreed on at least:
    — that dmarcian Europe is licensed to use and sell software originating from dmarcian, Inc;
    — that dmarcian Europe is responsible for selling that software (and providing related services) to customers in Europe, Russia and Africa;
    — that in return, dmarcian, Inc. and/or Draegen was able to purchase the majority equity interest in dmarcian Europe against payment of C 1.

2.6     On August 6, 2018, Draegen emailed Groeneweg, among other things, the following:

> *"There are 2 main parts to consider: 1. (. ..) 2. Where is global IP located? (...) About location of IP: since EU has been licensing tech, it is likely impossible to home IP into the EU by default.. even though EU is paying to continue to develop (as US is also paying developers - so it's sort of a mixed issue). This means that some sort of asset transfer has to be made (...) along with a proper valuation of said IP".*

2.7     Groeneweg sent Draegen an email on December 4, 2019, which included the following content:

> *"This document describes the current situation that software owned by dmarcian Europe BV can't be sold by dmarcian, Inc. nor Dmarcian Asia Pacific Pty Ltd to customers as there's no license agreement in place to do so. Before this problem is solved new software including but not limited to DMARC delegation can't go live on other instances than the EU instance. This document describes a detailed solution for the above problem as well."*

As an attachment, the email includes a document that includes the following representation of what Groeneweg says was agreed to in 2016:

> *"(...) Operational and license agreement between dmarcian Inc. and Mailmerk BV*
> *a.  Perpetual and exclusive free license for SaaS Software from dmarcian, Inc. to Mailmerk BV.*
> *b.  dmarcian, Inc. will take care of software development.*
> *c.  Mailmerk BV becomes dmarcian Europe BV exclusively handling all dmarcian customers from Russia, Europe and Africa.*
> *d.  All revenue generated from dmarcian customers from Russia, Europe and Africa will be dmarcian Europe BV revenue.*
> *e.  Both dmarcian, Inc. and dmarcian Europe BV keep operating as separate entities under 1 brand."*

Furthermore, Groeneweg made proposals in the document for future cooperation with dmarcian, Inc. and Draegen, as well as for keeping TDX out of the Swenberg lawsuit (2.4).

2.8     On December 4, 2019, Draegen also responded to the proposal in Groeneweg's document for future collaboration. Draegen writes: *"I agree we'll need a licensing agreement to be put into place. Without going into details over email, it makes sense to reject the perpetual and exclusive license that Europe BV has enjoyed. (...) The proposed solution (...) isn't something I can support( ...)".* On December 6, 2019, in an email to Groeneweg and others, he addressed some of the *"rather unpleasant surprises"* in the document.

In doing so, Draegen noted, *"The initial terms described around 22 January 2016 are either wrong or inaccurate"*, after which he offered his views on what was agreed upon in 2016. The conclusion of the email states that the errors in Groeneweg's document: "*have raised serious red flags*" and that the document has raised "*issues that cannot be ignored"*.

2.9     On Friday, December 6, 2019, Draegen stated to all dmarcian employees worldwide during an *all hands meeting*:

> *"(...) Right now, I wear two hats. The CEO of the US legal entity, and the majority owner of the Dutch BV. With my CEO hat on, I have to protect the assets of the US company, including intellectual property. (...) I have to protect the property of the company, and need to interpret the letter* [Groeneweg's email of December 4, 2019, addn. Enterprise Court] *as an attempt to replace existing terms with new ones. We're now in a legal limbo (...) BV employee access has to be suspended and pretty much everything related to resources provided to the BV by the US entity has to be suspended".*

During the meeting, all employees of dmarcian Europe were denied access to the computer and other systems. This access was largely restored on Monday, December 9, 2019 before business hours. In addition, Draegen appointed a *Director of Software* for (among others) dmarcian Europe and dmarcian Bulgaria.

2.10    dmarcian Europe and Draegen/dmarcian, Inc. then made proposals to reach a solution, but none was forthcoming.

