# Attachment 4

Exhibit C to Declaration of Hub J. Harmeling



# Message from Court-appointed director of dmarcian Europe BV

March 19, 2021

Dear customers of dmarcian Europe BV,

On September 10, 2020, the Enterprise Chamber of the Amsterdam Appellate Court appointed me as an independent director in dmarcian Europe BV. My responsibility is to control the actions of this company and safeguard its assets. See https://uitspraken.rechtspraak.nl/inziendocument?id=ECLI:NL:GHAMS:2020:2537.

For that purpose, the court gave me the mission to act independently from the interests of its shareholders TDX and Tim Draegen, so that is what I do. Tim Draegen is the majority shareholder in dmarcian Europe BV (Dutch company), as well as in control of dmarcian, Inc. (United States company).

Recently I saw emails and messages on internet fora that contain disinformation, incorrect assumptions and accusations regarding actions taken by dmarcian Europe, i.e. taken under my control, as court-appointed director.

I have no illusions about my chances to counter fake news. However, in view of the mission given to me by the Amsterdam Appellate Court and in order to try and provide comfort to our customers in our territory (Europe, Russia and Africa), I must inform you properly of the relevant facts, which I will summarise. I regret that even such a summary may take more reading time than I would have preferred.

> 1. The Amsterdam Appellate Court established on September 7, 2020 that (see https://uitspraken.rechtspraak.nl/inziendocument?id=ECLI:NL:GHAMS:2020:2536):
> – **Agreement**; there is an agreement that dmarcian Europe benefits from a perpetual license to distribute dmarcian software and use the dmarcian brand in that regard in its (exclusive) territory.
> – **Investigator**; Detailed conditions of this agreement e.g. regarding rights to software developed by either party are unclear or absent. The court ordered that this must be investigated. Such an order was as requested by both Tim Draegen and TDX. Presently the investigator is working hard to produce his report by the end of April.
>
> 2. Tim Draegen and dmarcian, Inc. decided not to wait for the outcome and disconnected the company in Europe from all of its systems that dmarcian, Inc. had technical and operational access to.
>
> 3. Under the European general data protection rules, GDPR, and under the contracts dmarcian Europe BV has with its subscribed customers, this disconnection in itself and partly losing control of our customer data, qualified as a data breach, not to mention that dmarcian, Inc., without proper authorisation, seemed to start using these data for its own commercial use. Following expert legal advice, I instructed the company to notify our customers and the Dutch Data Protection Authority. I did so, despite the potentially damaging effects on brand- and business reputation.

4. The actions taken against dmarcian Europe BV were not in line with the actions ordered by the Appellate Court. I was forced to take legal action against our own majority shareholder Tim Draegen and dmarcian, Inc., which is under his control, to get an order to stop these actions. On the same day of the urgent court hearing, the Interim Relief judge of the Rotterdam district court ordered both Tim Draegen and his US company dmarcian, Inc. to continue and respect the cooperation, license and distribution agreement as respected since January 2016 and to provide us access to all systems within 24 hours.

Despite the clarity and the urgent orders by the court both Tim Draegen and dmarcian, Inc., in contempt of this court, refused to take action to comply with these orders.

In order to be able to benefit from the continued license and distribution agreement as confirmed by the Rotterdam court, dmarcian Europe launched its own SaaS platform, exclusively used for the territory agreed with dmarcian, Inc. It features the familiar dmarcian software, which was jointly developed and consequently owned by both companies. We did not and still do not interfere in any operational way with the global use by dmarcian, Inc. of our jointly owned software, except of course for our exclusive territory. I believe it is in the interest of all dmarcian customers and indeed of the two companies to just reserve their rights, continue their business and abide by the conclusions of the investigation report and/or a final court decision, clarifying the IP situation, which both parties do not seem to have presently arranged in a sufficiently clear way. I believe this approach makes more sense than engaging in a tech-war and bothering our customers with our mutual concerns.

I am aware this is much to read and maybe to digest. In case you would wish to speak to me about this, you do not have to hesitate to contact me at hub@dmarcadvisor.com (all email *firstname*@dmarcian.com for employees of dmarcian Europe BV has been fully interrupted recently by dmarcian, Inc.).

For good order's sake, I confirm that I am confident that dmarcian Europe BV operates its business and its service to customers in accordance with all applicable legal requirements.

Yours sincerely,
Hub. J. Harmeling
Court-appointed director of dmarcian Europe BV

Copyright © Dmarcian Europe BV