# Attachment 5

Ex. 2 - Declaration of Alfred Meijboom

# Declaration of Alfred Meijboom

Alfred Meijboom, declares as follows pursuant to 28 U.S.C. § 1746:

## Background

1.      I am a resident of The Netherlands, am over eighteen years of age, and am competent to make this Declaration. I have personal knowledge of the matters stated herein.

2.      I am an Advocaat / Attorney-at-law with the Amsterdam law firm of Kennedy Van der Laan. Together with my associates Mr. Michael Bacon and Ms. Veerle van Druenen I represent dmarcian Europe B.V. ("dBV") in a proceeding in the Court of Rotterdam more fully described below.

## Rotterdam Court Proceeding

3.      On January 29, 2021, dBV initiated a proceeding in the Court of Rotterdam against dmarcian, Inc. ("dInc") and its principal, Timothy George Draegen ("Draegen"). The proceeding was instituted on behalf of dBV by its court-appointed independent director, Hub J. Harmeling.

4.      The proceeding was initiated because dInc had blocked dBV's access to the computer systems as of Friday, January 22, 2021, at around 4 pm Central European Time, so that dBV no longer had access to its customers data. dBV also feared that the blockade could extend to the continued and undisturbed use of the dmarcian software licensed to its customers. Further, dInc announced that it would terminate the cooperation between dInc and dBV with immediate effect as of February 1, 2021. This blockade of access coincided with a letter of dInc's Dutch counsel, Mr. Timo Jansen, sent to dBV on January 22, 2021, which announced that dInc would terminate the cooperation between dInc and dBV with immediate effect as of February 1, 2021, if and to the extent that dBV would not agree to sign two documents attached to Mr. Jansen letter, one called "Settlement Agreement" and one called "Distribution Agreement", before February 1, 2021 at 5 pm Central European Time.

5.      The "Settlement Agreement" contained an assignment of all intellectual property

1

developed by or on behalf of dBV since its inception, with no consideration in return. The "Distribution Agreement" contained a non-exclusive, territorial, limited, terminable, right and license to market, offer, distribute, and resell dInc technology, software, DMARC SaaS platform, maintenance services, deployment services, and second level email support services to users in the European Union, in return for payment by dBV to dInc of 80% of its net revenue received from dBV's customers. Accepting such terms would mean imminent bankruptcy of dBV so that it would not be able to sign the attached documents. It is saying a lot that even Mr. Timo Jansen, in his response to a direct question of the judge in a court hearing before the court in Haarlem, the Netherlands, in a matter between dBV as plaintiff and Messrs. A.A. Fernandes and B.P. van der Laan (who have been acting for dInc as European sales managers in violation of the February 1, 2021 ruling), called the arrangements he wanted to impose on dBV on behalf of dInc "strangulation contracts."

6. Furthermore, the blockade of dBV's access to its customers' data, which included personal data as defined by the European Union General Data Protection Regulation ("GDPR"), meant that dInc committed a so called "data breach," which is a violation of Article 5 (1)(b) of the GDPR and Article 11.7 of the Dutch Telecommunications Act, which dBV's was required to report to the Dutch Data Protection Authority and dBV's customers.

7. As a result of the immediate access blockade as of January 22, 2021, which dInc refused to voluntarily lift when repeatedly requested to so, and the impending conditional termination of dBV's exclusive and perpetual license and distribution agreement for Europe, Africa and the Russian Federation, dBV had to obtain injunctive relief on the shortest possible term so that dInc would be ordered to lift the blockade and not to terminate the current license and distribution agreement with dBV. Article 6 of the Dutch Code of Civil Procedure ("Wetboek van Burgerlijke Rechtsvordering") provides in my translation:

"The Dutch court also has jurisdiction in cases concerning:

2

a. contractual obligations, if the obligation on which the claim is based has been performed or is to be performed in the Netherlands"

8. As the agreement between dInc and dBV is a distribution agreement, and the distribution is performed is performed by dBV in the Netherlands, according to Dutch procedural law the Dutch courts have jurisdiction to hear the case against dInc. In the procedure, the court needs to establish its jurisdiction independently, and in its decision of February 1, 2021, the interim relief judge of the Court of Rotterdam found that it had jurisdiction based on the aforementioned Article 6 sub a of the Dutch Code of Civil Procedure. (A true and correct copy of the court decision of February 1, 2021, together with an English translation, is attached to the Declaration of Hub J. Harmeling, dBV's independent, court-appointed director.)

