# Attachment 15

Exhibit F to Declaration of Martijn Groeneweg

**Van:** **Tim Draegen** tim@dmarcian.com  📎
**Onderwerp:** ongoing meetings with Align Global Consulting
**Datum:** 6 augustus 2018 om 23:53
**Aan:** Martijn Groeneweg martijn@dmarcian.com, Shannon C. Draegen shannon@dmarcian.com

After much searching, I finally found a savvy attorney to inform global structure. Sean King is the fellow, comes through an advisor's reference of a reference.

I've attached the initial "Phase 1" report.. based on initial round of conversations. I took this PDF, printed it out and marked it up, then had a meeting earlier today to narrow down what is wanted.

There are 2 main parts to consider:

1. Where is the global holding company located?

2. Where is global IP located? (intellectual property -- in dmarcian's case, source code)

Page 16 has the ideal global holding company setup, IMO. Why EU-based holding company? The US and UK aren't exactly stable in terms of corporate law. Also, the EU will be a high-growth area (especially so if/when "Safe Email Initiatives" come online) and so it makes sense to align corporate structure with business operations.

About location of IP: since EU has been licensing tech, it is likely impossible to home IP into the EU by default.. even though EU is paying to continue to develop (as US is also paying developers - so it's sort of a mixed issue). This means that some sort of asset transfer has to be made (reflected in IRS form 926) along with a proper valuation of said IP.

So a Dutch holding company + transfer of IP looks like the right vehicle for global structure. I'll meet again in September with Sean King. Between now and then, let's connect to make sure this is right direction.

=- Tim



dmarcian.Phase
I Repor...18.pdf



DIFFERENT • STRATEGIC • PROVEN

**dmarcian**

Global Structuring Planning

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION
© Align Global Consulting 2018

# Contents

- Background, Objectives, and Business Purpose

- Holding Company Planning (Overview)

- Specific Planning Recommendations

- Final Considerations



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 4 of 25

# Background, Objectives and Business Purpose



3

# Background

- Incorporated in Delaware in 2014 by the primary author of the DMARC specification, dmarcian is dedicated to upgrading the entire world's email by making DMARC accessible to all. dmarcian has global operations and staff in five different countries. From small governmental organizations to Fortune 500 companies with over 45.000 employees, dmarcian has an international track record for helping organizations across the globe and of all sizes successfully deploy DMARC. dmarcian is fully self-funded, so our focus is on our clients, not an investor group.

- dmarcian brings together thousands of senders, vendors, and operators in a common effort to build DMARC into the email ecosystem. Our customers range from banks, top internet properties, governments, marketing agencies, telecoms and commercial enterprises of all sizes. dmarcian users enjoy access to expert support, powerful tools, human friendly articles & videos, and a growing global network of DMARC deployment partners.

- A schematic depiction of the current structure appears on the following page:



# Simplified Current Structure*



* Note: additional factual discussion as to Swenberg and Option equity interest is necessary, relative to Swenberg's separation from the company, as well as vesting status for option holders. Moreover, current equity status and IP ownership rights of Dutch BV to be further discussed.



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 7 of 25

# Challenges Inherent in Current Structure

- Net income generally taxed in the U.S. at relatively high effective tax rates.
  - Note U.S. corp rate reduced to 21% as of 2018.
  - But, double taxation at shareholder level to be considered.

- No indefinite deferral of income earned abroad if that income does not remain overseas.

- Fundamental strategy may be to shift taxable non-US business activity to a jurisdiction with a more favorable tax environment (Holdco structuring).
  - This structuring could reduce global effective tax rate for the structure.
  - Conversely, the reduced U.S. corp tax rate, coupled with new U.S. tax incentives relative to IP-related income (FDII regime) may present incentive to recognize income at the level of a U.S. corporate entity on a current-year basis.

- All structuring discussed herein below should consider transferring existing IP ownership to new Holdco in a tax-efficient manner.
  - But, subject to section 367(d) "toll charge" limitations (further discussed herein below).
    - NOL availability (unlikely – to be confirmed).
    - IP valuation.
    - Aforementioned new U.S. FDII incentive.



