IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO.: 1:21-CV-00067

| | |
|---|---|
| DMARCIAN, INC.<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DMARCIAN EUROPE BV<br><br>　　　Defendant. | PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

NOW COMES Plaintiff DMARCIAN, INC. (hereinafter, "dInc" or "dmarcian"), by and through its undersigned counsel, and submits this Brief in opposition to the Motion to Dismiss of Defendant DMARCIAN EUROPE BV (hereinafter, dBV). As demonstrated below, this Court's exercise of personal jurisdiction is constitutionally reasonable as dBV's contacts with dINC in North Carolina satisfy this state's long-arm statute and the Due Process Clause. Alternatively, federal long arm jurisdiction is warranted under Rule 4(k)(2). In addition, dBV has failed to justify the application of the doctrine of *forum non conveniens* as no adequate alternative venue exists for the resolution of the parties' dispute which requires a determination of ownership rights in intellectual property registered in the United States.

1

## STATEMENT OF THE CASE

Plaintiff filed its Complaint for copyright and trademark infringement and related state claims on March 12, 2021. (Doc. #1). On March 25, 2021, dInc submitted a motion for a temporary restraining order and preliminary injunction along with supporting materials which were later supplemented. (Doc. #6, 8, 9, 15-17) A verified Amended Complaint ("FAC") was filed on April 7, 2021. (Doc. #19). Following briefing by Defendant in opposition to the TRO (Doc. #11), by Order dated March 31, 2021 (Doc. #12), this Court preliminarily concluded that it has jurisdiction over dBV, but denied dInc's request for a TRO. On April 19, 2021, dBV filed a motion to dismiss based on personal jurisdiction and *forum non conveniens*. Oral argument was held on Plaintiff's motion for preliminary injunction and a decision is pending.

## STATEMENT OF FACTS

In 2013, Martin Groeneweg contacted Tim Draegen in North Carolina from the Netherlands to discuss a potential business relationship. (FAC, Doc. #19, ¶33; Doc. #9 at ¶ 6) Thereafter, they continued discussions over an extended period of time before entering into a business arrangement in 2016. *Id.,* at ¶9. For the next several years, dBV substantially collaborated

with dInc, a forum resident, in a long- term business relationship. (FAC, Doc. #19, ¶7, T. Draegen 2nd Supp. Dec., Doc. 30, ¶23) For example:

- Numerous dBV personnel attended biweekly meetings and monthly all-hands meetings addressing operational, marketing, billing, and administrative matters of importance to the parties' joint relationship. Those meetings were hosted in North Carolina and dBV personnel logged into those meetings to attend remotely. (Doc. 30, ¶¶24-29)

- As a representative of dBV, Mr. Groeneweg came to North Carolina in January of 2019 for a weeklong meeting and interacted with dInc's "marketing and sales personnel to align his priorities with dmarcian goals" and other joint business purposes. *Id.* at ¶31.

- The parties regularly communicated on various video and remote communication platforms to carry out their joint business. *Id.* at ¶¶26, 27, 29, 30.

- dInc sent daily updates to dBV detailing potential new customer information and providing dBV with leads for the purpose of servicing those customers as joint customers, enabling dBV to capitalize on them. *Id.* at ¶32; FAC, Doc. #19, ¶34(c)-(e).

- Customers referred by dInc to dBV first signed dInc's Terms of Service ("TOS") which included a North Carolina choice of law. All of dBV's

3

customers relationships were governed by North Carolina law at least until August of 2019 when dBV unilaterally instructed dmarcian personnel in North Carolina to change the webpage TOS to provide for Dutch law. Doc. #30, ¶¶3, 5-7.

- Customer Relationship Management ("CRM") data was maintained by dInc in North Carolina for joint use by both companies, although dBV made a copy which it stored in a location unknown to dInc. *Id.* at ¶8(c).

- dInc and dBV collaborated on customer service to service their joint customers. dBV generally only answered general customer support questions. It also made recommendations for additional services. More complex customer support questions had to be directed to dInc. dBV was reliant on dInc personnel in North Carolina to provide this additional support. *Id.* at ¶8(d).

