**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BREVARD DIVISION
Case No. 1:21-CV-00067**

| | |
|---|---|
| DMARCIAN, INC., | |
| *Plaintiff*, | |
| v. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| DMARCIAN EUROPE BV, | |
| *Defendant*. | |

The Court should dismiss this action because, among other reasons, dmarcian, Inc. ("dInc") fails to establish a meaningful connection between dmarcian Europe BV ("dBV") and North Carolina. The record also shows that the *forum non conveniens* factors favor resolution of this dispute in the Netherlands.

## I.   dInc Fails to Satisfy the North Carolina Long-Arm Statute

The jurisdictional inquiry in this case begins with the North Carolina long-arm statute because dInc concedes that "§1-75.4(1) . . . is not asserted as a basis for jurisdiction." Opp'n at 11, ECF No. 31. dInc claims that jurisdiction is authorized under N.C. Gen. Stat. §§ 1-75.4(3) and 1-75.4(5)(b), but neither applies here.

Subsection 1-75.4(3) permits jurisdiction in "any action claiming injury to person or property or for wrongful death within or without this State arising out of *an act or omission within this State* by the defendant." (emphasis added). This subsection is inapplicable because there is no evidence that dBV made any act or omission in North Carolina. dInc tries to sidestep this requirement by suggesting that it was injured here when dBV allegedly interfered with "Clarizen . . . based in San Mateo, California," ECF No. 15 ¶ 4, and "TechData.com based in Clearwater, Florida," ECF No. 30 ¶ 32, but § 1-75.4(3) requires a North Carolina act even when the plaintiff claims "injury . . . within . . . this State," N.C. Gen. Stat. § 1-75.4(3). There is no evidence that dBV "interfered with [a] license agreement between two North Carolina companies," Opp'n at 9, or that dBV "solicited, and then negotiated

1

and entered into contract with [Clarizen or Tech Data] in North Carolina," *N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc.*, 386 F. Supp. 2d 648, 655 (M.D.N.C. 2005).

Similarly, § 1-75.4(5)(b) authorizes jurisdiction over actions that "[a]rise[] out of . . . services actually performed for the defendant by the plaintiff within this State." dInc devotes its brief to arguing that it "provided and performed numerous services in North Carolina," Opp'n at 10, but it fails to explain how this action arises from those services. That failure is critical because § 1-75.4(5) distinguishes between actions that must *arise out of* a North Carolina connection, *see* N.C. Gen. Stat. § 1-75.4(5)(a)–(c), and those that need only *relate to* North Carolina, *see id.* § 1-75.4(5)(d)–(e).

The U.S. Supreme Court recently explained the difference between these standards when examining the specific-jurisdiction requirement that a suit "arise out of *or* relate to the defendant's contacts." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017)). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* Thus, dInc must show a causal connection between its North Carolina services and this lawsuit to satisfy the "[a]rises out of" standard in § 1-75.4(5)(b). dInc has not even attempted to carry that burden. *See* Opp'n at 9–11.

2

## II. dInc Has Not Shown That *dBV* Established Minimum Contacts

dInc uses passive voice to summarize the alleged contacts between dBV and North Carolina because dInc relies on *its own* contacts with North Carolina. "In short," dInc writes, "dBV's entire business was supported and maintained by dInc's North Carolina personnel." Opp'n at 5. dInc claims that dBV has a substantial connection to *dInc*, and it urges this Court to exercise personal jurisdiction over dBV based on the injuries that *dInc* allegedly suffered in North Carolina. That reasoning misapplies the jurisdictional analysis in two ways. First, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). And second, "mere injury to a forum resident is not a sufficient connection to the forum." *Id*. at 290. The "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*.

The evidence fails to show a meaningful connection between *dBV* and North Carolina. dBV did not, for example, accept "long-term and exacting regulation of [its] business from [dInc's] [North Carolina] headquarters." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985). In fact, dInc cannot identify any obligation that dBV had to dInc in North Carolina. There is no such obligation because dBV gave only one form of consideration for the right to license and promote the software in Europe, Africa, and Russia: an option for dInc or Tim Draegen ("Draegen") to

3

purchase a majority interest in dBV for one Euro. By agreeing to that structure, dBV and dInc invoked the benefits and protections of *Dutch* law. Now that dBV has invested significant time and energy in the dmarcian brand – including rewriting most of the dmarcian software – dInc is attempting to disclaim any obligation under Dutch law and instead use North Carolina law as a means of destroying dBV and stealing its contributions.[1] Due process does not permit that maneuver because nothing in the parties' agreement in the Netherlands or dBV's subsequent conduct in Europe, Africa, and Russia involved dBV "invoking the benefits and protections of [North Carolina] law." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009). Rather, "the locus of the parties' interaction was overwhelmingly abroad." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012).

dInc resists this conclusion by arguing that "dBV accepted the obligation to service customers pursuant the customer's TOS Agreement with dInc governed by North Carolina law." Opp'n at 14.[2] That allegation is unsupported by competent

---

[1] *See, e.g.*, May 7, 2021 District Court of North Holland Judgment (Exhibit C to May 7, 2021 Decl. of Martijn Groeneweg) ¶ 4.6 ("The interim relief judge considers it plausible that the actions of [dInc] and Draegen were prompted by the desire to put [dBV] out of the game completely and in this way acquire the copyright on the latest version of the Dmarcian software."); *id*. ¶ 4.11 (". . . [dInc] and / or Draegen make it impossible for [dBV] to serve its customers, and in this way try to destroy [dBV]."); *see also id*. ¶¶ 4.8, 4.9, 4.10, 4.13.

