# Attachment 1

Second Declaration of Martijn Groeneweg

## Second Declaration of Martijn Groeneweg

Martijn Groeneweg declares as follows pursuant to 28 U.S.C. § 1746:

1. I am a resident of The Netherlands, over eighteen years of age, and competent to make this Second Declaration. I have personal knowledge of the matters stated herein.

2. I am executing this Second Declaration in connection with the Reply Memorandum in Support of Defendant's Motion to Dismiss in Western District of North Carolina Case No. 1:21-CV-00067. In particular, I wish to respond to assertions made by dmarcian, Inc. ("dInc") that dmarcian Europe BV ("dBV") (a) "caused at least two American companies to change their 'rua,'" (b) "accepted the obligation to service customers pursuant the customer's TOS Agreement with dInc governed by North Carolina law," and (c) "claims entitlement to a free ride on dInc's back."

3. dBV provides services to Tech Data GmBH & Co. OHG, which is located in Munich, Germany.

4. Clarizen's IT department is in Israel, and Clarizen's employee in Israel chose to create an account on the European platform. Even so, Clarizen pays dInc for the services that dBV provided to Clarizen in Israel, and dBV has never sent any invoice to Clarizen.

5. Megacool.co is owned by Medal B.V., a company located in the Netherlands.

6. NVIDIA is not using the platform from dInc or dBV. NVIDIA is not a paid customer of dBV. The DMARC record for nvidia.com points to a competitor, Valimail.

7. dBV has not accepted the obligation to service customers pursuant the customer's TOS Agreement with dInc governed by North Carolina law.

8. No paying customers of dBV have signed contracts with dBV governed by North Carolina law. The standard contract used by dBV for all its paying customers is under Dutch law and contains: "This Agreement prevails over all other agreements." This contract is signed after the trial account is created. dInc had access to these agreements, dInc was fully aware that dBV used these agreements with their customers, and dInc never objected. A copy of this agreement was also on the shared website dmarcian.com as being the terms and conditions for dBV until recently unilateral removed from the website by dInc. A true and correct copy of the standard contract between dBV and its paying customers is attached as Exhibit A.

9. No active partners (or customers of partners) of dBV have signed contracts with dBV governed by North Carolina law. The standard contract used by dBV for all its active partners (and customers of partners) is under Dutch law and contains: "This Agreement prevails over all other agreements." This contract is

2

signed after the trial account is created. dInc had access to these agreements, dInc was fully aware that dBV used these agreements with their partners (and customers of partners), and dInc never objected. A true and correct copy of this standard contract between dBV and its partners is attached as Exhibit B.

10. dBV has performed a majority of the development and marketing work for the dmarcian product. It is false to claim that dBV claims entitlement to a free ride on dInc's back.

11. For example, dBV employee Eline van der Vorm created the website currently in use under dmarcian.com in the beginning of 2018 based on the open source platform Wordpress.

12. That website dmarcian.com was hosted since May 2018 at the Dutch hosting company called SAVVII, managed and paid for by dBV. As dBV and dInc share the dmarcian name and there was one dmarcian.com website to keep the customer experience simple, dBV also granted management access to dInc for the Wordpress website hosted in the Netherlands. The Wordpress plugins needed for the DMARC tools on this public website are developed by the Bulgarian developers, paid and managed by dBV.

13. Around June 2018, Dutch (dmarcian.nl), French (dmarcian.fr) and Spanish (dmarcian.es) websites were launched. Translations were automated from the dmarcian.com website that dBV created and after the automated process manual

3

changes were made by a professional translator named Lidia Yáñez (employee of dBV).

14. Beginning in May 2017, a new dmarcian platform was created by rebuilding the 2-tier dmarcian version 1.0 application to a full API dmarcian version 2.0. This is done step by step where the old source code and the new source code coexisted for a long time.

15. The below graph displays the contributions by the different entities based on version control over time: dInc (blue), BeLean EOOD (yellow), dmarcian Bulgaria EOOD (green), and dBV (orange). dBV paid for all development cost of dmarcian Bulgaria EOOD, BeLean EOOD, and dBV. As this graph makes clear, most (roughly 60%) of the current dmarcian software was written in Europe by developers working directly or indirectly for dBV.



16. On November 9, 2019, the old legacy code (written by dInc) was removed from the source code in version control as well as all production systems.

4

17. On May 7, 2021, the District Court of North Holland issued a Judgment involving dBV. A true and correct copy of that Judgment, along with an English translation prepared by dBV, is attached as Exhibit C.

Under the terms of 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 7th day of May, 2021.

_____<br>MARTIJN GROENEWEG