# Attachment 3

Exhibit B to Second Declaration of Martijn Groeneweg
(Partner Agreement)

**dmarcian Europe BV**
Burgemeester de Raadtsingel 93
3311 JG Dordrecht

# Partner Agreement



Case 1:21-cv-00067-MR   Document 35-3   Filed 05/07/21   Page 2 of 10



## PARTIES

| **Partner** | **Dmarcian** |
|---|---|
| Name | Name |
| | dmarcian Europe BV |
| Trade reg. no. | Trade reg. no. |
| | 57518793 |
| VAT | VAT |
| | NL852616879B01 |
| IBAN | IBAN |
| | NL42ABNA0476385040 |
| Address | Address |
| | Burgemeester de Raadtsingel 93 |
| Zip Code + City + Country | Zip Code + City + Country |
| | 3311 JG Dordrecht, The Netherlands |
| Phone | Phone |
| | +31 786320242 |
| Contact | Contact |
| | Martijn Groeneweg |
| Email | Email |
| | martijn@dmarcian.com |
| Mobile | Mobile |
| | +31 651284506 |



## Key details

| | |
|---|---|
| Start Date | [START DATE] |
| End Date | [END DATE] |
| Automatic Extension | Yes |
| SaaS Service | Dmarcian |
| Pricing | Enterprise for the price of Plus subscription 2388 euro (NFR). Use for own organization only.<br><br>**OR**<br><br>Enterprise for the price of Basic subscription 228 euro (NFR). Use for own organization only.<br><br>**OR**<br><br>Enterprise for the price of 0 euro (NFR). Use for own organization only.<br><br>20% Partner Reseller discount on SaaS (Partner does sales) or 10% Partner Lead fee on SaaS (Dmarcian does sales) |
| Payment terms | Invoiced annually up front. Payment within 14 days after invoice date. |
| Territory | [COUNTRY/COUNTRIES] |



## Interpretation

| | |
|---|---|
| Agreement | This Partner Agreement. |
| Confidential Information | Any information that is not public knowledge and that is obtained from the other party in the course of, or in connection with, the Agreement. Intellectual Property owned by Dmarcian (or its licensors) is Dmarcian's Confidential Information. The Data is the Partner's Confidential Information. |
| Customer | a person or organization using the Services. |
| Data | all data, content, and information owned, held, used or created by or on behalf of the Partner that is stored using, or inputted into, the Services. |
| Fees | the fees agreed for delivering the SaaS Service. |
| Force Majeure | an event that is beyond the reasonable control of a party. |
| Intellectual Property Rights | includes copyright and all worldwide rights conferred under statute, common law or equity relating to inventions (including patents), registered and unregistered trademarks and designs, circuit layouts, data and databases, confidential information, know how, and all other rights resulting from intellectual activity. |
| Lead Fee | A fee will be compensated to the Partner for a lead that generates a paid invoice for Dmarcian. In the case of recurring revenue, the Lead Fee is recurring as well. |
| Marks | Dmarcian's trade names, trademarks, service marks, symbols and logos. |
| Payment Term | the payment terms set out in the Key Details (if any). |
| Permitted User | those personnel of the Partner who are authorised to access and use the Services on the Partner's behalf. |
| Territory | an area of land where the Partner is allowed to market or sell the Services. |
| Services | The Dmarcian SaaS Service and any related service. |
| Underlying Systems | the software, IT solutions, used to provide the Services, including any third party solutions, systems and networks. |

3



## Dmarcian obligations and services

**General**

1. Subject to the terms and conditions of this Agreement, Dmarcian grants Partner a limited, revocable, non-transferable, non-exclusive right, during the term of this Agreement, to:
    a. promote, market, offer to sell and sell subscriptions to the Services solely to Partner's Customers or as directly referred by Dmarcian;
    b. demonstrate the Services to prospective Customers;
    c. implement the Services;
    d. provide support services; and
    e. use Dmarcian's trade names, trademarks, service Marks, symbols and logos solely to market the Services in the Territory.
2. Each use of any Marks must be pre-approved, in writing, by Dmarcian. All use of the Marks will inure solely to the benefit of Dmarcian. Partner will promptly notify Dmarcian of:
    a. any use by any third party of the Marks; or
    b. any use by any third party of similar Marks which may constitute an infringement of the Marks.
3. Dmarcian must use best efforts to provide the Services:
    a. in accordance with the Agreement and European law, including data protection rules;
    b. exercising reasonable care, skill and diligence.

**Non exclusive**

4. Dmarcian's provision of the Services to the Partner is non-exclusive. Nothing in the Agreement prevents Dmarcian from providing the Services to any other person.

