IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00067-MR

| | |
|---|---|
| DMARCIAN, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DMARCIAN EUROPE BV, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Attorneys' Fees and Costs [Doc. 88].

**I.     BACKGROUND**

The Plaintiff dmarcian, Inc. ("the Plaintiff" or "dInc") initiated this action for copyright and trademark infringement and related state claims against the Defendant dmarcian Europe BV ("the Defendant" or "dBV") on March 12, 2021. [Doc. 1]. On March 25, 2021, the Plaintiff filed a motion for a temporary restraining order and preliminary injunction, seeking to enjoin the Defendant from (1) making, using, distributing, and/or selling dmarcian software code/derivative works; (2) directly or indirectly using the Plaintiff's trademarks or any other similar mark, word, or name likely to cause confusion, mistake, or deceive; (3) infringing the Plaintiff's registered

copyright; (4) misrepresenting its present affiliation with the Plaintiff; and (5) interfering with customer relationships, contacting, posting false notice to, and misrepresenting falsely to customers that the Plaintiff had caused a breach of customer data. [Doc. 6 at 1-2]. On March 31, 2021, the Court denied the Plaintiff's request for a temporary restraining order and held the motion for preliminary injunction in abeyance pending further presentation of evidence and briefing by the parties. [Doc. 12].

Shortly before the preliminary injunction hearing was to be held, the Defendant filed a motion to dismiss for lack of personal jurisdiction and forum *non conveniens*. [Doc. 22]. The Court heard the Defendant's motion along with the Plaintiff's preliminary injunction motion at a hearing on April 23, 2021.

The Court issued an Order granting a preliminary injunction and denying the Defendant's motion to dismiss on May 26, 2021 ("the Preliminary Injunction Order"). [Doc. 39]. As is relevant here, paragraphs (4), (5), (6), and (7) of the Preliminary Injunction Order enjoined the Defendant, its officers, agents, servants, employees, attorneys, affiliates, and those persons in active concert or participation with it from:

(4) using the Plaintiff's trademark in any manner unless such use is accompanied by a statement which reads: "This trademark is the trademark of dmarcian, Inc. This website is produced and generated and posted by dmarcian

2

> Europe BV, which is a different entity from dmarcian, Inc. This trademark is being used at this location without the permission of dmarcian, Inc. and only pursuant to the terms of a court order allowing its temporary use during litigation between dmarcian, Inc. and dmarcian Europe BV." That statement must be at least the size of the trademark itself, as presented, or 12-point type when displayed on a 24" computer screen, whichever is larger. Such statement must appear immediately adjacent to the location where the trademark appears, and must be shown at each location where the trademark appears, whether that be on the Defendant's website, in printed material, an electronic display, or otherwise;
>
> (5) displaying any website with the "dmarcian" name unless that website includes a statement that "The dmarcian software was originally developed by dmarcian, Inc. This is not the website of dmarcian, Inc. The website of dmarcian, Inc. can be found at https://dmarcian.com." That statement must be displayed as a banner at the top of each page of the website on which the dmarcian name appears and must be of a size that is at least 12-point type when displayed on a 24" computer screen, and the reference to the website of the Plaintiff must be a link to that website;
>
> (6) redirecting, encouraging, or allowing any customer to change its service provider or payment recipient from dmarcian, Inc. to dmarcian Europe, BV; or
>
> (7) making any public statement about dmarcian, Inc. except as expressly allowed or directed herein.

[Doc. 39 at 75-77].

