## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:21-cv-00067-MR

DMARCIAN, INC.,                    )
                                   )
              Plaintiff,           )
                                   )
      vs.                          )         **O R D E R**
                                   )
DMARC ADVISOR BV,                  )
f/k/a dmarcian Europe BV,          )
                                   )
              Defendant.           )
_____   )

**THIS MATTER** is before the Court on the Plaintiff's Motion for Antisuit Injunction and/or to Require Correction of Misrepresentations Made to the Dutch Court [Doc. 185]. The Court held a hearing on this motion on June 27, 2023.

## I.    BACKGROUND

### A.    The Dutch Interim Proceedings

In late 2019, a dispute arose between dmarcian, Inc. ("dmarcian") and the Defendant DMARC Advisor BV, formerly known as dmarcian Europe BV ("DMARC Advisor"), and their principals over the ownership, licensing, and distribution of certain computer code (the "Software"), which was the subject of a January 2016 agreement between dmarcian and DMARC Advisor. [Doc.

26-1 ¶¶ 16-18; Doc. 26-6 at ¶ 2.18].  Although the parties attempted to negotiate a resolution to their dispute, these negotiations ultimately broke down, and on December 6, 2019, dmarcian's principal, Tim Draegen ("Draegen"), temporarily suspended DMARC Advisor's access to the Software.  [Doc. 26-2 at ¶ 2.19].

Two days later, dmarcian restored DMARC Advisor's access to the Software [Doc. 26-6 at ¶ 2.20], and the parties resumed negotiating a potential license agreement or other solution to their dispute over ownership of the Software.  [Doc. 26-1 at ¶ 19].  When negotiations again stalled, Draegen (then a DMARC Advisor shareholder) sought to remove DMARC Advisor's minority shareholder, TDX, as DMARC Advisor's director.  [Id. at ¶ 20].  In July 2020, Draegen requested a Dutch shareholder meeting for that purpose.  [Id.].  TDX responded by submitting an application (akin to a motion for injunctive relief) to the Enterprise Court of the Amsterdam Appellate Court, seeking to block Draegen from removing TDX.[1]  [Id. at ¶ 22].

In August 2020, both Draegen and TDX asked the Enterprise Court in the Netherlands to order an investigation into DMARC Advisor's policies and course of affairs.  [Doc.. 26-2 at ¶¶ 1.3, 1.4].  On September 7, 2020, the

_____

[1] dmarcian was not a party to these interim proceedings in the Enterprise Court.

Enterprise Court ordered such investigation and appointed an independent director with a decisive vote "to try to obtain clarity as to the question of where the intellectual property rights to the software and software applications developed by [DMARC Advisor] (and [DMARC Advisor's Bulgarian subsidiary]) lie." [Doc. 10-1 at ¶ 3.5].

While that investigation was ongoing, on January 22, 2021, dmarcian told DMARC Advisor that it intended once again to terminate access to the parties' shared computer systems where the parties made the Software available to their respective customers. [Doc. 26-1 at ¶ 30; Doc. 26-5 at ¶ 4]. DMARC Advisor objected to this termination as inconsistent with the parties' agreement and the pending investigation, and it asked the District Court of Rotterdam ("the Rotterdam Court") to enjoin the termination. [Doc. 26-5 at ¶ 4].

On January 29, 2021, DMARC Advisor summoned dmarcian and Draegen to appear at a hearing on February 1, 2021, before the Rotterdam Court. [Doc. 26-5 at ¶ 11]. Draegen and dmarcian did not appear that day. [Id. at ¶ 12]. In an order entered February 1, 2021, the Rotterdam Court entered a default against dmarcian and Draegen and directed them to grant DMARC Advisor access to the computer systems necessary to service its customers. [Doc. 26-3 at ¶ 3.3]. The court also fixed the coercive penalty

3

for non-compliance at €20,000 per day, up to €500,000, for both dmarcian and Draegen.  [Id. at ¶ 3.4].

## B.    The Commencement of the U.S. Litigation

On March 12, 2021, dmarcian filed its Complaint in this Court, asserting claims for copyright and trademark infringement as well as related state claims.  [Doc. 1].  On March 25, 2021, dmarcian submitted a motion for a temporary restraining order and preliminary injunction. [Doc. 6].  The Complaint was later amended, with the most recent amendment made on June 22, 2021. (Doc. 51].

