IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO.: 1:21-CV-00067

| | |
|---|---|
| DMARCIAN, INC.<br><br>    Plaintiff,<br><br>v.<br><br>DMARCIAN EUROPE BV<br><br>    Defendant. | **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO EXTEND TIME TO DISCLOSE ITS EXPERT REPORT ON C# SOURCE CODE** |

NOW COMES the Plaintiff, by and through its undersigned counsel, and submits this Reply Brief in support of its motion to extend time to disclose an expert report on the C# Source Code.

## BACKGROUND

Plaintiff requested an extension of time for an expert report on the specific issue of evaluating Defendant's "new" platform coded in C# programming language – a platform allegedly developed during the course of this litigation and purportedly distinguishable from the Python platform on which the lawsuit was filed. Defendant incorrectly asserts: (1) that Plaintiff has only asserted "vague 'reliability issues'; and (2) that the reliability

1

concerns arose before Plaintiff retained the expert and prior to commencement of source code review. (Doc. 242, p. 1).

The Declaration which Plaintiff submitted to support the motion ***specifically*** details the reliability concerns which arose ***after*** Plaintiff's C# Expert arrived to review the source code. (Duffy Declaration (*filed under seal*) Doc. 239, ¶¶2-5). Prior to the source code review in Greensboro, North Carolina, Plaintiff's counsel was aware of some vision-related health issues which did *not* impact the C# Expert's ability to proceed. Only after the C# Expert arrived did Plaintiff become aware of another health issue, and even that disclosure did not by itself cause concern. (Doc. 239, ¶3).

Only after several days of cumulative observations did Plaintiff's counsel come to the conclusion that there were serious enough reliability concerns arising out of the C# Expert's health issues to cause Plaintiff's counsel to conclude that offering the expert opinion would not be consistent with Plaintiff's duty of candor to the Court. Submission of a expert report is inherently a representation by counsel to the Court and the opposing party that counsel has confidence in the reliability of the report. (Doc. 239, ¶9). Because Plaintiff's counsel was unsure of the reliability of the conclusions which Plaintiff would like to offer to the Court, Plaintiff's counsel reluctantly

chose to terminate the engagement rather than submit the report. (Doc. 239, ¶¶4, 5, 8; Doc. 240, pp. 1-2).[1]

As the supporting declaration shows (Doc. 239), this decision was not, as Defendant baselessly suggests, because the expert was unwilling to support Plaintiff's theory of infringement nor is Plaintiff attempting to "throw that same expert under the bus." (Doc. 242, p. 1). The decision was very simply based on the integrity of the judicial process and obligations of candor to the Court arising from observations of the expert's behavior that were unexpected and unusual which led to reliability concerns. (Doc. 239).

In short, Plaintiff's counsel was not aware and could not reasonably have been charged with knowledge of the C# Expert's undisclosed health conditions prior to commencing the source code review. The decision to terminate the engagement was not for lack of a desire to proceed to a report, but rather out of concerns of whether doing so was consistent with counsel's duty of candor. *Id.* A modification of the deadlines to allow the C# issue to be addressed in this case is in the interests of judicial economy. Because

---

[1] Plaintiff addressed the basis for the concerns and the need for extension in the brief filed in support of the motion to seal the declaration. Plaintiff acknowledges that it would have been more correct under Local Rule 7.1 to file a separate brief in support of the motion for extension, but the grounds were well-explained in that brief and the Declaration. (Doc. 239, 240).

3

this issue of infringement as to the "new" platform arose after the complaint was filed, Plaintiff could file a new action (and perhaps move to consolidate) as an alternative to addressing the issues in the context of this case. *See e.g., Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002) ("Various courts have concluded that "requiring [a] plaintiff to go through the needless formality and expense of instituting a new action when events occurring after the original filing indicated he had a right to relief [is] inconsistent with the philosophy of the federal rules.).

In opposing the requested extension, Defendant unfairly faults Plaintiff for delay. (Doc. 242, pp. 4-8). Defendant notes that Plaintiff's deadline was June 30, 2023 and that Plaintiff requested a thirty-day extension only three days before the deadline. *Id.* at p. 4. However, the Court set Defendant's deadline for producing the source code on June 26, 2023, four days before Plaintiff's June 30 expert report deadline. (Doc. 205). At the June 27, 2023 hearing, the Court recognized that the order to compel inadvertently created a timing problem and agreed to extend Plaintiff's expert deadline (not Defendant's, which was later extended with Plaintiff's consent) by text order on July 24, 2023. (Doc. 224 and text order).

