**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

**No. 1:21-cv-00067-MR**

|  |  |  |
|---|---|---|
| DMARCIAN, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **BRIEF IN SUPPORT OF** |
| | ) | **DEFENDANT'S MOTION FOR** |
| DMARC ADVISOR BV, | ) | **SUMMARY JUDGMENT** |
| f/k/a dmarcian Europe BV, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

BACKGROUND ................................................................................1

STANDARD OF REVIEW ...................................................................5

ARGUMENT .....................................................................................5

   I. Plaintiff Cannot Establish Any of Its Claims Under U.S. Law ......................5

     A. Breach of Contract (Counts One and Two)................................................5

     B. Copyright Infringement (Count Three) ......................................................8

     C. Trademark Claims (Counts Four, Five and Twelve)...............................14

     D. Defamation (Count Six) ...........................................................................16

     E. Trade Secret Claims (Counts Seven and Eleven).....................................17

     F. Computer Trespass (Count Eight).............................................................18

     G. Tortious Interference Claims (Counts Nine and Ten).............................19

     H. Unjust Enrichment (Count Thirteen).......................................................20

     I. Cybersquatting (Count Fourteen).............................................................21

     J. Unfair and Deceptive Trade Practices (Count Fifteen)............................22

  II. Plaintiff Failed to Disclose Cognizable Evidence of Damages....................23

  III. Plaintiff Cannot Seek Statutory Damages or Attorneys' Fees Under the Copyright Act ............................................................................................25

CONCLUSION .................................................................................25

Case 1:21-cv-00067-MR   Document 295   Filed 01/10/24   Page 2 of 32

# TABLE OF AUTHORITIES

**Cases**

*Abitron Austria GmbH v.Hetronic Int'l, Inc.*,
   600 U.S. 412 (2023) .................................................................. 11, 14, 15

*Bandy v. City of Salem, Virginia*,
   59 F.4th 705 (4th Cir. 2023) ..................................................... 5

*Bendfeldt v. Window World,Inc.*,
   5:17-cv-00039-KDB-DCK, 2018 WL 11318516 (W.D.N.C. June 22, 2018) ....... 23

*Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*,
   784 S.E.2d 457 (N.C. 2016) ...................................................... 20

*Bouchat v. Bon-Ton Dep't Stores, Inc.*,
   506 F.3d 315 (4th Cir. 2007) ..................................................... 25

*Boyce v. McMahan*,
   208 S.E.2d 692 (N.C. 1974) ...................................................... 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................. 5

*Clark v. Brown*,
   99 N.C. 393 S.E.2d 134 (N.C. Ct. App. 1990) .................................... 17

*Cnty. of Jackson v. Nichols*,
   623 S.E.2d 277 (N.C. Ct. App. 2005) ............................................ 7

*CoStar Grp., Inc. v. LoopNet, Inc.*,
   373 F.3d 544 (4th Cir. 2004) ..................................................... 11

*Danius v. Sun TV Network Ltd.*,
   No. 09 CVS 18696, 2012 WL 987856 (N.C. Super. Ct. Mar. 22, 2012) .............. 17

*dmarcian, Inc. v. dmarcian Eur. BV*,
   60 F.4th 119 (4th Cir. 2023) ..................................................... 11, 19, 20

*Duffy v. Camp*,
   882 S.E.2d 675 (N.C. Ct. App. 2022) ............................................ 15

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
   608 F. Supp. 3d 298 (W.D.N.C. 2022) ........................................... 23

*Dunn v. Dart*,
   731 S.E.2d 274 (N.C. Ct. App. 2012) ............................................ 7

Case 1:21-cv-00067-MR   Document 295   Filed 01/10/24   Page 3 of 32

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com*, *LLC*,
   139 S. Ct. 881 (2019) .......................................................................... 8

*Google LLC v. Oracle Am., Inc.*,
   141 S. Ct. 1183 (2021) ........................................................................ 12

*Green v. West*,
   No. 2:19-cv-00366-RMG, 2020 WL 473638 (D.S.C. Jan. 17, 2020) ................... 10

*Harrods Ltd. v. Sixty Internet Domain Names*,
   302 F.3d 214 (4th Cir. 2002) ................................................................. 22

*HEALTHeSTATE, LLC v. United States*,
   No. 1:18-cv-00034-KCD, 2023 WL 8705595 (Fed. Cl. Nov. 20, 2023) ............... 9

*In re De Ford*,
   37 S.E.2d 516 (N.C. 1946) .................................................................... 15

*Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.*,
   No. 1:20-cv-00425-TDS-LPA, 2023 WL 6800328 (M.D.N.C. Oct. 12, 2023) ..... 23

*Johnson & Morris PLLC v. Abdelbaky & Boes, PLLC*,
   No. 16 CVS 6151, 2016 WL 5923662 (N.C. Super. Oct. 11, 2016) ...................... 15

*Johnson v. Maraj*,
   No. 2:23-cv-05061-PA-AFM, 2023 WL 8883316 (C.D. Cal. Dec. 15, 2023) ...... 10

*Karzo v. Matador Recs.*, Inc.,
   No. 1:21-cv-00667-LCB, 2022 WL 4237452 (M.D.N.C. Sept. 14, 2022) ........... 25

*Krawiec v. Manly*,
   811 S.E.2d 542 (N.C. 2018) .................................................................. 18

*La Michoacana Nat., LLC v. Maestre*,
   No. 3:17-cv-00727-RJC-DCK, 2021 WL 4073292 (W.D.N.C. Sept. 7, 2021) ..... 21

