**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00067-MR**

| | | |
|---|---|---|
| **DMARCIAN, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | <u>**ORDER**</u> |
| | ) | |
| **DMARC ADVISOR BV,** | ) | |
| **formerly known as dmarcian** | ) | |
| **Europe BV,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| —————————————— | ) | |

**THIS MATTER** is before the Court following a hearing on August 23, 2024, at which time the Defendant and its counsel were required to show cause why this Court should not hold them in contempt and impose sanctions for their failure to comply with the Court's June 27, 2023 Order.

## I.    BACKGROUND

This case arises from a dispute between dmarcian, Inc. ("dmarcian"), an American company, and the Defendant DMARC Advisor BV, formerly known as dmarcian Europe BV ("DMARC Advisor"), a Dutch company, over the ownership, licensing, and distribution of certain computer code (the "Software"), which was the subject of a January 2016 oral agreement between the parties. [Doc. 26-1 ¶¶ 16-18; Doc. 26-6 at ¶ 2.18].

In December 2019, dmarcian's principal, Tim Draegen ("Draegen"), temporarily suspended DMARC Advisor's access to the Software. [Doc. 26-2 at ¶ 2.19]. Two days later, dmarcian restored DMARC Advisor's access to the Software [Doc. 26-6 at ¶ 2.20], and the parties resumed negotiating a potential license agreement or other solution to their dispute over ownership of the Software. [Doc. 26-1 at ¶ 19]. When negotiations again stalled, Draegen (then a DMARC Advisor shareholder) sought to remove DMARC Advisor's minority shareholder, TDX, as DMARC Advisor's director. [Id. at ¶ 20]. In July 2020, Draegen requested a Dutch shareholder meeting for that purpose. [Id.]. TDX responded by submitting an application (akin to a motion for injunctive relief) to the Enterprise Court of the Amsterdam Appellate Court, seeking to block Draegen from removing TDX.[1] [Id. at ¶ 22].

In August 2020, both Draegen and TDX asked the Enterprise Court in the Netherlands to order an investigation into DMARC Advisor's policies and course of affairs. [Doc. 26-2 at ¶¶ 1.3, 1.4]. On September 7, 2020, the Enterprise Court ordered such investigation and appointed an independent director with a decisive vote "to try to obtain clarity as to the question of where the intellectual property rights to the software and software applications

---

[1] dmarcian was not a party to these interim proceedings in the Enterprise Court.

2

developed by [DMARC Advisor] (and [DMARC Advisor's Bulgarian subsidiary]) lie." [Doc. 10-1 at ¶ 3.5].

While that investigation was ongoing, on January 22, 2021, dmarcian told DMARC Advisor that it intended once again to terminate access to the parties' shared computer systems where the parties made the Software available to their respective customers. [Doc. 26-1 at ¶ 30; Doc. 26-5 at ¶ 4]. DMARC Advisor objected to this termination as inconsistent with the parties' agreement and the pending investigation, and it asked the District Court of Rotterdam ("the Rotterdam Court") to enjoin the termination. [Doc. 26-5 at ¶ 4].

On January 29, 2021, DMARC Advisor summoned dmarcian and Draegen to appear at a hearing on February 1, 2021, before the Rotterdam Court. [Doc. 26-5 at ¶ 11]. Draegen and dmarcian did not appear that day. [Id. at ¶ 12]. In an order entered February 1, 2021, the Rotterdam Court entered a default against dmarcian and Draegen and directed them to grant DMARC Advisor access to the computer systems necessary to service its customers. [Doc. 26-3 at ¶ 3.3]. The court also fixed the coercive penalty for non-compliance at €20,000 per day, up to €500,000, for both dmarcian and Draegen. [Id. at ¶ 3.4].

3

On March 12, 2021, dmarcian filed its Complaint in this Court, asserting claims for copyright and trademark infringement and misappropriation of trade secrets, as well as related state claims for breach of contract, defamation, computer trespass, tortious interference with contract, tortious interference with prospective economic advantage, and unfair or deceptive trade practices. [Doc. 1]. On March 25, 2021, dmarcian submitted a motion for a temporary restraining order and preliminary injunction. [Doc. 6]. The Complaint was later amended, with the most recent amendment made on June 22, 2021. [Doc. 51].

On April 19, 2021, DMARC Advisor filed a motion to dismiss based on a lack of personal jurisdiction and forum non conveniens. [Doc. 22]. On May 26, 2021, this Court issued an Order enjoining DMARC Advisor and its agents and attorneys and denying DMARC Advisor's motion to dismiss. [Doc. 39]. On June 25, 2021, DMARC Advisor appealed the Preliminary Injunction and the Order denying its motion to dismiss. [Doc. 52]. On June 28, 2021, the Court issued a Show Cause Order based on allegations of DMARC Advisor heaving violated the Preliminary Injunction Order. [Doc. 54]. Following a July 28, 2021 hearing, the Court issued Orders on August 11, 2021, holding DMARC Advisor in civil contempt of the Preliminary

Injunction and amending the Preliminary Injunction to clarify certain provisions. [Docs. 76, 80, 82].

