# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:21-cv-00067-MR

| | | |
|---|---|---|
| DMARCIAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| DMARC ADVISOR BV, | ) | |
| f/k/a dmarcian Europe BV, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on remand from the United States Court of Appeals for the Fourth Circuit for further consideration of the amount of sanctions to be imposed for the Defendant's contempt in violating the Preliminary Injunction entered in this matter. dmarcian, Inc. v. dmarcian Europe BV, 60 F.4th 119 (2023). Also pending before the Court are the Defendant's Motion to Dissolve or Modify Preliminary Injunction [Doc. 220] and the Plaintiff's Motion Pursuant to Fed. R. Civ. P. Rule 60 Seeking Modification of the Preliminary Injunction [Doc. 291]. The Court held a hearing on these issues on August 23, 2024. [See Doc. 386: Hrg. Transcript].

## I. PROCEDURAL BACKGROUND

On March 12, 2021, the Plaintiff dmarcian, Inc. filed its original Complaint[1] for copyright and trademark infringement and related state claims against the Defendant DMARC Advisor BV (formerly known as dmarcian Europe BV). [Doc. 1]. On March 25, 2021, the Plaintiff filed a motion for a temporary restraining order and preliminary injunction. [Doc. 6]. On April 19, 2021, the Defendant moved to dismiss this matter for lack of personal jurisdiction and forum non conveniens. [Doc. 22].

On May 26, 2021, this Court entered an Order denying the Defendant's motion to dismiss and granting the Plaintiff's motion for preliminary injunction. [Doc. 39]. In granting the motion for preliminary injunction, the Court specifically found that the Plaintiff was likely to succeed on the merits of its claims for violations of the Copyright Act, 17 U.S.C. §§ 101, et seq. [Doc. 39 at 46-49]; its claim for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051, et seq. [id. at 49-56]; its claim for violation of trade secrets arising under the Defense of Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §§ 1836, 1839, et seq. [id. at 57-63]; and its claims arising under North Carolina law for tortious interference with contract and with prospective

---

[1] The Complaint was later amended, with the most recent amendment made on June 23, 2021. [Doc. 51].

2

economic advantage [id. at 63-66]. The Court declined to address the

Plaintiff's other claims, including its claims for false designation of origin,

common law trademark, and unfair and deceptive trade practices under N.C.

Gen. Stat. § 75-1.1, et seq. [Id. at 66].

The decretal portion of the Court's Order enjoined the Defendant from

engaging in the following conduct:

> (1) providing services to any customers located outside of Europe, Africa, or Russia, except for the six customers detailed in the Defendant's Brief on Proposed Voluntary Commitments [Doc. 32 at 4 n.3];
>
> (2) providing access to any of its websites to IP addresses from countries outside of Europe, Africa, or Russia. The Defendant shall inform website visitors from outside of those areas that it does not create new accounts in that region and shall direct those customers to contact dmarcian, Inc. for services through the Plaintiff's website https://dmarcian.com;
>
> (3) making changes to the copyrighted software except as specifically and expressly allowed or directed by this Order;
>
> (4) using the Plaintiff's trademark in any manner unless such use is accompanied by a statement which reads: "This trademark is the trademark of dmarcian, Inc. This website is produced and generated and posted by dmarcian Europe BV, which is a different entity from dmarcian, Inc. This trademark is being used at this location without the permission of dmarcian, Inc. and only pursuant to the terms of a court order allowing its temporary use

3

during litigation between dmarcian, Inc. and dmarcian Europe BV…. [citing further formatting/placement requirements];

(5) displaying any website with the "dmarcian" name unless that website includes a statement that "The dmarcian software was originally developed by dmarcian, Inc. This is not the website of dmarcian, Inc. The website of dmarcian, Inc. can be found at https://dmarcian.com.".... [citing further formatting/placement requirements];

(6) redirecting, encouraging, or allowing any customer to change its service provider or payment recipient from dmarcian, Inc. to dmarcian Europe, BV;

(7) making any public statement about dmarcian, Inc. except as expressly allowed or directed herein.

