IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO.: 1:21-CV-00067

| | |
|---|---|
| DMARCIAN, INC.,<br><br>             Plaintiff,<br><br>   v.<br><br>DMARC ADVISOR BV,<br>f/k/a dmarcian Europe BV,<br><br>           Defendant. | **PLAINTIFF'S BRIEF<br>IN SUPPORT OF<br>MOTION IN LIMINE<br>(Enterprise Investigation Report<br>and Dutch Proceedings)** |

Plaintiff dmarcian Inc. ("Plaintiff" or "dmarcian") submits this brief in support of its motion in limine to exclude the Investigation Report prepared by H.W. Wefers Bettink ("Bettink's Report"), the decision of the Enterprise Court based on Bettink's Report (Doc. 93-1, 93-2, 164.1 & 164.2) ("EC Ruling"); and evidence related to various other Dutch proceedings. Dmarcian seeks to exclude these documents on the grounds of relevancy, prejudice and hearsay and further on the grounds that no certified translation of these documents was produced.

## STATEMENT OF FACTS

### *The Enterprise Court Proceedings and Bettink Report*

The Enterprise Court is a special Dutch court charged with addressing internal corporate disputes which has no authority to bind third parties. (Doc.

17, ¶24-26).  The Enterprise Court had no authority over dmarcian, which was not a shareholder of DBV.  *Id.*  Pursuant to TDX's[1] request for a "provisionally enforceable order," the Enterprise Court ordered an investigation into the internal management affairs of DBV to resolve the shareholder dispute between TDX and Mr. Draegen.  (Doc. 10-1, p. 14, ¶1.2 & p. 22, ¶4).  Bettink thereafter prepared a report based on interviews (recorded, but not under oath), a review of various court submissions in other proceedings, and a review of emails, correspondence and other documents as identified in the various footnotes to his report.  (Doc. 93-1).  DBV prepared a translation, but there is no indication that it was a certified translation.  (Doc. 93, 93-2).

The Enterprise Court appointed Bettink to conduct the investigation to determine whether there had been mismanagement.  (Doc. 93-2 at 8).  In granting TDX's request for an investigation, the Enterprise Court noted that "only ordinary civil court is competent for the legal assessment of the dispute" over intellectual property right ownership as between DBV and dmarcian (which was not a party to those proceedings).  (Doc. 10-1, ¶3.4).  It is undisputed that Enterprise Court lacked jurisdiction to determine ownership

---

[1] TDX together with Tim Draegen owned DBV.  (Doc. 26-1, ¶7).  TDX is owned by Martijn Groeneweg and Herwert Kalkman.  (Doc. 26-9).

of intellectual property between dmarcian and DBV, *id.* Bettink's own Report repeatedly referenced the limitations on the scope of his investigation, noting that the civil court must determine the IP rights, the content of the agreement, and the consequences of termination. (Doc. 93-2, ¶¶ 7.4, 7.164, 7.183, 7.189, 7.225). Bettink nonetheless proceeded to make various conclusions which purported to address IP rights as between DBV and non-party dmarcian under Dutch, Bulgarian and U.S. law. (Doc. 93-2, ¶ 7.57-76; ¶ 7.189-259). There is no indication that Bettink is a licensed U.S. attorney. His conclusions about Bulgarian law are based on a purported opinion of a Bulgarian attorney, V.P. Kunze. (Doc. 93-2, ¶ 7.61). Bettink also made findings based on Dutch contract law. (Doc. 93-2, p.14, ¶7.7). However, because the relationship is a licensing agreement, US law controls. (Doc. 17, Jansen Decl. ¶¶20-23).

Bettink also admitted that no review of the source code was conducted, nor did he evaluate contributions of dmarcian and the Bulgarian to the core functionality "in terms of size or otherwise." (Doc. 93-2, ¶¶ 7.214-226, ¶ 7.244). Bettink nonetheless reached a number of conclusions about who created what portions of the source code and concluded that the copyright is jointly owned and further purported to draw conclusions about the licensing terms. (Doc. 93-2, ¶¶ 7.48-56; 7.243-257).

3

Bettink's conclusions are often at odds with other Dutch Court rulings. For example, Bettink found that the parties agreed to give DBV an "exclusive" territory. (Doc. 93-2, p. 43, ¶7.162). However, the Rotterdam Court rejected DBV's claim of exclusivity in one of the preliminary proceedings. (Mtn. in Limine, Exh. 2, May 31, 2021 Ruling, ¶4.15). Allowing Bettink's findings into evidence which are contradicted by another Dutch Court is going to create significant confusion and require substantial explanation about multiple orders and proceedings.

