# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### Case No. 1:21-cv-00067-MR

DMARCIAN, INC.,

    *Plaintiff*,

    v.

DMARC ADVISOR BV,
f/k/a dmarcian Europe BV,

    *Defendant*.

)
)
)
)
)
)
)
)
)
)
)

**DEFENDANT'S RESPONSE IN
OPPOSITION TO PLAINTIFF'S
MOTIONS IN LIMINE**

Defendant DMARC Advisor BV files this response in opposition to Plaintiff's

Motions in Limine to Exclude (i) the Enterprise Court Report and Dutch Court

Rulings, ECF No. 409; (ii) Evidence Relating to Certain Copyright Rulings, ECF

No. 411; and (iii) Pleadings and Rulings from the Swenberg Case, ECF No. 413.

The Court should deny all three motions.

## ARGUMENT

### I. The Court Should Deny Plaintiff's Motion to Exclude the Enterprise Chamber Report and Dutch Court Rulings

In its first motion, Plaintiff asks this Court to exclude (a) the "investigation

report prepared by H.W. Wefers Bettink pursuant to an investigation ordered by the

Dutch Enterprise court (Doc. 93-1 & 93-2)"; (b) the "decision of the Enterprise Court

based on Bettink's Report (Doc. 163.1 & 163.4)"; and (c) translations of various

Dutch rulings, such as the "February 1, 2021 ruling from the Court of Rotterdam." ECF No. 409 at 1–2.

According to Plaintiff, the investigation report and Enterprise Chamber decision are both inadmissible hearsay and subject to exclusion under Federal Rule of Evidence 403. *See* ECF No. 410 at 9–18. Plaintiff also argues that both materials "are not properly authenticated and should be excluded." *Id*. at 18. Finally, Plaintiff argues that "the existence of certain Dutch proceedings, or statements made by the parties in the Dutch proceedings, may be admissible depending on the context, subject to a proper limiting instruction," but DMARC Advisor "should not be permitted to tender evidence of the rulings themselves in such a manner as to suggest they are determinative of the outcome in this case or that they determined any alleged wrongdoing by Plaintiff or the Draegens." *Id*. at 19. DMARC Advisor responds to each argument in turn.

### A. The Enterprise Chamber Investigation Report and Decision Are Admissible

The Enterprise Chamber investigation report and decision provide relevant, admissible evidence about Timothy Draegen's conduct as Plaintiff's CEO and DMARC Advisor's majority shareholder, and they explain why Plaintiff resorted to terminating its cooperation with DMARC Advisor. The Court should not exclude these materials.

### i. The Investigation Report and Decision Are Relevant

Plaintiff seeks to downplay the importance of the Enterprise Chamber's investigation by claiming that the Dutch court ordered an investigation "[p]ursuant to TDX's request." ECF No. 410 at 2 (footnote omitted).[1] The reality is that Plaintiff's then-CEO, Mr. Draegen, pursued that investigation too.

In August 2020—roughly four months before Plaintiff sought to separate from DMARC Advisor—Mr. Draegen asked the Enterprise Chamber "to order an inquiry" into (i) "the wrongful claiming of intellectual property rights to dmarcian software that belong to [Plaintiff]"; (ii) "the breaching of the 2016 Agreement"; (iii) "the failure to have regulated the Company's intellectual property of the Bulgarian software"; and (iv) "the conduct of Kalkman as a software developer outside of the Company without an IP assignment clause." Draegen Statement of Defense at 29 (attached as Exhibit A). Mr. Draegen further asked the Enterprise Chamber to dismiss or suspend "TDX as a director of the Company for the duration of the present inquiry proceedings." *Id*. at 30.

The shareholders' requests for an investigation led the Enterprise Chamber to appoint Mr. Harmeling as DMARC Advisor's independent director with a decisive vote. *See* ECF No. 360 at 14. Plaintiff then sought to strong-arm Mr. Harmeling

---

[1] The Digital Xpedition (TDX) Holding BV and Mr. Draegen were DMARC Advisor's two shareholders, and TDX was DMARC Advisor's director.

into giving away DMARC Advisor's intellectual property. *Id.* Mr. Harmeling's refusal to accede to those demands caused Plaintiff to "terminate[] all cooperation between the parties" and to "terminate[] all of [DMARC Advisor's] access to the Plaintiff's computer systems." *Id.* at 15.

