IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:21-cv-00067-MR

| | |
|---|---|
| DMARCIAN, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> DMARC ADVISOR BV, <br> f/k/a dmarcian Europe BV, <br><br> *Defendant*. | **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO STAY** |

Defendant DMARC Advisor BV ("DMARC Advisor") hereby files this brief in support of its Motion to Stay.

## INTRODUCTION

DMARC Advisor chose Pressly Millen as its lawyer. This Court issued an order forbidding Mr. Millen from appearing on DMARC Advisor's behalf in this proceeding. [Doc. 401, p. 28-29]. DMARC Advisor appealed that order and the Second Amended Preliminary Injunction to the Fourth Circuit. [Doc. 405].[1]

Meanwhile, trial looms. There is no way that the appeal will be resolved on its merits until well after DMARC Advisor has been forced to prepare for trial and

---

[1] Given the nature of the Court's order suspending Mr. Millen, DMARC Advisor is represented on appeal by separate counsel at Fox Rothschild LLP. DMARC Advisor received advice from Fox Rothschild LLP in connection with this Motion to Stay.

defend itself without the lawyer of its choosing. Yet, if the Fourth Circuit agrees with the pending appeal, the entire trial will have to be redone.

That would be incredibly wasteful. These proceedings—and especially the trial—should be stayed while the Fourth Circuit sorts this out. *See Nw. Nat'l Ins. Co. v. Insco, Ltd.*, 866 F. Supp. 2d 214, 221 (S.D.N.Y. 2011) (noting that disqualification causes irreparable injury because "lawyers are not fungible"); *Reed v. Superior Ct.*, 111 Cal. Rptr. 2d 842, 847 (Cal. Dist. Ct. App. 2001) ("Courts of appeal understand that prejudice occurs if the trial is not stayed pending an appeal of" disqualification. (citation omitted)). The United States Supreme Court agrees:

> When an appellate court accepts jurisdiction of an order disqualifying counsel, the practical effect is to delay proceedings on the merits until the appeal is decided. As in this case, the appellate court may stay all proceedings during appellate review. Even where the appellate court fails to impose a stay, it would take an intrepid District Judge to proceed to trial with alternate counsel while her decision disqualifying an attorney is being examined in the Court of Appeals.

*Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 434 (1985).

For these reasons and those set forth below, DMARC Advisors asks that its motion to stay be granted.

## BACKGROUND

After a falling out over intellectual property, Plaintiff filed suit against DMARC Advisor. [Doc. 401, pp. 2-4]. This Court issued a preliminary injunction against DMARC Advisor on May 26, 2021, which was ultimately affirmed.

*dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 147 (4th Cir. 2023). While the appeal was pending, this Court held DMARC Advisor in contempt and awarded sanctions. [Doc. 401, pp. 4-5]. The Fourth Circuit modified the contempt order by ordering this Court to recalculate sanctions. *dmarcian*, 60 F.4th at 148.

On remand, this Court vacated its sanctions ruling because the United States Supreme Court, in *Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412 (2023), held that the trademark statutes cannot apply extraterritorially. This ruling "undercut the basis for this Court's and the Fourth Circuit's rulings, and thus necessitated the vacating of the sanctions entered thereon." [Doc. 401, p. 26 n.7]. This Court then issued new contempt and sanctions orders holding DMARC Advisor and its American lawyer in contempt and sanctioning both. [Doc. 401, pp. 28-29]. It also issued a new preliminary injunction. [Doc. 403].

DMARC Advisor and Mr. Millen timely appealed the contempt and sanctions order, and DMARC Advisor timely appealed the preliminary injunction. [Doc. 405, 407]. DMARC Advisor now asks for a stay of proceedings in this Court pending the outcome of those appeals.

## **LEGAL STANDARD**

In determining whether to issue a stay pending appeal, this Court must consider the following factors:

> (1) that [DMARC Advisor] will likely prevail on the merits of the appeal; (2) that [DMARC Advisor] will suffer irreparable

> injury if the stay is denied; (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay.

*Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970); *see also West Virginia v. United States Env't Prot. Agency*, 90 F.4th 323, 331 (4th Cir. 2024).

The first two factors are the "most critical," *Nken v. Holder*, 556 U.S. 418, 434 (2009), but "this formula is not rigid and the court must contemplate individualized judgments in each case." *Sec. and Exch. Comm'n v. Rex Venture Grp., LLC*, No. 3:12-CV-000519, 2017 WL 2979686, at *2 (W.D.N.C. July 12, 2017). Although merely raising a good faith argument does not make the first factor weigh in DMARC Advisor's favor, the Fourth Circuit has held that "set[ting] forth plausible grounds in support of its" appeal does. *West Virginia*, 90 F.4th at 331. Moreover, "expenditure of valuable resources" that "will be irrevocably lost" can make the second factor weigh in the stay applicant's favor. *Id.* When weighing the third factor, preference should be given to granting a stay if it would preserve the status quo between the parties. *Id.* at 332.