2.11    By email dated July 3, 2020 to Groeneweg and Kalkman, Draegen requested that a shareholders' meeting of dmarcian Europe be convened, with the agenda to include the proposal to remove TDX as a director of dmarcian Europe and to appoint Vision as such. dmarcian Europe, in accordance with its articles of association, convened a shareholders' meeting for August 13, 2020 for which these items were on the agenda. In view of these inquiry proceedings, the shareholders' meeting has been rescheduled for September 7, 2020.

2.12    On July 29, 2020, dmarcian Europe received a *non-binding indicative offer* to acquire the shares in dmarcian Europe from Valimail, Inc. a competitor of the dmarcian companies based in San Francisco, United States of America. The offer was added to the agenda of dmarcian Europe's shareholders' meeting on September 7, 2020. Valimail, Inc. wishes to conduct due diligence before it will be able to make a binding offer.

2.13    At the oral hearing on August 20, 2020, the parties agreed that the dmarcian Europe
        shareholders' meeting convened for September 7, 2020, would not take place until the
        Enterprise Court had ruled on the applications of TDX and Draegen.

3.      The grounds for the decision

3.1     TDX has based its claim, alleging that there are reasonable grounds for doubting the proper
        policy and course of affairs of dmarcian Europe and that, in view of the company's condition,
        immediate relief should be given, on the following, in brief:

        i.      The relationship between Draegen on the one hand and dmarcian Europe (including its
                employees) and TDX on the other has been seriously disrupted by Draegen's conduct
                over the past few years and is now characterized by distrust. This was caused by the
                discussion between the parties regarding intellectual property, which intensified and
                became derailed as of December 4, 2019. dmarcian Europe proposed an agreement to
                dmarcian, Inc. regarding the software developed by it (and dmarcian Bulgaria), in which
                it had invested € 900,000, whereby - by way of mirror image of the agreement
                concluded on January 22, 2016 - dmarcian, Inc. is granted a license for the use and sale
                of that software. Draegen then went on a collision course by requiring dmarcian Europe
                to transfer the intellectual property in that software to dmarcian, Inc. for no
                consideration. To that end, and thus improperly, he is pressing for TDX's resignation as
                director of dmarcian Europe. Thus, he is unfairly inveigling power within dmarcian
                Europe for himself. By behaving in this manner, Draegen is abusing his position as
                majority shareholder to the detriment of dmarcian Europe for the benefit of his own
                position as major shareholder of dmarcian, Inc., and there is an impermissible conflict of
                interest. In addition, a dispute between TDX and Draegen over dividend policy caused a
                rupture between them.

    ii.    Incidentally, there is also unwanted interference by Draegen in the day-to-day operations of dmarcian Europe. In that context, TDX has pointed out Draegen's statement at the all hands meeting on December 6, 2019 (2.9), the subsequent denial of access to the vital computer and other systems for employees of dmarcian Europe, and Draegen's anticipation of TDX's resignation as a director of dmarcian Europe. This has caused significant unrest among the employees of dmarcian Europe. In addition, Draegen approached customers of dmarcian Europe with the incorrect message that dmarcian, Inc. manages all software and appointed a *Director of Software* of dmarcian Europe and dmarcian Bulgaria.

The requested immediate relief is necessary to prevent Draegen from making a power grab and taking over the intellectual property of dmarcian Europe.

3.2    dmarcian Europe endorses TDX's position.

3.3    Draegen has put forward a reasoned defense against TDX's application. The Enterprise Court will address this defense below where appropriate. Draegen based his independent application on the fact that there are other well-founded reasons for doubting the proper policy and course of affairs of dmarcian Europe and that, in view of the company's situation, immediate relief should be given. By way of explanation, he has put forward - in brief - the following:

    a.    TDX and dmarcian Europe falsely claim intellectual property rights in software belonging to dmarcian, Inc. By doing so, TDX and dmarcian Europe are violating the 2016 agreement between the parties under which dmarcian Europe uses and sells software under license from dmarcian, Inc. Through its letter and document dated December 4, 2019 (2.7), TDX sought to revise that agreement to benefit itself. By doing so, TDX put a bomb under the collaboration.

    b.    Furthermore, there has been a failure of governance by TDX because dmarcian Europe failed to enter into an intellectual property agreement with dmarcian Bulgaria regarding software developed by employees of dmarcian Bulgaria (to the extent that this is separate from the software originating from dmarcian, Inc.). As a result, the intellectual property rights to this software do not accrue to dmarcian Europe.

    c.    Since Kalkman, as a software developer, is not employed by dmarcian Europe and his management agreement with dmarcian Europe does not contain an IP assignment clause, the intellectual property on software developed by him risks being left behind in TDX, so it does not accrue to dmarcian Europe. As this poses a threat to dmarcian Europe, Draegen has requested clarification on this matter on several occasions, but TDX and dmarcian Europe have not provided it.