9. The Dutch courts also have jurisdiction to hear the case against Draegen. Article 6 sub (e) of the Dutch Code of Civil Procedure provides in my translation:

"The Dutch court also has jurisdiction in cases concerning:

e. obligations in matters relating to torts, if the harmful event has occurred or may occur in the Netherlands"

10. According to Dutch case law and case law of the European Union Court of Justice, dBV suffered damage in the Netherlands as a result of Draegen's acting so that the Dutch courts have jurisdiction. In its decision of February 1, 2021, the interim relief judge of the Court of Rotterdam found that it also had jurisdiction based on the aforementioned Article 6 sub e of the Dutch Code of Civil Procedure.

11. According to the Dutch procedure to obtain injunctive relief, we requested the Court of Rotterdam to set a date for a hearing on January 27, 2021, and to allow accelerated preliminary relief proceedings. Pursuant to Article 117 of the Dutch Code of Civil Procedure the preliminary relief judge accordingly allowed dBV to summon dInc and Draegen to appear in court without observing the minimum term of three months which article 115(2) Dutch Code of

3

Civil Procedure imposes when, put briefly, a defendant outside Europe is summoned. In accordance with the conditions set by the judge, dBV informed dInc, Draegen, as well as their Dutch lawyers, of the day and time of the hearing by email on January 28, 2021, and sent them a copy of the draft summons in Dutch and English at the same time. On January 29, 2021, in according with Dutch procedural law, a bailiff (or process server) on dBV's request summoned dInc and Draegen by service of a copy of the summons in Dutch with a translation in English on the office of the public prosecutor in Rotterdam with the request to service the judicial documents on dInc and Draegen pursuant to Articles 3 to 6 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of November 15, 1965 ("The Hague Treaty"). The bailiff also sent a copy of the summons in Dutch and English by email to the known and operational email addresses of Draegen as dInc's CEO (tim@dmarcian.com), Draegen as individual (tim@eudaemon.net), dInc's then COO Shannon Draegen (shannon@dmarcian.com), dInc's Dutch counsel Timo Jansen (t.jansen@lexence.com) and Draegen's Dutch counsel Paul Josphus Jitta and Frederike Henke (p.josephusjitta@burenlegal.com and f.henke@burenlegal.com). The bailiff did not report that either of the emails bounced. (A true and correct copy of the service documents which we received from the bailiff, and which contain the summons in Dutch and English, is attached hereto as Exhibit A.)

12. Despite the service of the summons on dInc and Draegen in accordance with Dutch procedural law, they failed to appear at the Rotterdam Court hearing on February 1, 2021. At the hearing, the judge checked if the formalities were followed and agreed to issue a decision by the end of that day.

13. In her decision of February 1, 2021, the judge expressly determined that dInc and Draegen had been properly summoned to appear in court (cf. paragraphs 2.5 to 2.8 of the ruling). The judge also found that the court has jurisdiction over dInc and Draegen with respect to the

claims (cf. paragraphs 2.9 of the ruling). In case of a default decision Article 139 of the Code of Civil Procedure provides that the judge shall grant the claim "unless it appears to him to be unlawful or unfounded." The judge in the Rotterdam proceeding did not find dBV's claims to be unlawful or unfounded and ordered dInc and Draegen, in brief, not to terminate the existing license and distribution agreement between dInc and dBV and lift the access blockade within 24 hours. The full order is set forth in paragraphs 3.2 and further of the ruling. In case dInc or Draegen would violate the court's ruling, the ruling imposed a penalty on each of them of 20,000 euro for each day or part of a day that they fail to comply with a maximum of 500,000 euro. Such penalties are directly enforceable by dBV, without intervention of the court required.