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 8 of 25

# Objectives

- Goals that the company may wish to accomplish in the course of restructuring may include the following:
  - Create a central holding entity to amalgamate equity positions (and distributions) of all shareholders.
  - Simplify visibly around ownership, control, management and accounting.
  - Create a legal structure that reflects the management structure:
    - global corporate management (developers, global marketing, c-suite)
    - local business units (local marketing, local sales, local support)
  - Clarify IP ownership and provide a platform for efficiently deploying IP worldwide.
  - Provide a platform for employee ownership, as necessary.
  - Cash redeployment/treasury efficiency.
  - Tax efficiency.
  - Provide a platform for efficient exit, as necessary.



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 9 of 25

# Business Purpose

Based upon the company's current international sales activity, as well as its plans for future growth outside of the United States, we believe that dmarcian has a viable non-tax business purpose for engaging in the structuring that is further discussed in this report. Specifically, the benefits that the company can anticipate from the proposed structuring include, but are not limited to: the eventual consolidation of foreign subsidiaries/operating companies/joint ventures; reduction in foreign withholding taxes; enhanced ability to enter into new markets; improved risk management; enhanced cash management and redeployment; and the creation of a platform for future business integration and growth.

This prudent structuring will also fund the development of new products and will result in a greater return to the shareholders. Essentially, the structuring described herein will allow for dmarcian to invest prudently today for the protection and development of tomorrow.



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 10 of 25

# Holding Company Planning, generally



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 11 of 25

# Components of an Integrated Global Structure

| KEY GOALS & OBJECTIVES – THE "FOUR PILLARS" | |
|---|---|
| • Tax Management<br>   - U.S & Foreign Tax Minimization<br>   - IP Migration<br>   - Tax-Efficient Internal Debt<br>   - In-Country / Jurisdictional Tax Planning<br>   - VAT registration/compliance<br>• Tax Attribute Management<br>   - Optimize Foreign Tax Credit<br>   - Valuation | • Treasury Management<br>   • Efficient Cash Redeployment<br>   • Efficient Offshore Cash Management<br>   • Manage Deferral Positions<br>   • Tax Efficient Repatriation of Offshore Cash<br>• Structure Management<br>   • Tax Efficient Acquisitions<br>   • Tax Efficient Dispositions |



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 12 of 25

# Selection of the Holding Company Jurisdiction and Structure

- In general, the choice of holding company jurisdiction and structure depends on both quantitative factors and non-quantitative factors (tax and non-tax), including personal experience, preference, and alignment with business operations.

- The primary considerations may include expediency of the decision making process, prior planning, ease of expanding / unwinding the structure, and business purpose.

- Cash flow / treasury needs of the shareholders must be carefully considered and generally are the most significant drivers.

- More than one jurisdiction may play a key role in creating an optimal legal and tax structure.



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 13 of 25

# Holding Company Jurisdiction "Wish List"

- Sound standing in the international business community.

- Geographically proximate to the company's various locations or target markets.

- Tried and tested as a holding company location.

- Efficient from a tax and treasury perspective.

- An attractive tax regime for holding and financing activities.

- A broad dividend and capital gain exemption regime.

- Lack of CFC and/or anti-tax haven type legislation.

- Lack of thin capitalization rules or favorable debt / equity ratio.

- Flexible and/or reliable with respect to tax ruling policy.

- Have an attractive treaty network / low or zero statutory withholding tax rates.

- An attractive tax regime for IP / royalty activities.



# Basic Example: Holdco



**GENERAL BENEFITS**

- Full exemption on incoming dividends paid from Local OpCos to Holdco.

- Zero or reduced withholding tax on dividends paid by Local OpCos to Holdco.

- Zero withholding tax on dividends paid by Holdco to shareholders.

- Capital gains exemption upon sale by Holdco of interest in Local OpCo.

- Low rate of taxation and zero or reduced withholding on receipt of direct revenue from customers.



Case 1:21-cv-00067-MR    Document 26-15    Filed 04/19/21    Page 15 of 25

# Specific Planning Recommendations



14

# US Holdco



**Shareholders**

**US Holdco**

**Local OpCos**

**Existing Dutch BV**

**Existing dmarcian US**



**CONSIDERATIONS**

- New US holding company ("US Holdco") is formed in one of the fifty US states.