- dInc personnel provided administrative support to dBV. *Id.* at ¶8(f).

- As dBV admits, during the parties' relationship dInc managed the source code repository, the website and the Software as a Service ("SaaS" platform). (Doc. #26, ¶2.12 & ¶3.14). dBV was reliant on dInc's code and did not create a separate program that could function independently from dInc's original code managed by dInc's North Carolina personnel

4

for the parties' joint benefit. (Doc. #30, ¶9, ¶19, ¶21; dBV Rotterdam Complaint, Doc. #17-5, ¶2.12).

- Websites in Europe used by dBV were directed back to dInc's website managed in North Carolina and did not operate as independent sites. (Doc. #8, ¶6).

- Once dBV began to participate in development work on the source code, all source code edits were saved on dInc's server in South Carolina and was managed by dInc employees in North Carolina. All edits made by Dutch and Bulgarian developers were overseen by dInc personnel including those in North Carolina, and all edits had to be approved by dInc before being implemented, often requiring flawed code to be fixed by North Carolina personnel. The edits made by the Bulgarian developers were generally small improvements to the internal implementation and functionality of the software. (Doc. #30, ¶¶9-18).

- dInc provided and paid for various servers (including US based servers) so that dBV's business could function. (Doc. #30, ¶22).

In short, dBV's entire business was supported and maintained by dInc's North Carolina personnel. (FAC, Doc. #19, ¶11). It was never contemplated that the services and facilities made available by dInc to dBV would be used outside of the parties' joint relationship. (Doc. #30, ¶20).

5

## QUESTIONS PRESENTED

**I.**     **Whether this Court may exercise jurisdiction over dBV.**

**II.**    **Alternatively, whether jurisdiction is appropriate under Federal Rule of Civil Procedure 4(k)(2).**

**III.**   **Whether dBV has failed to justify application of the doctrine of forum non conveniens.**

## STATEMENT OF LAW AND ARGUMENT

### I. THIS COURT MAY EXERCISE JURISDICTION OVER DEFENDANT.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (citation omitted).

Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge. Once raised, the plaintiff bears the burden of demonstrating personal jurisdiction and, when addressed on a pretrial motion without an evidentiary hearing, must make a prima facie showing of such jurisdiction. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir. 1993). The Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most

6

favorable inferences for the existence of jurisdiction. *Id.* If the existence of jurisdiction turns on disputed factual questions and a prima facie showing of personal jurisdiction has been made, the Court can proceed as if it has personal jurisdiction over the matter, although factual determinations to the contrary may be made at trial. *Public Impact, LLC. V. Boston Consulting Group, Inc.*, 117 F.Supp.3d 732, 736 (M.D.N.C. Aug. 3, 2015).

To assert personal jurisdiction over a nonresident defendant, jurisdiction must be authorized by the forum state's long-arm statute and the exercise of jurisdiction must comport with due process. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4 Cir. 2003) (citation omitted). Pursuant to Fed. R. Civ. P. 4(k)(1)(A), this Court looks to laws of the State of North Carolina in order to determine whether personal jurisdiction is established. North Carolina's long arm statute:

> is liberally construed to find personal jurisdiction over nonresident defendants to the full extent allowed by due process. Accordingly, . . . the question of statutory authorization collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process.

*Lulla v. Effective Minds*, LLC, 184 N.C. App. 274, 277, 646 S.E.2d 129, 132 (2007) (citation omitted) (alterations in original).

Where jurisdiction comports with due process, one Court noted that it "strains the court's imagination to come up with a situation in which the state

long-arm statute, itself coincident with due process, is somehow more restrictive, resulting in an exercise of jurisdiction that comports with due process but is not authorized by the long-arm statute." *Akeva L.L.C. v. Mizuno Corp.*, 199 F. Supp. 2d 336, 339 (M.D.N.C. 2002). "Since the North Carolina legislature designed the long-arm statute to extend personal jurisdiction to the limits permitted by due process, the two-step inquiry merges into one question: whether the exercise of jurisdiction comports with due process." *Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc.*, 933 F. Supp. 507, 510 (M.D.N.C. 1996).