[2] dInc also exaggerates the number and frequency of contacts even though this Court "do[es] more than formulaically count contacts." *Tire Eng'g*, 682 F.3d at 301. For

evidence. Draegen declares that "[c]ustomers serviced by [dBV] remain customers of [dInc] pursuant to the original Terms of Service," but Draegen fails to present those Terms of Service or to identify a single dBV customer that is bound by them. ECF No. 30 ¶ 6. In any event, all dBV customers execute contracts with dBV that are governed by "Dutch law" and that "prevail[] over all other agreements." May 7, 2021 Decl. of Martijn Groeneweg ¶¶ 8–9 & Exs. A–B ("Groeneweg Decl."). The record does not support dInc's efforts to interject itself – and, by extension, North Carolina – between dBV and its foreign customers.

In the end, dInc's attempts to establish purposeful availment here "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289. dBV did not establish a meaningful connection with North Carolina by agreeing in the Netherlands to provide equity in a Dutch company in exchange for the right to distribute and promote software in Europe, Africa, and Russia.[3]

---

example, dInc alleges that dBV's "*representatives* have visited Plaintiff's offices in North Carolina." Am. Compl. ¶ 6 (emphasis added), ECF No. 19. dInc now admits that "a representative" visited once, years after the parties' agreement. Opp'n at 3.

[3] Exercising personal jurisdiction would also be unreasonable for the reasons given in dBV's opening brief. *See* Opening Br. at 15–16, ECF No. 23. This litigation is an attempt to interfere with ongoing proceedings in the Netherlands based on complaints about an investigation and court-appointed director that dInc's majority shareholder requested. *See* Enterprise Court Decision ¶ 1.4, ECF No. 26-2, at 13.

5

### III. dInc Fails to Carry Its Burden Under Rule 4(k)(2)

dInc argues for the first time that "Rule 4(k)(2) supports jurisdiction here," Opp'n at 19, but it fails to show that "the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state," *id.* (quoting *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 215 (4th Cir. 2002)). The parties agree that, in the Fourth Circuit, "the plaintiff must show . . . defendant is not subject to jurisdiction in any state's courts." *Cato Corp. v. Cato (HK) Ltd.*, No. 3:20-cv-117, 2021 WL 879078, at *5 (W.D.N.C. Mar. 9, 2021). Yet dInc ignores this requirement, making only the conclusory assertion that "there are no other states which have a closer connection." Opp'n at 20. And it makes that claim despite arguing that "all source code edits were saved on dInc's server in South Carolina." *Id.* at 5; *see also* ECF No. 30 ¶ 8(b) (declaring that the "server that houses the source code and provides updates to the platform is in South Carolina").[4] There is no analysis in dInc's brief of whether this server could support jurisdiction under South Carolina's long-arm statute, *see, e.g.*, S.C. Code § 36-2-803(A)(1), or consistent with the Due Process Clause, *cf. UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 349, 353 (4th Cir. 2020) (defendant "purposefully availed himself of the

---

[4] South Carolina is not the only state with a purported connection to dBV. dInc claims "December 2016 e-mails . . . form the basis of the parties' agreement," Am. Compl. ¶ 75, and those emails include a contract under which parties "submit to the jurisdiction of . . . California," ECF No. 9-1, at 9 ¶ 12.

privilege of conducting business in Virginia" because, among other reasons, "servers [were] physically located in Virginia"). Of course, dBV is not conceding that South Carolina or any other state could exercise personal jurisdiction over dBV. Rather, dBV highlights these purported connections to explain why dInc has failed to carry its burden of "demonstrat[ing] that *no State* can exercise personal jurisdiction over the defendant." *Grayson v. Anderson*, 816 F.3d 262, 271 (4th Cir. 2016).

Regardless, dBV does not have widespread connections with the United States. To the contrary, "dBV does not sell or promote its products or services to *any* customer in the United States." ECF No. 26-9 ¶ 31. In arguing otherwise, dInc claims that dBV services *foreign* clients that have their own U.S. connections.[5] *See* Opp'n 20. This reasoning once again seeks to show jurisdiction based on third parties' connections with the United States, not based on dBV's own contacts.