**Underlying Systems**

5. Dmarcian is responsible for procuring all Underlying Systems reasonably required for it to provide the Services in accordance with the Agreement.

## Partner obligations

**General use**

6. The Partner and its personnel must:
    a. use the Services in accordance with the Agreement solely for:
        i. the Partner's own business purposes; and
        ii. lawful purposes.
    b. Support and implement the Services by following Dmarcians deployment approach. Dmarcian will provide sufficient information to the Partner to do so.

**Customers**

7. Dmarcian may use Customer information to contact the applicable Customer in the event Partner fails to fulfill its obligations under this Agreement.
8. Partner will ensure that the Services it proposes to a prospective Customer meet the prospective Customer's requirements. Partner covenants that it will:
    a. conduct business in a manner that reflects favorably on the Services and the good name, good will, and reputation of Dmarcian;
    b. avoid deceptive, misleading, or unethical practices that are or might be detrimental to Dmarcian, the Services, or the public;
    c. make no false or misleading representations with regard to Dmarcian or the Services;

Case 1:21-cv-00067-MR   Document 35-3   Filed 05/07/21   Page 6 of 10

4



d. not publish or employ, or cooperate in the publication or employment of, any misleading or deceptive advertising material with regard to Dmarcian or the Services;
e. Ensure (prospective) customers comply with the terms and conditions on the website, as updated from time to time by Dmarcian.

9. Partner will not:
   a. market the Services to potential customers who currently subscribe to Services directly through Dmarcian. Dmarcian expressly reserves the right to market and solicit Services sales through any channels of distribution at any time, as Dmarcian deems desirable, and to promote, market and sell the Services in any manner that Dmarcian deems advisable. In addition, Dmarcian reserves the right to modify the Services at any time in its sole discretion.
   b. market the Services outside the Territory or sell the Services for use by Customers outside of the Territory;
10. Partner may only sell to individuals or entities that acquire such Services for their internal use, and not for resale, lease, loan or redistribution.

**Access conditions**

11. When accessing the SaaS Service, the Partner and its personnel must:
    a. not misrepresent authorisation to act on behalf of others or Dmarcian;
    b. not attempt to undermine the security or integrity of the Underlying Systems;
    c. not use, or misuse, the SaaS Service in any way which may impair the functionality of the Underlying Systems or impair the ability of any other user to use the SaaS Service;
    d. not attempt to view, access or copy any material or data other than that to which the Partner is authorised to access;
    e. neither use the SaaS Service in a manner, nor transmit, input or store any Data, that breaches any third party right (including Intellectual Property Rights and privacy rights) or is objectionable, incorrect or misleading; and
    f. comply with any terms of use on the website, as updated from time to time by Dmarcian.

**Authorisations**

12. Without limiting the access conditions, no individual other than a Permitted User may access or use the SaaS Service.
    a. The Partner may authorise any member of its personnel to be a Permitted User.
13. A breach of any term of the Agreement by the Partner's personnel is deemed to be a breach of the Agreement by the Partner.
14. The Partner is responsible for procuring all licences, authorisations and consents required for it and its personnel to use the SaaS Service, including to use, store and input Data into, and process and distribute Data through the SaaS Service. Dmarcian will have no liability arising from the Partner's possession, or lack of possession, of such requisite authorizations and approvals.

# Data

**Dmarcian access to Data**

13. The Partner acknowledges that:
    a. Dmarcian may require access to the Data to exercise its rights and perform its obligations under the Agreement;



b. To the extent that this is necessary, Dmarcian may authorise a member or members of its personnel to access the Data for this purpose.

## Pricing and payment

**Subscription**

14. The Services are purchased as subscriptions.

**Lead / Resell**

15. Dmarcian will pay Partner a Lead Fee as set out in the Key Details.
16. To be elligable for the payment of a Lead Fee or reseller discount, accounts must be created from the Partner dashboard and there should be relevant DMARC data in the account.
17. Partner has exclusive sales right on potential customers by creating an account in the Partner dashboard for the period of 3 months.

**Fees**

17. The Partner must pay to Dmarcian the Fees according to the Payment Terms.
18. Dmarcian will provide Partner with its then-current pricing information and the various Services terms and the overage fees. Partner acknowledges and agrees that the fees for the Services may be modified from time to time at Dmarcian's sole discretion.