On June 22, 2021, the Plaintiff filed a Motion for Order to Show Cause, arguing that the Defendant was violating the Preliminary Injunction Order in four primary respects. [Doc. 43]. First, the Plaintiff argued that the

3

Defendant was "violating Paragraph (4) of the Order by failing to either post the required disclaimers or cease the use of all dmarcian domain names to redirect all global customers and potential customers to Defendant's newly established website, dmarcadvisors.com." [Id. at 2]. Second, the Plaintiff argued that the Defendant was violating Paragraphs (4) and (5) of the Order by failing to post court-required disclaimers on its websites where the use of the dmarcian name or dmarcian mark appeared. [Id.]. Third, the Plaintiff argued that the Defendant was violating Paragraph (4) of the Order by failing to post the required disclaimers where the dmarcian name and/or mark were used on its non-website publications, as well as in signature blocks in emails. [Id. at 2-3]. Finally, the Plaintiff claimed that the Defendant was violating Paragraphs (4), (6), and (7) of the Order by soliciting customers to move to dBV's platform and away from dmarcian's platform by stating that dmarcian's platform was "unsafe" and using the Plaintiff's trademarks in that communication without the required disclaimers. [Id. at 3].

On June 28, 2021, the Defendant appealed the Preliminary Injunction Order to the Court of Appeals for the Fourth Circuit. [Doc. 52]. That appeal remains pending.

The Court held a show cause hearing on July 28, 2021. Following that hearing, on August 5, 2021, the Defendant voluntarily shut down the

4

"dmarcian" domains and stopped redirecting traffic to its dmarcadvisor.com websites. [Doc. 78: Groeneweg Decl. at ¶ 5].

On August 11, 2021, the Court entered an Order ("the Contempt Order") holding the Defendant in civil contempt. [Doc. 80]. Specifically, the Court found that the Defendant had used the Plaintiff's trademark, in violation of paragraph (4), by "redirecting website traffic for various 'dmarcian' domain names to the Defendant's website without posting the relevant disclaimers that are required by the Preliminary Injunction." [Id. at 14, 21-22]. The Court rejected the other grounds asserted by the Plaintiff, finding that the Plaintiff had not shown by clear and convincing evidence that the Defendant had violated the Preliminary Injunction in the other ways alleged. [Id. at 22-23, 23-24].

As a sanction for the Defendant's contempt, the Court ordered the Defendant to pay $5,000.00 per day for each day, starting from May 29, 2021, that the Defendant continued to operate any of the websites featuring "dmarcian" domain names following the entry of the Preliminary Injunction Order. [Id. at 24-25]. While acknowledging that the Defendant had already provided some evidence of its voluntary attempts to purge its contempt, the Court gave the parties fourteen days to provide any further evidence of the Defendant's compliance or non-compliance with the Preliminary Injunction.

[Id. at 25]. The Court further ordered the Defendant to pay the Plaintiff its reasonable attorneys' fees and costs in litigating the contempt matter and directed Plaintiff to file a brief detailing its reasonable costs, fees, and expenses incurred in this action. [Id. at 27].

On August 25, 2021, the Defendant filed the Sixth Declaration of Martijn Groeneweg, addressing the Defendant's efforts at compliance with the Preliminary Injunction Order. [Doc. 84]. After receiving an extension of time to do so, the Plaintiff filed the present motion, seeking an award of fees and expenses, as well as a calculation of the total amount of sanctions owed under the Contempt Order. [Doc. 88]. The Plaintiff subsequently supplemented its motion with the filing of an additional invoice for expenses by attorney Mark Nebring of the law firm Moore & Van Allen, presumably for his work performed in reviewing the case and offering an opinion regarding the reasonableness of the hourly rates charged by the Plaintiff's attorneys. [See Doc. 100].

## II. STANDARD OF REVIEW

District courts have "inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370 (1966). "That power includes the ability to award damages and attorney's fees to an aggrieved party." Rainbow Sch., Inc. v. Rainbow Early

Educ. Holding LLC, 887 F.3d 610, 617 (4th Cir. 2018) (citing Hutto v. Finney, 437 U.S. 678, 691 (1978)).

## III. DISCUSSION

### A. Jurisdiction to Enforce Preliminary Injunction Order

As a preliminary matter, the Court notes that the Defendant has filed an interlocutory appeal of the Preliminary Injunction Order, and that this appeal is currently pending. While the Defendant sought to stay the injunction pending appeal [Doc. 59], that motion was denied [Doc. 81].