On April 19, 2021, DMARC Advisor filed a motion to dismiss based on a lack of personal jurisdiction and forum non conveniens.  [Doc. 22].  On May 26, 2021, this Court issued an Order enjoining DMARC Advisor and its agents and attorneys and denying DMARC Advisor's motion to dismiss. [Doc. 39].  On June 25, 2021, DMARC Advisor appealed the Preliminary Injunction and the Order denying its motion to dismiss.  [Doc. 52].  On June 28, 2021, the Court issued a Show Cause Order based on allegations of DMARC Advisor heaving violated the Preliminary Injunction Order.  [Doc. 54].  Following a July 28, 2021 hearing, the Court issued Orders on August 11, 2021 holding DMARC Advisor in civil contempt of the Preliminary

4

Injunction and amending the Preliminary Injunction to clarify certain provisions. [Docs. 76, 80, 82].

On May 13, 2022, the Court issued an Order allowing discovery to proceed despite the pendency of the appeal. [Doc. 123].

On February 14, 2023, the Fourth Circuit issued its opinion affirming the entry of the Preliminary Injunction and the denial of DMARC Advisor's motion to dismiss. [Doc. 168].

## C. The Dutch Interim Proceedings Continue

While the U.S. litigation was getting underway, on May 31, 2021, the Rotterdam Court issued a judgment rejecting dmarcian's and Draegen's objections to the February 1, 2021, injunction requiring them to restore DMARC Advisor's access to the shared computer systems. [Doc. 47-2]. The Rotterdam Court also upheld the previous €500,000 coercive penalty for non-compliance and imposed a new coercive penalty of €20,000 per day for further disobedience, with a maximum aggregate penalty of €1 million for both dmarcian and Draegen. [Id. at ¶¶ 5.4, 5.6].

On September 3, 2021, the year-long investigation of DMARC Advisor by the Dutch Enterprise Court concluded. [See Doc. 93-6]. The court-appointed investigator submitted a report, which described the history of the parties' relationship and found that, under applicable Dutch law, dmarcian

5

had no justification for terminating the January 2016 agreement with immediate effect. [Doc. 93-2 at ¶¶ 7.11–7.13]. The investigator further stated that it "is plausible that [dmarcian] and [DMARC Advisor] jointly have copyrights to (the majority of) the source code of version 2.0," [id. at ¶ 7.20], and that if "the parties continue to use the software without mutual consent, they are mutually infringing each other's copyright to the source code," [id. at ¶ 7.22].

### D. The Commencement of Proceedings on the Merits in the Netherlands

Following the conclusion of the Enterprise Court proceedings, on October 11, 2021, DMARC Advisor filed a writ of summons (the Dutch equivalent of a civil complaint) in the Rotterdam District Court (the "Rotterdam Complaint"). In the Rotterdam Complaint, DMARC Advisor asserts ownership of the copyright in the Software "by operation of law under Article 7 of the Dutch Copyright Act" [Doc. 106-5 at ¶ 6.22]; asserts the creation of an original work of copyright under E.U. law [see id. at ¶ 6.28]; contends that use of the Software by dmarcian "would . . . infringe [DMARC Advisor's] copyright under Article 26 of the Dutch Copyright Act and the copyright equivalents of other countries where [dmarcian] does business [id. at ¶ 6.39]; and requests that the Rotterdam Court "partition the community

6

of [dmarcian] and [DMARC Advisor] in respect of computer programs to which they jointly hold the copyright pursuant to Article 3:178 of the Dutch Civil Code" [id. at ¶ 6.40].