What Defendant also leaves out is that well before the deadline Plaintiff made ***every effort*** to avoid a timing problem. Plaintiff requested Defendant's

source code a year ago, on August 16, 2022, and (as this court found) it was Defendant who foot-dragged on production and seeking a protective order resulting in a nine-month delay in production. (Order on Motion to Compel, Doc. 205). Moreover, as early as March 17, 2023, two days after the scheduling conference with the Court in which it was plain that discovery deadlines would be extended, that all the source code was going to have be produced, and that a protective order would be entered shortly, Plaintiff emailed Defendant's counsel to ask Defendant how quickly the source code could be produced in North Carolina after the protective order was entered to see if the parties could be ready to go once the protective order was issue, and was assured by Defendant's counsel that it could be done "shortly" after that order was entered. (Doc. 247-1).

On June 12, 2023, the protective order was issued as well as the order to compel requiring Defendant's production of the source code by June 26, 2023. (Doc. 204, 205). On the following day, Plaintiff's counsel emailed Defendant's counsel to ask if the source code had been set up for review and, if not, when it would be set up. (Doc. 247-2). Defendant's counsel responded on June 15 that the laptop was with DMARC Advisor personnel (in the Netherlands) and that he would advise if it could be made available prior to June 26 (the deadline set by the Court). *Id.*

The next day, on June 16, Plaintiff's counsel responded expressing concern that review on June 26 was not feasible due to the need to travel to Asheville for the June 27 hearing. *Id.* On June 22, Defendant's counsel advised that DMARC Advisor personnel had been "working around the clock" to get the source code laptop ready. (Doc. 247-3). This reflects that DMARC Advisor had not previously taken steps (as Plaintiff requested) to have the source code ready to go once the Protective Order was entered.

Because Defendant chose to wait until June 26 before offering the source code for production (four days before Plaintiff's expert deadline, the day before the hearing in Asheville, and two days before Plaintiff's representatives had to fly to the Netherlands for the Dutch hearing), this put Plaintiff in a very difficult timing jam. Moreover, Defendant did not even have the source code in the United States on June 26 (as ordered), but claimed it was "available" in the Netherlands -- contrary to the provision of the Protective Order which allowed Plaintiff to designate review in Greensboro. (Doc. 204,¶8(c); Doc. 235-1, June 25, 2023 email). The fact that Plaintiff was unable to review the code on June 26 due to other commitments in this case does not excuse compliance with the Court's order. Defendant should have had the source code ready and available for review.

With this background, Defendant unreasonably faults Plaintiff for not being able to review the source code until the week of July 10 and for requesting review to commence July 13. (Doc. 242, pp. 4-5). In addition to having to make arrangements to fly in two experts from New York, it was important for Tim Draegen to be present to assist the experts with information and to answer questions during their review. (Doc. 244, 9th Draegen Decl. ¶7). Mr. Draegen did not return until July 12 from the Netherlands – where he had to be present for the Dutch hearing to fight the two-front war on the merits that the Defendant pursued, having misled the Dutch court on when the U.S. case on the merits commenced. *(Id.;* Order on Antisuit Injunction, Doc. 216).

In short, contrary to the Defendant's characterizations, the timing jam for which Defendant blames Plaintiff very much stems from Defendant's own conduct.

## ARGUMENT

Plaintiff agrees with Defendant's articulation of the standard that good cause is dependent on the diligence of the party seeking a modification of the scheduling order deadline, as set forth in *Selee Corp. v. McDanel Advanced Ceramic Techs., LLC,* No. 1:15-CV-00129-MR, 2016 WL 3344385, at *1 (W.D.N.C. June 9, 2016) (Doc. 242, p. 8). *See also, Glob.*

*Locating Sys., LLC v. ShadowTrack 247, LLC*, No. 1:19-CV-00225-MR, 2020 WL 2114381, at *2, n. 3, 4 (W.D.N.C. May 4, 2020) (finding good cause based on recently discovery facts regarding infringement and no bad faith despite defendant's assertions of lack of diligence); *Cain v. Town of Yadkinville*, No. 1:21CV81, 2022 WL 1289669, at *2 (M.D.N.C. Apr. 29, 2022) (holding that good cause is not shown if a party knew or should have known of the basis for amendment prior to the scheduling order deadline).