*LADS Network Sols., Inc. v. Agilis Sys., LLC*,
   No. 4:19-cv-00011-SEP, 2022 WL 4534738 (E.D. Mo. Sept. 28, 2022) ............... 9

*McClure Lumber Co. v. Helmsman Const., Inc.*,
   585 S.E.2d 234 (N.C. Ct. App. 2003) ...................................................... 7

*McLamb v. T.P. Inc.*,
   619 S.E.2d 577 (N.C. Ct. App. 2005) ...................................................... 6

*MedShift, LLC v. Charles W. Morgan Pelle, LLC*,
   584 F. Supp. 3d 112 (W.D.N.C. 2022) .................................................. 6, 21

*Peterson v. Robertson*,
  No. 95 CVS 3518, 1999 WL 33545509 (N.C. Super. Ct. May 25, 1999) ............ 17

*SciGrip, Inc. v. Osae*,
  838 S.E.2d 334 (N.C. 2020) ................................................................................. 21

*Silicon Knights, Inc. v. Epic Games, Inc.*,
  No. 5:07-cv-00275-D, 2012 WL 1596722 (E.D.N.C. May 7, 2012) .............. 24, 25

*Spartan Food Sys., Inc. v. HFS Corp.*,
  813 F.2d 1279 (4th Cir. 1987) .............................................................................. 15

*Sysco Mach. Corp. v. DCS USA Corp.*,
  No. 5:23-cv-00134-BO-RJ, 2023 WL7752051  (E.D.N.C. Nov. 15, 2023) .......... 17

*Taube v. Hooper*,
  840 S.E.2d 313 (N.C. Ct. App. 2020) .................................................................. 16

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*,
  682 F.3d 292 (4th Cir. 2012) ................................................................................ 10

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
  618 F.3d 417 (4th Cir. 2010) ................................................................................ 13

*Wells Fargo Ins. Servs. USA, Inc. v. Link*,
  827 S.E.2d 458 (N.C. 2019) ................................................................................... 5

**Statutes**

15 U.S.C. § 1125 .......................................................................................................... 22

17 U.S.C. § 102 ............................................................................................................ 12

17 U.S.C. § 410 ............................................................................................................ 13

17 U.S.C. § 411 ......................................................................................................... 8, 9

17 U.S.C. § 412 ............................................................................................................ 25

N.C. Gen. Stat. § 4-1 ................................................................................................... 15

N.C. Gen. Stat. § 14-458 ............................................................................................. 19

N.C. Gen. Stat. § 66-152 ............................................................................................. 18

N.C. Gen. Stat. § 75-1.1 .............................................................................................. 23

**Rules**

Fed. R. Civ. P. 26 ........................................................................................................ 23

Fed. R. Civ. P. 37 ........................................................................................................ 11

Fed. R. Civ. P. 56 .......................................................................................................... 5

**Other Authorities**

U.S. Copyright Office, Compendium of U.S.Copyright Practices,
2014 WL 7749581 (3d ed. 2021). .......................................................................... 10

Defendant DMARC Advisor BV moves under Federal Rules of Civil Procedure 56 and 37 for summary judgment on all claims, undisclosed damages, and requests under the Copyright Act for statutory damages and attorneys' fees.

## BACKGROUND

In February 2012, Timothy Draegen published www.dmarcian.com, a free website that allowed users to convert DMARC (an open email standard) reports from one format to another. ECF No. 289-1 at 33:6–20. Draegen first began to keep copies of the code for the website in June 2012. *Id.* at 38:11–14.

In September 2014, Draegen formed Plaintiff dmarcian, Inc. to commercialize DMARC software. *Id.* at 14:25. In May 2015, Plaintiff suggested a partnership with Measuremail B.V., a Dutch email company, to "create product/services around DMARC deployment in the Netherlands." *Id.* at Ex. 10. Martijn Groeneweg, a Dutch DMARC entrepreneur, represented Measuremail in these conversations, but Plaintiff "determined at the end of 2015" that "Groeneweg operating through Measuremail was a nonstarter." *Id.* at 112:5–7. In January 2016, Draegen traveled to the Netherlands, *id.* at 110:22–24, where he and Groeneweg reached an agreement between Plaintiff and DMARC Advisor (then known as Mailmerk), another a Dutch company associated with Groeneweg, *see id.* at 117:9–16.

As part of this January 2016 agreement, Plaintiff authorized DMARC Advisor to change its name to dmarcian Europe and distribute the DMARC software under

the name "dmarcian," and in exchange Plaintiff or Draegen had the right to buy a majority of Mailmerk's shares for €1. *See id.* at 112:2–113:8, 123:5–13. Plaintiff and DMARC Advisor (then known as dmarcian Europe) worked together under the brand "dmarcian," distributing DMARC software. DMARC Advisor served all customers in Europe, Russia, and Africa; Plaintiff served all customers in the United States and other parts of the world.

Over the years, both Plaintiff and DMARC Advisor contributed to the software. DMARC Advisor's contributions began in May 2017 and were made mostly through though Bulgarian developers, whom DMARC Advisor first hired as contractors and later employed through a wholly owned subsidiary. These Bulgarian developers all assigned their intellectual property rights to DMARC Advisor. *See* ECF No. 57-1 ¶ 22.