On May 13, 2022, the Court issued an Order allowing discovery to proceed despite the pendency of the appeal. [Doc. 123].

On February 14, 2023, the Fourth Circuit issued its opinion affirming the entry of the Preliminary Injunction and the denial of DMARC Advisor's motion to dismiss. [Doc. 168].

While the U.S. litigation was getting underway, on May 31, 2021, the Rotterdam Court issued a judgment rejecting dmarcian's and Draegen's objections to the February 1, 2021, injunction requiring them to restore DMARC Advisor's access to the shared computer systems. [Doc. 47-2]. The Rotterdam Court also upheld the previous €500,000 coercive penalty for non-compliance and imposed a new coercive penalty of €20,000 per day for further disobedience, with a maximum aggregate penalty of €1 million for both dmarcian and Draegen. [Id. at ¶¶ 5.4, 5.6].

On September 3, 2021, the year-long investigation of DMARC Advisor by the Dutch Enterprise Court concluded. [See Doc. 93-6]. The court-appointed investigator submitted a report, which described the history of the parties' relationship and found that, under applicable Dutch law, dmarcian had no justification for terminating the January 2016 agreement with

5

immediate effect. [Doc. 93-2 at ¶¶ 7.11–7.13]. The investigator further stated that it "is plausible that [dmarcian] and [DMARC Advisor] jointly have copyrights to (the majority of) the source code of version 2.0," [id. at ¶ 7.20], and that if "the parties continue to use the software without mutual consent, they are mutually infringing each other's copyright to the source code," [id. at ¶ 7.22].

Following the conclusion of the Enterprise Court proceedings, on October 11, 2021, DMARC Advisor filed a Writ of Summons (the Dutch equivalent of a civil complaint) in the Rotterdam District Court (the "Rotterdam Complaint"). In the Rotterdam Complaint, DMARC Advisor asserts ownership of the copyright in the Software "by operation of law under Article 7 of the Dutch Copyright Act" [Doc. 106-5 at ¶ 6.22]; asserts the creation of an original work of copyright under E.U. law [see id. at ¶ 6.28]; contends that use of the Software by dmarcian "would . . . infringe [DMARC Advisor's] copyright under Article 26 of the Dutch Copyright Act and the copyright equivalents of other countries where [dmarcian] does business [id. at ¶ 6.39]; and requests that the Rotterdam Court "partition the community of [dmarcian] and [DMARC Advisor] in respect of computer programs to which they jointly hold the copyright pursuant to Article 3:178 of the Dutch Civil Code" [id. at ¶ 6.40].

6

Pursuant to Article 12 of the Dutch Civil Law, dmarcian sought to stay the Rotterdam proceedings in favor of the U.S. case. [See Doc. 174-2 at ¶¶ 1.1, 5.1]. DMARC Advisor opposed dmarcian's request for a stay. [Id. at ¶¶ 5.6, 5.7]. In support of its opposition, DMARC Advisor relied on a May 2, 2022 affidavit from Pressly Millen, who is counsel of record along with Samuel Hartzell in the action pending in this Court. [Id. at ¶ 5.8]. In his Affidavit, Mr. Millen asserted, in pertinent part, as follows:

> 16. As a general matter, U.S. courts recognize that "[i]ntellectual property" involves "separate and independent rights arising from the unique laws of each nation." Black & Decker Corp. v. Sanyei America Corp., 650 F. Supp. 406, 409 (N.D.Ill.1986) (discussing copyright and trademark laws). Neither U.S. copyright law nor U.S. trademark law applies extraterritorially. See GB Mktg. USA Inc. v. Gerolsteiner Brunnen, 782 F. Supp. 763, 772 (W.D.N.Y. 1991) ("Where copyright infringement occurs both inside and outside the United States, the [U.S.] district court has jurisdiction, but only over the U.S. infringement."). For that reason, **the North Carolina litigation, which pleads only violations of U.S. copyright and trademark law**, is "incapable of resolving infringement under foreign law," e.g., Dutch law. Zynga, Inc. v. Vostu USA, Inc., 816 F. Supp. 2d 824, 829 (N.D. Cal. 2011) (U.S. court refusing to enjoin Brazilian copyright action).