[Doc. 39 at 75-76]. The Court further required the Defendant to make certain financial disclosures on an ongoing basis. [Id. at 76-77].

The Court subsequently amended paragraph (6) of the decretal portion of the Preliminary Injunction to read as follows:

(6) redirecting, encouraging, or allowing any customer to change its payment recipient from Plaintiff to the Defendant. To the extent that the current service provider for any customer is different from the payment recipient for that customer, the party providing services to that customer is prohibited from unilaterally terminating or otherwise altering those services without express permission from the Court.

4

[Doc. 82 at 3].

The Defendant appealed the Preliminary Injunction on June 25, 2021. [Doc. 52]. While that appeal was pending, the Court held the Defendant in civil contempt of the Preliminary Injunction for continued use of the Plaintiff's trademark by redirecting website traffic for various "dmarcian" domain names to the Defendant's website without posting the relevant disclaimers that were required by the Preliminary Injunction.[2] [Doc. 80 at 26]. The Court ultimately determined that the Defendant should pay $335,000.00 to the Plaintiff as a sanction for its contemptuous conduct. [Doc. 124]. The Defendant appealed these Orders, and those appeals were consolidated with the original appeal of the Preliminary Injunction. [Docs. 92, 131].

On appeal, the Defendant argued that the Preliminary Injunction should be vacated, *inter alia*, because this Court erroneously applied United States and North Carolina law extraterritorially, thereby violating the presumption against extraterritoriality. The Court of Appeals rejected this argument with respect to all the Plaintiff's claims, noting that "[t]he relevant law all concern [the Defendant's] conduct, which notably touched *American*

---

[2] The Court also found the Defendant in contempt of the Preliminary Injunction on June 10, 2022, for failing to make proper financial disclosures as required by the Preliminary Injunction. [Doc. 125]. The Defendant was given seven days to purge that contempt, which the Defendant did. [Doc. 127].

customers." dmarcian, Inc. v. dmarcian Europe BV, 60 F.4th 119, 138 (2023). The Court of Appeals thus affirmed this Court's Order denying the motion to dismiss and granting the preliminary injunction in all respects. Id. at 136-37, 147. The Court of Appeals further held that this Court was justified in issuing a contempt sanction for the Defendant's continued use of the Plaintiff's trademarks, but it vacated the contempt order and remanded for "a more thorough examination of the sanction amount." Id. at 148. The Court of Appeals issued its mandate on March 10, 2023. [Doc. 172].

Following remand, the Court directed the parties to file supplemental briefs regarding the contempt sanction. The parties thereafter filed their supplemental briefs and supporting declarations. [See Docs. 180, 181, 183, 184, 191, 192, 200]. While this matter was under advisement, the Plaintiff filed a motion asking this Court to issue a preliminary antisuit injunction precluding the Defendant from proceeding further with the Dutch proceedings through the trial on the merits in this action and/or require the Defendant to correct certain misstatements to the Dutch Court. [Doc. 185]. The Court held a hearing on the Plaintiff's motion on June 27, 2023. At that hearing, the Court announced that it would require the Defendant to provide a corrective statement to the Dutch Court no later than July 3, 2023. [Doc. 218: Tr. at 44]. The Court further advised the parties that it would hold in

abeyance the issue of the contempt sanction that had been remanded pending the Defendant's compliance with the Court's new order regarding the correction of misstatements to the Dutch Court.  [Id. at 51 ("[A]s far as any sanctions are concerned, I want to hold that in abeyance because I want to see the degree to which the defendant complies with this order.")].

While these matters were pending, the Defendant moved for summary judgment on the Plaintiff's claims.  [Doc. 294].  On May 1, 2024, the Court entered an Order granting the Defendant's motion in part and dismissing the Plaintiff's claims for copyright infringement.  [Doc. 360].  In all other respects the motion was denied.  [Id.].  After a number of continuances, this matter is scheduled for trial during the March 2025 trial term.  [See Text-Only Order entered Oct. 7, 2024].