The Enterprise Court issued a decision on November 14, 2022 based on Bettink's Report. (Doc. 164.1). DBV had its own attorneys translate the decision. (Doc. 164 ¶4). That Court noted that property rights litigation was pending between dmarcian and DBV in other courts. (Doc. 164.2, ¶ 2.6). The Enterprise Court set out findings from Bettink's Report, and drew conclusions and issued a decision based on it. (Doc. 164.2, ¶¶ 3.1 - 4.24 & ¶ 5). The decision reached the conclusion that Tim Draegen engagement in "mismanagement" of DBV, and further made a number of purported findings about the relative IP rights of dmarcian and DBV (notwithstanding that such rights were outside the jurisdiction of the Enterprise Court). *Id.*

***Dutch Proceedings on the Merits.*** On October 11, 2021, about seven months after proceedings on the merits commenced in the instant

case, DBV initiated its first proceedings on the merits. (Doc. 106-5). The Dutch Court initially denied dmarcian's motion to stay that case pending the outcome of the instant case. (Doc. 189-3). On July 5, 2022, the Court continued the hearing to January 2023. (Doc. 249-2). On December 20, 2023, after consideration of this Court's order regarding the misstatements made to the Dutch Court regarding the status of the U.S. case, the Dutch Court granted a motion to stay pending the outcome of this case, deferring to this Court before it reaches the merits of DBV's claims in that action. (Plf's Mtn. in Limine, Exh. 4).

### *Preliminary Dutch Proceedings*

The balance of the Dutch proceedings have been only preliminary in nature. There are numerous Dutch proceedings with numerous orders. For the Court's convenience in relation to this motion, the Plaintiff attaches a copy of those rulings from four different sets of proceedings as **Exhibits 1-4** hereto (some of which are certified translations and some of which are informal "DeepL" translations).

Pursuant to "summary proceedings" initiated by DBV against dmarcian on January 29, 2021, the Rotterdam Court issued interim relief on February 1, 2021. (Doc. 17, Jansen Decl. ¶¶10-12; Doc. 17-6). The February order was modified in a May 31 ruling which was made without the benefit of this

5

Court's May 26, 2021 injunction because DBV refused to submit it to the Dutch Court in advance of the anticipated ruling. (Doc. 47, Jansen Decl. ¶¶3-5; Doc. 47-2). Under Dutch law, summary proceedings can only lead to provisional remedies and are not determinative of the parties' rights which must be addressed in separate proceedings on the merits. (Doc. 17, ¶14). Dmarcian appealed the May 31 order and the penalty of one million Euros assessed against dmarcian was vacated. (Doc. 209-1, Meijboom Decl. ¶4).

DBV also issued separate preliminary relief proceedings against dmarcian and Shannon Draegen resulting in a July 18, 2022 order. (Doc. 141-2). The Court assessed penalties of €5000 a day if certain restrictions were violated. *Id.* Although DBV claims to be owed penalties under that order (Doc. 209, Meijboom Decl. ¶¶5-7), separate proceedings would have to be commenced to determine whether the order was violated. (Doc. 210, Jansen Decl. ¶¶5-11).

***DBV v. Messrs. Van der Laan and Fernandez.*** Mr. Fernandez is a former DBV employee who served as the primary salesperson for DBV for approximately 1.5 years until his departure from the company in late-2019. Mr. Fernandez spent a year away from DBV and dmarcian due to a noncompete agreement. In January 2021, dmarcian hired Mr. Fernandez because leads were coming in every day and dmarcian needed sales people

to service those leads after its relationship with DMA ceased.  Mr. Fernandez hired Mr. Van der Laan to help him sell dmarcian's products.  Together they formed Vision Project Management.

DBV, continuing its false allegation that it had an exclusive license to sell in Europe, sued in both men in Dutch court for interim relief.  On April 23, 2021, the same day this Court heard dmarcian's Temporary Restraining Order, the Dutch court issued an injunction in preliminary relief proceedings preventing Messrs. Van der Laan and Fernandez from selling on behalf of dmarcian in the European Union and/or DBV's region.