The Enterprise Chamber evidence is thus critical to understand why Mr. Harmeling was serving as DMARC Advisor's court-appointed director. It is also necessary to understand the background for this dispute.

The substance of the Enterprise Chamber investigation and decision are also highly relevant. As Mr. Draegen's request shows, that investigation and decision shed light on the disagreements at the heart of this case. Plaintiff may disagree with the factual findings that arose from the investigation that Mr. Draegen (and TDX) requested and that the Enterprise Chamber authorized, but he cannot reasonably claim that those findings are irrelevant.

### ii. The Investigation Report and Decision Are Not Hearsay

As Plaintiff acknowledges, a "hearsay exception exists for public records or statements of a public office, including findings in a civil case for a 'legally authorized investigation' provided that the opponent does not show that the source of information does not 'indicate a lack of trustworthiness.'" ECF No. 410 at 9 (quoting Fed. R. Evid. 803(8)).

Rule 803(8) assumes that public records are admissible "because of the reliability of the public agencies usually conducting the investigation, and 'their lack of any motive for conducting the studies other than to inform the public fairly and adequately.'" *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 300 (4th Cir. 1984) (quoting *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 619 (8th Cir. 1983)). "The admissibility of a public record specified in the rule is assumed as a matter of course" unless the party opposing admission can establish "a lack of trustworthiness." *Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 241 (4th Cir. 1999). Factors that may help evaluate trustworthiness include "(1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 n.11 (1988).[2]

The Enterprise Chamber investigation report and decision both fit within the Rule 803(8) exception. Each is a "record" of the Enterprise Chamber, Fed. R. Evid. 803(8), that sets out "factual findings from a legally authorized investigation," *id*. at 803(8)(A)(iii). Plaintiff thus has the burden under Rule 803(8) of establishing that

_____

[2] While the burden is on the party opposing admission, the investigation here was highly trustworthy: it began less than a month after Plaintiff purported to end the cooperation, it involved assistance from an expert "in the field of software development," and it included numerous interviews and submissions from the parties and their agents. Letter Regarding Inquiry Proceedings ¶ 7 (attached as Exhibit B); *see also id*. ¶¶ 3–6. There is no reasonable basis to accuse the investigator of bias.

the records lack trustworthiness.  Yet it makes no effort to carry that burden for either record.

Plaintiff argues instead that Rule 803(8) is inapplicable to the investigation report because, according to Plaintiff, the investigator "was not a public officer working for a public office or executive agency."  ECF No. 410 at 13.  But Rule 803(8) does not require that the investigator was a public officer; it requires that the investigation was "legally authorized."  Fed. R. Evid. 803(8)(iii).  It was.  *See, e.g.*, ECF No. 164-2 at 4 ¶ 1.2 ("By orders dated September 7, 2020, September 10, 2020 and January 29, 2021, the Enterprise Chamber ordered an investigation into [DMARC Advisor's] policy and affairs over the period from January 1, 2016 to August 20, 2020 and appointed Mr. H.W. Wefers Bettink . . . to conduct the investigation.").

Plaintiff also argues that the Enterprise Chamber's decision "does not fit under Rule 803(8)," ECF No. 410 at 11, because "this exception does not apply to judicial determinations," *id.* at 10.  Plaintiff relies here on precedent stating that a "judge in a civil trial is not an investigator."  *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993).  That precedent is inapt here, where the Enterprise Chamber appointed an independent investigator.

After the Enterprise Chamber received the investigator's report, both DMARC Advisor and Mr. Draegen—Plaintiff's former CEO and current CTO—

6

asked the Enterprise Chamber to find that the investigation report showed mismanagement of DMARC Advisor and to declare who was responsible for that mismanagement. *See* ECF No. 164-2 at 5 ¶¶ 1.7–1.8. The Enterprise Chamber discussed that report at length before concluding "that the report of the investigation in this case shows mismanagement" and that Mr. "Draegen is responsible for that mismanagement." *Id*. at 29 ¶ 5.