## ARGUMENT

**I.    DMARC Advisor will probably prevail on the merits.**

The first factor weighs in DMARC Advisor's favor because DMARC Advisor has "plausible grounds" for its appeal. *Id.* at 331. As this Court stated in its order vacating prior sanctions, the United States Supreme Court's decision in *Abitron*

*Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023), "undercut the basis" for the original sanctions and the preliminary injunction by holding that 15 U.S.C. §§ 1114(1)(a) and 1125(a)(1) do not apply extraterritorially. [Doc. 401, p. 26 n.7; Doc. 402, pp. 9-14]. This Court therefore modified the preliminary injunction and the sanctions based on its reading of *Abitron*, holding that much of DMARC Advisor's conduct took place in the United States (*i.e.,* was domestic) and that the trademark infringement statutes could be applied to that conduct. [Doc. 402, pp. 11-13; Doc. 403, pp. 1-4].

On appeal, DMARC Advisor intends to argue that much, if not all, of its past and current conduct is outside of the United States—including choosing the contents of its website in Europe, which this Court controls through its newest preliminary injunction. [Doc. 403, ¶ 4 (forbidding DMARC Advisor from "using the Plaintiff's trademark in any manner . . . on any websites which are accessible to IP addresses from the United States" unless accompanied by a disclaimer)]. Moreover, the Second Amended Preliminary Injunction itself specifically forbids DMARC Advisor from serving "any customers located outside of Europe, Africa, or Russia," which means the Court's order on its face applies extraterritorially to non-Russian Asia, Canada, India, Central and South America, Australia, the Pacific Islands, and

Antarctica.[2] [Doc. 403, pp. 1-2]. DMARC Advisor has a strong argument that this portion of the Second Amended Preliminary Injunction violates *Abitron*, which specifically forbade American courts from applying United States trademark law to conduct outside the United States. *Abitron*, 600 U.S. at 424 ("[I]f the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." (citation omitted)); *see also Rockwell Automation, Inc. v. Parcop S.R.L.*, No. 21-1238, 2023 WL 4585952, at *2-3 (D. Del. July 18, 2023) (applying *Abitron* to hold that a plaintiff in a trademark infringement case could only recover damages for infringing sales made in the United States).

Moreover, much (if not all) of the conduct this Court believed was domestic and forbade in its Second Amended Preliminary Injunction was conduct outside of the United States.[3] This Court's order explaining the basis for the Second Amended Preliminary Injunction said that Plaintiff's claims "involved, at least in part, conduct within the United States." [Doc. 402, p. 11]. The Court cited to pages 52-53 of its original Order and Preliminary Injunction, which relied upon DMARC Advisor's

---

[2] There are several human outposts in Antarctica that require technological support of various kinds. *See, e.g.*, U.S. National Science Foundation, *NSF McMurdo Station*, https://new.nsf.gov/geo/opp/ail/mcmurdo-station#:~:text=NSF%20McMurdo%20Station%20is%20the,Amundsen%2DScott%20South%20Pole%20Station.

[3] DMARC Advisor notes that its current operations are entirely outside the United States.

operation of "a platform . . . that provides an option for customers in 'the Americas.'" [Doc. 39, p. 52; *see also* Doc. 402, p.11 (citing Doc. 39, pp. 52-53)]. At least one federal appellate court has held that this theory is forbidden by *Abitron*. *Daramola v. Oracle Am., Inc.*, 92 F.4th 833, 839-43 (9th Cir. 2024) (applying *Abitron* to hold that the anti-retaliation provisions of the Sarbanes-Oxley Act and Dodd-Frank Act did not apply to a remote Canadian employee even though he "accessed [his employer's] web servers located in California").

DMARC Advisor and Mr. Millen are also likely to prevail in their appeals of the contempt and sanctions orders, including on the disqualification issue. They complied—if not in full, then at least substantially—with this Court's order by timely filing with the Court of Rotterdam a copy of this Court's order in English and Dutch through DMARC Advisor's Dutch counsel. [Doc. 262, pp. 3, 9; Doc. 217 ¶ 5, Doc. 217-1, pp. 5-60]. This filing included a full copy of the statement this Court had ordered DMARC Advisor and Mr. Millen to submit. [Doc. 262, pp. 3, 9; Doc. 217 ¶ 5, Doc. 217-1, pp. 5-60]. Additionally, DMARC Advisor intends to argue on appeal that this Court lacked the authority to supervise DMARC Advisor's litigation decision in a foreign Court, that this Court erred in failing to consider that Dutch law would have rendered any attempt by DMARC Advisor or Mr. Millen to submit a separate statement futile in light of Mr. Meijboom's stance that Dutch law does not treat attorneys as agents subject to the control of their principals in all