TDX has been pushing for an exit as a shareholder since December 2019 and has sought to drive up the price of its shares by causing a conflict over intellectual property rights and provoking the bid from competitor Valimail, Inc. In doing so, TDX is unfairly allowing its own interests to outweigh the interests of dmarcian Europe, according to Draegen.

3.4     The Enterprise Court holds as follows. The controversy over the intellectual property rights to the software and software applications developed by dmarcian Europe (and dmarcian Bulgaria) is at the heart of the dispute between the parties. TDX alleges that this software and software applications is/are separate from the software developed by dmarcian, Inc. such that the intellectual property thereof belongs to dmarcian Europe. The right to use and sell this software and software applications by dmarcian, Inc. must be based on a license to be granted by dmarcian Europe, TDX alleges. On the other hand, Draegen argues that the software developed by dmarcian Europe (and dmarcian Bulgaria) does not include more than additional features for improved use of the software sourced from dmarcian, Inc. so that the intellectual property thereof also belongs to dmarcian, Inc. The Enterprise Court first notes that only the ordinary civil court is competent for the legal assessment of that dispute. However, the Enterprise Court can note that this dispute is disruptive to dmarcian Europe's business; developing and selling software is its core business and the cooperation with dmarcian, Inc. is a necessary condition for this. Nevertheless, this cooperation is not sufficiently regulated by the parties, neither in general, nor with regard to the intellectual property rights to software and software applications that has been and will be developed and the licenses granted/to be granted in that connection (and their scope) in particular. There are no unambiguous agreements on this available, with the result that the collaboration has been put at risk by the current discussion on this, which is a serious obstacle to dmarcian Europe's business operations. In the opinion of the Enterprise Court, the existence of the aforementioned situation provides sufficient legitimate reasons to doubt the proper policy and course of affairs of dmarcian Europe. The Enterprise Court, as requested by both TDX and Draegen, will order an investigation into the policies and course of affairs of dmarcian Europe from January 1, 2016 to August 20, 2020.

3.5     Along with the parties, the Enterprise Court deems it necessary in view of the situation of dmarcian Europe, by way of an immediate relief, to appoint a third party as director of dmarcian Europe with a decisive vote, who is independently authorized to represent dmarcian Europe. It will also be the duty of such director to try to obtain clarity as to the question of where the intellectual property rights to the software and software applications developed by dmarcian Europe (and dmarcian Bulgaria) lie, or at least to make sufficiently clear agreements with dmarcian, Inc. about this and to record these. The Enterprise Court also sees reason to transfer the shares in dmarcian Europe - with the exception of one share held by each of the shareholders - in trust to an administrator to be appointed by it.

3.6     The duty of the director to be appointed will also be to try to reach an amicable settlement between the parties.

3.7     The Enterprise Court sees no reason (as yet) for giving other immediate relief, such as suspending TDX as director of dmarcian Europe.

3.8     The Enterprise Court will order dmarcian Europe to pay the costs of the investigation and the director and administrator to be appointed.

3.9     The Enterprise Court will, for the time being, defer the appointment of an investigator so that it can be seen whether a solution to the dispute can already be achieved through the immediate relief to be given. Any of the parties or the director or administrator appointed by the Enterprise Court may at any time request the Enterprise Court to appoint the investigator.

3.10    The Enterprise Court will not immediately determine the maximum amount that the investigation may cost. After the investigator has been appointed, the Enterprise Court will ask the investigator to draw up a plan of action and an estimate of the costs of the investigation within six weeks and to send these to the Enterprise Court. The Enterprise Court will give the parties the opportunity to comment on that budget and then determine the maximum amount that the investigation may cost.