14. After we obtained the Rotterdam decision on February 1, 2021, we discovered a manifest clerical error in the operative part of the judgment, which we asked the judge to correct. This resulted in an amendment decision of February 2, 2021.

15. We notified dInc, Draegen and their Dutch counsel of the Rotterdam decision of February 1 and 2, 2021 on February, 1 and February 2, 2021, respectively, by email. None of the email addresses we used bounced. (A true and correct copy of such emails is attached hereto as Exhibit B.) The bailiff served the Rotterdam Court decision of February 1, 2021 and the amendment decision of February 2, 2021 on dInc and Draegen on February 3, 2021. (A true and correct copy of the service documents, which include a summons to comply with the court orders and the judgements in Dutch and English translation, which we received from the bailiff is attached hereto as Exhibit C.) Despite the Rotterdam ruling, dInc did not lift the access blockade and actually even further blocked access for dBV's staff to its customer data, and it informed customers in Europe dBV is no longer authorized to license dmarcian software. As these acts violate the Rotterdam ruling, and Draegen contributed to such violations, and such violations lasted more than 25 days, dInc and Draegen each forfeited court imposed penalties of 500,000 euro.

5

16. Pursuant to Article 143(2) Code of Civil Procedure, a foreign defendant in a default decision may oppose the default decision within eight weeks following the personal service of the decision or an act showing that such defendant has knowledge of the decision. Both Inc. and Draegen filed opposition proceedings against dBV before the court of Rotterdam on April 6, 2021. The same judge who decided the default decision on February 1, 2021 shall hear the opposition during a hearing which is scheduled for May 10, 2021. In their respective opposition summons dInc and Draegen predominantly claim that the court of Rotterdam lacks jurisdiction for which reason dBV's claims should be denied after all.

17. The Rotterdam opposition proceeding only involves an oral hearing on May 10, 2021 and parties need to submit written evidence they wish to rely on at least 24 hours before the hearing. In the meantime, although the opposition procedure re-opens the debate on the merits, the Rotterdam ruling of February 1, 2021 remains in force as it was declared having immediate effect.

18. Like the Rotterdam procedure of February 1, 2021, the opposition procedure are also an interim relief proceeding. In such proceeding judges usually render a written decision two weeks after the hearing. Consequently, I expect the judge to hand down a written decision on or around May 24, 2021. Such decision can hold that the opposition is not admissible if dInc and/or Draegen summoned dBV too late, or that the opposition is unsuccessful, in which case the default decision is upheld, likely with additional arguments. If the opposition is successful, the judge may find that the Dutch court has no jurisdiction to hear the case. However, I do not expect such outcome because the judge already considered the court's jurisdiction on the basis of the facts which were not substantially challenged.

## Additional Dutch Law Issues

19. I have reviewed the First Amended Complaint filed by dInc in federal court in North Carolina and have a general understanding of the fourteen claims for relief asserted in that

6

action. As a basic matter, those claims, *e.g.*, claims for breach of contract, claimed intellectual property law infringements, and various business torts, etc., are of the type generally addressed by the Dutch courts. As such, they can be asserted by dInc in the Dutch courts.

20. In the Dutch court, any Dutch witnesses would be subject to mandatory process for their appearance as witnesses in the proceeding. In addition, the cooperation of any other witnesses resident in the Europe Union, *e.g.*, dBV's subsidiary's Bulgarian software developers and dBV's customers, could be obtained by virtue of European Union Council Regulation (EC) No. 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters. This Regulation is European Union legislation in the field of judicial cooperation with has direct effect and which generally provides for the taking of evidence in civil or commercial matters from witnesses within the European Union.

21. Based on my experience in the Dutch courts, my expectation is that such claims – once asserted in the Dutch courts – would be resolved within 18 to 24 months in proceedings on the merits.

Under the terms of 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct. Executed on this 19th day of April, 2021.

_____
ALFRED MEIJBOOM