- Shareholders of existing US and Dutch entities contribute their shares of their respective entities to the new US Holdco in exchange for shares in US Holdco.

- In the future, local operating companies in various jurisdictions (and across various business lines) can be formed as wholly-owned subsidiaries of US Holdco. They would be subject to local taxation.

- Pursuant to new US participation exemption (a so-called 100% "dividends received deduction"), dividends received by US Holdco from Dutch BV or other non-US operating companies shall be exempt from US taxation.

- Intellectual Property ("IP") rights to be owned in US.
  - Pursuant to new US FDII regime, the anticipated effective US federal tax rate on income derived from the exploitation of IP should be approximately 13.1%.

- US Holdco as top-tier entity may be more attractive to US investors if capital raise or exit events should occur.

# Dutch Holdco



**CONSIDERATIONS**

▪ New Dutch entity ("Dutch Holdco") is formed in the Netherlands.

▪ Shareholders of existing US and Dutch entities contribute their shares of their respective entities to the new Dutch Holdco in exchange for shares in Dutch Holdco.

▪ In the future, local operating companies in various jurisdictions (and across various business lines) can be formed as wholly-owned subsidiaries of Dutch Holdco.

▪ Income distributed by local opcos to Dutch Holdco should be exempt from Dutch corporate taxation per Dutch participation exemption regime.

▪ Income is deferred from US taxation until formally repatriated to US shareholders.

• And may be exempt from US taxation at that time if distributed to a US corporate shareholder. Otherwise, individual US shareholders should obtain reduced qualified dividend treatment.

▪ Deferred cash on hand can be utilized to fund future non-U.S. expansion activity.

16



# UK Holdco



**CONSIDERATIONS**

▪ Same benefits as those set forth above with respect to a Dutch Holdco, however, post-Brexit, the UK may be a more attractive jurisdiction from the standpoint that entities established in the UK will not be restricted by certain onerous EU regulations, including higher VAT rates and increased VAT compliance obligations.

▪ IP would be registered/owned by UK Holdco:
  • A 10% tax rate is available under the UK Patent Box regime for income related to IP "developed by the group."

▪ Note however that the new US GILTI regime would apply to income earned by UK Holdco, thereby yielding an effective tax rate of approximately 15%.

▪ Deferred cash on hand can be utilized to fund future non-U.S. expansion activity.

▪ Income can be deferred at the level of UK Holdco without being included in U.S. tax return.

▪ Zero withholding tax when UK Holdco pays a dividend to its shareholders.



# Dutch or UK Holdco with Swiss Branch



**CONSIDERATIONS**

▪ Identical considerations to those of the previous two structures discussed immediately above, but this version layers into the structure a branch office in Switzerland in the event that we could not obtain so-called "IP Box" beneficial rate in either the UK or the Netherlands.

▪ Doing so would reduce the effective rate of the Dutch or UK structure by 5%-8% due to the ability to allocate some of Dutch or UKCo's revenue to its Swiss branch.

▪ The Swiss branch office would also provide a physical location on the continent to house business development (or other) personnel in a location that is more geographically proximate to key relationships or target markets.

▪ However, the establishment of a Swiss branch does require an actual physical location in one of the Swiss Cantons (preferably Zug or Lucerne). This would increase the cost of establishing and maintaining the structure.

  • Consideration could be given to layering on the Swiss branch at a later time.