Specific jurisdiction over a defendant exists where the cause of action raised in the complaint arises from the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 427, 104 S. Ct. 1868, 1879 (1984). A single act or contract which creates a "substantial connection" to the forum state can support jurisdiction. *Regent Lighting*, 933 F. Supp. at 510. Contacts with a state should be viewed together, not in isolation. *Hirschkop & Grad. P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir.1985).

**a. North Carolina's Long Arm Statute reaches dBV's conduct.**

North Carolina's long-arm statute supports jurisdiction here.[1]

***N.C. Gen. Stat.  § 1-75.4(3)*** confers jurisdiction in any action claiming injury arising out of an act or omission within this State by the defendant. This statute supports dInc's claims for tortious interference and unfair trade practices. *See Kehrer v. Fields*, 2012 WL 38381 (E.D.N.C. January 9, 2012) (acts of tortious interference considered local act); *Islet Sciences, Inc. v. Brighthaven Ventures, LLC*, 2017 WL 925846, at *5 (Sup. Ct. Wake Co. March 6, 2017) (conferring jurisdiction where California resident interfered with license agreement between two North Carolina companies).

***N.C. Gen. Stat.  §1-75.4(5)(b)*** confers jurisdiction in any action which arises out of services "actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant." This section applies to dInc's contract claims, intellectual property claims, unjust enrichment, and Chapter 75 claims.  *See Williamson Produce, Inc. v. Satcher*, 122 N.C.App. 589, 593 (1996) (applying §1-75.4(5)(b) where out-of-state resident entered into contract with North Carolina resident for marketing services to be provided in North Carolina);

---

[1] Contrary to dBV's contention, there is no requirement that a plaintiff specifically plead the sub-section of the long-arm statute that governs each claim. *Toshiba Glob. Commerce Sols., Inc. v. Smart & Final Stores LLC*, No. 20 CVS 2559, 2020 WL 7682584, at *3 (N.C. Super. Dec. 23, 2020)

*Superguide Corp. v. Kegan*, 987 F.Supp. 481, 486-87 (W.D.N.C. 1997) (long-arm statue §1-75.4(5) applies to trademark infringement action).

Defendant incorrectly asserts that this section is inapplicable because dBV did not "perform[ ] or agree[ ] ***to pay for*** services in North Carolina." (Doc. #23, p. 10) (emphasis added). Payment for services provided by dInc to dBV is irrelevant under §1-75.4(5)(b) where Plaintiff performed services for defendant in North Carolina so long as performance within this State was authorized or ratified by the defendant. As set out in the Statement of Facts, dInc provided and performed numerous services in North Carolina to benefit dBV in the parties' business relationship, and dBV readily accepted and participated in those benefits. These benefits include, for example: management of the source code repository; providing marketing support; management of customer leads which dInc fielded, processed, and exported to dBV; providing operational support; coordination of efforts through hosting of meetings in North Carolina which dBV personnel attended by logging in to participate and glean relevant information provided by dInc employees beneficial to dBV's business. (Doc. #30, at ¶¶ 3-33). The costs for this support to dBV was borne by dInc in North Carolina for the joint benefit of dInc and dBV. *Id.* The fact that dBV did not directly pay for those services

10

and apparently claims entitlement to a free ride on dInc's back does not mean that dBV is immune from jurisdiction.

dBV also argues dBV was not "engaged in substantial activity within this State" at the time service of process was made.  Doc. #23, p. 8-9.  That timing requirement only applies under N.C.G.S. §1-75.4(1) which is not asserted as a basis for jurisdiction here.