### IV. This Action Should Be Dismissed for *Forum Non Conveniens*

dInc's treatment of *forum non conveniens* betrays a fundamental misunderstanding of the applicable law. With respect to the issue of whether the foreign forum is "adequate,"[6] the issue is not whether some particular current

---

[5] For example, dInc argues that dBV "caused at least two American companies"– Clarizen and Tech Data – to "redirect[] their business." Opp'n at 20. Clarizen's relevant operations are in Israel, *see* Groeneweg Decl. ¶ 4, and dBV services Tech Data GmbH & Co OHG, a German company based in Munich, *see id.* ¶ 3.

[6] Whether a given forum is "available" depends on whether the party seeking dismissal is amenable to process in the alternate forum. *Tang v. Syntura Int'l, Inc.*, 656 F.3d 242, 249 (4th Cir. 2011). dInc does not and could not contest that issue.

7

proceeding encompasses the claims asserted in the United Sates, but whether the foreign forum's courts could provide an adequate remedy. Thus, the Supreme Court's leading case on *forum non conveniens*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), did not concern competing cases in the United Sates and Scotland, but instead the adequacy of "the remedies that *would be provided* by the Scottish courts" once plaintiffs' U.S. action was dismissed based on *forum non conveniens*. *Id.* at 254–55 (emphasis added). In other words, the proper inquiry is not whether the current proceedings in the Netherlands mirror the proceeding in this Court, but whether the Dutch courts generally provide an adequate remedy.

dInc has made no showing that *a* Dutch court – as opposed to the Dutch courts currently grappling with aspects of this dispute – would be inadequate. Such a showing would require dInc to establish that the "remedy provided by the [Dutch] forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254. dInc cannot do so and does not even try. *See, e.g.*, *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 188, 190 & n.3 (3d Cir. 2008) (affirming adequacy of the Dutch courts – including an "investigatory proceeding before the Enterprise Chamber"). dInc instead asserts in conclusory fashion that "[b]oth Dutch Courts have trampled on [dInc's] due process" by "granting a precipitous injunction on one business day's notice." Opp'n at 23. Yet dInc makes no effort to establish that

8

granting an injunction on one day's notice violates the due process requirements of the Dutch courts.[7]

The *only* evidence in the record regarding the remedies available in the Dutch courts is found in the Declaration of Alfred Meijboom, which states that the claims brought here are generally cognizable under Dutch law and in Dutch courts. *See* ECF No. 26-5 ¶ 19. In response, dInc offers no evidence. That is insufficient. *See Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.*, 41 F. Supp. 2d 447, 451 (S.D.N.Y. 1999) (dismissing action in favor of proceeding in the Netherlands where "defendants have provided an affidavit from a Dutch lawyer attesting that all of plaintiff's causes of action are recognized by Dutch law" but plaintiff failed to "supply[] any evidence in opposition"). Moreover, dInc's conclusory statements that its intellectual property claims cannot be adjudicated in the Dutch courts are not credible. *See* Opp'n at 23. Both the United States and the Netherlands are signatories to the pertinent conforming copyright treaties, including the Berne Convention.[8] The Supreme Court has found that it is proper for U.S. courts to give deference to proceedings made within the highly regulated framework of

---

[7] As this Court well knows, even in U.S. courts, Rule 65 permits temporary restraining orders *without notice*, and the notice required for a preliminary injunction under Fed. R. Civ. P. 65(a) provides "broad discretion" to the "the district court to manage the timing and process," *Ciena Corp. v. Jarrad*, 203 F.3d 312, 319 (4th Cir. 2003) (affirming injunction on two days' notice).

[8] https://wipolex.wipo.int/en/treaties/ShowResults?search_what=C&treaty_id=15

9
Case 1:21-cv-00067-MR Document 35 Filed 05/07/21 Page 10 of 12

international treaties governing intellectual property. *See Golan v. Holder*, 565 U.S. 302, 334 (2012).

Contrary to dInc's assertions, *see* Opp'n at 21, its choice of forum is not entitled "talismanic significance," *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003). "In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere." *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1450 (9th Cir. 1990).

Finally, dInc pays only lip service to the weighing of the private- and public-interest factors related to *forum non conveniens*, dismissively calling them only "hassles." Opp'n at 24. dBV's discussion of those factors, *see* Opening Br. at 21–25, ECF No. 23, represents the only proper weighing of the factors as required by the Fourth Circuit, *see Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 246 (4th Cir. 2011). As such, this Court should find that they favor dismissal.

## **CONCLUSION**

The Court should dismiss this action for lack of personal jurisdiction over dBV and on the grounds of *forum non conveniens*.

This the 7th day of May, 2021.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Pressly M. Millen
Pressly M. Millen, NC State Bar No. 16178
Samuel B. Hartzell, NC State Bar No. 49256
Post Office Box 831
Raleigh, North Carolina 27602
Phone: (919) 755-2135
Fax: (919) 755-6067
Email: Press.Millen@wbd-us.com
       Sam.Hartzell@wbd-us.com

*Counsel for Defendant dmarcian Europe BV*