**Invoicing and payment**

19. Dmarcian will provide the Partner with valid tax invoices.
20. The fees do not include any taxes, levies, duties or similar governmental assessments of any nature, including, for example, value-added, sales, use or withholding taxes, assessable by any jurisdiction whatsoever. Partner is responsible for the tax payment on taxable supplies under the Agreement.
21. Dmarcian will invoice Partner annually up front. Each invoice will include the fees for the Services for all new Customers together with any existing Customer overages. Partner acknowledges and agrees that all fees for the Services paid to Dmarcian are non-refundable.

## Intellectual property

**Ownership**

22. Title to, and all Intellectual Property Rights in, the Services, and all Underlying Systems is and remains the property of Dmarcian (and its licensors). The Partner must not dispute that ownership.
23. Title to, and all Intellectual Property Rights in, the Data (as between the parties) remains the property of the Partner. The Partner grants Dmarcian a worldwide, non-exclusive, licence to use, store, copy, make available and communicate the Data for any purpose in connection with the exercise of its rights and performance of its obligations in accordance with the Agreement.

## Confidentiality

**Obligation of confidentiality**

22. Each party must, unless it has the prior written consent of the other party:
    a. keep confidential at all times the Confidential Information of the other party;



  b. effect and maintain adequate security measures to safeguard the other party's Confidential Information from unauthorised access or use; and
  c. disclose the other party's Confidential Information to its personnel or professional advisors on a need to know basis only and, in that case, ensure that any personnel or professional advisor to whom it discloses the other party's Confidential Information is aware of, and complies with, the provisions of clauses 22a and 22b.

**Permitted disclosure**

23. The obligation of confidentiality in clause 22 does not apply to any disclosure or use of Confidential Information:
  a. for the purpose of performing the Agreement or exercising a party's rights under the Agreement;
  b. required by law;
  c. which is publicly available through no fault of the recipient of the Confidential Information or its personnel;
  d. which was rightfully received by a party to the Agreement from a third party without restriction and without breach of any obligation of confidentiality.

## Liability

**Limitation**

24. Dmarcian's liability for any direct or indirect, punitive, special, consequential or exemplary damages or loss of any kind arising from the use of the Services or otherwise under or in connection with this Agreement will be limited to the amount paid for the Services in the twelve (12) months prior to the occurence of the act or omission giving rise to such claim.
25. The Partner indemnifies Dmarcian against any liability, claim, proceeding, cost, expense (including the actual legal fees charged by the Dmarcian's solicitors) and loss of any kind arising from any actual or alleged claim by a third party that any Data infringes the rights of that third party (including Intellectual Property Rights and privacy rights) or that the Data is objectionable, incorrect or misleading.

## Termination

**Duration**

26. Unless terminated under clause 27, the Agreement:
  a. starts on the Start Date and ends on the End Date; but
  b. when Automatic Extension is set out "Yes" in the Key Details, the Agreement will automatically extend for additional periods equal to the expiring term unless either party gives the other notice of non-extension at least 30 days before the end of the relevant term.

**Termination rights**

27. Either party may, by notice to the other party, immediately terminate the Agreement if the other party:
  a. breaches any material provision of the Agreement and the breach is not:
    i. remedied within 30 days of the receipt of a notice from the first party requiring it to remedy the breach; or
    ii. capable of being remedied;



b. becomes insolvent, liquidated or bankrupt, has an administrator, receiver, liquidator, statutory manager, mortgagee's or chargee's agent appointed, becomes subject to any form of insolvency action or external administration, or ceases to continue business for any reason;
c. is unable to perform a material obligation under the Agreement for 30 days or more due to Force Majeure.

**Suspending access**

28. Without limiting any other right or remedy available to Dmarcian, Dmarcian may restrict or suspend the Partner's access to the SaaS Service where the Partner (including any of its personnel):
    a. undermines, or attempts to undermine, the security or integrity of the SaaS Service or any Underlying Systems;
    b. uses, or attempts to use, the SaaS Service:
        i. for improper purposes; or
        ii. in a manner, other than for normal operational purposes, that materially reduces the operational performance of the SaaS Service; or
        iii. has otherwise materially breached the Agreement

## Dispute

**Other provisions**

29. This Agreement prevails over all other agreements. Any amendments to this Agreement are only valid if they have been agreed by the parties in writing.
30. This agreement is exclusively governed by Dutch law.
31. The parties will exclusively submit their disputes in connection with this Agreement to the District Court of Rotterdam.
32. Before taking any court action, a party must use best efforts to resolve any dispute under, or in connection with, the Agreement through good faith negotiations.

## Signing

Signed for and on behalf of Partner,    Signed for and on behalf of Dmarcian,

……………………………………………    ……………………………………………
[PARTNER  NAME]    dmarcian Europe BV

Name: ………………………    Name: M. Groeneweg

Date: …………………………    Date: [DATE]