Despite the pendency of this appeal, the Court may nevertheless proceed to enforce the Preliminary Injunction Order through a finding of contempt and an award of fees and expenses. "A judge may—and should— enforce an un-stayed injunction while an appeal proceeds." Union Oil Co. v. Leavell, 220 F.3d 562, 565-66 (7th Cir. 2000); see also Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of America, AFL-CIO, 909 F.2d 248, 250 (7th Cir. 1990) (holding that "[a]n interlocutory appeal does not divest the district court of jurisdiction" where the injunction had not been stayed pending appeal). Accordingly, the Court may proceed to enforce its injunction and award fees and expenses incurred by the Plaintiff in litigating the issue of the Defendant's contempt.

7

**B. Sanctions**

The Plaintiff asks that the Court determine the amount of sanctions that have accrued under its August 11th Contempt Order. [Doc. 89 at 23 & n.6]. In response, the Defendant submits evidence that it has not "displayed any website with a 'dmarcian' domain name since May 29, 2021" and that it has "stopped all redirection from 'dmarcian' domains to DMARC Advisor websites" as of August 5, 2021. [Doc. 101 at 12 n.3; Doc. 78: Groeneweg 5th Decl. at ¶ 5; Doc. 84: Groeneweg 6th Decl., Doc. 84 at ¶¶ 11,12].

Based on the evidence presented by the parties, it appears that after the entry of the Preliminary Injunction Order on May 29, 2021, the Defendant continued to use "dmarcian" domains, without the required disclaimers, in order to redirect traffic to its DMARC Advisor websites, and that it continued such usage for 67 days, until August 5, 2021.[1] In the August 11, 2021 Order, the Court concluded that the use of such domains in order to redirect traffic to the Defendant's websites was contemptuous conduct and imposed a sanction of $5,000 per day until such contempt was purged. [Doc. 80 at 26-

---

[1] In a footnote, the Plaintiff contends that the Defendant's contemptuous conduct continued until at least August 23, 2021, due to the Defendant's use of the "dmarcian" domain in certain email addresses. [Doc. 89 at 23 n.6]. Having reviewed the evidence presented by the Plaintiff, particularly the Declaration of Ms. Duffy and its exhibits [Doc. 85], the Court does not find the use of the "dmarcian" domain in certain email addresses to fall within the parameters of conduct that the Court found to be contemptuous in its August 11th Order.

8

27]. Based on the nature and volume of the business involved, the Court concludes that this is a reasonable sanction for the Defendant's contemptuous conduct. The Defendant should have, and easily could have, redirected those domains (and used disclaimers) within a relatively short period of time after entry of the Preliminary Injunction Order in order to accurately represent the status quo. As the Defendant failed to timely do so, the Court concludes that a sanction of $335,000, representing a sanction of $5,000 per day for 67 days, is appropriate.

### C. Attorneys' Fees

The Court now turns to the issue of the Plaintiff's fees and expenses incurred in litigating the contempt issue. The Plaintiff seeks fees and expenses in the total amount of $106,937.40 for the work performed by five attorneys: Pamela S. Duffy and Katherine W. Dandy of the law firm of Sharpless McClearn Lester Duffy, PA, located in Greensboro, North Carolina; and David A. Dorey, Timothy D. Pecsenye, and Jillian M. Taylor of the law firm of Blank Rome LLP, located in Wilmington, Delaware.[2]

---

[2] The Plaintiff originally sought an award of fees and expenses in the amount of $105,945.40. [See Doc. 89]. After deducting two time entries of $1,056.00 that were included in error and adding the invoice of attorney Mark Nebring in the amount of $2048.00 as an expense, the total award sought by the Plaintiff comes to $106,937.40. [See Doc. 103 at 10].