Pursuant to Article 12 of the Dutch Civil Law, dmarcian sought to stay the Rotterdam proceedings in favor of the U.S. case. [See Doc. 174-2 at ¶¶ 1.1, 5.1]. DMARC Advisor opposed dmarcian's request for a stay. [Id. at ¶¶ 5.6, 5.7]. In support of its opposition, DMARC Advisor relied on a May 2, 2022 affidavit from one of its U.S. counsel, Pressly Millen. [Id. at ¶ 5.8]. In his Affidavit, Mr. Millen asserted, in pertinent part, as follows:

> 16. As a general matter, U.S. courts recognize that "[i]ntellectual property" involves "separate and independent rights arising from the unique laws of each nation." *Black & Decker Corp. v. Sanyei America Corp.,* 650 F. Supp. 406, 409 (N.D.Ill.1986) (discussing copyright and trademark laws). Neither U.S. copyright law nor U.S. trademark law applies extraterritorially. *See GB Mktg. USA Inc. v. Gerolsteiner Brunnen,* 782 F. Supp. 763, 772 (W.D.N.Y. 1991) ("Where copyright infringement occurs both inside and outside the United States, the [U.S.] district court has jurisdiction, but only over the U.S. infringement."). For that reason, **the North Carolina litigation, which pleads only violations of *U.S.* copyright and trademark law**, is "incapable of resolving infringement under foreign law," *e.g.*, Dutch law. *Zynga, Inc. v. Vostu USA, Inc.,* 816 F. Supp. 2d 824, 829 (N.D. Cal. 2011) (U.S. court refusing to enjoin Brazilian copyright action).

> 17. For these reasons (and notwithstanding the fact that the North Carolina Litigation is currently on appeal challenging both jurisdiction and failure of the court to apply the doctrine of *forum non conveniens* in order to dismiss the case), **determinations**

**to be made by the U.S. court in the North Carolina Litigation do not concern the same subject matter as the subject matter before the Dutch court**. In other words, **the primary subject matter of the North Carolina Litigation is alleged infringement of the intellectual property within the U.S.** while the subject matter of the Dutch proceedings is related to the relationship between the parties with respect to their distribution agreement, co-ownership of the software code, and the determination of the penalties previously imposed.

[Doc. 186-1: Millen Aff. at ¶¶ 16-17] (emphasis added).

On September 13, 2022, DMARC Advisor's Dutch counsel, A.P. Meijboom, filed pleading notes (essentially a brief) in the Rotterdam proceedings, describing the U.S. proceedings to the Dutch court as follows:

4.1 A month and a half after [DMARC Advisor] filed for summary judgment against [dmarcian] and Draegen in Rotterdam on January 28, 2021, and received default judgment on February 1, 2021, [dmarcian] addressed the U.S. reehter [sic] in North Carolina on March 12, 2021 .... Unlike in Dutch procedural law, a plaintiff in the United States can start a case and gradually adjust his claims and basis. **Therefore, it cannot be said that,** translated to Dutch proportions, [dmarcian] in the United States on March 12, 2021, **a case on the merits has begun.**

4.2 [dmarcian], in fact, first sought a Temporary Restraining Order . . . .

4.3 Also, [dmarcian] (still in the same case) sought *injunctive relief* (i.e., a preliminary injunction)—for [DMARC Advisor's] alleged infringement of U.S. copyright, the Lanham Act (trademark law), local know-how and for "tortuous [sic] interference" with [dmarcian's] agreements with its U.S. customers because [DMARC Advisor] allegedly persuaded a customer to use its European

8

instance [sic], based on an amended claim dated April 7, 2021—for which the court did assert jurisdiction, and on May 26, 2021, granted the claims to some extent. [DMARC Advisor] appealed the May 26, 2021 preliminary injunction (both jurisdiction and sentencing) on June 25, 2021, and the Court of Appeals 4th Circuit is expected to enter judgment by the end of the year.

4.4    The May 26, 2021 Order is a contempt order . . . and not a judgment on the merits . . . .

4.5    . . . [O]n May 22, 2022, the U.S. court commenced proceedings on the merits and ultimately issued a pretrial order on July 11, 2022, setting forth a roadmap for the continuation of the proceedings . . . to the effect that the parties first conduct a discovery (in the American system, this is essentially gathering evidence for the purpose of presenting evidence at oral argument—the *trial*), to be completed by the end of February 2023.  The final claim is filed through motions, and not later than March 31, 2023.  The substantive, oral hearing (the *trial*) will take place on or after September 5, 2023.

4.6    In the meantime, the parties are still required to try a mediation, which must be completed by March 15, 2023 ....