Here, Plaintiff was diligent. Plaintiff moved for an extension of the expert report deadline prior to its expiration on August 8, 2023 only as to the C# issues arising from Defendant's "new" platform. The motion was based on unexpected concerns regarding the C# expert arising from his undisclosed health conditions which Plaintiff's counsel had no reason to know of or suspect prior to commencement of the review. (Doc. 239, ¶¶2-7). Plaintiff acted promptly when it became clear that proceeding further was inconsistent with duties of candor to the Court. *Id.* at ¶7-9. It was only the cumulative impact of observed behaviors after source code review commenced which led Plaintiff's counsel to the difficult decision to terminate the engagement. *Id.* at ¶9. Plaintiff *immediately* identified a new C# expert who is ready to proceed. *Id.* at ¶11. Plaintiff has asked Defendant about a

date to review. (Doc. 247-4). Plaintiff is waiting to hear if this will be accommodated by Defendant.

In short, this was not a "change in expert strategy" as Defendant asserts (Doc. 242, p. 10), but an unforeseen circumstance which precluded Plaintiff from proceeding further with the original C# expert. This plainly constitutes "good cause" and there is no basis for asserting Plaintiff failed to exercise proper diligence in trying to review the source code.

Defendant also asserts that it would be unduly prejudiced because "dInc has still not disclosed any basis for its contention that the new DMARC Manager source code infringes dInc's intellectual property." (Doc. 242, pp. 10-11). To the contrary, Tim Draegen previously set forth facts as to why the customer-facing aspect of the "new" platform suggested infringement, and those facts indeed supported the motion to compel production of the "new" platform source code. (Doc. 154-7; Doc. 205, pp. 11-12). Plaintiff did not gain access to the "new" platform source code until July 13, 2023. The expert report to articulate why this "new" platform is infringing was due on August 8. Plaintiff promptly moved for an extension when unforeseen problems arose with the C# Expert. Plaintiff is willing to keep all deadlines in place and just extend out the deadlines for this one issue. The fact that

Defendant does not want to do a separate report (see Doc. 242, p. 12) does not raise an issue of material prejudice to Defendant.

As to Defendant's requests for costs, there is no basis to shift those costs. The original work performed by the C# Expert can be utilized by the replacement expert and will likely significantly shorten the time needed for that review. While Defendant chose to have two representatives from the Netherlands stay for the review (even cancelling their flight to stay longer), plus an attorney and a staff person, the Defendant's not very cost-effective decision to have **four people** sit in a room and watch an expert perform work on a computer for which there were ample safeguards in place to protect against copying is not a basis to shift those costs to Plaintiff.

## CONCLUSION

Plaintiff respectfully requests an extension of the deadline to submit an expert report on the C# issues as requested in the motion.

This the 16th day of August, 2023.

> /s/ Pamela S. Duffy
> Pamela S. Duffy, N.C.S.B. No. 18329
> *pamela.duffy@elliswinters.com*
> Ellis & Winters LLP
> PO Box 2752
> Greensboro, NC 27402
> Telephone: (336) 217-4193
> *Attorney for Plaintiff*

OF COUNSEL:

/s/ David Dorey
David Dorey, DE #5283
Blank Rome, LLP
David. Dorey@BlankRome.com
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6418
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **MEMORANDUM OF LAW** was served upon counsel for all other parties to this action listed below by efiling a copy of the same utilizing the Western District of North Carolina's efiling system:

Mr. Pressly M. Millen
Mr. Samuel B. Hartzell
Womble Bond Dickinson (US) LLP
P O Box 831
Raleigh, NC 27602
*Attorneys for DMARC Advisor, BV,
Formerly dmarcian Europe BV*

This the 16th day of August, 2023.

*/s/ Pamela S. Duffy*_____
Pamela S. Duffy, N.C.S.B. No. 18329
*pamela.duffy@elliswinters.com*
Ellis & Winters LLP
PO Box 2752
Greensboro, NC 27402
Telephone: (336) 217-4193
*Attorney for Plaintiff*