Despite cooperation on software development and sales efforts, Plaintiff and DMARC Advisor never executed a written agreement governing their relationship. Plaintiff recognized this issue as early as December 2016, when Draegen – who served as Plaintiff's CEO – expressed concern that a competitor might "learn we don't have basic docs in place." ECF No. 289-3 at 153:20–21. Yet Plaintiff and DMARC Advisor continued without any written agreement. Given that both Plaintiff and DMARC Advisor were contributing to the software, the lack of any agreement created uncertainty about the intellectual property rights to that software.

2

In August 2018, Draegen acknowledged the intellectual property was a "mixed issue" because both Plaintiff and DMARC Advisor were paying software developers. *Id.* at 219:19. Draegen consulted a lawyer to create a structure that would "[c]larify IP ownership," *id.* at 226:23, but that effort resulted in no agreement.

Beginning in December 2019, the lack of any agreement governing intellectual property rights began to cause friction between the parties. Groeneweg wrote to Draegen to express concern about the lack of a "license agreement in place" from DMARC Advisor to Plaintiff. ECF No. 289-3 at Ex. 39. Draegen responded that the parties would "need a licensing agreement" and stated that it "makes sense to reflect the perpetual and exclusive license that Europe BV has enjoyed." *Id.* at Ex. 40. Draegen later suggested that the parties start "with a licensing agreement that sees dmarcian-US provide technology and operations with changes going back to the US," and he proposed a meeting in the Netherlands "to go through possible options for moving the intellectual property piece forward." ECF No. 289-9.

The parties met in the Netherlands in January 2020, where Draegen expressed his view that the cooperation between Plaintiff and DMARC Advisor had "been based on trust" but that "trust-based agreement cannot continue." ECF No. 289-1 at Ex. 23. Draegen wrote that "real documents" were needed, including a "[l]icensing

agreement for IP and to allow [Plaintiff] and [DMARC Advisor] to openly collaborate." *Id*. Once again, no such written agreement was executed.

This issue took on additional urgency in July 2020, when Draegen expressed concern that Plaintiff was "running production code" that did not belong to it because "[o]wnership of IP related to software dev is attributed to whoever pays the bill of the software developer." ECF No. 289-4 at Ex. 45. Draegen wanted DMARC Advisor to assign all of its intellectual property rights to Plaintiff for no payment, and he tried to use his majority interest in DMARC Advisor to force that assignment. This attempt led DMARC Advisor's shareholders – including Draegen – to ask a Dutch court to appoint an independent director with decisive vote for DMARC Advisor, which it did in September 2020. *See* ECF No. 164-2 ¶ 1.2. Plaintiff then sent the independent director a letter insisting that "[a]ll intellectual property developed by or on behalf of dmarcian Europe BV and its affiliates needs to be assigned to [Plaintiff]." ECF No. 285-2. The independent director refused.

In January 2021, Plaintiff once again demanded that DMARC Advisor assign its intellectual property to Plaintiff for no consideration. ECF No. 17-1 at 13. When DMARC Advisor's independent director once again refused, Plaintiff purported to terminate all cooperation between the parties effective January 22, 2021. ECF No. 51 ¶ 76. Plaintiff then filed this lawsuit in March 2021 and served its operative

4

complaint, ECF No. 51, in June 2021. With the discovery period now closed, DMARC Advisor moves for summary judgment on all of Plaintiff's claims.

<u>**STANDARD OF REVIEW**</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the moving party meets [its] threshold burden, the nonmoving party must then go beyond the pleadings and affidavits and show that there are 'specific facts showing that there is a genuine issue for trial.'" *Bandy v. City of Salem, Virginia*, 59 F.4th 705, 709–10 (4th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

<u>**ARGUMENT**</u>

**I. Plaintiff Cannot Establish Any of Its Claims Under U.S. Law**

    **A. Breach of Contract (Counts One and Two)**

Plaintiff alleges that DMARC Advisor breached "the Contract," ECF No. 51 ¶¶ 116, 120, which Plaintiff defines as an agreement that DMARC Advisor and Plaintiff entered "in or around January 2016," *id*. ¶ 33. Plaintiff alleges in Count One that the Contract was written, and in Count Two it alleges "in the alternative" that the Contract was made "orally in conversations." *Id*. ¶ 120.

These claims would fail even under North Carolina law because Plaintiff cannot establish the first element of those claims: the "existence of a valid contract." *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 827 S.E.2d 458, 472 (N.C. 2019) (quoting

*McLamb v. T.P. Inc.*, 619 S.E.2d 577, 580 (N.C. Ct. App. 2005)). "A valid contract requires offer, acceptance, consideration, and mutuality of assent of terms that are sufficiently definite to enable a court to enforce them." *MedShift, LLC v. Charles W. Morgan Pelle, LLC*, 584 F. Supp. 3d 112, 122 (W.D.N.C. 2022). Yet Plaintiff refused in discovery to describe any valid contract. In its interrogatory responses, Plaintiff stated that the "last act required to form the primary contract of cooperation took place in November 2015 based on Tim Draegen's communications from North Carolina" but identified no such communication. ECF No. 265-1 at 3.

For his part, Draegen – the person who allegedly entered the "Contract" on Plaintiff's behalf – testified that there was no definite agreement in November 2015 but rather an "understanding" that "was still maturing." ECF No. 289-1 at 93:2–3. Asked when Plaintiff and DMARC Advisor entered the "Contract," Draegen testified that it was not in November 2015 "because additional terms developed after that." *Id*. at 104:19–20. Indeed, Draegen explained that DMARC Advisor was not even a party to any contract discussions until "after the January 22, 2016 meeting" in the Netherlands. ECF No. 289-2 at 303:13–16. Draegen ultimately testified on behalf of Plaintiff that he was "not" able to say when the Contract was entered, ECF No. 289-1 at 105:9, and it "might be possible that the contract was never 100 percent completed," *id.* at 108:19–20. According to Draegen, Plaintiff and DMARC Advisor operated under a "trust-based relationship." ECF No. 289-2 at 275:2.