> 17. For these reasons (and notwithstanding the fact that the North Carolina Litigation is currently on appeal challenging both jurisdiction and failure of the court to apply the doctrine of forum non conveniens in order to dismiss the case), **determinations to be**

7

**made by the U.S. court in the North Carolina Litigation do not concern the same subject matter as the subject matter before the Dutch court.** In other words, **the primary subject matter of the North Carolina Litigation is alleged infringement of the intellectual property within the U.S.** while the subject matter of the Dutch proceedings is related to the relationship between the parties with respect to their distribution agreement, co-ownership of the software code, and the determination of the penalties previously imposed.

[Doc. 186-1: Millen Aff. at ¶¶ 16-17] (emphasis added).

On September 13, 2022, DMARC Advisor's Dutch counsel, Alfred Meijboom, filed pleading notes (essentially a brief) in the Rotterdam proceedings, describing the U.S. proceedings to the Dutch court as follows:

4.1 A month and a half after [DMARC Advisor] filed for summary judgment against [dmarcian] and Draegen in Rotterdam on January 28, 2021, and received default judgment on February 1, 2021, [dmarcian] addressed the U.S. reehter [sic] in North Carolina on March 12, 2021 .... Unlike in Dutch procedural law, a plaintiff in the United States can start a case and gradually adjust his claims and basis. **Therefore, it cannot be said that**, translated to Dutch proportions, [dmarcian] in the United States on March 12, 2021, **a case on the merits has begun.**

4.2 [dmarcian], in fact, first sought a Temporary Restraining Order . . . .

4.3 Also, [dmarcian] (still in the same case) sought injunctive relief (i.e., a preliminary injunction)—for [DMARC Advisor's] alleged infringement of U.S.

8

copyright, the Lanham Act (trademark law), local know-how and for "tortuous [sic] interference" with [dmarcian's] agreements with its U.S. customers because [DMARC Advisor] allegedly persuaded a customer to use its European instance [sic], based on an amended claim dated April 7, 2021—for which the court did assert jurisdiction, and on May 26, 2021, granted the claims to some extent. [DMARC Advisor] appealed the May 26, 2021 preliminary injunction (both jurisdiction and sentencing) on June 25, 2021, and the Court of Appeals 4th Circuit is expected to enter judgment by the end of the year.

4.4    The May 26, 2021 Order is a contempt order . . . and not a judgment on the merits . . . .

4.5    . . . [O]n May 22, 2022, the U.S. court commenced proceedings on the merits and ultimately issued a pretrial order on July 11, 2022, setting forth a roadmap for the continuation of the proceedings . . . to the effect that the parties first conduct a discovery (in the American system, this is essentially gathering evidence for the purpose of presenting evidence at oral argument—the *trial*), to be completed by the end of February 2023. The final claim is filed through motions, and not later than March 31, 2023. The substantive, oral hearing (the *trial*) will take place on or after September 5, 2023.

4.6    In the meantime, the parties are still required to try a mediation, which must be completed by March 15, 2023 ....

4.7    **There is therefore no question of the North Carolina judge being the first adjudicated judge on the merits** in the spirit of Article 12 Rv. **The U.S. court has only granted injunctive relief**, and it will

take until March 2023 for Oberhaupt[2] to determine the final bases and claims of [dmarcian] in the U.S. proceedings on the merits (if the North Carolina court's finding of jurisdiction has not been overturned by the Court of Appeals by then, or the appeal does not result in further delay).

4.8 **In the present case, the summons was served on [dmarcian] and Draegen on October 11, 2021, making the Rotterdam District Court the court first asked to rule on the parties' disputes on the merits.**

4.9 For this reason alone, therefore, the Rotterdam District Court should hear the case expeditiously and not adjourn until the U.S. court has issued a judgment on the merits.

[Doc. 173-1: Meijboom Aff. at ¶¶ 4.1-4.9] (footnotes omitted) (bold emphasis added).

On May 20, 2022, while dmarcian's motion to stay the Dutch proceedings was pending, DMARC Advisor filed a separate preliminary relief proceeding in the Rotterdam Court. [Doc. 174-1]. In that filing, DMARC Advisor asserted that it is a co-copyright holder of the Software and contended that it "also has an interest in [dmarcian] being enjoined from

_____

[2] While it is unclear whether "Oberhaupt" has a particular meaning in the Dutch language, the Court is aware that "Oberhaupt" in German means "chief." The Court therefore assumes that this is a reference to the undersigned, who is currently serving as the Chief Judge of the Western District of North Carolina.

10

changing the Software – except for repairing errors." [Id. at ¶ 6.16]. DMARC Advisor explicitly asked the Rotterdam Court for a "mirror image" of this Court's Preliminary Injunction, seeking to enjoin dmarcian from "altering the Software, except for modifications which are necessary to comply with the other orders based on the judgment to be rendered in this matter or to correct demonstrable errors." [Id. at 50].