Both parties have moved to modify the Preliminary Injunction, to varying degrees.  The Defendant argues that changed factual circumstances and recent developments in the law require that the injunction be dissolved, or at least modified to limit its extraterritorial application.  [Doc. 220].  The Plaintiff moves for an expansion of the injunction to prohibit the Defendant entirely from using the source code/SaaS platform that the Defendant obtained from the Plaintiff in January 2021.  The Court held a hearing on these motions, as well as other matters which are addressed by way of a

separate Order, on August 23, 2024.  Having been fully briefed and argued, these matters are ripe for disposition.

## II.    STANDARD OF REVIEW

"In order to prevail on a motion to modify, the movant must establish a change in circumstances that would make the original preliminary injunction inequitable.  The motion does not force the trial judge to permit relitigation of his original determination of the injunction and should not serve as an avenue of untimely review of that determination."   Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 60 F.3d 823, 1995 WL 406612, at *2 (4th Cir. 1995) (unpublished table decision) (quoting with approval Favia v. Ind. Univ. of Penn., 7 F.3d 332, 337 (3d Cir. 1993)).  In seeking a dissolution or modification of a preliminary injunction, the moving party must demonstrate "significant changes in fact, law, or circumstance since the previous ruling." see Gooch v. Life Investors Ins. Co. of Am., 672 F.3d 402, 414 (6th Cir. 2012); (quoting Gill v. Monroe Cty. Dep't of Soc. Servs., 873 F.2d 647, 648-49 (2d Cir. 1989)); Stone v. Trump, 400 F. Supp. 3d 317, 332 (D. Md. 2019) (holding that movant must establish "a significant change either in factual conditions or in law" that makes "enforcement of the [preliminary injunction] ... detrimental to the public interest").   "[M]inor changes in the facts or law usually are insufficient."   Am. Coll. of

8

Obstetricians & Gynecologists v. United States Food & Drug Admin., 506 F. Supp. 3d 328, 338 (D. Md. 2020) (quoting Multi-Channel TV Cable, 1995 WL 406612, at *3).  The decision to dissolve or modify a preliminary injunction is a matter with the Court's sound discretion.  Conservation Council of N.C. v. Costanzo, 528 F.2d 250, 252 (4th Cir. 1975).

## III.    DISCUSSION

### A.    Modification of Amended Preliminary Injunction

In 2023, the United States Supreme Court decided the foreign reach of the Lanham Act in Abitron Austria GmbH v. Hetronic International, Inc., 600 U.S. 412 (2023).  In that case, the Supreme Court noted that there is a "presumption against application to conduct in the territory of another sovereign."  Id. at 417 (citation and internal quotation marks omitted). Applying this presumption against extraterritoriality requires a two-step analysis. First, the Court must determine whether Congress intended for the statute to apply to foreign conduct.  Id. at 417-18.  If the statute is not extraterritorial, the Court then turns to the second step, which requires identifying the "focus of [the] statute" and determining "whether the conduct relevant to that focus occurred in United States territory."  Id. at 418 (emphasis in original). As the Supreme Court explained:

> Step two is designed to apply the presumption against extraterritoriality to claims that involve both domestic and foreign activity, separating the activity that matters from the activity that does not. After all, we have long recognized that the presumption would be meaningless if any domestic conduct could defeat it. Thus, if the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application of the statute, even if other conduct occurred abroad. And if the relevant conduct occurred in another country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U. S. territory.

Id. at 419 (internal citations and quotation marks omitted). Applying this framework to the Lanham Act, the Court readily concluded that Sections 1114 and 1125(a)(1) of the Lanham Act are not extraterritorial in scope. Id. at 419-20. The Court therefore moved to the second part of the inquiry, i.e., determining the focus of the asserted Lanham Act claim and determining whether the conduct relevant to that focus occurred in the United States. Id. On this point, the Court found that "[t]he ultimate question regarding permissible domestic application turns on the location of the *conduct* relevant to the focus," which in the case of trademark infringement, "is infringing use in commerce, as the [Lanham] Act defines it." Id. at 422 (emphasis added). Accordingly, the Court concluded that § 114(1)(a) and § 1125(a)(1) "extend

10

only to claims where the claimed infringing use in commerce is domestic." Id. at 415.