## STANDARD OF ADJUDICATION

Bettink's Report and the EC Ruling should be excluded under Rule 401 and 403 due to lack of relevance and prejudice, and further should be excluded as hearsay.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.  Evidence that fails to meet this standard is inadmissible.  Fed. R. Evid. 402.  Even so, relevant evidence can be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

7

time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This requires a fact-intensive, context-specific inquiry. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008).

Additionally, "Federal Rule of Evidence 802 prohibits generally the admission of out-of-court statements offered to prove the truth of the matters asserted." *United States v. Shaw*, 69 F.3d 1249, 1253 (4th Cir. 1995). As defined in Rule 801, hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and one where "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). If evidence is hearsay under Rule 801, it must meet an exception to the rule or it is inadmissible at trial. *See* Fed. R. Evid. 802.

## QUESTIONS PRESENTED

I.    Whether evidence of the EC Ruling be excluded under as  inadmissible hearsay and as unduly prejudicial under Rule 403?

II.   Whether evidence of Bettink's Report should be excluded under as inadmissible hearsay and as unduly prejudicial under Rule 403?

III.  Whether evidence of preliminary rulings in the Dutch courts should be excluded as inadmissible hearsay and as unduly prejudicial under Rule 403?

IV.    Whether evidence of rulings made in proceedings between DBV and third parties (Mssr. Van der Laam and Fernandez) should be excluded as inadmissible hearsay and as unduly prejudicial?

## ARGUMENT

## I.    Evidence of the EC Ruling should be excluded under Rule 802 and Rule 403.

The EC Ruling is impermissible hearsay under Rule 801 and 802 and do not fit under any exceptions and is further unduly prejudicial and should also be excluded under Rule 403.

### A.    The EC Ruling is Inadmissible Hearsay.

The EC Ruling based on Bettink's Report is inadmissible hearsay as it an out of court statement used to prove the "truth" of the matters asserted therein and there is no applicable exception.

A hearsay exception exists for public records or statements of a public office, including findings in a civil case for a "legally authorized investigation" provided that the opponent does not show that the source of information does not "indicate a lack of trustworthiness." Fed. R. Evid. 803(8).   The admissibility of a report under Rule 803(8) is "permissive and not mandatory." *United States v. Gray*, 852 F.2d 136, 139 (4th Cir.1988); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 264 (4th Cir. 2005).

As the Fourth Circuit Court of Appeals held in *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993), this exception does not apply to judicial determinations. In *Nipper*, the plaintiff entered into evidence findings from an order entered in a different court in a separate case concerning a different real estate partnership between the parties, including reading into the record the court's findings about misrepresentations made by the defendant, his failure to disclose material information, his participation in a civil conspiracy, and that his wife had knowingly filed false affidavits in the case – facts so prejudicial that limiting instruction of the court was insufficient to cure the prejudice. *Id.* at 416-18. The court held that judicial findings of fact made in a state court order from another case involving the same parties was impermissible hearsay outside the exception in Rule 803(8), and that its admission at trial was prejudicial, necessitating a vacated judgment and remand for a new trial. *Id.* at 418. In holding so, the court stated:

> Rule 803(8)(C), on its face, does not apply to judicial findings of fact; it applies to "factual findings resulting from an investigation made pursuant to authority granted by law." Fed.R.Evid. 803(8)(C). A judge in a civil trial is not an investigator, rather a judge. In fact, a review of the advisory committee note to Rule 803 makes plain that the drafters intended this portion of the rule to relate to findings of agencies and offices of the executive branch. . . . There is not the slightest hint, from either the text of the rule or the advisory committee note, that the rule applies to judicial findings of fact.

*Id.* at 417; *see also* Advisory Committee's Note, 56 F.R.D. 183, 311–313.

Similarly, in *Est. of Rink by Rink v. VICOF II Tr.,* No. 5:20-CV-00039-KDB, 2022 WL 1445233, at *5 (W.D.N.C. May 6, 2022), the Court held:

> The findings by another court, applying different law, in a different case involving different parties (even where there is some similarity of counsel and certainly interests) will not be permitted to be introduced into this case as substantive evidence, even though the "Coventry program" at issue in the Other Litigation may be the "same" transaction that is in dispute here. Although some evidence of the so-called "Coventry program" documents and transaction flow may well be found to be relevant evidence in this case (an issue that is not directly presented by this motion), Plaintiff must prove those facts independent of the Other Litigation.

(footnote omitted).

Because the EC Ruling does not fit under Rule 803(8), or any other hearsay exception, this Court should exclude the EC Ruling from evidence.