The Enterprise Chamber's decision falls within the plain language of Rule 803(8), because it is a record that sets out "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). The presence of those factual findings distinguishes the Enterprise Chamber's decision from an agency decision that "involved no factual determinations and was strictly a legal ruling," *Zeus Enterprises*, 190 F.3d at 243, or that set forth "judicial findings of fact," *Nipper*, 7 F.3d at 417. Contrary to Plaintiff's arguments, Rule 803(8) applies to the Enterprise Chamber's decision.

Plaintiff also argues that the Enterprise Chamber report and decision incorporate hearsay, including "alleged quotes from individuals he interviewed and who were not under oath, including Mr. Groeneweg, Mr. Draegen, former dmarcian employee Barry Jones, TDX owner Herwert Kalkman, Bulgarian developer Nicholas Hristov, and court appointed director Hub Harmeling." ECF No. 410 at 14. Plaintiff acknowledges the possibility that at least some of those statements

"were made by party representatives," *id*. at 16, in which case the statements would be admissible under Rule 801(d)(2) and, if the witness is unavailable, under Rule 804(b)(3)(A).

In civil cases, "statements made by a party opponent (or by its agent or employee within the scope of that relationship) are not hearsay and may be offered against the opposing party." *Tailored Chem. Prods., Inc. v. DAFCO Inc.*, No. 5:21-cv-69-KDB-SCR, 2023 WL 5944162, at *2 (W.D.N.C. Sept. 12, 2023). "The corporation's agent need not have authority to make the statement at issue, but rather the subject of the statement must relate to the employee's area of authority." *Lyons v. City of Alexandria*, 35 F.4th 285, 290 n.4 (4th Cir. 2022) (quoting *United States v. Bros. Const. Co. of Ohio*, 219 F.3d 300, 311 (4th Cir. 2000)). Statements made by, for example, Plaintiff's then-CEO about the relationship between Plaintiff and DMARC Advisor that he personally brokered and managed are "clearly matters that were within the scope of [Mr. Draegen's] employment at [Plaintiff]." *Bros. Const. Co. of Ohio*, 219 F.3d at 311. As such, Mr. Dragen's statements to the investigator are not hearsay and are admissible.

In addition, Rule 804(b)(3)(A) excludes from the hearsay rule statements made by an unavailable witness that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a

tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3)(A). Statements by Plaintiff's agents that undermine its claims against DMARC Advisor fall within this definition.[3]

Finally, even if the statements in the investigation report were otherwise inadmissible under Rules 803 and 804, the Rule 807 residual exception applies. "The residual hearsay rule is a catchall provision to allow the admission of statements that do not fall within a specific hearsay exception, yet carry equivalent guarantees of trustworthiness." *Baumel v. Barber Power L. Grp., PLLC*, No. 322CV00170GCMSCR, 2023 WL 6121001, at *3 (W.D.N.C. Sept. 18, 2023). Factors relevant to this analysis include "circumstantial guarantees of trustworthiness surrounding the statement; whether the statement relates to a material fact; whether the statement is the most probative evidence on the point; and whether the interest of justice is served by the statement's admittance." *Id.* These

---

[3] DMARC Advisor's argument here that Mr. Draegen's testimony is admissible is consistent with its separate motion to exclude undisclosed expert testimony by Mr. Draegen. *See* ECF No. 418 at 10–11. Mr. Draegen's statements to the court-appointed investigator are admissible under Rule 801(d)(2) whether or not those same statements would be independently admissible under Rule 701 if Mr. Draegen sought to make them at trial. "A primary use and effect of [a party] admission is to discredit a party's claim by exhibiting his inconsistent other utterances," and so it is "immaterial whether these other utterances would have been independently receivable as the testimony of a qualified witness." *CPI Sec. Sys., Inc. v. Vivant Smart Home, Inc.*, 710 F. Supp. 3d 438, 456 (W.D.N.C. 2024) (quoting 4 Wigmore on Evidence § 1053 (Chadbourn rev. 1972)).

factors favor admission here because all the statements at issue were made to a court-appointed investigator who was investigating, at Plaintiff's CEO's request, the circumstances of the cooperation between Plaintiff and DMARC Advisor. The witnesses had every reason to tell the truth.

### iii. The Investigation Report and Decision Are Not Unduly Prejudicial

Plaintiff is wrong to argue that the Enterprise Chamber investigation report and decision "lack . . . probative value." ECF No. 410 at 12; *see also id.* at 16–18. As Plaintiff concedes, these materials "relate[] to many of the very same issues that are before this jury." *Id*. at 12.