decisions about what to file with and argue to the Court, that Mr. Millen's disqualification is inappropriate in light of the Court's failure to consider sanctions against Plaintiff for its misrepresentations to the Court of Rotterdam, that DMARC Advisor's counsel in the Dutch litigation took good-faith litigation positions based on its understanding of the litigation in this case and Dutch procedural law, that under Dutch procedural law neither Mr. Millen nor DMARC Advisor could file a separate statement in the Dutch proceedings unless its counsel in his independent judgment decided to do so, and that DMARC Advisor's counsel's main arguments about the real scope of this litigation were vindicated by the decision in *Abitron*. [Doc. 262, pp. 11-13, 15-16; Doc. 386, pp. 83-85, 98-100, 105-06; Doc. 401, p. 22].

Additionally, as this Court pointed out in the show cause hearing, the order to file the corrective statement was directed to "DMARC Advisor's counsel." [Doc. 386, p. 84]. The Court then noted that "if we were here because the statement was filed not by Mr. Millen but rather by Mr. Hartzell, I don't know that we'd be having this hearing, but nobody filed it." [Doc. 386, p. 84].[4] But since the Court later found that Mr. Hartzell made efforts to get Mr. Meijboom to submit the statement as a separate filing, this Court's own reasoning at the show cause hearing prevents this Court from imposing sanctions on Mr. Millen for violating an order directed to

---

[4] Undersigned counsel reiterates that DMARC Advisor received separate advice in connection with this Motion to Stay.

"DMARC Advisor's counsel." [Doc. 386, pp. 83-85; Doc. 401, pp. 25-26]. Given the fact that this Court directed a filing in a Dutch court, "DMARC Advisor's counsel" was reasonably interpreted by DMARC Advisor and its American and Dutch attorneys to refer to its Dutch counsel rather than to any or all of its American attorneys. [Doc. 386, p. 115].

DMARC Advisor also intends to argue that the $400,000 in sanctions against it for Plaintiff's legal expenses in this action not based on specific evidence and was instead nothing more than an educated guess. [Doc. 401, p. 27 ("This Court can reasonably estimate that the attendant cost to the Plaintiff relative to this action can amount to an additional $150,000.")]. These arguments will probably prevail on appeal, and they are at the very least "plausible grounds" for reversal of the sanctions order.

Because DMARC Advisors has at least "set forth plausible grounds" for its appeal of the contempt and sanctions orders and the preliminary injunction, this factor weighs in DMARC Advisor's favor. *West Virginia*, 90 F.4th at 331.

## II. DMARC Advisor will be irreparably injured absent a stay.

The second factor weighs heavily in DMARC Advisor's favor.

First, the North Carolina Rules of Professional Conduct "safeguard[] the right of every client to be represented by the lawyer of the client's choice." *Van Kampen v. Garcia*, 278 N.C. App. 375, 859 S.E.2d 648 (unpublished) (2021). Yet this Court

has forbidden DMARC Advisor's chosen counsel—Mr. Millen—from appearing further in DMARC Advisor's defense. The disqualification could not come at a worse time, with trial scheduled to begin in just a few weeks.

The disqualification is currently on appeal. If the trial were to proceed anyway, and if the appeal is then successful, the parties and the Court will have to try this case all over again. As the United States Supreme Court has cautioned, a stay is appropriate in exactly these circumstances to avoid such waste. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 434 (1985); *see also Insco, Ltd.*, 866 F. Supp. 2d at 221 (noting that disqualification causes irreparable injury); *Reed*, 111 Cal. Rptr. at 847 ("Courts of appeal understand that prejudice occurs if the trial is not stayed pending an appeal of" disqualification. (citation omitted)).

Second, the injunction forbids DMARC Advisor from "making changes to the trade secret source code except as specifically and expressly allow or directed by this Order." [Doc. 403, p. 2]. Nowhere does the order "specifically and expressly allow or direct[]" DMARC Advisor to modify the code. Because of the changing nature of technology and the breathtaking pace of invention of new cyber-threats, DMARC Advisor's inability to change the source code will soon render DMARC Advisor's products and services obsolete.