3.11    Finally, the Enterprise Court deems there to be grounds present to set off the costs of the proceedings between the appearing parties as stated below.

**4.      The decision**

The Enterprise Court:

orders an investigation into the policy and course of affairs of dmarcian Europe B.V. over the period from January 1, 2016 to August 20, 2020 as described in paragraph 3.4 of this decision;

orders that the costs of the investigation will be borne by dmarcian Europe B.V. and that it will provide security for the payment thereof to the satisfaction of the investigator before the commencement of his work;

stays, in connection with the provisions of paragraph 3.10 above, the determination of the maximum amount that the investigation may cost;

appoints Mr A.J. Wolfs as examining justice, as referred to in Section 2:350(4) of the Dutch Civil Code;

appoints by way of an immediate relief with immediate effect and for the time being for the duration of the proceedings - as far as necessary in deviation from the articles of association - a person to be designated and to be made known to the parties as director of dmarcian Europe B.V. with a decisive vote and rules that this director is independently authorized to represent dmarcian Europe B.V;

rules, for the time being for the duration of the proceedings, that the shares in dmarcian Europe B.V. - with the exception of one share held by each of the shareholders - are transferred in trust to a person to be designated and to be made known to the parties with effect from today;

rules that the salary and expenses of the director and the administrator of shares will be borne by dmarcian Europe B.V. and rules that dmarcian Europe B.V. will provide security for the payment thereof to the satisfaction of the director and the administrator before the commencement of their work;

sets off the costs of these proceedings between the appearing parties in the sense that each party bears their own costs;

declares this decision to be provisionally enforceable; dismisses all other applications.

This decision was given by A.J. Wolfs, chair, A.W.H. Vink and M.P. Nieuwe Weme, justices, and C. Smits-Nusteling RC and J.S.T. Tiemstra RA, members, in the presence of F.L.A. Straathof, clerk of the court, and pronounced in public on September 7, 2020.

[signature]                                                                                            [signature]

# beschikking

**GERECHTSHOF AMSTERDAM**
**ONDERNEMINGSKAMER**

zaaknummer: 200.281.257/01 OK

beschikking van de Ondernemingskamer van 10 september 2020

inzake


de besloten vennootschap met beperkte aansprakelijkheid
**THE DIGITAL XPEDITION (TDX) HOLDING B.V.**,
gevestigd te Dordrecht,
**VERZOEKSTER**,
advocaten: **mr. M.C. Luiten**, **mr. V.R.M. Appelman** en **mr. L. Geldof**, allen
kantoorhoudende te Rotterdam,


t e g e n


de besloten vennootschap met beperkte aansprakelijkheid
**DMARCIAN EUROPE B.V.**,
gevestigd te Dordrecht,
**VERWEERSTER**,
advocaten: **mr. A. van Bunge** en **mr. J. Kloots**, beiden kantoorhoudende te Rotterdam,


e n t e g e n


**Timothy George DRAEGEN**,
wonende te Brevard, North Carolina, Verenigde Staten van Amerika,
**BELANGHEBBENDE**,
advocaten: **mr. F. Henke** en **mr. P.A. Josephus Jitta**, kantoorhoudende te Amsterdam
respectievelijk Den Haag.

## 1.    Het verloop van het geding

1.1    Verweerster wordt hierna aangeduid met dmarcian Europe.

1.2    Voor het verloop van het geding verwijst de Ondernemingskamer naar haar beschikking van 7 september 2020.

1.3    Bij die beschikking heeft de Ondernemingskamer een onderzoek bevolen naar het beleid en de gang van zaken van dmarcian Europe over de periode vanaf 1 januari 2016 tot 20 augustus 2020 zoals omschreven in rechtsoverweging 3.4 van die beschikking en is bij wijze van onmiddellijke voorziening met onmiddellijke ingang en vooralsnog voor de duur van het geding – voor zover nodig in afwijking van de statuten – een nader door de Ondernemingskamer aan te wijzen en aan partijen bekend te maken persoon benoemd tot bestuurder van dmarcian Europe met doorslaggevende stem en bepaald dat deze bestuurder zelfstandig bevoegd is dmarcian Europe te vertegenwoordigen en is bepaald vooralsnog voor de duur van het geding dat de aandelen in dmarcian Europe – met uitzondering van één aandeel van ieder van de aandeelhouders – ten titel van beheer zijn overgedragen aan een nader door de Ondernemingskamer aan te wijzen en aan partijen bekend te maken persoon.