18

# Final Considerations



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 21 of 25

# Potential Benefit on Exit

**TARGET DOMICILED IN U.S.**

| Buyer | Target | Ann. Date | Transaction Value | Transaction Value / Revenue | Transaction Value / EBITDA |
|---|---|---|---|---|---|
| Churchill Downs Inc. | Big Fish Games, Inc. | 11/12/2014 | 835 | 2.71x | 18.64x |
| Cream Capital Limited, Seren Capital Management Limited | Blinkx plc | 9/9/2014 | 6 | 0.03x | 0.3x |
| Acxiom Corporation | LiveRamp, Inc. | 5/14/2014 | 343 | 13.18x | 190.44x |
| Numerex Corp. | Omnilink Systems, Inc. | 4/29/2014 | 38 | 3.13x | 53.57x |
| GTCR, LLC | Vocus Inc. | 4/7/2014 | 481 | 2.58x | -533.98x |
| InterCloud Systems, Inc. | VaultLogix, LLC | 3/24/2014 | 44 | 3.67x | 9.78x |
| Prime Focus Technologies Private Limited | Sample Digital Holdings, LLC | 3/10/2014 | 12 | 3.12x | 12.48x |
| - | ChannelAdvisor Corporation | 4/11/2013 | 81 | 1.44x | -38.33x |
| Leonard Green & Partners, L.P., Davis Selected Advisers LP, Tencent Holdings Limited | Activision Blizzard, Inc. | 7/26/2013 | 2,339 | 0.47x | 1.25x |
| SGS Holdings LLC | Stream Global Services, Inc. | 3/6/2012 | 19 | 0.02x | 0.22x |
| Permira Advisers Ltd. | Renaissance Learning Inc. | 8/16/2011 | 485 | 3.57x | 12.25x |
| | | | **Median** | **2.7x** | **9.8x** |

U.S.-Based Structures

**TARGET DOMICILED IN TAX FAVORABLE JURISDICTION**

| Buyer | Target | Ann. Date | Transaction Value | Transaction Value / Revenue | Transaction Value / EBITDA |
|---|---|---|---|---|---|
| Activision Blizzard, Inc. | King Digital Entertainment plc | 11/3/2015 | 5,680 | 2.7x | 7.83x |
| - | YY Inc. | 7/9/2015 | 2,763 | 3.66x | 13.24x |
| Legend Capital, Prometheus Capital, DT01 Holding International Limited, V Capital | iDreamSky Technology Limited | 6/15/2015 | 492 | 2.59x | 144.68x |
| Dealertrack Technologies, Inc. | Incadea Plc | 12/18/2014 | 209 | 3.86x | 56.36x |
| Vista Equity Partners | Advanced Computer Software Group PLC | 11/25/2014 | 1,140 | 3.41x | 24.2x |
| Accesso Technology Group PLC | VisionOne Worldwide Ltd. | 11/10/2014 | 33 | 4.18x | 12.37x |
| Netsuite Inc | Bronto Software | 4/23/2015 | 87 | 3.85x | 11.47x |
| Vislink plc | Pebble Beach Systems Ltd. | 3/19/2014 | 25 | 2.74x | 11.21x |
| Scientific-Atlanta, LLC | NDS Group Holdings Limited | 3/15/2012 | 5,063 | 5.12x | 17.88x |
| | | | **Median** | **3.7x** | **13.2x** |

Tax-Advantaged Structures

37% Higher Median Revenue Multiple

35% Higher Median EBITDA Multiple



20

# Risk Factors

- Operational cost and complexity.

- Corporate governance fees in order to establish "substance."

- Timing considerations:
  - Economic benefits depend upon realizing both timing and scope of financial projections.
  - Cost of any IP transfer from U.S. will increase as more is added.



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 23 of 25

# Summary of Benefits / Next Steps

- Tax efficiency (reduced global effective tax rate).

- Long-term use and/or ease of exit, including the ability to develop new products (intellectual property) and hold IP in a separate legal entity that could be sold on a standalone basis.

- May allow deferral of income and for qualified dividend treatment upon repatriation of profits to U.S. shareholders.

- Creates a central holding entity to amalgamate equity positions.

- Simplifies ownership, control, accounting & management.

- Creates a legal structure that reflects the management structure at a corporate/global and opco/local level.

- Clarifies IP ownership.

- We will discuss the contents of this report with you in order to reach a definitive conclusion as to the structure to be implemented and the jurisdiction(s) to be utilized.



Case 1:21-cv-00067-MR   Document 26-15   Filed 04/19/21   Page 24 of 25



Sean M. King

sking@alignglobalconsulting.com

+1 919 757 4816

www.alignglobalconsulting.com