**b. Sufficient Minimum Contacts Support Jurisdiction.**

In determining whether specific jurisdiction exists, the Court considers (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."  *Hermann International, Inc. v. Herrmann International Europe*, 2018 WL 4682344 at *4 (W.D.N.C. September 28, 2018) ("*Herrmann I*")

First Prong: Purposeful Availment.  The first prong of the specific jurisdiction inquiry is grounded on the premise that "a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there."  *Herrmann I, at *5.* Isolated or sporadic contacts with the forum state may support specific jurisdiction over a defendant where such contacts create a substantial

connection with the forum. *Cambridge Homes of N. Carolina, LP v. Hyundai Const., Inc.*, 194 N.C. App. 407, 418, 670 S.E.2d 290, 299 (2008). Physical presence in the state is not required for specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 2184 (1985).

Whether a defendant reached into the forum state to solicit or initiate business is a critical factor to the determination of purposeful availment. *Herrmann I* at \*5; *Cambridge Homes*, 194 N.C. App. at 413, 670 S.E.2d at 296. Here, it is undisputed that Mr. Groeneweg initiated contact to express interest in starting a business relationship. (Doc. #9). The fact that this contact occurred by phone rather than in person does not undermine the importance of that initial contact. *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1068 (4th Cir. 1982) (a party need not be physically present in North Carolina to solicit business in the state).

Another important factor is whether the "defendant deliberately engaged in significant or long-term business activities in the forum state." *Herrmann I* at \*5. The Fourth Circuit "generally [has] concluded that a foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state when the defendant 'substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute.'" *Universal Leather, supra.*, at 560. Defendant dBV disputes

that it "deliberately engaged in long-term business activities" in North Carolina, asserting it had "no ongoing obligation from dBV to Plaintiff." (Doc. #23, p. 13). While dInc disputes that the obligations only ran one way, dBV blithely ignores the extensive support it got from dInc throughout the business relationship and the regular flow of communications to and from dInc's North Carolina personnel to support dBV's business, as set forth in the Statement of Facts. This assertion is also at odds with the Defendant's own evidence, as dBV's own court appointed director Mr. Harmeling repeatedly characterizes the parties' arrangement as "collaboration" or "cooperation." Doc. 26-1, at ¶¶ 12, 13, 16, 33. Similarly, the Enterprise Chamber characterized the parties' relationship as a "collaboration" and "cooperation." Doc. #10-1, at ¶ 3.4.

Another factor is whether the defendant made in-person contact with the plaintiff in the forum state. *Herrmann I* at *5. Mr. Groeneweg travelled to North Carolina for a weeklong meeting in January 2019 in furtherance of the parties' joint business relationship. (Doc. #30, ¶ 31 & Exh. G).

Another factor is the "nature, quality and extent of the parties' communications regarding the business relationship." *Herrmann I* at *5. Here, dBV personnel regularly communicated by video and other electronic means and attended dInc's North Carolina hosted meeting by logging in over

the internet, and even issued instructions to dInc personnel to make changes to dInc's website. (Doc. #30, ¶¶26, 27, 29,30). The courts are starting to catch up with advances in technology by concluding that virtual business contacts can establish personal jurisdiction. *See, e.g. Wendt v. Horowitz*, 2002 WL 1290902 (Fla. Sup. Ct June 13, 2002) (telephonic, electronic, or written communications into the state may form the basis for personal jurisdiction). *Zippo Mfg. Co. v. Zippo Dot Com Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997) (creating sliding-scale test, holding that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet"); *CoStar Realty Information, Inc. v. Field*, 612 F.Supp.2d 660, 672 (D.Md. 2009) (repeated unauthorized access to a Maryland company's website by out-of-state residents subjected defendants to jurisdiction).

Whether the parties contractually agreed that the law of the forum state would govern the relationship is another factor. *Herrmann I* at *5. Although the parties did not agree on a choice of law for the licensing contract, dBV accepted the obligation to service customers pursuant the customer's TOS Agreement with dInc governed by North Carolina law. (Doc. #30, ¶6).