9

In awarding attorneys' fees and expenses incurred with respect to a contempt proceeding, the Court "should first focus on the time and labor expended and the customary fees for like work." In re Gen. Motors Corp., 110 F.3d 1003, 1032 (4th Cir. 1997); Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994) ("The starting point for establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate."). After determining this initial amount, the Court must then "consider whether to adjust the fee on the basis of other factors, briefly explaining any adjustment." In re Gen. Motors Corp., 110 F.3d at 1032 (quoting Colonial Williamsburg Foundation v. Kittinger Co., 38 F.3d 133, 138 (4th Cir. 1994). In exercising its discretion in the application of this lodestar method, the Court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

10

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Spell v. McDaniel, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)).  "Although the Court considers all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable."  Firehouse Restaurant Group, Inc. v. Scurmont LLC, No. 4:09-cv-00618-RBH, 2011 WL 4943889, at *12 (D.S.C. Oct. 17, 2011) (citing EEOC v. Service News Co., 898 F.2d 958, 965 (4th Cir. 1990)).  The burden is on the fee applicant to justify the reasonableness of the requested fee.  See Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

**1. Time and Labor Expended**

The Court begins its lodestar analysis with considering the time and labor expended by the Plaintiffs' attorneys.  "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'"  Doe v. Kidd, 656 F. App'x 643, 656 (4th Cir. 2016) (quoting in part Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

The Plaintiff contends that its attorneys spent a total of 204.50 hours of attorney time litigating the Defendant's contempt, including preparing the fee petition.  [Doc. 89].  In its Reply brief, the Plaintiff concedes that 4.1 of these hours were included by mistake.  [Doc. 103 at 10].  Accordingly, the

11

Plaintiff seeks a revised total of 200.40 hours in attorney time.[3] Upon review of the attorneys' billing records, the Court finds the total amount of time and labor expended to be reasonable.

## 2. Novelty and Difficulty of the Questions Raised

This case presents novel and difficult questions, as it involves an international dispute over the ownership of certain intellectual property, with complex branding and contractual issues. The contemptuous conduct at issue involved the use of the Plaintiff's trademark as a domain name to market the Defendant's services, as well as the Defendant's rebranding efforts over multiple websites. Accordingly, this factor weighs in favor of the reasonableness of the requested award.

## 3. Skill Required to Properly Perform the Legal Services

The attorneys employed significant technical knowledge and expertise in analyzing the Defendant's conduct and ascertaining whether it was complying with the Court's Preliminary Injunction. Accordingly, this factor weighs in favor of the reasonableness of the requested award.

---

[3] The Defendant argues that .5 hours charged by Ms. Duffy for seeking an extension of time is not attributable to any conduct by the Defendant, and thus should not be included in the hours to be compensated. [Doc. 101 at 20]. The Court cannot say that the .5 hours charged is excessive, redundant, or unnecessary, and therefore, this charge shall be included in the total number of hours sought.

12

Case 1:21-cv-00067-MR   Document 124   Filed 06/09/22   Page 12 of 20

## 4. Opportunity Costs of Litigation

Under the relevant factors, an "attorneys' opportunity costs include the higher rates they would have otherwise charged in other cases and projects." Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC, 747 F. Supp. 2d 568, 596 (W.D.N.C. 2010). Here, litigating the contempt motion involved considerable effort to ascertain compliance and to attempt to bring the Defendant into compliance. This prevented the Plaintiff's counsel from devoting time to other matters. [See Doc. 85: Duffy Decl. at ¶ 6]. Accordingly, this factor weighs in favor of the reasonableness of the requested award.

## 5. Customary Fee for Similar Work

As the Fourth Circuit has recognized:

> Determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

13

Robinson v. Equifax Info. Svcs., LLC, 560 F.3d 235, 244 (4th Cir. 2009) (citing Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)).  In addition to consideration of specific evidence regarding the prevailing market rate, the Court may rely upon its own knowledge and experience of the relevant market in determining a reasonable rate.  See Rum Creek Coal, 31 F.3d at 179 ("[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.").