4.7    **There is therefore no question of the North Carolina judge being the first adjudicated judge on the merits** in the spirit of Article 12 Rv.  **The U.S. court has only granted injunctive relief**, and it will take until March 2023 for Oberhaupt[2] to determine the final bases and claims of [dmarcian] in the U.S. proceedings on the merits (if the North Carolina court's finding of jurisdiction has not been overturned by the Court of Appeals by then, or the appeal does not result in further delay).

_____

[2] While it is unclear whether "Oberhaupt" has a particular meaning in the Dutch language, the Court is aware that "Oberhaupt" in German means "chief."  The Court therefore assumes that this is a reference to the undersigned, who is currently serving as the Chief Judge of the Western District of North Carolina.

9

4.8    In the present case, **the summons was served on [dmarcian] and Draegen on October 11, 2021, making the Rotterdam District Court the court first asked to rule on the parties' disputes on the merits.**

4.9    For this reason alone, therefore, the Rotterdam District Court should hear the case expeditiously and not adjourn until the U.S. court has issued a judgment on the merits.

[Doc. 173-1: Meijboom Aff. at ¶¶ 4.1-4.9] (footnotes omitted) (bold emphasis added).

On May 20, 2022, while dmarcian's motion to stay the Dutch proceedings was pending, DMARC Advisor filed a separate preliminary relief proceeding in the Rotterdam Court. [Doc. 174-1]. In that filing, DMARC Advisor asserted that it is a co-copyright holder of the Software and contended that it "also has an interest in [dmarcian] being enjoined from changing the Software – except for repairing errors." [Id. at ¶ 6.16]. DMARC Advisor explicitly asked the Rotterdam Court for a "mirror image" of this Court's Preliminary Injunction, seeking to enjoin dmarcian from "altering the Software, except for modifications which are necessary to comply with the other orders based on the judgment to be rendered in this matter or to correct demonstrable errors." [Id. at 50].

On July 18, 2022, the Rotterdam Court granted DMARC Advisor's request for preliminary relief and entered an order which, among other

things, "[p]rohibits [d]marcian . . . from altering the Software without [DMARC] Advisor's consent, except for the modifications that are necessary to comply with other orders based on this judgment and correction of demonstrable errors." [Doc. 141-2 at ¶ 7.3].

On December 14, 2022, the Rotterdam Court denied dmarcian's request to stay (referred to as a "lis pendens appeal") the Rotterdam action that had been initiated on October 11, 2021. [Doc. 173-2]. In denying the stay, the Rotterdam Court accepted DMARC Advisor's representation that the U.S. case did not "commence" until May 22, 2022:

> 5.35. The question remains whether the American proceedings that dmarcian Inc. bases its lis pendens appeal on were instituted earlier than the present case . . .

> 5.36. Since in the present case the day of summons is October 11, 2021, cleze case is pending pursuant to a11icle 125 paragraph I Rv from that day.

> 5.37. **During the oral hearing of I September 4, 2022, [DMARC Advisor] explained very concretely and further substantiated with documents that in the U.S. proceedings that dmarcian Inc. underlies its lis pendens appeal to date only decisions of a provisional nature (injunctive relief) have been rendered and that the court in those proceedings did not commence proceedings on the merits until May 22, 2022.** dmarcian Inc. has left this exposition of [DMARC Advisor] undisputed and the court assumes that the decisions rendered before May 22, 2022 should be considered as preliminary injunctive relief under the applicable procedural law.

11

5.38. A procedure for obtaining provisional relief is not a procedure that is relevant in the present context. **Article 12 of the Dutch Code of Civil Procedure requires that in the foreign proceedings a judgment can be given that is capable of recognition and, if applicable, enforcement in the Netherlands.** With regard to that requirement, the Court considers that it is implicit in that requirement that the foreign decision must have or be able to acquire res judicata in the Netherlands. Under Dutch civil procedural law, a summary judgment is not subject to res judicata . . . . The court considers that this applies equally, and on the same grounds, to a decision of a foreign court that should be considered as an interim injunction . . . .

5.39. The fact that, in the American proceedings, it is not a separate legal proceeding but a preliminary phase of the proceedings does not alter the fact that the ratio of the lis pendens rule precludes taking this first phase into account. After all, that ratio is that **if proceedings have been commenced simultaneously in two jurisdictions that can lead to a decision that can become res judicata, the older proceedings take precedence.** The assessment of the lis pendens appeal of dmarcian Inc. is therefore limited to the bidder dispute initiated by the American court on May 22, 2022.