This testimony about a vague, trust-based understanding cannot establish the first element of Plaintiff's contract claims. In North Carolina, it is "well settled that a contract 'leaving material portions open for future agreement is nugatory and void for indefiniteness.'" *Cnty. of Jackson v. Nichols*, 623 S.E.2d 277, 279 (N.C. Ct. App. 2005) (quoting *Boyce v. McMahan*, 208 S.E.2d 692, 695 (N.C. 1974)). The alleged "Contract" left open the most material part: the parties. In Draegen's words, "it was not DMARC Advisor BV or back then known as Mailmerk that made any decisions." ECF No. 289-1 at 114:3–4. "The idea between Groeneweg and [Draegen] was that a new entity would be created where Groeneweg would be incented as much as possible to make the enterprise in the EU successful." *Id.* at 114:5–8. This "forecast of evidence fails to show that the parties reached a meeting of the minds as to the essential terms of the agreement." *Dunn v. Dart*, 731 S.E.2d 274 (N.C. Ct. App. 2012).

In addition, Plaintiff cannot show that DMARC Advisor breached any definite term of the alleged Contract. To the contrary, Plaintiff, not DMARC Advisor, breached the parties' agreement by purporting to terminate the cooperation three times, including in January 2021. These breaches, and especially the January 2021 attempted termination, excused DMARC Advisor from any "obligation to perform further." *McClure Lumber Co. v. Helmsman Const., Inc.*, 585 S.E.2d 234, 239 (N.C. Ct. App. 2003). As the Rotterdam District Court recently found, the "blockades,

7

which caused [DMARC Advisor] damage, were disproportionate and therefore unlawful." Judgment of Dec. 20, 2023 ¶ 4.13 (attached); *see also* ECF No. 164-2.

### B. Copyright Infringement (Count Three)

#### i. Plaintiff Cannot Maintain a Copyright Claim

The Copyright Act "bars a copyright owner from suing for infringement until 'registration . . . has been made.'" *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019) (quoting 17 U.S.C. § 411(a)). This requirement is satisfied "not when an application for registration is filed, but when the Register has registered a copyright after examining a properly filed application." *Id*. at 892.

Before filing this lawsuit, Plaintiff obtained a registration for "dmarcian Source Code" completed in "2012" and published on "February 09, 2012." ECF No. 142-1 at 2. As part of that registration, Plaintiff "improperly deposited 2021 code." ECF No. 206 at 20.

This improper deposit renders Plaintiff's copyright registration invalid because (1) "inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate" and (2) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). As this Court noted, "[t]here is no dispute that the Plaintiff knew the code it deposited was the code in use in 2021, not the code as it existed in 2012." ECF No. 206 at 22. And the Register of Copyrights has

confirmed that "the Copyright Office would not have registered the Work if it had known that . . . the deposit included material created or published after the dates provided on the application." ECF No. 272-1 at 1.

This evidence shows that "Plaintiff submitted inaccurate deposit copies with its applications with knowledge that they were inaccurate and the inaccuracy, if known, would have caused the Register to refuse registration," and thus DMARC Advisor is "entitled to summary judgment on Plaintiff's copyright claim." *HEALTHeSTATE, LLC v. United States*, No. 1:18-cv-00034-KCD, 2023 WL 8705595, at *21 (Fed. Cl. Nov. 20, 2023).

Indeed, Plaintiff now acknowledges that its pre-suit registration provides inaccurate information about the year of completion, date of first publication, and author. It filed supplementary copyright applications listing a different author, ECF No. 289-3 at Ex. 27 (filed August 19, 2022); publication date, *id*. at Ex. 29 (filed October 11, 2023), and completion date, *id*. at Ex. 30 (filed November 27, 2023). Even if these supplementary applications were proper, they cannot authorize this lawsuit because a "supplemental registration does not prove that 'registration of the copyright' had been 'made in accordance with this title' *before* institution of this lawsuit." *LADS Network Sols., Inc. v. Agilis Sys., LLC*, No. 4:19-cv-00011-SEP, 2022 WL 4534738, at *6 (E.D. Mo. Sept. 28, 2022) (quoting 17 U.S.C. § 411(a)); *see also id.* at *6 n.10.

In any event, Plaintiff does not have a *registration* for a work completed in 2021. It deposited 2021 HTML code in connection with its initial registration, but its application listed the completion date as 2012 and the "information provided in the application defines the claim that is being registered, rather than the information provided in the deposit copy(ies) or elsewhere in the registration materials." U.S. Copyright Office, Compendium of U.S. Copyright Practices § 618.1, 2014 WL 7749581, at *89 (3d ed. 2021). In November 2023, Plaintiff "filed an *application* for a supplemental registration" listing the 2021 completion date, but "a copyright infringement claim cannot be based on a registration application." *Green v. West*, No. 2:19-cv-00366-RMG, 2020 WL 473638, at *3 (D.S.C. Jan. 17, 2020) (emphasis added); *accord Johnson v. Maraj*, No. 2:23-cv-05061-PA-AFM, 2023 WL 8883316, at *3 (C.D. Cal. Dec. 15, 2023).