On July 18, 2022, the Rotterdam Court granted DMARC Advisor's request for preliminary relief and entered an order which, among other things, "[p]rohibits [d]marcian . . . from altering the Software without [DMARC] Advisor's consent, except for the modifications that are necessary to comply with other orders based on this judgment and correction of demonstrable errors." [Doc. 141-2 at ¶ 7.3].

On December 14, 2022, the Rotterdam Court denied dmarcian's request to stay (referred to as a "lis pendens appeal") the Rotterdam action that had been initiated on October 11, 2021. [Doc. 173-2]. In denying the stay, the Rotterdam Court accepted DMARC Advisor's representation that the U.S. case did not "commence" until May 22, 2022:

> 5.35. The question remains whether the American proceedings that dmarcian Inc. bases its lis pendens appeal on were instituted earlier than the present case . . .

5.36. Since in the present case the day of summons is October 11, 2021, cleze case is pending pursuant to a11icle 125 paragraph I Rv from that day.

5.37. **During the oral hearing of I September 4, 2022, [DMARC Advisor] explained very concretely and further substantiated with documents that in the U.S. proceedings that dmarcian Inc. underlies its lis pendens appeal to date only decisions of a provisional nature (injunctive relief) have been rendered and that the court in those proceedings did not commence proceedings on the merits until May 22, 2022.** dmarcian Inc. has left this exposition of [DMARC Advisor] undisputed and the court assumes that the decisions rendered before May 22, 2022 should be considered as preliminary injunctive relief under the applicable procedural law.

5.38. A procedure for obtaining provisional relief is not a procedure that is relevant in the present context. **Article 12 of the Dutch Code of Civil Procedure requires that in the foreign proceedings a judgment can be given that is capable of recognition and, if applicable, enforcement in the Netherlands.** With regard to that requirement, the Court considers that it is implicit in that requirement that the foreign decision must have or be able to acquire res judicata in the Netherlands. Under Dutch civil procedural law, a summary judgment is not subject to res judicata .... The court considers that this applies equally, and on the same grounds, to a decision of a foreign court that should be considered as an interim injunction ....

5.39. The fact that, in the American proceedings, it is not a separate legal proceeding but a preliminary phase of the proceedings does not alter the fact that the ratio of the lis pendens rule precludes taking this first phase into account. After all, that ratio is that **if**

**proceedings have been commenced simultaneously in two jurisdictions that can lead to a decision that can become res judicata, the older proceedings take precedence.** The assessment of the lis pendens appeal of dmarcian Inc. is therefore limited to the bidder dispute initiated by the American court on May 22, 2022.

[Id. at 17 §§ 5.35-5.39] (errors uncorrected)[3] (emphasis added). The Rotterdam Court set a July 5, 2023 trial date to determine the parties' rights in the very software at issue in the present case.

The Plaintiff then moved this Court to enter an antisuit injunction to preliminarily enjoin DMARC Advisor from proceeding on its Dutch claims as to copyright ownership and the terms of the parties' contract and breach thereof until the U.S. litigation was tried on its merits. [Doc. 185]. Additionally, dmarcian asked this Court to require DMARC Advisor to correct certain misrepresentations made to the Dutch Court regarding the status of the U.S. case. [Id.].

This Court denied dmarcian's request for an antisuit injunction, concluding that principles of international comity weighed against enjoining DMARC Advisor from proceeding with the Rotterdam Court litigation. [Doc.

_____

[3] This Judgment was translated into English by an unknown entity and contains a number of typographical errors. The Court presents the language of the translated Judgment without corrections.

216 at 16-17]. However, the Court granted dmarcian's request to require the Defendant to correct certain misrepresentations made to the Dutch court by its American counsel, Mr. Millen, in his affidavit and by its Dutch counsel, Mr. Meijboom, in his pleading notes. Specifically, the Court held as follows:

> In opposing dmarcian's request, DMARC Advisor submitted the affidavit of American counsel, Pressly Millen, who represented to the Dutch Court that the U.S. litigation involves only violations of U.S. copyright and trademark law only within the U.S. and therefore does not concern the same subject matter as the litigation before the Dutch Court. [Doc. 186-1: Millen Aff. ¶¶ 16-17]. Mr. Millen conceded at the hearing on this matter, however, that there is a degree of overlap of claims asserted in the U.S. and Dutch litigation. This representation is also clearly contrary to this Court's determination, just months earlier, that the Copyright Act can be applied extraterritorially based on the facts presented in this case.[4] [Doc. 39 at 48-49].
>
> Mr. Millen's Affidavit also wrongly implies that issues of copyright ownership and the terms of the parties' agreement are not at issue in the U.S. case. However, dmarcian's original Complaint makes numerous allegations placing the ownership of the copyright in the source code directly at issue. [Doc. 1 at ¶¶ 2, 8, 9, 33(g), 70, 71(c), 126]. Moreover, dmarcian also pled breach of contract claims, which will require the Court to determine the nature of the parties' relationship and the terms of their agreement. [Id. at ¶¶ 114-24]. These allegations and