Here, the conduct that this Court found to support the issuance of the Amended Preliminary Injunction involved, at least in part, conduct within the United States. [See Doc. 39 at 52-53]. Specifically, the Defendant's website included an option for customers "in the Americas," at least one U.S. customer was enticed to change platforms, and the Defendant's false data breach message went directly to U.S. customers. [Id.]. This conduct is sufficient under Abitron to support a continued injunction against the Defendant, at least with respect to customers in the United States. Accordingly, the Court will modify paragraphs 4 and 5 of the decretal portion of the Amended Preliminary Injunction to read as follows:

> 4. Using the Plaintiff's trademark in any manner **in the United States or on any websites which are accessible to IP addresses from the United States,** unless such use is accompanied by a statement . . . .
>
> 5. Displaying any website with the "dmarcian" name **which is accessible to IP addresses from the United States,** unless that website includes a statement . . . .[3]

---

[3] The Plaintiff urges the Court to modify this language to also include any websites with the "dmarcian" name which are accessible "through other conduct in the United States," such as the use of a foreign VPN. The Court declines to include such limitation, as it would be impossible for the Defendant to regulate such access by consumers.

The remainder of the decretal paragraphs of the Amended Preliminary Injunction remain unaffected by Abitron. These provisions, respectively, enjoin the Defendant from: (1) providing services to customers outside a prescribed territory; (2) providing access to the Defendant's website outside a prescribed territory; (3) making changes to the software; and (6) redirecting, encouraging, or allowing any customer to change its payment recipient from the Plaintiff to the Defendant. [Doc. 82]. While the Plaintiff's trademark claims have been limited to only infringement occurring in domestic conduct, and the Plaintiff's copyright claims have been dismissed, paragraphs (1), (2), (3), and (6) of the Court's decretal provisions (as amended) continue to be supported by the Plaintiff's trade secret claims under the DTSA. These provisions remain necessary to protect the Plaintiff in relation to the Defendant's use of a source code which includes the Plaintiff's trade secrets.

To the extent that any of these other paragraphs have extraterritorial application, such application is permissible under the DTSA, which plainly and expressly instructs that it applies to "conduct occurring outside the United States if . . . an act in furtherance of the offense was committed in the United States." See 18 U.S.C. § 1837(2). In granting the preliminary

12

injunction, this Court found that the Defendant committed at least two acts within the United States: (1) the Defendant originally gained access to the Plaintiff's trade secrets through data stored on servers within the United States and (2) the Defendant likely facilitated the use or disclosure of these trade secrets within the United States. The Fourth Circuit affirmed these findings on appeal. dmarcian, Inc. v. dmarcian Eur. BV, 60 F.4th 119, 141-42 (4th Cir. 2023). In light of the DTSA's clear instructions regarding the application to foreign conduct, the Court concludes that Abitron does not impact the applicability of paragraphs (1)-(3) and (6) of the decretal portion of the Amended Preliminary Injunction.

Paragraph (3), however, does require some further modification. That portion of the Amended Preliminary Injunction enjoins the Defendant from "making changes to the *copyrighted* software except as specifically and expressly allowed or directed by this Order." [Doc. 82 at 2] (emphasis added). The dismissal of the Plaintiff's copyright claims on summary judgment obviates the need for injunctive relief with respect to the Plaintiff's *copyright* ownership in the source code. However, the Plaintiff still has a viable DTSA claim based on the source code being a *trade secret*. Accordingly, paragraph 3 will be modified to enjoin the Defendant from

making changes to the "trade secret source code" except as specifically and expressly allowed or directed by the Court.

The Defendant makes additional arguments in support of its contention that the injunction should be dissolved in its entirety. The Defendant, however, had the opportunity to appeal the Amended Preliminary Injunction, and it was upheld in all respects. Thus, save for the minor changes mandated by the Abitron decision, the Court finds no basis to dissolve or further modify the Amended Preliminary Injunction.