**B.    The EC Ruling is Unduly Prejudicial**

The EC Ruling offers little probative value and presents a serious risk of unfair prejudice to the Plaintiff, misleading the jury, wasting time, and confusing the issues.  In *Nipper,* the Court also held that the order was properly excluded under Rule 403, reasoning that "judicial findings of fact "present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice."  *Nipper*, 7 F.3d at 418.  *See also*, *White v. City of Greensboro*, No. 1:18-CV-00969, 2022 WL 3139952, at *11 (M.D.N.C. Aug. 5, 2022) (excluding a judicial opinion in plaintiff's criminal case on a

motion to suppress as evidence to be offered on plaintiff's civil trespass claim); *Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994) (affirming the exclusion of a judicial opinion pursuant to Federal Rule of Evidence 403 because it "decided the precise issue before the jury" and its probative value was substantially outweighed by its prejudicial effect).

The lack of probative value in the instant case is even more apparent. Here, findings made under Dutch law in a shareholder dispute in which dmarcian was not even a party to the proceeding. *See dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 136 (4th Cir. 2023) (finding Dutch court could not adjudicate U.S. intellectual property rights); *see also*, *Sugar Ass'n, Inc. v. McNeil-PPC, Inc.,* No. CV 04-10077 DSF(RZX), 2008 WL 4755611, at *2 (C.D. Cal. Jan. 7, 2008) (rejecting admission of foreign trademark decision where there was no demonstration that the foreign laws or perceptions were similar).

Defendant should not be permitted to offer evidence of the EC Ruling, as it relates to many of the very same issues that are before this jury. Any attempt to exhort a juror to appreciate and comprehend the appropriate level of deference and weight that it should give to the Enterprise Court's decision will undoubtedly create confusion and waste significant time at trial. These decisions could easily induce jurors to make findings based on improper

deference to the Dutch judges' opinion and creating unfair prejudice to Plaintiff. *See United States v. Looking Cloud*, 419 F.3d 781, 785 (8th Cir. 2005) (evidence is unfairly prejudicial when it tends to encourage the jury to make findings based on improper reasoning).

Accordingly, the Court should exclude argument, testimony, and other evidence about the Enterprise Court's decisions at trial pursuant to Rule 403.

## II. Evidence of Bettink's Report should be excluded under Rule 802 and Rule 403.

### A. Bettink's Report is Inadmissible Hearsay

Bettink's Report is also an out-of-court statement that will be offered to prove the "truth" of the matters asserted and is therefore hearsay. *See* Fed. R. Evid. 801, 802. Furthermore, Bettink's Report includes hearsay within hearsay. Bettink's Report does not fit under Rule 803(8) for three reasons: (1) it is not a record or statement issued by a *public office*, and (2) Bettink's Report contains hearsay within hearsay that do not fit under any exceptions.

#### i. *Bettink's Report was Not Issued by a Public Officer*

Bettink was not a public officer working for a public office or executive agency. Rather, he was a private Dutch attorney appointed by the Enterprise Court, a judicial entity, to conduct an investigation in a shareholder proceeding relating to the internal affairs of DBV. (Doc. 93-6, ¶1.3). *See, Nipper, supra.*

## ii.    Bettink's Report Includes Hearsay within Hearsay

Bettink's Report is littered with alleged quotes from individuals he interviewed and who were not under oath, including Mr. Groeneweg, Mr. Draegen, former dmarcian employee Barry Jones, TDX owner Herwert Kalkman, Bulgarian developer Nicholas Hristov, and court appointed director Hub Harmeling.[2]  (Doc. 93-2, ¶ 4.1). It also relies heavily on pleadings and arguments (or "Statements") filed in various Dutch proceedings as well as in the instant case, all of which were preliminary proceedings.[3] Bettink also relied on the legal opinions of Bulgarian attorney V.P. Kunze as to the purportedly validity of transfers of IP rights (Doc. 93-2, ¶ 7.61 & fn. 52), as well as legal articles and articles of Dutch law[4] and references to U.S. law.[5]

[2] *See, e.g.,* Doc. 93-2, citations to interviews at footnotes #11, 21, 40, 41-44, 46-48, 82, 87, 88, 94, 95, 102, 103, 105-108, 110-117, 133, 139-141, 145, 153, 158, 201, 213, 216, 220, 221-223, 231, 244-246, 251, 254, 259, 271, 289-292, 295-298, 303-305, 308, 309, 316.