Plaintiff's concern that the factual findings will undermine its position here does not render those findings *unduly* prejudicial. As the Fourth Circuit has long recognized, "damage to a [party's] case is not a basis for excluding probative evidence," and "for good reason." *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998). "Evidence that is highly probative invariably will be prejudicial to [a party]." *Id*. The touchstone is fairness. And "*unfair* prejudice under Rule 403 does not mean the damage to a [party's] case that results from the legitimate probative force of the evidence." *United States v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003) (alteration omitted) (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.21[3][b] (2d ed. 2002)). Thus, "Rule 403 requires exclusion of evidence 'only in those instances where the trial judge believes

that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'" *Id.* at 618 (quoting *United States v. Powers*, 59 F.3d 1460, 1467 (4th Cir. 1995)). Plaintiff fails to show that the Enterprise Chamber investigation and decision satisfy those standards.

In addition, Plaintiff's prejudice arguments fail to grapple with the possibility that the Enterprise Chamber decision has preclusive effect in this case. *See* ECF No. 163 at 2 (giving notice that "DMARC Advisor intends to rely on this Decision as preclusive of all issues decided therein" (citing ECF No. 126 at 18)); *see also* ECF No. 360 at 55 (denying Plaintiff's motion for summary judgment on DMARC Advisor's preclusion defenses); *Torah Soft Ltd. v. Drosnin*, No. 00-cv-0676, 2003 WL 22024074, at *1 (S.D.N.Y. Aug. 28, 2003) (denying motion in limine as premature after distinguishing *Nipper* because it does "not address the possibility that judicial findings in the earlier case may have preclusive effects in the latter").

### B. Plaintiff's Translation Arguments Do Not Support Exclusion

Plaintiff briefly argues that "informal translations prepared by [DMARC Advisor's] own counsel are not properly authenticated and should be excluded." ECF No. 410 at 18. DMARC Advisor agrees that Dutch-language materials, like any other document, must be authenticated. *See* Fed. R. Evid. 901. But Plaintiff's arguments do not address the relevant rules.

Under Federal Rule of Evidence 902(3), a foreign public record is self-authenticating if two requirements are met: "First, there must be some indication that the document is what it purports to be," meaning that "the proffered document must be executed by a proper official in his official capacity, or the genuineness of the document must be attested to by a proper official in his official capacity." *United States v. Squillacote*, 221 F.3d 542, 562 (4th Cir. 2000). "Second, there must be some indication that the official vouching for the document is who he purports to be." *Id.*; *see also* Fed. R. Civ. P. 44(a)(2). In addition, the Court has discretion to "order that [a foreign public document] be treated as presumptively authentic without final certification" or "allow it to be evidenced by an attested summary with or without final certification" if "all parties have been given a reasonable opportunity to investigate the document's authenticity and accuracy." Fed. R. Evid. 902(3).

The Dutch public records are, or can be, self-authenticated under Federal Rule of Evidence 902(3). And all parties have long had access to, and notice of, these materials; Plaintiff or its agents are parties to all the Dutch proceedings at issue.

As for English translations, Plaintiff presents no reason to believe that DMARC Advisor cannot authenticate English translations of those materials. Plaintiff cites two cases in which a court refused to consider at summary judgment an English statement purportedly made by a person who spoke "little, if any, English," *Miranda v. Sweet Dixie Melon Co.*, No. 7:06-cv-92, 2009 WL 1324847,

at *1 (M.D. Ga. May 13, 2009), or "extremely limited English," *Ting You v. Grand China Buffet & Grill, Inc.*, No. 1:17-cv-42, 2019 WL 1245794, at *3 (N.D.W. Va. Mar. 18, 2019).  In each case, the court refused to consider the declarant's English-language statement because it "does not contain a certification that the translation was accurate, nor does it contain a statement of the interpreter's qualifications." *Miranda*, 2009 WL 1324847, at *2; *accord Ting You*, 2019 WL 1245794, at *3.