Third, enforcing the sanctions will cost DMARC Advisor large sums of money that it cannot get back and that it needs now to continue its business. The

"expenditure of valuable resources" that "will be irrevocably lost" is exactly the kind of injury that weighs heavily in favor of a stay under the second factor. *West Virginia*, 90 F.4th at 331; *see also City of Alexandria v. Helms*, 719 F.2d 699, 700-01 (4th Cir. 1983). This is especially true where the appellate ruling could require a new trial and force the parties to finance an unnecessary second trial. *See Underwood v. Harkleroad*, No. 5:04-CV-00193-MU-02, 2010 WL 324416, at *1 (W.D.N.C. Jan. 19, 2010). Here, this Court has imposed sanctions of $400,000, which is invaluable in DMARC Advisor's current efforts to continue its business now that this Court has granted summary judgment against Plaintiff on its copyright infringement claim. [Doc. 360, pp. 22-33, 57; 402, p. 12]. Without these funds, DMARC will forever be at a disadvantage in the cutting-edge technology space that it occupies. This cannot be corrected later with a refund.[5]

Therefore, if this Court enforces the sanctions awards and the Second Amended Preliminary Injunction, DMARC Advisor will be irreparably harmed. If the basis for the Court's decision is undercut by the development of appellate caselaw, no monetary award or refund could fix it.

---

[5] The effect is not altered by the fact that Plaintiff is a net debtor to DMARC Advisor in Europe. Whether DMARC Advisor has to give Plaintiff a check for $400,000 or cancels $400,000 of Plaintiff's debt makes little difference. Either way, DMARC is deprived of critical resources during an important part of its company growth.

### III. Issuing a stay will not substantially injure Plaintiff.

The third factor weighs in DMARC Advisor's favor. If this Court's sanctions award is affirmed on appeal, DMARC Advisor can satisfy the $400,000 award later without any harm to Plaintiff's current financial situation or market position. Any harm that Plaintiff might suffer by a delay in trial would also be suffered by DMARC Advisor. Moreover, when weighing the third factor, preference should be given to granting a stay if it would preserve the status quo between the parties. *See West Virginia*, 90 F.4th at 331. Granting a stay here would do just that.

### IV. A stay is in the public interest.

This factor weighs in DMARC Advisor's favor. It "requires this Court to consider and balance the goal of efficient case administration"—which does not always require speed because haste makes waste—"and the right to a meaningful review on appeal." *In re Kaiser Gypsum Co., Inc.*, No. 3:20-CV-00537, 2021 WL 3476138, at *2 (W.D.N.C Aug. 6, 2021) (citation and internal quotation marks omitted). "[T]he expedient administration" of justice "does not outweigh the public interest in judicial accuracy." *In re Alrich Pump, LLC*, No. 3:23-CV-00099, 2023 WL 3108509, at *3 (W.D.N.C. April 26, 2023). Previous appellate decisions modifying or reversing trial court rulings in a case suggest that a stay pending appeal of new rulings is advisable. *Scott v. Fam. Dollar Stores, Inc.*, No. 3:08-CV-00540, 2016 WL 4267954, at *1-2, (W.D.N.C. Aug. 11, 2016). Moreover, the risk that a

new trial will have to be held suggests it is in the public's interest to delay the expenditure of public resources involved in holding a complicated trial until this appeal has been resolved.

Pausing proceedings in this Court to allow the Fourth Circuit to address DMARC Advisor's arguments will encourage meaningful review. If the trial is a fait accompli, meaningful review will be harder to obtain. Moreover, some of the legal issues in this case are cutting edge. The position this Court took on extraterritorial application of the federal trademark statutes was adopted by the Fourth Circuit but rejected soon thereafter by the United States Supreme Court. As discussed above, the Fourth Circuit will likely agree with DMARC Advisor that the Second Amended Preliminary Injunction forbids foreign conduct in violation of *Abitron*, and at the very least, there is a very realistic possibility that the appellate court takes a different view of the law on this issue than this Court has taken. Going to trial under these circumstances, including the circumstance that DMARC Advisor is deprived of its counsel of choice, creates an unnecessary and substantial risk that a trial in March 2025 will have to be repeated in 2026. The need for accuracy and the public interest in the efficient administration of justice weighs in favor of a stay pending the outcome of the appeal.

## CONCLUSION

Because all four factors weigh in favor of a stay pending appeal, DMARC Advisor respectfully asks this Court to issue the stay and await the Fourth Circuit's ruling.

Dated: January 31, 2025     Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Samuel B. Hartzell
Samuel B. Hartzell, NC State Bar No. 49256
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
919-755-2112
Sam.Hartzell@wbd-us.com

*Counsel for Defendant DMARC Advisor BV*

**CERTIFICATION ON USE OF ARTIFICIAL INTELLIGENCE**

I certify in accordance with the Court's Standing Order on the Use of Artificial Intelligence, No. 3:24-mc-00104-MR, that (1) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and (2) every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: January 31, 2025         /s/ Samuel B. Hartzell
                                Samuel B. Hartzell

15
Case 1:21-cv-00067-MR    Document 433    Filed 01/31/25    Page 15 of 15