## 2.    De gronden van de beslissing

De Ondernemingskamer zal thans de hierna te vermelden personen aanwijzen als bestuurder en beheerder van aandelen, een en ander zoals bedoeld in de beschikking van 7 september 2020.

## 3.    De beslissing

De Ondernemingskamer:

wijst aan als bestuurder zoals bedoeld in de beschikking van 7 september 2020 in deze zaak: mr. H.J.M. Harmeling te Heemstede;

wijst aan als beheerder van aandelen zoals bedoeld in de beschikking van 7 september 2020 in deze zaak: mr. Y. Borrius te Amsterdam;

verklaart deze beschikking uitvoerbaar bij voorraad.


Deze beschikking is gegeven door mr. A.J. Wolfs, voorzitter, mr. A.W.H. Vink en mr. M.P. Nieuwe Weme, raadsheren, en drs. C. Smits-Nusteling RC en drs. J.S.T. Tiemstra RA, raden, in tegenwoordigheid van mr. F.L.A. Straathof, griffier, en in het openbaar uitgesproken op 10 september 2020.

# decision

**AMSTERDAM COURT OF APPEAL**
**ENTERPRISE COURT**

case number: 200.281.257/01 OK

decision of the Enterprise Court dated September 10, 2020

in the case of

the private company with limited liability
**THE DIGITAL XPEDITION (TDX) HOLDING B.V.,**
with its registered office in Dordrecht,
**APPLICANT,**
lawyers: **M.C. Luiten, V.R.M. Appelman** and **L. Geldof**, all with offices in Rotterdam,

versus

the private company with limited liability
**DMARCIAN EUROPE B.V.,**
with its registered office in Dordrecht,
**RESPONDENT**,
lawyers: **A. van Bunge** and **J. Kloots**, both with offices in Rotterdam,

and versus

**Timothy George DRAEGEN,**
residing in Brevard, North Carolina, United States of America,
**INTERESTED PARTY,**
lawyers: **F. Henke** and **P.A. Josephus Jitta**, with offices in Amsterdam and The Hague respectively.

**1.      The course of the proceedings**

1.1     The respondent will be referred to below as dmarcian Europe.

1.2     For the course of the proceedings, the Enterprise Court refers to its decision of September 7, 2020.

1.3     In that decision , the Enterprise Court ordered an investigation into the policy and course of affairs of dmarcian Europe over the period from January 1, 2016 to August 20, 2020 as described in legal ground 3.4 of that decision and by way of immediate relief with immediate effect and for the time being for the duration of the proceedings - to the extent necessary in deviation from the articles of association - a person to be designated by the Enterprise Court and to be made known to the parties was appointed as director of dmarcian Europe with a decisive vote and it was ruled that this director is independently authorized to represent dmarcian Europe and it was ruled for the time being for the duration of the proceedings that the shares in dmarcian Europe - with the exception of one share of each of the shareholders - have been transferred in trust to a person to be appointed by the Enterprise Court and to be made known to the parties.

**2.      The grounds for the decision**

The Enterprise Court will now appoint the persons listed below as director and administrator of shares, all as referred to in the order of September 7, 2020.

**3.      The decision**

The Enterprise Court:

appoints as director as referred to in the decision of September 7, 2020 in this case: H.J.M. Harmeling in Heemstede;

appoints as administrator of shares as referred to in the decision of September 7, 2020 in this case: Y. Borrius in Amsterdam;

declares the decision to be provisionally enforceable.

This decision was given by A.J. Wolfs, chair, A.W.H. Vink and M.P. Nieuwe Weme, justices, and C. Smits-Nusteling RC and J.S.T. Tiemstra RA, members, in the presence of F.L.A. Straathof, clerk of the court, and pronounced in public on September 10, 2020.

[signature]                                                                                                          [signature]