This Court noted in *Herrmann I* that "[t]he Court Circuit has generally concluded that a foreign defendant has purposefully availed itself of the privilege of conducting business when the defendant 'substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute.'" *Hermann I* at *5*; see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009) (finding first prong satisfied where defendant initiated contact with plaintiff in forum state, sparking ongoing business transactions in which defendant repeatedly reached into the forum state to transact business with the plaintiff, and "continued to invoke those benefits and protections when it corresponded and collaborated with" the plaintiff over many years).  In this case, as in *Hermann I* and *CFA Institute,* the Plaintiff dInc has amply demonstrated just such a collaborative business relationship initiated by dBV's Mr. Groeneweg.

Second Prong:  Do the claims arise from forum activities.  In evaluating this prong, the Court looks to whether "the plaintiff's claims arise out of activities directed at the forum state."  In determining whether the plaintiff's claims arise out of activities directed at the forum state, this prong is satisfied if "substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim."

In *Herrmann I,* the North Carolina plaintiff and French defendant had a collaborative relationship quite similar to that of dInc and dBV which arose when the plaintiff (like dInc) desired to expand into European markets and thereafter entered into a licensing agreement with the foreign defendant. *See also, CFA Inst.,* 551 F.3d at 295 (finding second prong satisfied by correspondence and collaboration over several years). *See also, Toshiba Glob. Commerce Sols.*, 2020 WL 7682584, at *5 (finding due process satisfied where defendant initiated contact with North Carolina resident resulting in continuing relationship with services performed both within and outside North Carolina).

Here, dInc's claims arise from Defendant's purposefully directed activities in North Carolina. Defendant's initiation of a joint business relationship and the prolonged, substantial and regular engagement in furtherance of that relationship. dBV engaged in substantial collaboration with dInc, a North Carolina corporation, which forms an integral part of the Plaintiff's claims. Like the defendant in *CFA Institute*, dBV has corresponded and collaborated with dInc over a period of several years, reinforcing the proposition that its business transactions with dInc were substantial and ongoing. This relationship of cooperation is acknowledged by Mr. Harmeling and was noted by the Enterprise Court decision. Doc. 26-1, at ¶¶ 12, 13, 16,

33; Doc. #10-1, at ¶ 3.4. The parties' business together was not an isolated interaction; rather it reflected a "purposeful effort" by Defendant to transact business with Plaintiff in North Carolina and Plaintiff's claims clearly arise from its cooperative activities with this North Carolina plaintiff. *See CFA Institute, supra.*, at 296. In addition to the parties' cooperative relationship, Plaintiff dmarcian's claims arise from dBV's purposeful activities directed at the forum state, including its theft of intellectual property from this North Carolina plaintiff which was maintained and controlled in this State, and interference with Plaintiff's customer relationships. (FAC, ¶¶78-104; 112-113, 178-199). Accordingly, the second prong is satisfied.

Third Prong: Constitutional Reasonableness. The final prong of the analysis is whether the exercise of personal jurisdiction would be constitutionally reasonable. This prong "ensures that litigation is not 'so gravely difficult and inconvenient' as to place the defendant at a severe disadvantage in comparison to his opponent." *CFA Inst.*, 551 F.3d at 296 (4th Cir. 2009) (*quoting Christian Sci. Bd. Of Dirs. Of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001). "The burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief guide [the Court's] inquiry." *Tire Eng'g v. Shandong Linglong Rubber Co., Ltd*, 682 F.3d 292, 303 (4th Cir. 2012).

A corporate defendant's domicile abroad, standing alone, does not render domestic exercise of jurisdiction unduly burdensome. *Id.* The Fourth Circuit has recognized that a foreign defendant's "ability to secure counsel in the forum state and its choice to do business with a forum resident—which also made the prospect of litigation in the state foreseeable—counseled that defending the suit would not be particularly burdensome." *Id.* Defendant has secured counsel to represent it in this matter and chose to do business with a forum resident. As the Fourth Circuit has stated, "the inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there." *CFA Institute, supra.*, at 296. As in *CFA Institute*, it was reasonably foreseeable to dBV that dINC might initiate a lawsuit in North Carolina. dINC is a North Carolina entity and dBV has repeatedly reached into North Carolina to transact business with it. *Id.*