The Plaintiff requests compensation for time spent by five attorneys at hourly rates between $945 and $240.  The Defendant agrees that Ms. Duffy's $330 rate and Ms. Dandy's $240 rate are reasonable, but it objects to the rates charged by the Plaintiff's Blank Rome attorneys because they "are in excess of the prevailing market rates in this District for litigation of this type." [Doc. 101 at 16-17 (quoting Textron Fin. Corp. v. Seven Falls Golf & River Club, LLC, No. 1:09cv312, 2011 WL 251115, at *9 (W.D.N.C. Jan. 25, 2011)].  Mr. Dorey charged the Plaintiff $795 per hour, more than twice as much per hour as Ms. Duffy.

Based on the Court's own experience and familiarity with the hourly rates charged in Western North Carolina, the Court finds that this rate is unreasonable.  Accordingly the Court will reduce Mr. Dorey's hourly rate to $330, the same rate as charged by Ms. Duffy.

14

The Court will likewise reduce the hourly rates charged by Mr. Pecsenye and Ms. Taylor. Like Ms. Dandy, Mr. Pecsenye and Ms. Taylor are not admitted to the Bar of North Carolina or this Court. Furthermore, they are not attorneys of record in this case. The Court finds that the work they performed assisting Mr. Dorey should be compensated at $240 per hour, the same rate as the work Ms. Dandy performed to assist Ms. Duffy. Cf. Priestley v. Astrue, 651 F.3d 410, 419 (4th Cir. 2011) (holding that work performed by non-admitted attorneys could be compensated at "the prevailing market rate for services of the kind provided by them, based on their training, skill, and experience; provided that in no event may this rate be less than the rate traditionally used for summer associates, paralegals, and other nonattorneys performing legal work").

### 6. Attorneys' Expectation at Outset of Litigation

The Plaintiff's attorneys have charged their fees on an hourly basis. The expectations of the Plaintiff's counsel were not limited to either a fixed fee agreement or by the risk inherent in a contingency fee arrangement.

### 7. Time Limitations

The circumstances imposed significant time constraints on the Plaintiff's counsel. Prompt action was needed in order to address the

Defendant's continued use of the Plaintiff's trademark to redirect traffic from "dmarcian" domains to the Defendant's DMARC Advisor website.

**8.     Experience, Reputation, and Ability of Counsel**

Litigating this contempt issue required work to be performed by experienced counsel, with familiarity with the areas of intellectual property law, international law, contract law, and tort law.

**9.     Undesirability of the Case in the Legal Community**

This factor is not applicable in this case.

**10.    Relationship between the Attorneys and Clients**

Neither Ms. Duffy nor Mr. Dorey had a prior relationship with the Plaintiff. Accordingly, this factor is not applicable here.

**11.    Fee Awards in Similar Cases**

The Plaintiff cites cases within the Fourth Circuit wherein awards of attorneys' fees of $60,000 and approximately $70,000 were approved in cases involving contempt motions. [See Doc. 89 at 22 (citing Norfolk S. Ry. Co. v. Baltimore and Annapolis R.R. Co., No. 4:13-cv-01264, 2016 WL 702977, at *2 (D.S.C. Feb. 23, 2016); SunTiger Inc. v. Telebrands Advert. Corp., No. 97-423-A, 2004 WL 3217731, at *8 (E.D. Va. Mar. 29, 2004))]. The award of fees in a contempt case, however, is heavily dependent upon the nature of the contempt, the amount of work required to address the

16

contemptuous behavior, and the amount of time required to litigate the motion. As such, the fact that some courts have awarded fees in excess of $60,000 does not weigh heavily in favor of awarding the full fee requested in this case.

**12. Amount Involved and Results Obtained**

As noted by the Supreme Court, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). Where a plaintiff prevails on only some of the claims made, the Court may adjust the number of hours downward. Rum Creek Coal, 31 F.3d at 174.