[Id.at 17 §§ 5.35-5.39] (errors uncorrected)[3] (emphasis added). The Rotterdam Court has set a July 5, 2023 trial date to determine the parties' rights in the very Software at issue in the present case.

---

[3] This Judgment was translated into English by an unknown entity and contains a number of typographical errors. The Court presents the language of the translated Judgment without corrections.

### E. The Hague Appellate Court Judgment Reversing the Rotterdam Court's Interim Relief Judgments

Meanwhile, on May 23, 2023, the Hague Appellate Court reversed the Rotterdam Court judgments dated February 1, 2021 and May 31, 2021 that afforded interim relief to DMARC Advisor. Specifically, the Hague Appellate Court ruled that DMARC Advisor's "claims cannot be allowed at this point, nor [were] they allowed at the time of the judgment amending the default judgment." [Doc. 202-1 at ¶ 4.7]. The Hague Appellate Court set aside/reversed the portions of the February 1 and May 31, 2021 decisions that had favored DMARC Advisor, including the award of sanctions against dmarcian and Draegen and the requirement that dmarcian provide DMARC Advisor access to the shared computer system. [Id. at 7]. As the unsuccessful party, DMARC Advisor was ordered to pay the costs of the proceedings. [Id. at 7-8].

## II. DISCUSSION

### A. Antisuit Injunction

By the present motion, dmarcian moves the Court to enter an antisuit injunction to preliminarily enjoin DMARC Advisor from proceeding on its Dutch claims as to copyright ownership and the terms of the parties' contract

and breach thereof until the present litigation (hereinafter referred to as "the U.S. action") is tried on its merits.  [Doc. 185].

In the seminal case of Laker Airways Ltd. v. Sabena, Belgian World Airlines, the D.C. Circuit recognized the well-settled principle that "American courts have power to control the conduct of persons subject to their jurisdiction to the extent of forbidding them from suing in foreign jurisdictions."  731 F.2d 909, 926 (D.C. Cir. 1984).  It is also generally recognized, however, that "parallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one jurisdiction which can be pled as res judicata in the other."  Gau Shan Co. v. Bankers Trust Co., 956 F.2d 1349, 1352 (6th Cir. 1992) (quoting in part Laker Airways, 731 F.2d at 926-27).  Accordingly, "injunctions 'restraining litigants from proceeding in courts of independent countries are rarely issued.'"  Gau Shan, 956 F.2d at 1352 (quoting in part Laker Airways, 731 F.2d at 927).

In determining whether to issue an antisuit injunction, the Court must first determine as a threshold inquiry whether the parties and the issues in the two disputes are the same.  See BAE Sys. Tech. Solution & Servs., Inc. v. Republic of Korea's Defense Acquisition Program Admin., 884 F.3d 463, 479 n.15 (4th Cir. 2018).  Here, although there is a significant overlap of

14

parties and issues in both the U.S. and Dutch actions, they are not identical. In the Dutch proceeding, DMARC Advisor asserts a number of claims against Tim Draegen; however, Draegen is not a party to the U.S. action. Thus, enjoining DMARC Advisor from proceeding in the Dutch litigation would effectively prohibit it from pursuing any relief at all from Draegen.

Moreover, while there is substantial similarity between the claims asserted in each of these actions, the claims asserted in the Dutch action are markedly different from the U.S. action. In the U.S. action, dmarcian is asserting intellectual property claims under U.S. laws, including claims for copyright infringement, trademark infringement, and for false designation. [See Doc. 51]. In the Rotterdam Court proceeding, DMARC Advisor is asserting claims under Dutch, Bulgarian and E.U. copyright laws and Dutch contract and tort law, and also seeking "to determine the amount of penalties forfeited by [dmarcian] and Draegen." [Doc. 189-1 at ¶ 1.4]. The assertion of the Dutch contract and intellectual property claims as well as the separate claim for the penalty payments render the Dutch proceeding significantly different from the U.S. action.