### ii. The Copyright Act Does Not Apply

Even if Plaintiff had a valid copyright registration, it cannot establish infringement under U.S. law because "the Copyright Act is considered to have no extraterritorial reach." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 306 (4th Cir. 2012). Plaintiff alleged that DMARC Advisor was "using the Plaintiff's copyrighted information to service customers in the United States from [DMARC Advisor's] offices abroad, specifically a California company named Clarizen," ECF No. 39 at 48, but it failed to show any domestic use by

Clarizen or any other company. The evidence establishes that Plaintiff had a contract with a company named Clarizen, and it asked DMARC Advisor to provide services to contacts "located just outside of Tel Aviv." ECF No. 285-2.[1] Particularly after *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023), this evidence that DMARC Advisor provided services – without payment and as a favor to Plaintiff – to contacts in Israel does not show a domestic violation of the Act.

### iii. Plaintiff Cannot Establish Copyright Infringement

Any claim under the Copyright Act would fail on the merits. To prevail on that claim, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of [his] work that are original." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 138 (4th Cir. 2023) (alteration in original) (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004)). Plaintiff is unable to establish both elements for the same work.

Plaintiff cannot establish that DMARC Advisor copied any element of the work it registered: code "completed in 2012 and first published on February 9, 2012." ECF No. 206 at 6. Plaintiff does not have a copy of the February 2012 code.

---

[1] The evidence about Clarizen is incomplete because Plaintiff deleted the mailbox for its recently departed General Manager and failed to produce emails with the subject line "Clarizen." *See* ECF No. 285-2 at 109:16–130:22. Given Plaintiff's focus on Clarizen throughout this litigation, this spoliation and failure to disclose entitles DMARC Advisor to, at a minimum, "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

It admitted in discovery that the "oldest available archive of the code is from June 18, 2012." ECF No. 165-2 at 1. This archive is not enough to establish copying because, as DMARC Advisor's expert explained, it "is not possible to determine, based on the June 18, 2012 commit of the Platform code what the Platform code comprised on February 9, 2012." ECF No. 290-1 ¶ 11; *see also id.* ¶¶ 18–32.

Plaintiff's expert likewise admits that it is "not possible to tell exactly which files were created at what time." ECF No. 245-1 ¶ 55. To be sure, he asserts that the February 2012 work might be "substantially similar" to the June 2012 code, *id.* ¶ 29, but he acknowledged in deposition that "three screen shots," describing product features, "are the only evidence we have of what changed," ECF No. 289-5 at 114:3–4. Those three screenshots reveal there were at least some changes to the underlying code between February 2012 and June 2012, *id.* at 121:7–10, and there "may well have been [others], who knows," *id.* at 121:14.

In the end, Plaintiff argues that the February 2012 work had some *functionality* similar to the software DMARC Advisor distributes, but the Copyright Act does not protect "any idea, procedure, process, system, method of operation, concept, principle, or discovery." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196 (2021) (quoting 17 U.S.C. § 102(b)). Plaintiff offers no admissible evidence that the February 2012 code and modern code "contain substantially similar ideas that are subject to copyright protection" and "express those ideas in a substantially

similar manner from the perspective of the intended audience of the work." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 435 (4th Cir. 2010) (quotation marks omitted).

As for the code that DMARC Advisor distributed since January 2021, Plaintiff cannot establish ownership of a valid copyright to that code. Plaintiff has no copyright registration for code completed after 2012, *see* Compendium of U.S. Copyright Practices § 618.1, and thus cannot rely on any presumption of validity that attaches to a "certificate of a registration made before or within five years after first publication," 17 U.S.C. § 410(c).[2] Regardless, the "presumption is fairly easy to rebut because the Copyright Office tends toward cursory issuance of registrations." *Universal Furniture*, 618 F.3d at 430.

Issues of burden aside, the record establishes DMARC Advisor's copyright ownership. DMARC Advisor's expert explains that the January 2021 code includes "significant additions between 2017 and 2021 by programmers" who assigned their rights to DMARC Advisor, including changes that "were original to the author and demonstrate creativity in the sense that the author made choices about code structure and design." ECF No. 290-1 ¶ 12; *see also id.* ¶¶ 51–56. Plaintiff's lead software engineer likewise agreed that those European programmers added a significant

---

[2] As for the registration Plaintiff does have – for code published in February 2012 – the nine-year delay before registration precludes any validity presumption. *See* 17 U.S.C. § 410(c).

number of components to the platform. *See* ECF No. 289-6 at 224:1–240:2 & Ex. 2. He testified that "Timeline was new functionality primarily written by [a Bulgarian developer]," *id*. at 224:17–18, which Plaintiff continues to use today, *id*. at 232:7–9.[3] Plaintiff cannot establish that it owns the intellectual property rights to original code written by that Bulgarian developer (or any other European). To the contrary, "the copyright in the software developed by employees of BeLean EOOD and dmarcian [Bulgaria] EOOD was assigned to [DMARC Advisor] by means of a written copyright assignment." ECF No. 57-1 at 14 ¶ 22; *see also* ECF No. 141 at 5 ¶ 17.