---

[4] The Fourth Circuit later affirmed this determination. See dmarcian, Inc. v. dmarcian Eur. BV, 60 F.4th 119, 139-40 (4th Cir. 2023).

claims were carried forward to dmarcian's Second Amended Complaint. [Doc. 51].

Several months later, DMARC Advisor's Dutch counsel, Alfred Meijboom, filed pleadings notes in opposition to dmarcian's request for a stay, arguing that the Rotterdam proceedings (which commenced in October 2021) preceded the commencement of proceedings on the merits in the U.S. Specifically, Mr. Meijboom asserted that the filing of the U.S. Complaint in March 2021 sought only interim injunctive relief and therefore did not begin "a case on the merits," and that this Court did not commence "proceedings on the merits" until May 22, 2022. [Doc. 173-1 at ¶¶ 4.1-4.5]. These statements are false and misleading. Unlike Dutch law, wherein proceedings on the merits are conducted separately from proceedings for preliminary or summary relief, under U.S. law, a civil action is commenced with the filing of a complaint. Fed. R. Civ. P. 3. There is no separation of the preliminary proceedings and the proceedings on the merits. The complaint sets forth a statement of the claims upon which the plaintiff seeks relief on the merits. Fed. R. Civ. P. 8(a)(2). When a civil action is filed, a plaintiff may seek preliminary relief as part of that action. In order to receive preliminary or interim relief under U.S. law, the party seeking relief must demonstrate a likelihood of prevailing on the merits. A preliminary relief hearing can even be consolidated with a trial on the merits. See Fed. R. Civ. P. 65(a)(2). Thus, regardless of whether preliminary injunctive relief is sought, what matters for the purpose of determining under U.S. law whether an action on the merits was first to be filed is the filing of the complaint. The complaint sets forth the claims upon which the Court may issue a final judgment, and therefore it is the filing of the complaint that commences the proceedings on the merits in a U.S. action.

Mr. Meijboom's false and misleading statements caused the Dutch Court to conclude that dmarcian's Complaint sought only provisional relief and therefore did not constitute a commencement of proceedings on the merits, thereby making DMARC Advisor's commencement of proceedings in the Rotterdam Court in October 2021 the "earlier filed" action. [See Doc. 173-2 at § 5.39 (finding that the U.S. proceedings "commenced" on May 22, 2022 and therefore concluding that the October 2021 Dutch proceedings "take precedence" as the older proceeding)]. The Rotterdam Court, therefore, denied dmarcian's request to stay its proceedings in favor of the U.S. proceedings based on counsel's misrepresentations of U.S. and the application of that law to the facts of this case.

[Doc. 216 at 19-22]. Finding that the above-referenced statements made by DMARC Advisor's counsel to the Rotterdam Court were "significant and material misrepresentations," which "create[d] a risk of inconsistent, conflicting, and erroneous judgments which will neutralize or negate this Court's rulings," this Court ordered DMARC Advisor to promptly correct its misstatements to the Rotterdam Court prior to the commencement of the trial on July 5, 2023. [Id. at 23]. To that end, the Court specifically required DMARC Advisor to provide a copy of the Order to the Rotterdam Court, as well as a statement from DMARC Advisor's counsel that would include the following:

16

(1) Counsel is submitting this statement to the Rotterdam Court in order to correct false and misleading representations previously made to the Court in both the Affidavit of Pressly Millen and the pleading notes of Alfred Meijboom;

(2) The proceedings on the merits in the U.S. case began with the filing of the Complaint on March 12, 2021, and DMARC Advisor's representations to the contrary to the Rotterdam Court are entirely untrue;

(3) The U.S. case filed on March 12, 2021 presented claims which put copyright ownership and the terms of the parties' contracts squarely at issue. As such, there appears to be some overlap of issues between the U.S. case and that pending before the Rotterdam Court. DMARC Advisor's representation to the Rotterdam Court that the U.S. case pleads only violations of U.S. copyright and trademark law, and not any infringing actions outside the U.S., is entirely untrue; and

(4) The Preliminary Injunction issued by the U.S. Court did not limit application of the Copyright Act to only acts of infringement within the United States and gave extraterritorial application to reach acts of DMARC Advisor in Europe and elsewhere, and DMARC Advisor's representations to the contrary to the Rotterdam Court are entirely untrue.