The Plaintiff requests that the Court further expand the injunction to enjoin the Defendant using the source code at all and from interfering with customer relationships or otherwise making false statements regarding this action or the Dutch litigation. [See Doc. 291]. In the injunction order, the Court did not fully restrain the Defendant from use of the source code in an effort to preserve the status quo between the parties. The Court declines to disturb that status quo now. As for the Plaintiff's request regarding customer interference and false statements, the Court finds that the Amended Preliminary Injunction adequately addresses such conduct. Accordingly, the Plaintiff's request for an expansion of the Amended Preliminary Injunction is therefore denied.

14

## B.    Contempt Sanctions on Remand

The Court previously held the Defendant in civil contempt of the Preliminary Injunction for continued use of the Plaintiff's trademark by redirecting website traffic for various "dmarcian" domain names to the Defendant's website without posting the relevant disclaimers that were required by the Preliminary Injunction.  [Doc. 80 at 26].  The Court imposed a civil contempt sanction of $5,000.00 for each day after the entry of the Preliminary Injunction that the Defendant continued to use dmarcian.eu, dmarcian.nl, dmarcian.co.uk, dmarcian.be, dmarcian.es, dmarcian.fr, dmarcian.at, dmarcian.frl, dmarcian.io, dmarcian.jp, dmarcian.hk, or any other website featuring the trademark "dmarcian" in its domain name.  [Id.].

These offending websites, however, were not accessible using IP addresses from the United States.[4]  As such, the basis for the civil contempt sanctions—i.e., the continued use of the Plaintiff's trademark—occurred only extraterritorially.  Now that the Supreme Court has held that the Lanham Act has no extraterritorial application, the basis for the Court's imposition of a

---

[4] As explained by the parties, such websites could be accessed by someone in the United States by, for example, using a VPN in a foreign country.  As noted supra, whether an individual consumer decides to use such methods to access foreign websites is outside of the control of the Defendant.

civil contempt sanction for the use of the trademark in the domain names of these websites is called into question.

It is true that a party must comply with a court's order, even if it is ultimately determined to have been entered in error. McLean v. Central States, Southeast and Southwest Areas Pension Fund, 762 F.2d 1204, 1210 (4th Cir. 1985) ("Orders of the court must be promptly complied with, absent a stay, for appeal is the remedy for decisions believed to be erroneous."). And, where criminal contempt is found, any sanction imposed therefor will continue to stand even if the underlying order is reversed. Id. When a sanction is imposed for a finding of civil contempt, however, "[t]he right to remedial relief falls with an injunction which events prove was erroneously issued." United States v. United Mine Workers, 330 U.S. 258, 295 (1947); see also McLean, 762 F.2d at 1210 ("Although a criminal contempt stands even if the underlying order is reversed, reversal of the underlying order ordinarily invalidates any civil contempt sanctions predicated thereon."). Because the Lanham Act does not have extraterritorial application, and the Defendants' misuse of the Plaintiff's trademark in the domain names of certain websites occurred outside of the United States, the civil contempt sanction is no longer valid. Accordingly, the civil contempt finding is vacated, and no civil contempt sanction will be imposed against the Defendant.

16

**IT IS, THEREFORE, ORDERED** that:

(1)    The Court's finding of civil contempt is **VACATED**, and no civil contempt sanction shall be imposed against the Defendant for the civil contempt identified in the Court's August 11, 2021 Order [Doc. 80];

(2)    The Defendant's Motion to Dissolve or Modify Preliminary Injunction [Doc. 220] is **GRANTED IN PART** and **DENIED IN PART**, and an amended injunction shall be entered contemporaneously herewith; and

(3)    The Plaintiff's Motion Pursuant to Fed. R. Civ. P. Rule 60 Seeking Modification of the Preliminary Injunction [Doc. 291] is **DENIED**.

**IT IS SO ORDERED.**

Martin Reidinger
Chief United States District Judge

17