[3] *See, e.g.,* Doc. 93-2, citations to court filings at footnotes #19, 22, 52, 68, 73, 75, 76, 98, 100, 101, 118, 119, 120, 122, 127, 129, 134, 137, 147, 156, 163,168, 169, 170, 223, 226, 234, 250, 260, 262-264, 266-270, 273, 277, 280-82, 287, 301, 306, 307, 321, 339-347.

[4] See e.g., Doc. 93-2, citations to legal treatises, Dutch law and other European law at footnotes # 151, 155, 159, 164-167, 173-186, 193, 206, 229, 230

[5] See e.g. doc. 93-2, citations to U.S. law at footnotes # 160, 187-192

The balance of Bettink's Report is based on purported agreements he reviewed,[6] summaries of corporate records and financial data,[7] information from the internet,[8] and cost estimates from a third party for conducting a code review.[9]

The balance of the footnotes in Bettink's Report refer to numerous emails, Slack messages and other correspondence (see numerous footnotes to Doc. 93-2). Those include documents which purport to be authored by third parties (e.g. Mr. Groeneweg's lawyer Aram van Bunge)[10] as well as Mr. Draegen and Mr. Groeneweg. Those emails should be authenticated and submitted into evidence in this case rather than submitted as hearsay within hearsay in this matter.

---

[6] *See e.g.,* Doc. 93-2, citations to purported agreements at footnotes # 20, 50-51, 54, 55-58, 130, 131, 202, 203, 205, 232, 278

[7] *See e.g.,* Doc. 93-2, citations to summaries at footnotes # 38, 237 243 (minutes); 272 (Articles of Association of DBV); 39, 135, 136, 228 (summary of software development costs); 108 (diagrams prepared by Hristov); 109 (DBV's summary of lines of code); 162 (summary of Slack message prepared by Mr. Groeneweg); Annex 3 (diagrams prepared by Hristov).

[8] *See e.g.,* Doc. 93-2, citations to web pages at footnotes # 45.

[9] See Doc. 93-2, footnote 197.

[10] See Doc. 93-2, footnote 256, 265.

Each of these statements are additional layers of hearsay within the larger Bettink Report that is itself hearsay. *See* Fed. R. Evid. 805 ("each part of the combined statements" must conform with an exception to the rule against hearsay to be admissible at trial). Accordingly, each of these statements within Bettink's Report, which there are many, must also fit under an exception to the hearsay rule in order to be admissible pursuant to Rule 805. *Doali-Miller v. SuperValu, Inc.*, 855 F. Supp. 2d 510, 513 (D. Md. 2012) (Plaintiff's statements contained within treating physician's report was hearsay within hearsay and must fit under an exception).

If it could be proven that certain statements were made by party representatives as indicated in Bettink's Report, it is possible that individual statements could come into evidence – something that can be addressed at trial. However, Bettink's Report as a whole relies on other witness statements and evidence which are not admissible, or which require authentication before being admitted, and so Bettink's Report as a whole and his findings and conclusions which are based in whole or in part on inadmissible evidence, should not be admitted.

**B.   Bettink's Report is Unduly Prejudicial under Rule 403.**

Bettink's Report should be excluded from trial under Rule 403 for the same reasons addressed above in relating to the EC Ruling.  Bettink's

16

Report presents a serious risk that jurors would defer their duty as the factfinder to a perceived authority on the matter, rather than decide the facts themselves. The jury should be making decisions based on the testimony of witnesses and evidence presented at trial, and not Bettink's opinion in his Report. Admission of Bettink's conclusions based on evidence not before this jury is prejudicial. *See Barnes v. Montgomery Cnty., Maryland*, No. CV AW-09-CV-2507, 2012 WL 13012421, at *2 (D. Md. July 9, 2012) ("The jury's factual determinations must be based on the evidence and witnesses introduced in *this* trial, not on the statements of a judge relying on the evidence and witnesses introduced at a different trial." (emphasis in original)).