These cases do not address foreign public records available to the opposing party.  At most, they suggest that the proponent of a translation must authenticate that translation.  Yet Plaintiff presents no reason to believe that DMARC Advisor cannot authenticate translations of the Enterprise Chamber records.  The Court should thus reject Plaintiff's translation arguments as premature.

Of course, Plaintiff's authenticity arguments apply only to the Dutch records themselves—they would not justify barring testimony *about* the Enterprise Chamber investigation or decision.  The witnesses involved in the Enterprise Chamber proceedings have personal knowledge of that investigation and decision.  And those witnesses altered their behavior in response to developments in that proceeding.  Mr. Draegen, for example, purported to terminate the cooperation when he could not force the court-appointed independent director to assign DMARC Advisor's intellectual property to Plaintiff for no consideration.  Plaintiff's arguments would

not provide a reason to exclude testimony about the investigation that is not offered for the truth of the matters stated in the investigation report and decision.

### C. Plaintiff's Argument About Preliminary Dutch Rulings Should Be Resolved at Trial

Plaintiff's final argument in its first motion in limine is that the Court should exclude evidence of "preliminary relief proceedings and preliminary rulings," at "least to the extent that they are offered to prove that the Dutch Courts resolved various claims or questions of law." ECF No. 410 at 19; *see also id*. at 22.

Plaintiff acknowledges that the "existence of certain Dutch proceedings, or statements made by the parties in the Dutch proceedings, may be admissible depending on the context," but it argues that DMARC Advisor "should not be permitted to tender evidence of the rulings themselves in such a manner as to suggest they are determinative of the outcome in this case or that they determined any alleged wrongdoing by Plaintiff or the Draegens." *Id*.

The Court should resolve this fact-specific argument at trial. Plaintiff does not identify the preliminary rulings or parts thereof that it believes suggest an improperly "binding determination made as to the terms of the contract or the parties' respective intellectual property rights." *Id*. at 21. Nor does it identify the passages that it believes suggest wrongdoing by Plaintiff or the Draegens. *Id*. at 19.

For example, Plaintiff argues that the "interim ruling preventing Messrs. Van der Laan and Fernandez from selling [Plaintiff's] products on [Plaintiff's] behalf in

[DMARC Advisor's] region is not binding" because, according to Plaintiff, "this case on the licensing agreement will determine if Messrs. Van der Laan and Fernandez can sell [Plaintiff's] products in Europe." *Id.* at 22. Yet Plaintiff does not identify the portion of that Dutch decision that it believes should be withheld from the jury. Without that information, DMARC Advisor cannot meaningfully respond to Plaintiff's argument. The Court should resolve it at trial.

## II. The Court Should Deny Plaintiff's Motion to Exclude Evidence Relating to Certain Copyright Rulings

In its second motion in limine, Plaintiff seeks to bar DMARC Advisor from "introducing or otherwise referencing at trial" (a) this "Court's interlocutory rulings on Defendant's motion for request to the Register of Copyrights (Doc. 206)"; (b) the "Register's response (Docs. 272-1 & 275-1)"; (c) this "Court's order on summary judgment (Doc. 360)"; or (d) "Plaintiff's efforts to register source code material with the Copyright Office post-dating the original 2012 source code." ECF No. 411 at 1. Plaintiff claims this evidence "relating to registration and infringement is not relevant to the remaining claims before the Court, will cause undue confusion to the jury and would be unfairly prejudicial to Plaintiff." ECF No. 412 at 3.

The Court should reject these arguments for four reasons.

First, copyright evidence is necessary for the jury to understand the scope of Plaintiff's claims. Plaintiff acknowledges that it "no longer has a claim for copyright infringement" but then argues in the next sentence that it "still contends it has legal

rights in, and protection of, its source code and that Defendant violated those rights and protections." *Id*. at 5.  Plaintiff argues that "its trade secrets include its source code" and that the "terms of the parties' oral contract and licensing agreements remains at issue." *Id*. at 5–6.

For each of those claims, Plaintiff must establish an extra element that makes it "qualitatively different from a copyright infringement claim." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 309 (4th Cir. 2012). For example, Plaintiff could seek to establish that "certain nonliteral elements" of its alleged trade secrets "fall beyond the scope of copyright." *Recon Grp. LLP v. Lowe's Home Centers, LLC*, No. 5:23-cv-00163-KDB-DCK, 2024 WL 3658846, at *6 (W.D.N.C. Aug. 5, 2024).  Plaintiff may also seek to establish that DMARC Advisor breached a "promise to pay" that goes beyond mere alleged copyright infringement. *Id*. at *4.