Further, "North Carolina, as the forum state, has a 'manifest interest in providing effective means of redress for its residents.'" *Regent Lighting*, 933 F. Supp. at 512 (Delaware corporation with North Carolina headquarters had significant interest in relief in North Carolina). As noted in *Herrmann I*, the Plaintiff's interest in protecting its trademark and business interests supports this prong, as "North Carolina maintains a 'substantial interest' in resolving the grievances of its businesses." *Hermann I,* at *6; *see also Lee v. Walworth*

18

*Valve Co.,* 482 F.2d 297, 299 (4th Cir. 1973) (recognizing forum state's "paternal interest in the recovery by one of its citizens of appropriate compensation, if there is a substantive cause of action"). Finally, "after having 'carved out a market niche by cultivating' their distinctive mark and products," *Tire Eng'g,* 682 F.3d at 303 (citations omitted), dINC is entitled to utilize, protect, and vindicate its intellectual property and other legal rights in the North Carolina courts. Accordingly, the third prong is satisfied.

## II. ALTERNATIVELY, JURISDICTION IS APPROPRIATE UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(K)(2).

This Court noted that Rule 4(k)(2) may apply (Doc. #12 at p. 7, n. 3) to support jurisdiction where no State can exercise jurisdiction, but the Defendant's contacts as a whole support exercise of jurisdiction. This rule is in essence a federal long-arm statute. *Saudi v. Northrop Grumman Corp.,* 427 F.3d 271, 275 (4th Cir. 2005). The Plaintiff believes that dBV's North Carolina contacts are more than sufficient. However, should the Court disagree, Rule 4(k)(2) supports jurisdiction here.

> A plaintiff who seeks to invoke Rule 4(k)(2) as a basis for jurisdiction must show that (1) the claim "arise[s] under federal law;" (2) the defendant is "not subject to the jurisdiction of the courts of general jurisdiction of any state;" and (3) the court's exercise of jurisdiction would be "consistent with the Constitution and laws of the United States." Fed.R.Civ.P. 4(k)(2).

*Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory*", 283 F.3d 208, 215 (4th Cir. 2002).   Plaintiff has federal trademark, copyright and trade secrets claims, and so satisfies the first part of the test.  Should the Court find the North Carolina contacts to be insufficient by themselves to support North Carolina jurisdiction, there are no other states which have a closer connection.  Finally, the exercise of jurisdiction would be consistent with the Constitution and laws of the United States, taking into account not only the North Carolina contacts discussed above, but other United State contacts.  For example, dBV serviced American companies with EU offices during the parties' relationship, and those companies are spread over many different states.  (Doc. #8, ¶4, 5).  dBV's false data breach communications, which used dInc's own brand, went out to all EU customers which necessarily included those American companies.   (Doc. #8, ¶¶26, 27)   Those communications not only damaged dInc's brand with those American companies, but it also caused at least two American companies to change their "rua", *i.e.*, redirecting their business from dInc's platform to dBV's illegal "dmarcadvisor.com" platform.[2]  (S. Draegen Supp. Dec., Doc. #15, ¶3, 4;

---

[2] This is a reasonable inference to draw.  Absent communication from dBV, how else would the customer know to move to "dmarcadvisor.com"?  If one searches for "dmarcadvisor.com", it just sends the user to the cloned websites which are replete with Plaintiff's branding.

20

Doc. #30, ¶¶32,33).  These facts, in combination with the North Carolina contacts, clearly support jurisdiction under Rule 4(k)(2).