The Plaintiff asserted that the Defendant had violated the Preliminary Injunction Order in four principal ways. [Doc. 89]. However, the Plaintiff ultimately prevailed on only one of these theories, namely, that the Defendant's redirection of "dmarcian" domains to its DMARC Advisor website violated paragraph (4) of the Preliminary Injunction. Reviewing the billing records of the Plaintiff's attorneys, the Court is unable to discern precisely how much of their time was spent in litigating this sole successful claim. Accordingly, in the exercise of its discretion, the Court will apply an across-the-board reduction of the Plaintiff's requested hours by 60% in order

17

to account for the degree of success obtained by the Plaintiff in pursuing the contempt motion.

After consideration of all the above factors, the Court concludes that an overall reduction of the hours claimed by the Plaintiffs' attorneys by 60% is appropriate. Multiplying those reduced hours by the reasonable hourly rates determined by the Court results in the following lodestar amount:

| | | |
|---|---|---|
| Pamela S. Duffy | 48.4 hours x $330.00 = | $15,972 |
| Katherine W. Dandy | 9.8 hours x $240.00 = | 2,352 |
| David A. Dorey | 20.5 hours x $330.00 = | 6,765 |
| Tim Pecsenye | .3 hours x $240.00 = | 72 |
| Jillian Taylor | 2.2 hours x $240.00 = | 528 |
| TOTAL FEES | | $25,689 |

For the reasons stated herein, the Court finds and concludes that this lodestar amount constitutes a reasonable attorneys' fee in this matter.

**B.  Expenses**

In addition to an award of attorneys' fees, the Plaintiff seeks an award of expenses for the following: travel-related costs for Ms. Duffy in the amount of $567.39 [Doc. 85-2]; travel-related costs for Mr. Dorey in the amount of $1,455.71 [Doc. 86]; expert witness fees in the amount of $6,798.30 [Doc.

85-3]; and fees charged by attorney Mark Nebring in the amount of $2,048.00 [Doc. 100-1].

The Court finds that the attorneys' claimed expenses for travel are reasonable and should be awarded in full.

As for the claimed expert witness fees, the Plaintiff states that its expert, Phillip Blazer Catzen, was hired to document the Defendant's ongoing violations, and that his work was necessary "given the Defendant's refusal to allow access to the websites." [Doc. 89 at 10]. According to his invoice, Mr. Catzen was primarily engaged in searching the Defendant's websites for references to the Plaintiff's trademark. [See Doc. 49 at 9; see also Doc. 85-3]. Mr. Catzen's work was unrelated to the issue of domain redirection, which was the sole ground on which this Court found contempt. As such, the Court finds no basis for awarding the Plaintiff the fees it paid to Mr. Catzen as part of this award.

Finally, it appears that the Plaintiff is seeking recovery of $2,048 paid to attorney Mark Nebring for work performed in reviewing the case and submitting an affidavit regarding the reasonableness of the hourly rates charged by the Plaintiff's attorneys.[4] [Doc. 100-1]. The Plaintiff offers no

---

[4] The Court notes that Mr. Nebring charges $640 per hour for his work, nearly double the hourly rate deemed reasonable for the work performed by the Plaintiff's counsel in this case.

19

explanation as to how these fees are compensable as expenses in this proceeding. In the exercise of its discretion, the Court declines to award these fees as expenses.

Accordingly, the Court will award the Plaintiff a total of $2,023.21 in expenses.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Attorneys' Fees and Costs [Doc. 88] is **GRANTED** to the extent that the Plaintiff is hereby awarded $25,689.00 in attorneys' fees and $2,2023.21 in expenses, for a total award of **$27,712.21**, related to litigating the matter of the Defendant's contempt.

**IT IS FURTHER ORDERED** that the Defendant shall pay to the Plaintiff Three Hundred and Thirty Five Thousand Dollars ($335,000.00) as a sanction for its contemptuous conduct as found in the Court's August 11, 2021 Order.

**IT IS SO ORDERED.** Signed: June 9, 2022

Martin Reidinger
Chief United States District Judge

20

Case 1:21-cv-00067-MR   Document 124   Filed 06/09/22   Page 20 of 20