Even if the Plaintiff could satisfy these basic threshold requirements, consideration of the relevant factors would still weigh against the entry of an antisuit injunction here. The circuits are split regarding the proper standards

to apply in determining whether a foreign antisuit injunction should issue. The First, Second, Third, Sixth, and District of Columbia Circuits have adopted the  so-called "conservative approach," by which a foreign antisuit injunction will issue "only if the movant demonstrates (1) an action in a foreign jurisdiction would prevent United States jurisdiction or threaten a vital United States policy, and (2) the domestic interests outweigh concerns of international comity."  Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 491 F.3d 355, 359 (8th Cir. 2007) (collecting cases).  The Fifth and Ninth Circuits, on the other hand, utilize the "liberal approach," "which places only modest emphasis on international comity and approves the issuance of an antisuit injunction when necessary to prevent duplicative and vexatious foreign litigation and to avoid inconsistent judgments."  Id. at 360.  While the Fourth Circuit has not expressly adopted either of these standards, it has recognized that under either approach, "international comity remains a significant consideration."  BAE Sys., 884 F.3d at 479.

Here, consideration of principles of international comity weigh against enjoining DMARC Advisor from proceeding with the Rotterdam Court litigation.  Although the issuance of an antisuit injunction does not directly interfere with the jurisdiction of the foreign court, it would "effectively restrict the foreign court's ability to exercise its jurisdiction."  Laker Airways, 731 F.2d

16

at 927.  Such action "conveys the message, intended or not, that the issuing court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility." Goss Int'l, 491 F.3d at 360 (citation omitted).

Moreover, should this Court employ an anti-suit injunction, it is entirely possible that the Rotterdam Court could do the same.  "If both the foreign court and the United States court issue injunctions preventing their respective nationals from prosecuting a suit in the foreign forum, both actions will be paralyzed and neither party will be able to obtain any relief."  Gau Shan, 956 F.2d at 1354-55.  "The more readily courts resort to this extraordinary device, the more frequently this sort of undesirable stalemate will occur."  Id. at 1355.

In arguing for an antisuit injunction, dmarcian cites to the factors considered in the "liberal approach," include the need to avoid duplicative (and therefore vexatious) foreign litigation and to avoid inconsistent judgments.  Such factors, however, are always "likely to be present whenever parallel actions are proceeding concurrently."  Id. at 1355 (quoting China Trade and Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987)).  As such, reliance on these factors "is *prima facie* inconsistent with the rule permitting parallel proceedings in concurrent *in personam* actions."

Laker Airways, 731 F.2d at 928; see also Gau Shan, 956 F.2d at 1355 ("An antisuit injunction based upon these factors would tend to debilitate the policy that permit parallel actions to continue and that disfavors antisuit injunctions."). Accordingly, courts have held that such factors are more properly considered in a motion for dismissal for forum *non conveniens* than a motion for antisuit injunction. See Laker Airways, 731 F.2d at 928. Moreover, these factors "do not outweigh the important principles of comity that compel deference and mutual respect for concurrent foreign proceedings." Id. at 928-29.

Here, dmarcian contends that the Dutch proceedings pose a threat to this Court's jurisdiction, in that DMARC Advisor is seeking in the Dutch proceeding "an earlier adjudication of copyright ownership and infringement," which it characterizes as "an effort to undermine the jurisdiction of this Court to adjudicate the parties' rights in relation to the source code." [Doc. 187 at 20]. As dmarcian concedes, however, "the Dutch Court cannot determine issues arising under US copyright law." Id. Further, while dmarcian argues that "[DMARC Advisor] will likely attempt to bind dmarcian to rulings on the underlying contractual relationship" in the Dutch litigation [id.], it is *this Court* that will decide whether any forthcoming Dutch rulings are, in fact, binding

on the parties in the U.S. litigation. In short, nothing that the Dutch Court does or has done poses a threat to this Court's jurisdiction.

For all of these reasons, the Court in the exercise of its discretion declines to issue an antisuit injunction in this case.

## B.    Correction of Misrepresentations

Either in addition to or as an alternative to an antisuit injunction, dmarcian asks the Court to require DMARC Advisor to correct certain misrepresentations made to the Dutch Court regarding the status of the U.S. case.