### C. Trademark Claims (Counts Four, Five and Twelve)

The Court should enter summary judgment on Plaintiff's Lanham Act claims because Plaintiff cannot show an "infringing use in commerce [that] is domestic." *Abitron*, 600 U.S. at 415. Draegen admitted that he was not "aware of any evidence that DMARC Advisor used the trademark Dmarcian in the United States." ECF No. 289-3 at 66:5–8. Plaintiff's CEO claimed that DMARC Advisor's foreign websites were an "obvious and explicit" use in the United States, ECF No. 289-7 at 131:18, but she could not identify any third party who visited those websites from the United

---

[3] Even Plaintiff's expert acknowledges that "the current program is much more complicated and sophisticated than what there was in 2012 and there certainly was a certain amount of creativity involved in all the extensions since then," yet he declined to opine on "exactly who made each individual decision." ECF No. 289-5 at 296:21–297:1.

14

States. Plaintiff's CEO cited unnamed people "on Reddit" and "forums" without "guaranteeing they are in the United States." *Id*. at 133:8–10.

At bottom, Plaintiff seeks to survive summary judgment with allegations that DMARC Advisor's foreign conduct caused domestic confusion. That type of evidence might have been sufficient before the Supreme Court clarified that the "ultimate question regarding permissible domestic application turns on the location of the *conduct* relevant to the focus." *Abitron*, 600 U.S. at 422 (emphasis added). That relevant conduct "is infringing use in commerce," *id*., not confusion.

For similar reasons, Plaintiff cannot establish its claim for common law infringement. ECF No. 51 ¶¶ 211–15. "A common law claim for trademark infringement under North Carolina law is analyzed under essentially the same standards as a federal Lanham Act claim regarding an unregistered trademark." *Duffy v. Camp*, 882 S.E.2d 675, 693 (N.C. Ct. App. 2022) (quoting *Johnson & Morris PLLC v. Abdelbaky & Boes, PLLC*, No. 16 CVS 6151, 2016 WL 5923662, at *4 (N.C. Super. Oct. 11, 2016)). These common law standards apply "within this State." N.C. Gen. Stat. § 4-1; *see also In re De Ford*, 37 S.E.2d 516, 518 (N.C. 1946) ("It is axiomatic that courts have no extraterritorial jurisdiction."). Indeed, Plaintiff bears the burden of showing that any common law rights extend throughout North Carolina. *See Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1282 (4th Cir. 1987) ("The common law rights are restricted to the locality where the mark is

used and to the area of probable expansion.").  Because Plaintiff forecasts no admissible evidence that DMARC Advisor used Plaintiff's trademark anywhere in North Carolina, the Court should enter summary judgment for DMARC Advisor on Plaintiff's common law infringement claim.

### D.  Defamation (Count Six)

"In order to recover for defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Taube v. Hooper*, 840 S.E.2d 313, 317 (N.C. Ct. App. 2020) (quotation marks omitted).

Plaintiff cannot identify a false statement about Plaintiff that damaged its reputation.  Plaintiff appears to rely on the "Message from Court-appointed director" that was available on DMARC Advisor's website.  ECF No. 26-6 at 2–3.  This message states, among other things, that Plaintiff "disconnected the company in Europe from all of its systems that dmarcian, Inc. had technical and operational access to," which "qualified as a data breach."  *Id*. at 2.  DMARC Advisor therefore notified *its* contractual customers and the Dutch Data Protection Authority.  *Id*. None of these statements – or anything DMARC Advisor published – was false, and Plaintiff cannot present cognizable evidence to the contrary.

Moreover, DMARC Advisor's statements are protected by the qualified privilege, which applies when a statement is made "(1) on subject matter (a) in which

the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest." *Clark v. Brown*, 99 N.C. 393 S.E.2d 134, 138 (N.C. Ct. App. 1990). DMARC Advisor – acting at the direction of its court-appointed independent director with decisive vote – had a legal duty and right to notify its customers that Plaintiff caused a data breach. *See* ECF No. at 57-10 at 1.

In addition, Plaintiff cannot pursue a North Carolina defamation claim against DMARC advisor because Plaintiff has no admissible evidence that any allegedly false statement was "published or republished in North Carolina." *Danius v. Sun TV Network Ltd.*, No. 09 CVS 18696, 2012 WL 987856, at *5 (N.C. Super. Ct. Mar. 22, 2012) (quoting *Peterson v. Robertson*, No. 95 CVS 3518, 1999 WL 33545509, at *8 (N.C. Super. Ct. May 25, 1999)).

### E. Trade Secret Claims (Counts Seven and Eleven)

Plaintiff's trade secret claims under North Carolina and federal law fail because under both laws "information must be subject to reasonable efforts to maintain its secrecy to be considered a trade secret." *Sysco Mach. Corp. v. DCS USA Corp.*, No. 5:23-cv-00134-BO-RJ, 2023 WL 7752051, at *3 (E.D.N.C. Nov. 15, 2023). Plaintiff made no such efforts here. It made all of its alleged trade secrets available to personnel of both DMARC Advisor and dmarcian Bulgaria even though

Plaintiff "did not have written contracts with DMARC Advisor BV employees, nor directly with [d]marcian Bulgaria EOOD employees." ECF No. 289-3 at 75:13–15. Draegen acknowledged that only a "sense of right and wrong" would prevent those employees from taking of the alleged trade secrets and posting them on the internet. *Id*. at 78:18–25. This testimony that Plaintiff disclosed the alleged trade secrets "with nothing more than an expectation of confidentiality is insufficient to establish that the information was the 'subject of efforts that [were] reasonable under the circumstances to maintain its secrecy.'" *Krawiec v. Manly*, 811 S.E.2d 542, 549 (N.C. 2018) (alteration in original) (quoting N.C. Gen. Stat. § 66-152(3)(b)).