[Id. at 23-24]. The Court specifically warned DMARC Advisor "that failure to comply with the directives of this Order will result in the imposition of sanctions, up to and including the striking of DMARC Advisor's Answer and the entry of default against it." [Id. at 24-25].

17

The Defendant complied with the directive to submit the June 27, 2023 Order to the Dutch Court. However, the Defendant failed to submit the required statement from its counsel. At the hearing before the Dutch Court on July 5th, Mr. Meijboom continued to maintain the Defendant's position that the U.S. did not commence on the merits until after the Dutch case was commenced in October 2021 and that the claims in the cases do not overlap. [See Doc. 254-1 at 6].

On September 14, 2023, the Plaintiff filed a motion to show cause for the Defendant's failure to comply with the Court's June 27, 2023 Order. [Doc. 253]. On May 1, 2024, the Court ordered the Defendant and its counsel to show cause why a finding of civil contempt and imposition of sanctions, including reasonable attorneys' fees, was not warranted. [Doc. 358]. The show cause hearing was initially scheduled for May 15, 2024; however, scheduling conflicts required continuance of that hearing until August 23, 2024.

In the meantime, on December 20, 2023, the Dutch Court reversed its prior ruling and concluded that the U.S. proceedings were commenced earlier than the Dutch action; that the cases had substantial overlap of issues; and that the Dutch proceedings should be stayed pending the entry of a final judgment in the U.S. action. [Doc. 294-1 at 11-12].

18

At the August 23, 2024 hearing, the Plaintiff presented argument from both its American counsel and its Dutch counsel on the issues of contempt and the appropriate sanctions therefor. Counsel appeared on behalf of Mr. Millen and Mr. Hartzell to argue that a finding of contempt was not warranted because defense counsel had substantially complied with the Court's Order. The Defendant's Dutch counsel, Mr. Meijboom, also appeared on behalf of himself and argued against a finding of contempt on numerous grounds. At the conclusion of the hearing, the Court gave both sides the opportunity to submit further documentation in support of their arguments, and the parties complied. [See Docs. 385, 387].

## II. STANDARD OF REVIEW

District courts have "inherent power to enforce compliance with their lawful orders through civil contempt." Sullivan v. United States, 384 U.S. 364, 370 (1966). "That power includes the ability to award damages and attorney's fees to an aggrieved party." Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC, 887 F.3d 610, 617 (4th Cir. 2018) (citing Hutto v. Finney, 437 U.S. 678, 691 (1978)). To establish civil contempt, there must be clear and convincing evidence of four elements:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's

"favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

United States v. Ali, 874 F.3d 825, 831 (4th Cir. 2017).

## III. DISCUSSION

The Court begins by addressing the issue of whether Mr. Meijboom should be held in contempt. On this issue, there are two threshold questions. As a preliminary matter, Mr. Meijboom questions whether this Court has jurisdiction over him, as he is not counsel of record for the Defendant in this case, even though he is counsel of record of that Defendant in the Dutch litigation. The Court has already rejected this argument [Doc. 358 at 3-4] and readily concludes that it may properly exercise over Meijboom for the purpose of these contempt proceedings.

Next, Mr. Meijboom asserts that he cannot be held in contempt for failing to correct his misrepresentations to the Dutch Court by an affirmative statement by him, or for having re-affirmed his representations at the July 5th hearing. On this point, Mr. Meijboom makes two arguments. First, citing Article 10a of the Lawyers Act and the Dutch Rules of Professional Conduct, he argues that he is *dominus litis* ("the master of the suit") and is ethically

required to act independently of a third party's instructions. As such, he contends, that he was not required to abide by the instructions of this Court.

Mr. Meijboom's argument in this regard overlooks Rules 6 and 8 of the Dutch Rules of Professional Conduct and Article 21 of the Dutch Code of Civil Procedure, which require a Dutch lawyer to accurately present the facts while advocating for his client; to avoid causing unnecessary expense by the opposing party; and to refrain from providing factual information that knows, or at least should know, to be incorrect. [See Doc. 385: 3rd Hoeba Decl. at ¶¶ 4, 5; Exs. 385-1 at 10-11, 12; Exhibit 385-2 at 1]. In asserting his misrepresentations regarding the status of the U.S. proceedings and by failing to correct the same, Mr. Meijboom failed to comply with these ethical requirements.

Second, citing a decision from the European Court of Human Rights,[5] Mr. Meijboom argues that he has a cognizable freedom of speech under the European Convention on Human Rights, and that this freedom gives him the right to criticize and even contradict the opinion of any judge (European or American). As such, he argues that statements and his failure to comply with

---

[5] Lutgen v. Luxembourg, Case 36681/23 Eur. Ct. H.R. (2024).