Just as the admission of the EC Ruling would be unduly prejudicial, this Court would be burdened with explaining to the jury the context of the foreign Dutch proceedings, the purpose of Bettink's Report, the different parties involved, and Dutch law applied in Bettink's Report which may be inconsistent with this Court's determinations as to applicable law. This would not only waste time but create confusion on the issues and mislead the jury regarding their role as the ultimate factfinder. *See United States v. Gaudin*, 515 U.S. 506, 514, 115 S. Ct. 2310, 2315–16, 132 L. Ed. 2d 444 (1995); *United States v. Looking Cloud*, 419 F.3d 781, 785 (8th Cir. 2005) (evidence

is unfairly prejudicial when it tends to encourage the jury to make findings based on improper reasoning). *See also, United States v. Sine*, 493 F.3d 1021, 1033 (9th Cir. 2007) ("jurors are likely to defer to findings . . . made by an authoritative, professional factfinder rather than determine those issues for themselves.").

Therefore, like the Enterprise Court's decisions, Bettink's Report presents a significant risk of prejudice, confusion, waste, and misleading the jury. Accordingly, Bettink's Report should be excluded from trial pursuant to Rule 403.

## III. Any informal translation of Bettink's Report and the EC Ruling should be excluded.

Even if the EC Ruling and Bettink's Report were otherwise admissible, informal translations prepared by DBV's own counsel are not properly authenticated and should be excluded. *Miranda v. Sweet Dixie Melon Co.,* No. 7:06-CV-92, 2009 WL 1324847 (M.D. Ga. May 13, 2009) (affidavit not considered where translator was an employee of counsel of the proponent of the evidence, and there was no certification that the translation was accurate); see also *Ting You v. Grand China Buffet & Grill, Inc.,* No. 1:17CV42, 2019 WL 1245794, at *3 (N.D.W. Va. Mar. 18, 2019).

## IV. The preliminary rulings of the Dutch courts are not admissible.

Plaintiff also moves to exclude evidence of the Dutch proceedings at least to the extent that they are offered to prove that the Dutch Courts resolved various claims or questions of law. While the existence of certain Dutch proceedings, or statements made by the parties in the Dutch proceedings, may be admissible depending on the context, subject to a proper limiting instruction, Defendant should not be permitted to tender evidence of the rulings themselves in such a manner as to suggest they are determinative of the outcome in this case or that they determined any alleged wrongdoing by Plaintiff or the Draegens.

As discussed in the Statement of Facts above, the Dutch case on the merits was stayed pending the outcome of the case before this Court. As such, all determinations to date in the Dutch Courts have been in relation to preliminary relief proceedings and preliminary rulings on the case on the merits. All the same reasoning set forth above as to hearsay and prejudice apply here as well.

In addition, the preliminary nature of these rulings provides additional grounds to exclude these rulings. While a judge's findings of fact for preliminary orders are not binding on a subsequent trial on the merits, jurors are nonetheless likely to defer to another judge's findings of fact and

conclusions of law. *See United States v. Sine*, 493 F.3d 1021, 1033 (9th Cir. 2007) ("jurors are likely to defer to findings . . . made by an authoritative, professional factfinder rather than determine those issues for themselves."); *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*, 2004 WL 5508752, at *2 (S.D. Iowa Sep. 9, 2004) (during a patent infringement suit, the court excluded evidence of a preliminary order, holding that "[s]uch a decision may . . . be misconstrued by a jury as indicating a finding on the merits."); *Nat'l Ass'n for Advancement of Colored People, Inc. v. City of Myrtle Beach*, 503 F. Supp. 3d 390, 396 (D.S.C. 2020) (holding the same).

This is particularly why courts have regularly excluded evidence and argument even as to their own orders at trial. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 394, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (excluding evidence of preliminary injunction given the different standards for preliminary versus permanent injunction and risk of confusion); *see also Nat'l Ass'n for Advancement of Colored People, Inc. v. City of Myrtle Beach*, 503 F. Supp. 3d 390, 396 (D.S.C. 2020) (citing the same in the context of a Rule 403 analysis); *GPNE Corp. v. Apple*, 2015 WL 3629716, at *12 (N.D. Cal. June 9, 2015) (excluding reference to prior orders under Federal Rule of Evidence 403 as presenting a substantial risk of jury confusion and unfair prejudice."); *SEC v. Retail Pro*, 2011 WL 589828, at *4 (S.D. Cal. Feb. 10,

2011) (granting motion in limine to exclude reference to summary judgment order); *Vaporstream, Inc. v. Snap Inc.*, No. 17-CV-00220MLHKSX, 2020 WL 978731, at *10 (C.D. Cal. Feb. 28, 2020) (excluding reference to Daubert order as any potential relevance of the Daubert order is substantially outweighed by the risk of unfair prejudice . . . and the potential for jury confusion"); *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. C 12-1971 CW, 2014 WL 4090550, at *13 (N.D. Cal. Aug. 19, 2014) (partially granting a motion to exclude "prior rulings on dispositive, evidentiary, or procedural motions" with a limited exception for the court's claim construction order and pre-suit communications).