Regardless of Plaintiff's theories, DMARC Advisor must be able to explain to the jury why Plaintiff's trade secret and breach of contract claims do not cover copyright infringement and cannot seek recovery for any such infringement. Plaintiff cannot assume that it owns the copyright to the source code and proceed as though DMARC Advisor acted wrongfully by using that code without Plaintiff's permission; it must prove that DMARC Advisor's conduct violated a distinct promise or trade secret protection.  Even then, it is unclear how Plaintiff will be able

16

to claim that it owns the source code at issue without showing that it even has the right to assert copyright infringement of that code.

At the very least, Plaintiff is wrong to warn that "the jury may be misled to believe that the invalidity of the registration or lack of infringement claim diminishes or *even relates* to whether Plaintiff has trade secret protection or contractual rights in the source code." ECF No. 412 at 6 (emphasis added). The disputed copyright evidence is *necessary* to define Plaintiff's claims. Without it, there is an undue risk that the jury will be confused about their scope.

Second, Plaintiff has a pending claim for "a declaratory judgment as to ownership of the copyright registered as TX0008941559." ECF No. 412 at 3. Plaintiff's efforts to obtain that exact registration, and this Court's and the copyright office's rulings about that registration, are relevant to whether Plaintiff owns that copyright. That evidence is also necessary to ensure that a jury does not mistake Plaintiff's declaratory judgment claim for an infringement claim. Plaintiff's only argument about that claim appears to be that "there is no jury issue to submit on the copyright," but that claim remains unless Plaintiff (or this Court) dismisses it. ECF No. 412 at 3.

Third, the copyright-ownership dispute is necessary to understand why the parties' cooperation ended. "After an initially fruitful partnership, disagreements arose in 2019" when DMARC Advisor "asserted ownership of parts of the dmarcian

code that had been written by [DMARC Advisor's] developers." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 128–29 (4th Cir. 2023). Plaintiff "disagreed and directed [DMARC Advisor] to formally assign to the Plaintiff any new code that had been created by the Bulgarian developers." ECF No. 360 at 12. The parties then "began quarreling over the terms of the licensing agreement," before Mr. Draegen eventually "undertook to assign all of the Defendant's intellectual property rights to the Plaintiff for no payment, and he tried to use his majority interest in the Defendant to force that assignment." *Id*. at 13–14. In January 2021, "Plaintiff advised that it would terminate its relationship with [DMARC Advisor] effective February 1, 2021, unless [DMARC Advisor] agreed to sign a distribution and settlement agreement which, among other things, vested the Plaintiff with sole ownership of all the intellectual property developed by the parties." *Id*. at 15. There is no way to tell this story of how and why the parties fell out without explaining that they disagreed over copyright ownership.

Fourth, Plaintiff's dishonesty in connection with the copyright registration issues is admissible impeachment evidence. That dishonesty shows how far Plaintiff is willing to go to assert control over DMARC Advisor's property. And that dishonesty is admissible evidence of Plaintiff's character for untruthfulness. *See* Fed. R. Evid. 608(b) (permitting cross-examination based on "specific instances of a witness's conduct" if "they are probative of the character for truthfulness or

untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about"); *see also* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 608.22[2][a] (2d ed. 2024) ("A witness may be cross-examined based on evidence that the judge in a prior proceeding found the witness's testimony not credible.").

In deciding whether evidence is admissible under Rule 608(b), relevant considerations include "(1) whether the lie was under oath in a judicial proceeding or was made in a less formal context; (2) whether the lie was about a matter that was significant; (3) how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness; (4) the apparent motive for the lie and whether a similar motive existed in the current proceeding; and (5) whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible." *United States v. Cedeno*, 644 F.3d 79, 83 (2d Cir. 2011). These considerations show that DMARC Advisor should be permitted to cross-examine witnesses about Plaintiff's statements to the copyright office.