## III.  DBV HAS FAILED TO JUSTIFY THE APPLICATION OF THE DOCTRINE OF FORUM NON CONVENIENS.

A federal court may dismiss a case on the ground of *forum non conveniens* "when an alternative forum has jurisdiction to hear [the] case, and … trial in the chosen forum would establish … oppressiveness and vexation to a defendant … out of all proportion to plaintiff's convenience, or … the chosen forum [is] inappropriate because of considerations affecting the court's own administration and legal problems.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007).  A party seeking dismissal on grounds on *forum non conveniens* "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."  *Sinochem*, 549 U.S. at 430, 127 S.Ct. at 1184.  When a domestic plaintiff initiates litigation in its home forum, it is entitled not only to the degree of deference generally accorded to a plaintiff's choice of forum, but to a "heightened deference" based on its status as a citizen seeking a remedy in the courts of its own country.  *SAS Institute, Inc. v. World Programming Ltd.*, 468 Fed.Appx. 264. 265, 266 (4th Cir. 2012), *quoting Adelson v. Hananel*, 510 F3d 43, 53 (1st Cir. 2007).

Case 1:21-cv-00067-MR   Document 31   Filed 04/30/21   Page 21 of 27

In ruling on a motion to dismiss on *forum non conveniens* grounds, the Court "must determine whether the alternative forum is 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011). Private interest factors include: the relative ease of access to sources of proof; and practical issues, including financial hardship for plaintiff. *Gulf Oil v. Gilbert*, 330 U.S. 501 (1947). Public interest factors include: the court's familiarity with applicable law; interests of foreign vs. local jurisdiction; and avoidance of overburdening local dockets and potential jurors. *Id.*

Defendant fails to satisfy its heavy burden. As to the availability and adequacy of an alternative forum, Defendant argues that adjudication of this dispute is "well underway" – a characterization Plaintiff rejects – in the Dutch courts. In any event, the issues before the Dutch courts are extremely narrow, and the proceedings demonstrate that the forums are neither adequate nor available. The Enterprise Chamber addresses only dBV's internal governance issues. (Doc. #10-1 at 1.2) dInc is not a party to those proceedings. *Id.* That Court found that dBV had internal management problems and appointed a director (Mr. Harmeling) to oversee the company and investigate its management. *Id.;* Doc. #10-2. In the Rotterdam case, the Court merely entered a status quo order on a preliminary basis requiring dInc

to continue to provide dBV access to data so that dBV could service its customers.  (Doc. #8-14). Both Dutch Courts have trampled on dmarcian's due process.  They both improperly conflate Mr. Draegen and dmarcian, and they fail to properly address dmarcian as a separate entity.  In granting a precipitous injunction on one business day's notice, the Rotterdam Court also rushed to action without a fair opportunity for dmarcian to respond.

By contrast, the instant action alleges violations of federal trademark, copyright and trade secrets law and related torts. Defendant will be unable to show that the Enterprise Chamber or the Rotterdam Court are equipped to address these issues of American law, particularly given that both Dutch courts ***expressly declined to rule on the intellectual property rights*** as between dBV and dInc.  (Doc. #10-1, ¶3.4; Doc.#8-14, ¶¶2.12, ¶3.5).  As such the remedy offered by the other forum is "clearly unsatisfactory."  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265, n.22 (1981) (citing example of *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 78 F.R.D. 445 (Del.1978) where court refused to dismiss in favor of Ecuadorian when it was unclear whether that tribunal would hear the case and there was no generally codified Ecuadorean legal remedy for the unjust enrichment and tort claims asserted). The claims in the Dutch Courts also address a different time period.  The investigation ordered by the Enterprise Court investigation is

23

limited to looking at dBV's affairs from January 1, 2016 to August 20, 2020. (Doc. #10-1, ¶4). Most of the events at issue (and all of the infringement and tort claims) in this case arose after the February 1, 2021 Rotterdam decision.

Importantly, even if the Court finds that the Dutch courts are an adequate and available forum for this dispute, this Court can still deny the motion to dismiss if dBV is unable to meet its burden of proving that the balances of conveniences weigh in favor of dismissing this action. *SAS Institute, Inc., supra.*, at 265. In the *SAS Institute* case, the Fourth Circuit reversed the District Court's granting of a *forum non conveniens* dismissal, concluding that the court "gave undue weight to the fact that the parties were engaged in parallel U.K litigation." *Id.*, at 266. Thus, the fact that dBV has instituted proceedings against dInc in Dutch courts "bears only marginally on the touchstone of the forum non conveniens analysis; namely, convenience. *SAS Institute, Inc., supra.*, at 266.