As noted *supra*, dmarcian previously sought a stay of the Dutch proceedings in favor of the U.S. case. In opposing dmarcian's request, DMARC Advisor submitted the affidavit of American counsel, Pressly Millen, who represented to the Dutch Court that the U.S. litigation involves only violations of U.S. copyright and trademark law only *within the U.S.* and therefore does not concern the same subject matter as the litigation before the Dutch Court. [Doc. 186-1: Millen Aff. ¶¶ 16-17]. Mr. Millen conceded at the hearing on this matter, however, that there is a degree of overlap of claims asserted in the U.S. and Dutch litigation. This representation is also clearly contrary to this Court's determination, just months earlier, that both

the Copyright Act can be applied extraterritorially based on the facts presented in this case.[4]  [Doc. 39 at 48-49].

Mr. Millen's Affidavit also wrongly implies that issues of copyright ownership and the terms of the parties' agreement are not at issue in the U.S. case.  However, dmarcian's original Complaint makes numerous allegations placing the ownership of the copyright in the source code directly at issue.  [Doc. 1 at ¶¶ 2, 8, 9, 33(g), 70, 71(c), 126].  Moreover, dmarcian also pled breach of contract claims, which will require the Court to determine the nature of the parties' relationship and the terms of their agreement.  [Id. at ¶¶ 114-24].  These allegations and claims were carried forward to dmarcian's Second Amended Complaint.  [Doc. 51].

Several months later, DMARC Advisor's Dutch counsel, Alfred Meijboom, filed pleadings notes in opposition to dmarcian's request for a stay, arguing that the Rotterdam proceedings (which commenced in October 2021)[5] preceded the commencement of proceedings on the merits in the

---

[4] The Fourth Circuit later affirmed this determination.  See dmarcian, Inc. v. dmarcian Eur. BV, 60 F.4th 119, 139-40 (4th Cir. 2023).

[5] DMARC Advisor also contends in its Response that its litigation in The Netherlands was the "first filed," citing the interim relief proceedings commenced on January 29, 2021. [Doc. 190 at 4-8, 23 n.4].  In the Rotterdam Court proceedings, however, the Dutch Court made clear and DMARC Advisor admitted that the question of which action was first filed is a choice between dmarcian's March 12, 2021 Complaint or the October 11, 2021 action on the merits in Rotterdam.  [Doc. 173-2 at ¶¶ 5.32-5.39; Doc. 173-1 at ¶ 4.8].  Dutch

U.S. Specifically, Mr. Meijboom asserted that the filing of the U.S. Complaint in March 2021 sought only interim injunctive relief and therefore did not begin "a case on the merits," and that this Court did not commence "proceedings on the merits" until May 22, 2022.[6]   [Doc. 173-1 at ¶¶ 4.1-4.5]. These statements are false and misleading. Unlike Dutch law, wherein proceedings on the merits are conducted separately from proceedings for preliminary or summary relief,[7] under U.S. law, a civil action is commenced with the filing of a complaint. Fed. R. Civ. P. 3. There is no separation of the preliminary proceedings and the proceedings on the merits. The complaint sets forth a statement of the claims upon which the plaintiff seeks relief on the merits. Fed. R. Civ. P. 8(a)(2). When a civil action is filed, a plaintiff may seek preliminary relief as part of that action. In order to receive preliminary or interim relief under U.S. law, the party seeking relief must demonstrate a

interim relief proceedings do not determine the parties' rights in a proceeding on the merits. [Doc. 17: Jansen Decl. at ¶ 14]. Therefore, based on DMARC Advisor's own filings in this Court, the January 2021 interim relief proceedings are irrelevant to the determination of which case is the first-filed merits case.

[6] The basis for Mr. Meijboom's statement in this regard is unclear, as there is no event on the docket that took place on May 22, 2002.

[7] See Margetson, Nicholas, et al. Litigation and Enforcement in The Netherlands: Overview, available at https://uk.praticallaw.thomsonreuters.com/w-015-9107?context Data=%28sc.Default%29&transitionType=Default (last accessed June 26, 2023); see also [Doc. 17: Jansen Dec. at ¶ 14].

likelihood of prevailing *on the merits*. A preliminary relief hearing can even be consolidated with a trial on the merits. See Fed. R. Civ. P. 65(a)(2). Thus, regardless of whether preliminary injunctive relief is sought, what matters for the purpose of determining under U.S. law whether an action on the merits was first to be filed is the filing of the complaint. The complaint sets forth the claims upon which the Court may issue a final judgment, and therefore it is the *filing of the complaint* that commences the proceedings on the merits in a U.S. action.