Even if Plaintiff could identify a cognizable trade secret, it cannot show that DMARC Advisor misappropriated any such secret in North Carolina or elsewhere in the United States. Plaintiff alleges that "DMARC Advisor appropriated trade secrets when it continued to possess and exploit trade secrets after the termination of its licensing." ECF No. 289-3 at 79:18–20. But even if Plaintiff could show a legal obligation to delete anything, which it cannot, the alleged conduct – retaining information – occurred abroad. Neither federal nor North Carolina law governs that foreign conduct.

### F. Computer Trespass (Count Eight)

North Carolina's computer trespass law prohibits a person from using "a computer or computer network without authority and with the intent to . . . [m]ake

or cause to be made an unauthorized copy" of information residing there. N.C. Gen. Stat. § 14-458(a). Plaintiff asserts a claim under § 1-539.2A, which authorizes a private right of action for a person whose property or person is injured by reason of a violation of G.S. 14-458." *Id*. § 1-539.2A(a).

Plaintiff cannot show that someone injured Plaintiff by accessing a computer or computer network without authority. Draegen testified that, after Plaintiff restricted DMARC Advisor's access to computer systems in January 2021, DMARC Advisor personnel exceeded their authority to view information about customer accounts, but he could not say whether these accounts were "former or customers of DMARC Advisor." ECF No. 289-3 at 89:25–90:1. Draegen likewise could identify no damages arising from this access. *Id*. at 91:7–8. This testimony is insufficient because it fails to establish injury or that DMARC Advisor accessed anything beyond its own customer accounts.

### G. Tortious Interference Claims (Counts Nine and Ten)

Plaintiff cannot establish its claim for tortious interference with contract because it cannot show any contract that DMARC Advisor "induced [a] third person not to perform." *dmarcian*, 60 F.4th at 142. While Plaintiff previously represented that DMARC Advisor "won over Clarizen," *id*, the evidence contradicts this claim. At Plaintiff's request, DMARC Advisor provided unpaid services to individuals in Israel associated with Clarizen, *see* ECF No. 285-2, and there is no evidence that

19

Clarizen breached a contract with Plaintiff. The only contract Plaintiff's CEO could identify as subject to this claim was Plaintiff's "terms of service," but she could not explain how any third party breached those terms. ECF No. 289-7 at 133:10–11; *see also id.* at 142:2–5 (denying that any customer failed to make a required payment). In the end, Plaintiff's CEO testified that these customers "didn't continue a contract because of what DMARC Advisor did." *Id.* at 135:22–23.

This testimony about non-renewed contracts appears intended to support Plaintiff's tortious interference with prospective economic advantage claim, but that claim fails as well because Plaintiff cannot show any contract that a person "would have entered into [with Plaintiff] but for [DMARC Advisor's] interference." *dmarcian*, 60 F.4th at 142. DMARC Advisor asked Plaintiff to identify every such contract "by anticipated execution date, subject matter, and parties," and Plaintiff stated it would identify such contracts under "pursuant to Rule 33(d)." ECF No. 265-1 at 10–11. Yet Plaintiff never identified records under Rule 33(d), *see* ECF No. 289-7 at 144:2–147:21, much less "evidence that a contract would have resulted but for a defendant's malicious intervention," *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 784 S.E.2d 457, 463 (N.C. 2016).

### H. Unjust Enrichment (Count Thirteen)

Plaintiff's unjust enrichment claim fails because when "there is a contract between the parties[,] the contract governs the claim and the law will not imply a

contract." *SciGrip, Inc. v. Osae*, 838 S.E.2d 334, 351 (N.C. 2020) (alteration in original) (quotation marks omitted). Plaintiff provided the alleged benefit here – the "use of Plaintiff's Marks, Plaintiff's Copyright, Plaintiff's Trade Secrets, and access to Plaintiff's databases, support resources, website support and content, and proprietary information," ECF No. 51 ¶ 217 – under a contract permitting Draegen (or Plaintiff) to acquire a majority stake in DMARC Advisor for €1. Draegen admitted that Plaintiff "did have the ability to become the majority shareholder," ECF No. 289-3 at 107:23–25, and in exchange Plaintiff provided DMARC Advisor a "license agreement," an "established brand within the EU," and everything else that Plaintiff now asserts under its unjust enrichment claim, ECF No. 289-2 at 286:3–287:14. This agreement "governs the claims and relationships among the parties and [Plaintiff's] unjust enrichment claim fails." *MedShift*, 584 F. Supp. 3d at 129.

## I. Cybersquatting (Count Fourteen)

The Court should enter summary judgment against Plaintiff on its cybersquatting claim related to foreign domains such as "dmarcian.nl." ECF No. 51 ¶¶ 223–44. To prevail, Plaintiff must show that (1) DMARC Advisor's use of these foreign domains "constitutes either trademark infringement or trademark dilution" and (2) DMARC Advisor had "a bad faith intent to profit from use of the [disputed] domain name." *La Michoacana Nat., LLC v. Maestre*, No. 3:17-cv-00727-RJC-DCK, 2021 WL 4073292, at *9 (W.D.N.C. Sept. 7, 2021). It can show neither.

21

For the first requirement, there is no evidence that DMARC Advisor used any of these domains in the United States. As the Fourth Circuit has recognized, "there may be no consumer confusion – and thus no trademark infringement – if the alleged infringer is in a different geographic area." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 233 (4th Cir. 2002) (quotation marks omitted).