21

the June 27, 2023 order are protected, even though they were in the nature of a factual misrepresentation.

The Court is reluctant to interpret, much less apply, European law in this instance.[6] The Court finds, however, it is not necessary to do so. When Mr. Meijboom failed to comply with this Court's Order and spoke in direct contravention thereof, he was acting as an advocate of DMARC Advisor. His actions and words were DMARC Advisor's actions and words. There is no question that DMARC Advisor is before this Court and that this Court has jurisdiction over it. As such, the Court finds that Mr. Meijboom's actions, inaction, and words were contemptuous of this Court; that Mr. Meijboom committed such contemptuous acts with the full knowledge and approval of DMARC Advisor; and that such supports a finding and holding that the Defendant DMARC Advisor is in civil contempt of this Court.

The Court next addresses the actions and failure to comply of Mr. Millen. The facts and circumstances surrounding Mr. Millen's conduct are materially different from those concerning Mr. Meijboom. As previously found

---

[6] Even though Mr. Meijboom's argument in this regard would seem to be beyond the pale, and would also appear to vitiate any requirement of candor that Mr. Meijboom may have to the Dutch Court where he is admitted to practice, this may be more of a question for the authorities in the Netherlands who govern the licensing of attorneys in that court, than for this Court to address herein. Moreover, there is the practical limitation of whether any contempt sanction levied against Mr. Meijboom could be enforceable, given there is no requirement or certainty that he will ever return to the United States.

22

by this Court, Mr. Millen's affidavit of May 2, 2022 was materially false. Therein, he stated that the case in this Court addressed only copyright and trademark issues, ignoring the other twelve claims that were pending, and asserted that there was no overlap of claims or issues between this case and that pending in the Dutch Court. In addition, Mr. Millen's affidavit was silent on the crucial issue of when the merits of this case commenced, even though Mr. Meijboom had represented to the Dutch Court that this did not occur until May 22, 2002 (i.e., after Mr. Millen's affidavit, presumably the date of the taking of the first deposition in the case). Mr. Millen was ordered to correct his misrepresentation by the filing of this Court's June 27, 2023, Order with the Dutch Court and also by the filing of a statement of correction. Just as Mr. Meijboom, he did the first but not the second. Unlike Mr. Meijboom, however, he did not re-affirm his misrepresentation to the Dutch Court, but merely remained silent.

Mr. Millen, through counsel, presents several arguments as to why his failure should be excused. First, he argues that his efforts at compliance were thwarted by Mr. Meijboom. Since Mr. Meijboom was the counsel of record for the Dutch Court, and Mr. Millen was not, Mr. Millen was entirely dependent on Mr. Meijboom for Mr. Millen to comply. Mr. Millen, however, has presented nothing to this Court to demonstrate what efforts, if any, he

23

personally made to undertake compliance through Mr. Meijboom. He has not shown any corrective affidavit that he attempted to present to the Dutch Court either with or without Mr. Meijboom's cooperation. He also did nothing to apprise this Court that he was being thwarted in any attempt to comply. In all respects, Mr. Millen simply remained silent. Mr. Millen's counsel argued that the filing of this Court's June 27, 2023 order without the corrective statement constituted "substantial compliance" with the Court's directive. This argument, however, was belied by the fact that Mr. Meijboom appeared before the Dutch Court on July 5, 2023, and reaffirmed the misrepresentations previously made. This, of course, made the corrective statements (and particularly Mr. Millen's corrective statement) all the more crucial to achieving substantial compliance with this Court's Order.

Mr. Millen's third argument can best be summarized as "no harm, no foul." After the July 5, 2023 hearing the Dutch Court ultimately found in accord with this Court's order and rejected Mr. Millen's and Mr. Meijboom's misrepresentations. The sequence of events, however, was not so simple. The Dutch Court's initial ruling was in accord with Mr. Millen's and Mr. Meijboom's misrepresentations. Only after a protracted procedural struggle was the error corrected by a subsequent order of the Dutch Court on

December 20, 2023. Even then, Mr. Meijboom has persisted in seeking the reversal thereof—continuing to be persistent in his wrongful conduct.

It is obvious that Mr. Millen's conduct was not as blatant as that of Mr. Meijboom, and compliance with the Court's order would have been much more difficult for Mr. Millen. But the fact remains that he materially failed to comply, and that his efforts to comply were no more than half measures. Not only did this cause the Plaintiff to incur substantial expense, but these misrepresentations and the failure to correct them have delayed this case and the Dutch proceedings by many months, if not years. For these reasons, the Court find that Mr. Millen's material failure to comply with this Court's June 27, 2023 Order was contemptuous of this Court and that such conduct supports a finding and a holding that Mr. Millen is in civil contempt of this Court.