If pre-trial orders from the same judge presiding over the same trial should be excluded under Rule 403, decisions from a foreign court, applying Dutch law, have even greater cause to be excluded. While it may be that some evidence relating to the Dutch proceedings will be admissible as part of the factual development of events, or statements in those proceedings made by the parties may be admissible, if statements are offered to assert that there was a binding determination made as to the terms of the contract or the parties' respective intellectual property rights (i.e. the very issues before the jury), this would be highly prejudicial and should be excluded as both hearsay and under Rule 403.

**V.    The determinations made in the case brought by DBV against Mr. Van der Laan and Mr. Fernandez should be excluded.**

The case against Messrs. Van der Laan and Fernandez provided only interim relief.  Dutch law on licensing defers to the licensor and location of the contract and this action will determine whether dmarcian and DBV entered into an exclusive licensing agreement.  Thus, the decision in this case on the licensing agreement will determine if Messrs. Van der Laan and Fernandez can sell dmarcian's products in Europe.  All the same reasoning set forth above as to non-binding rulings, hearsay and prejudice apply here as well.

In addition, the determination of whether an exclusive license existed should not be tainted by incomplete and interim decisions of a foreign court. The interim ruling preventing Messrs. Van der Laan and Fernandez from selling dmarcian's products on dmarcian's behalf in DMA's region is not binding but jurors are likely to defer to a judge's findings of fact and conclusions of law and draw improper or incorrect inferences.  *See*, *supra* Section IV.

It is for this Court and jury to decide whether there was an exclusive licensing agreement between dmarcian and DMA.  Simply put, the jury should not rely upon anything considered or issued by the Dutch Court from DMA's action against Messrs. Van der Laan and Fernandez, including the

interim ruling, because any potential relevance is substantially outweighed by the risk of unfair prejudice and jury confusion. *See, e.g.*, *Vaporstream, Inc.*, 2020 WL 978731, at *10.

## **CONCLUSION**

Plaintiff respectfully requests that the Court prevent Defendant DBV from offering or eliciting argument, testimony, or other evidence about the EC Ruling, Bettink's Report, and various other Dutch court rulings at trial.

This the 24th day of January, 2025.

> */s/ Pamela S. Duffy*
> Pamela S. Duffy, N.C.S.B. No. 18329
> pamela.duffy@elliswinters.com
> Tyler C. Jameson, N.C.S.B. No. 59348
> ty.jameson@elliswinters.com
> Ellis & Winters LLP
> PO Box 2752
> Greensboro, NC 27402
> Telephone: (336) 217-4193
> *Attorneys for Plaintiff*
>
> OF COUNSEL:
> */s/ David Dorey*
> David Dorey, DE #5283
> Blank Rome, LLP
> David.dorey@BlankRome.com
> 1201 Market Street, Suite 800
> Wilmington, DE 19801
> Telephone: (302) 425-6418

## AI CERTIFICATION

Undersigned counsel hereby certified that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg.

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 24th day of January, 2025.

*/s/ Pamela S. Duffy*
Pamela S. Duffy, N.C.S.B. No. 18329
pamela.duffy@elliswinters.com
Ellis & Winters LLP
PO Box 2752
Greensboro, NC 27402
Telephone: (336) 217-4193
*Attorney for Plaintiff*

## *CERTIFICATE OF SERVICE*

I hereby certify that the foregoing **BRIEF** was served upon counsel for all other parties to this action listed below by efiling a copy of the same utilizing the Western District of North Carolina's efiling system:

Mr. Pressly M. Millen
press.millen@wbd-us.com
Mr. Samuel B. Hartzell
Sam.hartzell@wbd-us.com
Womble Bond Dickinson (US) LLP
P O Box 831
Raleigh, NC 27602

*Attorneys for DMARC ADVISOR BV,*
*f/k/a dmarcian Europe BV*

This the 24th day of January, 2025.

*/s/ Pamela S. Duffy*
Pamela S. Duffy, N.C.S.B. No. 18329
*pamela.duffy@elliswinters.com*
Ellis & Winters LLP
PO Box 2752
Greensboro, NC 27402
Telephone: (336) 217-4193
*Attorney for Plaintiff*