Plaintiff's statements were significant, recent, and intricately connected with this dispute.[4] As this Court explained, Plaintiff *repeatedly* "represented that the

---

[4] While the dishonesty need not be criminal to be admissible, Plaintiff's conduct here would appear to meet the elements of an offense. *See* 17 U.S.C. § 506(e).

work for which it sought copyright was completed in 2012 and first published on February 9, 2012." ECF No. 360 at 16. Plaintiff first made this representation in February 2021, *id*. at 16, and then repeated it in August 2022, *id*. at 17, and October 2023, *id*. at 19.

Plaintiff made all these representations even though "Plaintiff knew that the code had been modified—on a number of occasions—between 2012 and 2021." *Id*. at 27.[5] In fact, DMARC Advisor "alone had made at least €1.3 million worth of modifications in that time period." *Id*. at 27. Yet "Plaintiff—through its counsel— submitted a copyright application claiming that the 2021 source code that was deposited in support of the application was 'completed' in 2012." *Id*. at 27.

Even viewing the "evidence in the light most favorable to the Plaintiff," the Court found that "Plaintiff has failed to present a forecast of evidence from which a

---

[5] The involvement of counsel raises the possibilities that Plaintiff will invoke privilege and that Plaintiff's counsel will be called as a trial witness. *Cf.* ECF No. 360 at 28 ("at all times relevant to this action, the Plaintiff was represented by competent legal counsel," who "prepared and submitted the original application, as well as the supplements that followed"). On the privilege point, this Court's Order on summary judgment, *see id*. at 16–33, outlines facts sufficient for DMARC Advisor to make a prima facie showing that Plaintiff "was engaged in or planning a criminal or fraudulent scheme when [it] sought the advice of counsel to further the scheme" and that there was "a close relationship between the attorney-client communications and the possible criminal or fraudulent activity," *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005); *see also Noble Bottling, LLC v. Gora LLC*, No. 3:20-cv-00363-KDB-DCK, 2023 WL 1998278, at *2 (W.D.N.C. Feb. 14, 2023) (holding that materials "come within the 'crime fraud exception' and may not be withheld as privileged" where an allegedly fraudulent scheme was executed "through . . . communications with [counsel]").

reasonable jury could find that the Plaintiff did not know that the year of completion provided on the copyright application (and repeated on two of the subsequent supplemental applications) was legally inaccurate." *Id.* at 31–32. The Court thus invalidated Plaintiff's copyright registration because "Plaintiff submitted an application that claimed an inaccurate year of completion" and "did so with knowledge of, or at least willful blindness to, the inaccuracy." *Id.* at 33.

This evidence is highly probative of Plaintiff's character for truthfulness in the specific context of this case. That same evidence is also admissible regarding Mr. Draegen, who "provided the factual information to counsel to be incorporated into the original application." *Id.* at 25. Mr. Draegen tried to justify his conduct by "claim[ing] that he was unaware of what was legally required in claiming the year of completion," *id.* at 26, but the Court found that denial was insufficient even to create an issue of fact for the jury, *see id.* at 26–32.

## III. The Court Should Deny Plaintiff's Motion to Exclude Pleadings and Rulings from the Swenberg Case

For its final motion in limine, Plaintiff asks the Court to prohibit DMARC Advisor "from introducing at trial all pleadings and rulings in the action encaptioned *Swenberg v. dmarcian, Inc., Timothy Draeg[e]n, Martijn Groeneweg, DMARC Advisor, B.V., and DOES 2-20*, 19-CIV-02896 which is presently pending in the Superior Court of the State of California in San Mateo County." ECF No. 413 at 1. Plaintiff argues that the *Swenberg* pleadings and rulings are inadmissible hearsay,

*see* ECF No. 414 at 5–7, irrelevant, *see id*. at 7–8, and unduly prejudicial, *see id.* at 8–12.  The Court should reject all three arguments.

First, Plaintiff is wrong to argue that the *Swenberg* pleadings and rulings should be excluded because they "do not fit under Rule 803(8), or any other hearsay exception."  ECF No. 414 at 7.  DMARC Advisor has never suggested that the *Swenberg* pleadings or rulings are public records subject to Rule 803(8).  These materials comprise or contain Plaintiff's and its agents' statements, which are not hearsay under Rule 801(d), and may be presented for reasons other than the truth of the matter asserted, which is not hearsay under Rule 801(c).