Tellingly, Defendant is unable to cite a single North Carolina case to support its convenience arguments. Furthermore, factors dBV relies on to support its motion, such as the location of evidence and witness travel costs are hassles that, absent "a satisfactory explanation," do not demonstrate that "a trial in the United States would be so oppressive and vexatious to [dBV] as to be out of all proportion to [dInc's] convenience." *See SAS Institute,*

*Inc., supra.*, at 267 (*quoting DiRienzo v. Philip Servs. Corp.,* 294 F3d 21, 30 (2nd Cir. 2002)). Defendant asserts that it is unfair to force dBV's court appointed director Mr. Harmeling to spend dBV's time and resources defending the claims here. (Doc. #23, p. 15-16). This is certainly not unfair when the actions arise in part from Mr. Harmeling's own defamatory postings in which he mischaracterizes that the Dutch Courts purportedly gave him authority to create a separate platform and abscond with dInc's intellectual property. (Doc. #26-4).

Defendant incorrectly asserts that the locus of this case is in the Netherlands. The dBV's Dutch personnel and the Bulgarians all had regular contact and communications with dInc personnel, and much of the parties' relationship was carried out through meetings hosted in North Carolina. The witnesses are both in the Netherlands and in North Carolina, so this factor does not weigh heavily in Defendant's favor.

Lastly, dBV will be unable to show that this Court lacks familiarity with the applicable law. Plaintiff's claims are based on U.S. federal statutes and North Carolina tort and contract laws, all of which would be unfamiliar to the Dutch Courts. Indeed, under Dutch law, the law where the licensor is located applies to a license agreement. (Decl. of Timo Jansen, Doc. #17 at ¶¶21-22). Moreover, as this Court stated in *Superguide*, *supra.,* North Carolina

has a keen interest in the protection of trademarks owned by its residents. As such, local interest strongly favors retention of jurisdiction.

In sum, Defendant has failed to justify a *forum non conveniens* dismissal.

**CONCLUSION**

Defendant's motion to dismiss should be denied.

This the 30th day of April, 2021.


*/s/ Pamela S. Duffy*_____
Pamela S. Duffy, NC Bar #18329
*pduffy@sharplesslaw.com*
RaShawnda T. Murphy
N.C. Bar #54936
Sharpless McClearn Lester Duffy, PA
200 S. Elm Street, Suite 400
Greensboro, NC 27401
Telephone: (336) 333-6389
*Attorney for Plaintiff*


OF COUNSEL:


*/s/ David Dorey*_____
David Dorey, DE #5283
Blank Rome, LLP
Dorey@BlankRome.com
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6418
*Attorney for Plaintiff*

26

## *CERTIFICATE OF SERVICE*

I hereby certify that the foregoing BRIEF IN OPPOSITION was served upon counsel for all other parties to this action listed below pursuant to N.C. R. Civ. P.5(b) by efiling a copy of the same utilizing the Western District of North Carolina's efiling system:

Mr. Pressly M. Millen
Mr. Samuel B. Hartzell
Womble Bond Dickinson (US) LLP
P O Box 831
Raleigh, NC 27602
*Attorneys for dmarcian Europe BV*

    This the 30<u>th</u> day of April, 2021.

                                        */s/ Pamela S. Duffy*_____
                                        Pamela S. Duffy
                                        N.C. State Bar No. 18329
                                        RaShawnda T. Murphy
                                        N.C. State Bar No. 54936
                                        SHARPLESS McCLEARN LESTER DUFFY, PA
                                        200 South Elm Street, Suite 400
                                        Greensboro, North Carolina 27401
                                        Telephone: (336) 333-6389
                                        pduffy@sharplesslaw.com
                                        rmurphy@sharplesslaw.com
                                        *Attorneys for Plaintiff*

27