Mr. Meijboom's false and misleading statements caused the Dutch Court to conclude that dmarcian's Complaint sought only provisional relief and therefore did not constitute a commencement of proceedings on the merits, thereby making DMARC Advisor's commencement of proceedings in the Rotterdam Court in October 2021 the "earlier filed" action. [See Doc. 173-2 at § 5.39 (finding that the U.S. proceedings "commenced" on May 22, 2022 and therefore concluding that the October 2021 Dutch proceedings "take precedence" as the older proceeding)]. The Rotterdam Court, therefore, denied dmarcian's request to stay its proceedings in favor of the U.S. proceedings based on counsel's misrepresentations of U.S. and the application of that law to the facts of this case.

The Court finds that the above-referenced statements made by DMARC Advisor's counsel to the Rotterdam Court to be significant and material misrepresentations. These misrepresentations create a risk of inconsistent, conflicting, and erroneous judgments which will neutralize or negate this Court's rulings. Accordingly, the Court will require DMARC Advisor to promptly correct its misstatements to the Rotterdam Court prior to the commencement of the trial on July 5, 2023. To that end, the Court will require DMARC Advisor to provide a copy of this Order to the Rotterdam Court, along with a certified Dutch translation, as well as a statement from DMARC Advisor's counsel (with certified translations in both English and Dutch) which states as follows:

(1)     Counsel is submitting this statement to the Rotterdam Court in order to correct false and misleading representations previously made to the Court in both the Affidavit of Pressly Millen and the pleading notes of Alfred Meijboom;

(2)     The proceedings on the merits in the U.S. case began with the filing of the Complaint on March 12, 2021, and DMARC Advisor's representations to the contrary to the Rotterdam Court are entirely untrue;

23

(3)    The U.S. case filed on March 12, 2021 presented claims which put copyright ownership and the terms of the parties' contracts squarely at issue.  As such, there appears to be some overlap of issues between the U.S. case and that pending before the Rotterdam Court.  DMARC Advisor's representation to the Rotterdam Court that the U.S. case pleads only violations of U.S. copyright and trademark law, and not any infringing actions outside the U.S., is entirely untrue; and

(4)    The Preliminary Injunction issued by the U.S. Court did not limit application of the Copyright Act to only acts of infringement within the United States and gave extraterritorial application to reach acts of DMARC Advisor in Europe and elsewhere, and DMARC Advisor's representations to the contrary to the Rotterdam Court are entirely untrue.

Such documents shall be provided to the Rotterdam Court no later than July 3, 2023.[8]  No later than July 5, 2023, DMARC Advisor shall provide to this Court an affidavit of service of such documents upon the Rotterdam Court. DMARC Advisor is hereby warned that failure to comply with the directives

---

[8] Nothing in this Order prevents dmarcian from also filing with the Rotterdam Court a copy of this Order, along with a Dutch translation, by July 3, 2023.

of this Order will result in the imposition of sanctions, up to and including the striking of DMARC Advisor's Answer and the entry of default against it.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff dmarcian, Inc.'s Motion for Antisuit Injunction and/or to Require Correction of Misrepresentations Made to the Dutch Court [Doc. 185] is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)    The Motion to Require Correction is **GRANTED**.  No later than **July 3, 2023**, the Defendant DMARC Advisor BV shall file copies of this Order and a statement from DMARC Advisor's counsel to the Rotterdam District Court, along with certified translations thereof (in Dutch), in accordance with the terms of this Order.

(2)    No later than **July 5, 2023**, DMARC Advisor shall provide to this Court an affidavit of service of such documents upon the Rotterdam Court.

(3)    DMARC Advisor's failure to comply with the directives of this Order will result in the striking of DMARC Advisor's Answer and the entry of default against it.

(4)    The Motion for Antisuit Injunction is **DENIED**.

25

**IT IS SO ORDERED.**

Signed: June 27, 2023

Martin Reidinger
Chief United States District Judge