As for the second, Congress provided that factors relevant to the bad-faith inquiry include "the extent to which the domain name consists of the legal name of the person" and "the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services." 15 U.S.C. § 1125(d)(B)(i)(II), (III). DMARC Advisor's name at the time was dmarcian Europe, and it had been using the foreign domains to provide services for years with Plaintiff's knowledge. Indeed, bad faith cannot be found here because DMARC Advisor "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *Id*. § 1125(d)(B)(ii); *see, e.g.*, ECF No. 85-5 at 2. After all, this Court "prohibited [DMARC Advisor] from unilaterally terminating," ECF No. 82 at 3, the "customers who do pay dmarcian" but continue to rely on the "dmarcian.eu" domain, ECF No. 181 ¶ 13.

### J. Unfair and Deceptive Trade Practices (Count Fifteen)

For its final claim, Plaintiff asserts that DMARC Advisor's "conduct as set forth in Counts Four through Thirteen of the Complaint is unfair and deceptive

within the meaning of N.C. Gen. Stat. §75-1.1." ECF No. 51 ¶ 246. The Court should enter summary judgment for DMARC Advisor for the reasons discussed above. Plaintiff cannot show that any of the conduct discussed in those claims "proximately caused injury to [its] business." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 608 F. Supp. 3d 298, 332 (W.D.N.C. 2022).

In addition, Plaintiff cannot prevail on this § 75-1.1 claim because, as a "majority of federal courts within North Carolina" have held, the plaintiff "must have *both* suffered an injury in North Carolina *and* have an operational presence within the state." *Bendfeldt v. Window World, Inc.*, No. 5:17-cv-00039-KDB-DCK, 2018 WL 11318516, at *1 (W.D.N.C. June 22, 2018). Plaintiff cannot meet this standard, because it cannot show that any of the conduct discussed in "Counts Four through Thirteen" occurred in North Carolina. ECF No. 51 ¶ 246.

## II. Plaintiff Failed to Disclose Cognizable Evidence of Damages

Federal Rule of Civil Procedure 26 requires disclosure of "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). This "disclosure must state the types of damages that the party seeks, must contain a specific computation of each category, and must include documents to support the computations." *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.*, No. 1:20-cv-00425-TDS-LPA, 2023 WL 6800328, at *1

23

(M.D.N.C. Oct. 12, 2023) (quoting *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-cv-00275-D, 2012 WL 1596722, at *1 (E.D.N.C. May 7, 2012)).

Plaintiff served its Initial Disclosures in August 2022. Plaintiff claimed no damages for its Computer Trespass, Common Law Infringement, Anti-Cybersquatting Consumer Protection Act, or Unfair or Deceptive Business Practices claims. *See* ECF No. 289-8 at Ex. 17 ¶ 3. For its remaining claims, Plaintiff forecasted that it would seek various categories of damages, *see id.*, but it never disclosed expert testimony on damages or provided a calculation in compliance with Rule 26. Instead, Plaintiff disclosed three days before the discovery deadline a one-page document stating that Plaintiff spent $10,148,330.32 "propping up the BV up to 2017 or beyond" and incurred $2,727,000.00 in costs "handling customer confusion 2021-2023." ECF No. 289-7 at Ex. 12; *see also id.* at Exs. 13, 14.

A week later – after discovery had closed – Plaintiff supplemented this disclosure with additional claims of damages, but at no point did it provide a cognizable disclosure linked to any particular claim. *See generally* ECF No. 289-8 at 179:11–271:17. For example, Plaintiff's CEO testified that Plaintiff incurred $159,365 in advertising expenses from 2016 through 2023 and is seeking "100 percent of this $159,365" – including $18,000 that Plaintiff allegedly spent in *2023* – as damages, but Plaintiff declined to produce any underlying receipt supporting that $159,365 calculation. *See id.* at 204:9–06:6. To take another example,

Plaintiff's CEO testified that *this Court's* preliminary injunction somehow caused Plaintiff $1.445 million in damages. *See id.* at 254:16–58:21. In total, Plaintiff's late disclosures reveal a fundamental failure to honor its disclosure obligations or to present an admissible theory of damages. Plaintiff should thus "not be allowed to provide a computation of damages," *Silicon Knights*, 2012 WL 1596722, at *9, and the Court should enter summary judgment for DMARC Advisor accordingly.

## III. Plaintiff Cannot Seek Statutory Damages or Attorneys' Fees Under the Copyright Act

The Copyright Act "precludes statutory damages or attorney's fees for 'any infringement of copyright in an unpublished work commenced before the effective date of its registration' or 'any infringement of copyright commenced after first publication of the work and before the effective date of its registration.'" *Karzo v. Matador Recs.*, Inc., No. 1:21-cv-00667-LCB, 2022 WL 4237452, at *2 (M.D.N.C. Sept. 14, 2022) (quoting 17 U.S.C. § 412). Because the alleged "first infringement preceded [any] registration," Plaintiff cannot pursue statutory damages or attorneys' fees. *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 330 (4th Cir. 2007).

## <u>CONCLUSION</u>

The Court should enter summary judgment for DMARC Advisor on all claims, undisclosed damages, and copyright statutory damages and attorneys' fees.

Dated: January 10, 2024      Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Samuel B. Hartzell
Pressly M. Millen, NC State Bar No. 16178
Samuel B. Hartzell, NC State Bar No. 49256
Post Office Box 831
Raleigh, North Carolina 27602
Phone: (919) 755-2135
Fax: (919) 755-6067
Email: Press.Millen@wbd-us.com
           Sam.Hartzell@wbd-us.com

*Counsel for Defendant DMARC Advisor BV*