Regarding Mr. Hartzell, the Court finds that Mr. Hartzell made no material misrepresentations to the Dutch Court and thus had no individual obligation to correct any misstatements of his own. The Order did, however, direct "counsel for the Defendant" to correct the misrepresentations that were made. The Court finds that Mr. Hartzell undertook a number of communications seeking to prod Mr. Meijboom into full compliance with this

25

Order. Therefore, the Court declines to find any of Mr. Hartzell's conduct to be contemptuous of this Court.

In assessing an appropriate sanction for DMARC Advisor and Mr. Millen, the Court finds that substantially different sanctions for each would be appropriate because the nature of their respective contemptuous acts and omissions were materially different.

With regard to DMARC Advisor, the particular acts of contempt set out herein are merely another chapter in a series of obstructionist and obstreperous litigation tactics by the Defendant that have drawn this case out and caused the Plaintiff great expense. The Court entered a Preliminary Injunction in this matter, which the Defendant promptly disregarded, necessitating a finding of contempt.[7]

Were it not for the Defendant's machinations in the Dutch Court, as well as its misrepresentations thereto, this case would probably have been concluded in 2023. In fact, even the show cause hearing at issue here was delayed several times at the Defendant's request such that it had to be

---

[7] That order of contempt was affirmed by the Fourth Circuit. Since that time, the Supreme Court has come to the Defendant's rescue in that the Supreme Court's subsequent decision in Abitron Austria GmbH v. Hetronic International, Inc., 600 U.S. 412 (2023), undercut the basis for this Court's and the Fourth Circuit's rulings, and thus necessitated the vacating of the sanctions entered thereon. That, however, does not excuse or even diminish the overt disregard for the orders of this Court demonstrated by the Defendant.

scheduled on August 23, 2024, the date that had been reserved for the final pretrial conference. Now, however, the trial of this matter will not commence until March 2025.

As the Fourth Circuit noted in the prior appeal of this matter, "[a] civil contempt sanction must serve either to (1) coerce obedience to a court order, or (2) compensate the complainant for losses sustained as a result of the contumacy." dmarcian, Inc. v. dmarcian Eur. BV, 60 F.4th 119, 146 (4th Cir. 2023) (quoting in part Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 821 (4th Cir. 2004)) (internal quotation marks omitted). Here, the Plaintiff has represented to the Court that the Defendant's delay tactics and misrepresentations have cost the Plaintiff some €250,000 (approximately 262,000 USD) in attorney's fees in the Dutch action alone. [Doc. 386: Tr. at 142]. The Court can reasonably estimate that the attendant cost to the Plaintiff relative to this action can amount to an additional $150,000. Based thereon, the Court imposes on the Defendant as a compensatory sanction for this contempt a fine in the amount of $400,000.

On the other hand, Mr. Millen's improper actions constitute one small slice of the overall obstruction of the Defendant. Therefore, making him jointly and severally liable for that monetary sanction would not be warranted. In lieu of imposing any monetary penalty on him, the Court instead will

suspend Mr. Millen's admission to the Bar of this District for the pendency of the present action.  This sanction, however, is imposed not as a punitive sanction but as a coercive one.  Mr. Millen can purge his contempt by certifying under oath and demonstrating to the satisfaction of the Court that he has had filed with the Dutch Court an affidavit, under oath, correcting the misstatements and omissions of his prior affidavit, as well as the misstatements and omissions made by Mr. Meijboom, and apologizing to the Dutch Court for such failures.  Upon the completion of such, Mr. Millen's suspension will be lifted fourteen (14) days thereafter.

**IT IS, THEREFORE, ORDERED** that the Defendant DMARC Advisor BV is hereby held in civil contempt of the Court's June 27, 2023 Order.  The Defendant shall pay to the Plaintiff Four Hundred Thousand Dollars ($400,000.00), representing the attorney's fees and expenses incurred by the Plaintiff as a result of the Defendant's contemptuous conduct.

**IT IS FURTHER ORDERED** that the Defendant's counsel, Pressly Millen, is hereby found in civil contempt and his admission to the Bar of this District is hereby suspended for the pendency of the present action.  Mr. Millen may purge his contempt by filing a certification under oath that he has had filed with the Dutch Court an affidavit correcting the misstatements and

omissions of his prior affidavit, as well as the misstatements and omissions

made by Mr. Meijboom, and apologizing to the Dutch Court for such failures.

**IT IS SO ORDERED.**

Signed: December 19, 2024

Martin Reidinger
Chief United States District Judge