Second, and relatedly, the *Swenberg* materials are relevant here because they explain Plaintiff's and Mr. Draegen's conduct in relation to DMARC Advisor.  Mr. Swenberg is one of Plaintiff's shareholders.  In May 2019, Mr. Swenberg filed a lawsuit that, in the Dutch investigator's words, "impacted on the development of the cooperation between the parties, in particular the formation of the global company and the concentration of IP rights in it."  ECF No. 93-2 at 67 ¶ 9.16.

Later that year, in December 2019, Mr. Draegen expressed his view that the dispute over intellectual property between Plaintiff and DMARC Advisor stemmed "directly from a desire to isolate from Swenberg."  ECF No. 93-2 at 102 ¶ 1.20.  That same month, Mr. Draegen was concerned that Mr. Swenberg would allege that Mr. Draegen did not do his duties as Plaintiff's CEO to protect Plaintiff's assets.  *See*

ECF No. 289-4 at 11; *see also* ECF No. 289-9 at 1 (discussing implications of Mr. Swenberg's lawsuit). Mr. Draegen wrote of "the handicap that Swenberg's lawsuit has forced" the parties to endure. ECF No. 289-3 at 40. The next month, in January 2020, Mr. Draegen wrote that "delays in combining the companies (*due to Swenberg interference and lawsuit*) are stressing the relationship." ECF No. 289-1 at 66 (emphasis added).

In short, Plaintiff's CEO understood that the claims and developments in the *Swenberg* litigation were directly relevant to the parties' disagreements over intellectual property and other issues. And Mr. Draegen's exposure to liability in that action explain why Mr. Draegen would have a motivation to mischaracterize the parties' agreement and cooperation in a way that would minimize his personal liability to Mr. Swenberg as shareholder. Plaintiff is thus wrong to claim that these developments are "of little relevance in this action." ECF No. 414 at 8.

Finally, the *Swenberg* materials are not unduly prejudicial. Plaintiff argues that "[a]llegations by Swenberg of alleged wrongdoing by dmarcian or Mr. Draegen are just that – allegations," which is true as far as it goes but not relevant to admissibility. ECF No. 414 at 9. As discussed above, Mr. Swenberg's allegations motivated and explain much of Plaintiff's and Mr. Draegen's conduct in the leadup to Plaintiff claiming ownership of DMARC Advisor's assets and to Plaintiff seeking to terminate the parties' cooperation.

Contrary to Plaintiff's argument, Mr. Draegen's decision "to transfer ownership rights in [DMARC Advisor] to Tim Draegen rather than [Plaintiff]" is not "outside the purview of the claims before this Court." *Id.* That decision explains why Mr. Draegen caused Plaintiff to assert ownership over DMARC Advisor's property: to minimize his own liability to Swenberg. That explanation undermines Plaintiff's positions here, but that harm is not *undue* prejudice. *See Grimmond*, 137 F.3d at 833; *Mohr*, 318 F.3d at 619.

In fact, the inverse is true: it would unduly prejudice DMARC Advisor's defense if DMARC Advisor could not explain why Plaintiff changed course in December 2019 and began to claim DMARC Advisor's property as its own. Simply put, this entire case arose *because of* Mr. Swenberg and his lawsuit. Far from having "no value to the jury," the *Swenberg* evidence is critical context. ECF No. 414 at 10.

## CONCLUSION

The Court should deny Plaintiff's Motions in Limine to Exclude (i) the Enterprise Court Report and Dutch Court Rulings, ECF No. 409; (ii) Evidence Relating to Certain Copyright Rulings, ECF No. 411; and (iii) Pleadings and Rulings from the Swenberg Case, ECF No. 413.

Dated: January 31, 2025        Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Samuel B. Hartzell
Samuel B. Hartzell, NC State Bar No. 49256
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
919-755-2112
Sam.Hartzell@wbd-us.com

*Counsel for Defendant DMARC Advisor BV*

# CERTIFICATION ON USE OF ARTIFICIAL INTELLIGENCE

I certify in accordance with the Court's Standing Order on the Use of Artificial Intelligence, No. 3:24-mc-00104-MR, that (1) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and (2) every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: January 31, 2025                /s/ Samuel B. Hartzell

                                          Samuel B. Hartzell