# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CASE NO.: 1:21-CV-00067

DMARCIAN, INC.,

               Plaintiff,

v.

DMARC ADVISOR BV,
f/k/a dmarcian Europe BV,

               Defendant.

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR STAY PENDING APPEAL**

## INTRODUCTION

Defendant's motion to stay all further litigation pending appeal of the Court's contempt order, disqualification order, and the Second Amended Preliminary Injunction pending appeal is the latest in Defendant's effort to delay the US proceedings, at the same time endeavoring at all costs to push the Dutch proceedings forward in advance of a resolution in this Court. Indeed, it is the Defendant's misconduct in connection with those efforts which gives rise to the very order which Defendant now seeks to stay upon appeal.

On January 17, 2025, Defendant appealed the following orders entered on December 20, 2025: the contempt order (Doc. 401); the order on remand of

sanctions and denying dissolution of the preliminary injunction (Doc. 402); and, the second amended preliminary injunction (Doc. 403). (Doc. 405, Defendant's Notice of Appeal).  On that same date, Mr. Millen appealed from the December 20, 2025 order which disqualified him as counsel for contempt of court (Doc. 401). (Doc. 407, Millen Notice of Appeal).   On January 31, 2025, Defendant moved to stay all three orders issued on December 20, 2025 pending the appeals by Defendant and Mr. Millen.  (Doc. 432).  For the reasons set forth below, Defendant cannot meet its heavy burden to justify a stay based on any of the orders that issued on December 20, 2025.

## LEGAL STANDARD

A stay "is not a matter of right" and the party seeking a stay bears the burden of demonstrating the presence of the exacting standards for the granting of such relief. *Nken v. Holder,* 556 U.S. 418, 433–34 (2009).

> A stay is an "intrusion into the ordinary processes of administration and judicial review,"… and accordingly "is not a matter of right, even if irreparable injury might otherwise result to the appellant.

*Id.* at 427.  A stay pending appeal is considered "extraordinary relief" for which the moving party bears a "heavy burden." *Covington v. North Carolina*, No. 1:15CV399, 2018 WL 604732, at *3 (M.D.N.C. Jan. 26, 2018).  "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus.,*

2

*Inc.,* 715 F.2d 124, 127 (4th Cir.1983). Whether to grant a stay lies with this the sound discretion of the court and may be awarded only up a "clear showing" on each factor that the party is entitled to this extraordinary relief. *In re Kaiser Gypsum Co., Inc.,* No. 3:20CV537-GCM, 2021 WL 3476138, at *1 (W.D.N.C. Aug. 6, 2021).

Defendant has accurately stated the four factors to be considered on a motion to stay, which are akin to the preliminary injunction standard: (1) defendant's likelihood of success on the merits; (2) irreparable injury to the applicant; (3) substantial injury to the other parties; and (4) the public interest. (Doc. 432, pp. 3-4). In considering each of the four factors, this Court has previously held that, "this formula is not rigid" and the court must "contemplate individualized judgments in each case." *Sec. & Exch. Comm'n v. Rex Venture Grp., LLC*, No. 3:12-CV-00519-GCM, 2017 WL 2979686, at *2 (W.D.N.C. July 12, 2017). "Failure to satisfy any of the four elements warrants denial of the motion." *In re Kaiser Gypsum Co., Inc.,* 2021 WL 3476138, at *1. The court does not engage in a balancing test. *Dale v. Butler*, No. 7:20-CV-184-BR, 2021 WL 1305391, at *2 (E.D.N.C. Apr. 2, 2021).

Defendant has appealed the Court's order denying dissolution of the preliminary injunction, the Court's finding of contempt as to Defendant and its counsel Mr. Millen, and the Court's order disqualifying Mr. Millen pending appeal.

As the party seeking the stay, Defendant could have (but didn't) ask for a temporary stay to allow the Fourth Circuit time to "receive… [its] petition for an

3

appeal stay and to consider that request in an orderly fashion." *See, Condon v. Haley*, 21 F. Supp. 3d 572, 588 (D.S.C. 2014). Notably, even a temporary stay may have been unnecessary had Defendant moved in a more timely way for a stay of this Court's December 20, 2024 order (issued almost a month and a half before Defendant's filed its motion with this Court). Defendant suggests that only an "intrepid judge" would deny a stay request pending appeal and proceed to trial. (Doc. 433, p. 2) (citing *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985)).[1] For the reasons set forth below, a stay plainly is not warranted. However, the delayed filing of the motion to stay in any event makes it virtually impossible that a stay request made to the Fourth Circuit can be heard prior to a March trial, even with the expedited briefing schedule to which Plaintiff consented before this Court.

## STATEMENT OF LAW AND ARGUMENT

I.   DEFENDANT HAS NOT MET ITS BURDEN TO SHOW IT IS LIKELY TO PREVAIL ON THE MERITS.

The movant must make a "strong showing" of likely success on appeal, which requires "more than a mere 'possibility' of relief[.] *Nken*, 556 U.S. at 434. The movant normally must demonstrate how it proposes to prove each of the "key elements" of its case, and "a party does not meet its burden on this factor by simply restating previous arguments from earlier filings" which the court has already

---

[1] As discussed below, this case actually holds that disqualification orders are not typically immediately appealable.

rejected. *In re Wellington*, 631 B.R. 833, 839–40 (Bankr. M.D.N.C. 2021). Where both parties have set forth "plausible" grounds to support their respective positions, the Fourth Circuit weighs this factor in a "neutral" fashion. *W. Virginia v. United States Env't Prot. Agency*, 90 F.4th 323, 331 (4th Cir. 2024).

### a. Denial of Motion to Dissolve Preliminary Injunction and entry of Amended Preliminary Injunction

The appeal of the disposition of a preliminary injunction motion does not divest the trial court of its jurisdiction to proceed on the merits and the Court is not under any requirement to stay proceedings while an appeal is pending. *Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F.Supp.2d 517, 518 (W.D.N.C.1999) (citations omitted); *Okocha v. Adams*, No. 1:06CV00275, 2007 WL 1074664, at *2 (M.D.N.C. Apr. 9, 2007), *aff'd*, 259 F. App'x 527 (4th Cir. 2007). Here, there is even less reason to grant a stay based on the Court's decision not to dissolve the injunction

Defendant merely re-argues its previously rejected position that the preliminary injunction was limited to the United States and that it could not be applied extraterritorially. The original preliminary injunction (which included extraterritorial application based on trade secrets among other claims) was already appealed and affirmed by the Fourth Circuit Court of Appeals. (Doc. 168). As to the trademark claims, this Court already rejected the Defendant's arguments that there was no domestic conduct warranting the continuation of the injunction, including the targeting of customers in the U.S. with a link for those customers "in the

5

Americas" to use. (Doc. 402 at 11). The Defendant seeks to relitigate these already rejected arguments, citing a case involving Sarbanes-Oxley which involved the conduct of an employee residing in Canada, working for a Canadian company under an employment agreement expressly governed by Canadian law. *Daramola v. Oracle Am., Inc.,* 92 F.4th 833, 841 (9th Cir. 2024). The *Daramola* case doesn't change anything about this Court's ruling. Defendant's re-statement of and additional citations for already arguments fails to meet its heavy burden for a stay. *See, In re Wellington,* 631 B.R. at 839–40.

### b. *Contempt Orders and Sanctions*

Defendant again re-states rejected arguments that it "substantially complied" with this Court's order and that Dutch law somehow protected Defendant and its counsel from being required to rectify their false representations because Mr. Meijboom purportedly had sole authority to make such decisions. (Doc. 432 at 7-8). This also fails to meet Defendant's burden, as this Court already roundly rejected these very same arguments, even finding Mr. Meijboom's assertions that he was entitled to lie to the Dutch Court to be "beyond the pale". (Doc. 401 at 22, n. 6). This Court also rejected the arguments made by Defendant's U.S. counsel that it was looking to Defendant's Dutch counsel to comply and somewhat did not understand that U.S. counsel had some responsibility. (Doc. 432 at 8). Defendant's regurgitation

of rejected arguments does not meet Defendant's burden in seeking a stay. *See, In re Wellington, supra.*

On June 27, 2023, just a few days before the scheduled July 5, 2023 hearing in the Netherlands, this Court entered its order denying the Antisuit Injunction but requiring the Defendant to submit to the Dutch Court both the Court's order AND the separate statement within five days. (Doc. 216, Order on Antisuit Injunction). On July 6, 2023, after Defendant submitted only the Order, Plaintiff's counsel asked why the separate statement had not been submitted as required by the Court. (Doc. 253-1, email chain p. 3). In response, Defendant's counsel merely referred to the proof of service of the order and without further explanation stated that he "respectfully disagreed" with Plaintiff's position that there had not been full compliance. *Id.* at p. 2).

Simply put, the Defendant and its counsel complied with **half** of the order – the portion requiring it to submit this Court's order to the Dutch Court – but flat refused to comply with the separate requirement to submit a simultaneous statement from Defendant's counsel admitting to the false representations. The very reason Plaintiff's counsel asked the Court to require some sort of statement was to ensure that the Court's order would not be undercut by Defendant and its counsel in further specious arguments to the Dutch court that the Dutch case was the first case on the merits. (Doc. 218, Transcript of June 27, 2023 Hearing at 36-37). In fact, that is

7

*exactly* what unfolded, resulting in yet more cost and delay to dmarcian in seeking a stay of the Dutch proceedings. (Doc. 254-1 at 6; Doc. 385, 3rd Hoeba Decl. at ¶¶6, 10).

In short, Defendant and its counsel chose to simply ignore that part of the order and to pretend they had fully complied. Eh of the three (Defendant, its Dutch counsel and its U.S. counsel) deflected responsibility with each asserting that the compliance obligation to make a statement rested with one of the others. (Doc. 386, Transcript of 08/23/24 Hearing at 82:20-86:16 & 106:1-24 (argument by Mr. Millen's counsel asserting that he did not read the order to submit a statement to be directed to Mr. Millen); 96:2-96:21 (argument by Mr. Meijboom that he is not responsible for the U.S. cases and that the contempt order was directed not to him but to U.S. counsel, and even demanding that his costs be paid for attending the contempt hearing); 129:15-131:23 (argument by Defendant's separate counsel that Defendant was relying on U.S. and Dutch counsel and as far as Defendant was concerned both requirements had been met, as Mr. Meijboom "did what he thought was right under Dutch law").

Defendant appealed the June 27 Order on July 28, 2023, a full thirty days after it was entered. (Doc. 232, Notice of Appeal). However, neither Defendant nor any of its counsel sought a stay. If Defendant and/or any of its counsel wished to dispute the requirement to comply with the order requiring the separate statement to be

8

made, they could have – but didn't – move for at least a partial stay of the June 27 Order.

This Court has the inherent authority to protect the integrity of the proceedings and the parties and counsel before it. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45 (1991) (upholding decision to grant attorneys' fees for the entire cost of litigation to address bad faith arising from a fraud perpetrated upon the court).

> Prior cases have outlined the scope of the inherent power of the federal courts. For example, the Court has held that a federal court has the **power to control admission to its bar** and to discipline attorneys who appear before it. See *Ex parte Burr,* 9 Wheat. 529, 531, 6 L.Ed. 152 (1824). While this power "ought to be exercised with great caution," it is nevertheless "incidental to all Courts." *Ibid.*

*Id.* at 43 (emphasis added).

Moreover, a disqualification order is not immediately appealable. Defendant cited to the Supreme Court's decision in *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985) for the proposition that District Court judges should stay proceedings pending appeal of a disqualification order. However, it left out the Court's ultimate holding:

> We hold that orders disqualifying counsel in civil cases, like orders disqualifying counsel in criminal cases and orders denying a motion to disqualify in civil cases, are not collateral orders subject to appeal as "final judgments" within the meaning of 28 U.S.C. § 1291.

*Id.* at 440. In so holding, the Supreme Court noted:

> Implicit in § 1291 is Congress' judgment that the *district judge* has primary responsibility to police the prejudgment tactics of litigants, and

9

that the district judge can better exercise that responsibility if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings. Cf. *Cohen v. Beneficial Loan Corp.,* 337 U.S., at 546, 69 S.Ct., at 1225 ("Appeal gives the upper court a power of review, not one of intervention"). Like any referee, the district judge will occasionally make mistakes. A mistaken ruling disqualifying counsel imposes financial hardship on both the disqualified lawyer and the client. But the possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress. *Coopers & Lybrand,* 437 U.S., at 476, and n. 28, 98 S.Ct., at 2462, and n. 28; *Will v. United States,* 389 U.S. 90, 98, n. 6, 88 S.Ct. 269, 275, n. 6, 19 L.Ed.2d 305 (1967). "If the expense of litigation were a sufficient reason for granting an exception to the final judgment rule, the exception might well swallow the rule." *Lusardi v. Xerox Corp.,* 747 F.2d 174, 178 (CA3 1984).

*Id.,* 472 U.S. at 436.

This Court's June 27 Order disbarring Mr. Millen during the pendency of this case and providing him a path to reinstatement through purging contempt is well within the scope of the Court's inherent power to address the refusal by Defendant and its counsel to fully comply with this Court's order directing that counsel rectify misrepresentations made to the Dutch Court about this Court's proceedings. It is much more than "plausible" that this Court's order will be upheld. This factor weighs heavily against the Defendant on the factor of likelihood of success on the merits. Defendant has failed to meet its heavy burden to support an issuance of a stay.

II.     DEFENDANT WILL NOT BE IRREPARABLY INJURED.

Showing a mere possibility of irreparable injury is insufficient to meet the Defendant's burden on this factor, and the irreparable injury must be more than monetary loss. *Long v. Robinson*, 432 F.2d 977, 980 (4th Cir. 1970). "[M]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *Id.* "[I]t is well established that standing alone, the potential for an appeal to be rendered moot does not constitute irreparable harm." *In re Kaiser Gypsum*, 2021 WL 3476138, at *2 (W.D.N.C. Aug. 6, 2021); *Mayor & City Council of Baltimore v. BP P.L.C.,* No. CV ELH-18-2357, 2019 WL 3464667, at *5-6 (D. Md. July 31, 2019) (avoidance of potentially "wasteful" litigation in state court before appeal of remand order was resolved did not meet burden of showing irreparable harm). *Compare W. Virginia v. United States Env't Prot. Agency*, 90 F.4th at 331 (finding irreparable harm where state would have to begin burdensome permitting process for dozens of facilities pending appeal).

**a. *Dissolution of Injunction***

This case is set for trial in March 2025. The Court's decision to deny the motion for dissolution and continue the preliminary injunction in place is therefore

11

necessarily of short duration.[2]  Appealing this decision likely only prolongs the

pendency of the preliminary injunction.  If the Defendant's interest were truly to

resolve the question quickly, logically it would want to proceed to trial as soon as

possible on the merits given how close the parties are to a trial.

### b.  *Contempt Sanction – Disqualification*

Defendant asserts that it is irreparably harmed because the disbarment of Mr.

Millen denies Defendant its choice of counsel, citing the case of  *Nw. Nat. Ins. Co.*

*v. Insco, Ltd.,* 866 F. Supp. 2d 214 (S.D.N.Y. 2011).  (Doc. 432, p. 2).  However, the

court in that case *denied* the stay requested by the defendant Insco:

> However, because Insco has not shown a strong likelihood of success,
> because of potential prejudice to NNIC in having to delay the
> arbitration, and taking into account that Insco has secured new counsel
> to represent it in arbitration, a stay is not warranted.

*Id.* at 223.

Defendant also cites the case of *Reed v. Superior Ct.,* 111 Cal. Rptr. 2d 842,

847–48 (2001), *as modified* (Oct. 17, 2001).  (Doc. 432, p. 2).  However, in *Reed,*

---

[2] That said, Defendant is doing all it can to delay this trial.  It could have, but didn't,
seek this stay earlier thereby precluding resolution of any further requests for a stay
to the Fourth Circuit prior to trial.  Defendants have continued to put up roadblocks
to the depositions in the Netherlands. (*See,* Doc. 442-1 to 442-13, Exhibits to Fourth
Hoeba Declaration).  Defendant's tactics seeking to delay the trial with the likely
result that the injunction remains in place throughout that appeal assuming both this
Court and the appellate court deny a stay.  If the Defendant truly thought it was likely
to win relief from the injunction at trial, it would be far more logical to push the case
forward to a conclusion than seek delay.

the court addressed a stay of appeal on an order *denying* a motion to disqualify counsel, noting that such motions are often brought for tactical purposes. That case inapposite given that Plaintiff did not expressly seek disqualification and engaged in no such tactical abuse.

In contrast, the case of *United States v. Minkkinen,* No. 2:22-CR-00163, 2023 WL 3932322, at *3 (S.D.W. Va. June 9, 2023) is instructive under the facts of this case. There, the court found that the disqualification of a single U.S. Attorney handling a criminal prosecution did not impair the government's ability to proceed with prosecution:

> While review of the disqualification issue will likely be unavailable after final judgment, given the limitations on appeal for the United States in criminal cases, that does not imply that interlocutory appeal *must* be available. *See, e.g. United States v. Moussaoui*, 483 F.3d 220, 228 (4th Cir. 2007) ("the Government's right to appeal in criminal cases is severely limited"). "An unreviewable order is one that has significant and irreparable effects." *Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Rev. Comm'n*, 742 F.3d 82, 90 (4th Cir. 2014). Disqualification of a single AUSA, even one with extensive knowledge of the investigation and case, from a case that also had additional counsel for the United States, cannot be said to have significant and irreparable effects. Thus, the Court finds that the collateral order doctrine does not permit the United States' appeal, and the motion to stay should be denied.

*Id.* at *3. The Court held that the order of disqualification was not immediately appealable under the collateral order rule. However, even if it was, the court held that a stay would not have been warranted because "the United States is represented by other counsel who have continued to engage with pre-trial litigation, including

extensive motions practice, discovery, court appearances, and obtaining a superseding indictment."

Similarly, the alleged harm to Defendant is much mitigated by the fact that Mr. Hartzell (a partner in Mr. Millen's firm) is not barred from continuing the representation of Defendant which Mr. Hartzell has been actively engaged in since the inception of the case. Mr. Hartzell has been a very active defense counsel in the case to date, having taken and defended all of the depositions and has been primarily the point person for communicating with Plaintiff's counsel. To the extent that Mr. Hartzell needs further assistance, his law firm has more than 1300 lawyers available to aid the Defendant in the defense of its case.[3]

Indeed, Defendant and Mr. Groeneweg are represented by several other attorneys at Womble Bond Dickinson in the *Swenberg* litigation brought against dmarcian, Mr. Draegen, DMARC Advisor and Mr. Groeneweg in California. (Doc. 441, Declaration of David Dorey). The issues are not identical, but there are overlapping facts and issues.[4] (*Id.* at Exhibits 1 & 2) (briefing in *Swenberg* case

_____

[3]"Our platform of over 1,300 attorneys in 37 U.S. and UK offices gives us a deep bench, diverse industry perspectives, and a wide range of mission-critical legal services." https://www.womblebonddickinson.com/us/about.

[4] The overlap mentioned here does not compromise in any way Plaintiff's Motion in Limine seeking to preclude reference at trial to the *Swenberg* pleadings, orders and other information which is the subject of that motion. This overlap is mentioned solely to give context to the fact that the California team has knowledge of the underlying facts and would not be starting from scratch.

14

discussing issues relating to the contract between dmarcian and Defendant and evolution of dispute among the parties relating to same). Accordingly, there is a separate trial team in Womble Bond Dickinson's California office which is fully familiar with the underlying business relationship and issues in dispute in this case and which was chosen by Defendant and Mr. Groeneweg to defend those claims. Defendant cannot meet its burden to show irreparable harm by Mr. Millen's disqualification because Defendant has the benefit of other counsel of its choice who could try this case along with Mr. Hartzell if Defendant sees the need to supplement the counsel of record in this case.

And, importantly, Defendant itself is complicit in the very conduct which ultimately gave rise to Mr. Millen's disqualification. Defendant asked Mr. Millen to submit an affidavit in the Dutch proceedings. One of two things had to have happened: Mr. Millen agreed to submit an affidavit knowing nothing about the context in which it was to be used (which seems unlikely); or, Defendant told Mr. Millen that it wanted an affidavit to support its opposition to dmarcian's motion to stay the Dutch proceedings on the grounds that the Dutch case on the merits was first in time. Assuming that Mr. Millen asked the logical question as to the purpose of the affidavit before agreeing to submit one, surely Mr. Millen must have advised Defendant and its Dutch counsel that this was simply incorrect under U.S. law.

15

Notably, Mr. Millen's affidavit submitted in the Dutch proceedings made no mention of when the U.S. case on the merits began, which is an odd omission given that this was the main thrust of the arguments made by Defendant's Dutch counsel. The obvious explanation for that omission is that, unless Mr. Millen did not understand the purpose of his affidavit (which seems unlikely), Mr. Millen refused to state in his affidavit that the Dutch case on the merits started first and that Defendant nonetheless proceeded to make that argument (and to persist in it to this day) knowing it was blatantly false.

Defendant's complicity in the conduct leading to disqualification continued after entry of the June 27 Order. Despite being *clearly* on notice after the June 27 Order that its position was untenable, Defendant and its Dutch counsel *still* persisted in the baseless position that the U.S. case on the merits began after the Dutch case on the merits, resulting in more cost to Plaintiff in continuing to have to contest the issue. (Doc. 254-1 at p. 6; Doc. 385, 3rd Hoeba Decl. at ¶¶6, 10).

Notably, while Mr. Meijboom asserted that his purportedly unqualified right to make decisions in the Dutch case (regardless of whether true or not) could not be impinged by a contrary directive from anyone (whether client or this Court), there is nothing in the record to indicate that Mr. Meijboom was given any instruction by Defendant to fully comply with this Order by submitting the required statement. Defendant and its Dutch counsel thereby directly and purposefully placed its U.S.

16

counsel in the very untenable position which led to disqualification. It is inequitable for Defendant to now claim that irreparable harm justifies a stay when Defendant's own conduct (not just that of its U.S. counsel) led to this result.

### c. *Contempt Sanction – Monetary Award*

Defendant attacks the amount of the award but does not describe how Defendant is going to be irreparably harmed during the pendency of the appeal other than to summarily say it needs the funds to run its business without offering evidence concerning its current financial position despite being under Court order to provide ongoing financial information.[5] (Doc. 432 at 9, 11; Doc. 82 at 4; Doc. 403 at 4). If the Defendant wishes to stay execution of the contempt sanction pending appeal, it should be required to post a supersedeas bond.

> Unless a party challenging a contempt order obtains a stay of judgment or posts a supersedeas bond, the judgment may be executed notwithstanding the fact that it has been appealed.

*Matter of Campbell*, 761 F.2d 1181, 1186 (6th Cir. 1985). In setting that bond, Plaintiff would be willing to submit affidavits to further support the amount of the award and for the Court's consideration in setting the bond. However, any dispute over the amount of the monetary award is an independent issue which does not warrant a delay of trial on the merits.

---

[5] The last set of court-ordered updated financial information filed by Defendant was for 2023 which it filed on April 24, 2024. (Doc. 352).

17

III.   ISSUING A STAY WILL MATERIALLY PREJUDICE PLAINTIFF.

Plaintiff's efforts to get this case to trial have long been delayed by Defendant's conduct, causing it substantial harm.  "Unlike the second factor, the harm to non-movants need only be substantial, not irreparable, and a non-movant's ability to financially recover from a harm does not necessarily make that harm insubstantial."  *In re Wellington*, 631 B.R. at 845 (finding "further delay to the payments owed to other creditors is sufficiently substantial to tilt this factor against the granting of a stay");  *see also, Zurich Am. Ins. Co. v. Tessler*, No. 03-33532, 2006 WL 983896, at *2 (W.D.N.C. Apr. 12, 2006) (denying stay where appellee's "long-delayed state tort action will be delayed even further, giving rise to risk that "memories dim and evidence may be lost that could prove critical"); *Mayor & City Council of Baltimore v. BP P.L.C.*, 2019 WL 3464667, at *6 (further delay in litigation of plaintiff's claims weighed against granting of stay); *In re Pagoda Int'l, Inc.,* 26 B.R. 18, 21 (Bankr. D. Md. 1982) (denying stay pending appeal where movant "used the processes of four courts to delay the inevitable resolution of this matter").

> While "[a] stay pending appeal is designed to keep an appellant's position from eroding while the issues on appeal are decided" that "stay should not operate to give an appellant a tactical advantage it would not have enjoyed had it been successful in the lower court." Id. at 702.

18

*In re Franklin,* No. 19-80661, 2020 WL 603900, at *4 (Bankr. M.D.N.C. Feb. 6, 2020).

This delay also has potential adverse consequences to the Dutch proceedings. After being required to defend the Dutch litigation on the merits for many months due to the Defendant's misrepresentations about the status of this case, the Dutch Court ultimately stayed the Dutch case pending a ruling in this case. It seems likely that if this case is stayed on appeal that the Defendant will again attempt to resume proceedings in the Netherlands on the argument that the case on the merits here is delayed, causing yet more expense and effort in the Dutch case. Defendant has already started laying a groundwork for those arguments and seeking to improperly undermine the validity of the U.S. case, baselessly asserting that it is being treated unfairly as a result of one of its counsel being disqualified. (Doc. 442, 4th Hoeba Decl. Exh. 2 at p. 2).

IV.    A STAY IS NOT IN THE PUBLIC INTEREST

As this court noted in the preliminary injunction ruling, there is a public interest in the protection of trade secrets and intellectual property of a North Carolina company and in preventing consumers from being misled. (Doc. 39, pp. 73-74). It is not in the public interest to further delay these proceedings through issuance of a stay.

19

The fact that the Court modified the preliminary injunction but denied Defendant's request to totally dissolve it does not mean that the public interest is benefitted by a stay, as argued by Defendant. (Doc. 433 at 12-13). Defendant cites the case of *Scott v. Fam. Dollar Stores, Inc.*, No. 308CV00540MOCDSC, 2016 WL 4267954, at *2 (W.D.N.C. Aug. 11, 2016) for the proposition that "[p]revious appellate decisions modifying or reversing trial court rulings in a case suggest that a stay pending appeal of new rulings is advisable." However, in *Scott*, the court ***denied*** the stay, finding among other things that the "public interest supports moving this case forward" as the case was seven years old and "the public interest in the prompt resolution of cases suggests that a stay is inappropriate."

Given that the Defendant has not met its heavy burden to show a likelihood of success on the merits, or that disqualification is even immediately appealable, or that the Fourth Circuit is likely to view this injunction any differently now than it did when it affirmed the injunction given the Court's careful modifications in light of *Abitron*, there is no sacrifice of judicial accuracy or efficiency in the administration of justice. The instant case now approaches its fourth anniversary, and the time has come to bring it to a resolution.

20

**CONCLUSION**

For the foregoing reasons, Plaintiff urges the Court to deny Defendant's

Motion for Stay Pending Appeal.

This the 4th day of February, 2025.

/s/ Pamela S. Duffy
Pamela S. Duffy, N.C.S.B. No. 18329
pamela.duffy@elliswinters.com
Tyler C. Jameson, N.C.S.B. No. 59348
ty.jameson@elliswinters.com
Ellis & Winters LLP
PO Box 2752
Greensboro, NC 27402
Telephone: (336) 217-4193
Attorneys for Plaintiff


OF COUNSEL:
/s/ David Dorey
David Dorey, DE #5283
Blank Rome, LLP
David.dorey@BlankRome.com
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6418
Attorney for Plaintiff

21

## AI CERTIFICATION

Undersigned counsel hereby certifies that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg.

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 4th day of February, 2025.

/s/ Pamela S. Duffy
Pamela S. Duffy, N.C.S.B. No. 18329
pamela.duffy@elliswinters.com
Ellis & Winters LLP
PO Box 2752
Greensboro, NC 27402
Telephone: (336) 217-4193
*Attorney for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon counsel for all other parties to this action listed below by efiling a copy of the same utilizing the Western District of North Carolina's efiling system:

Mr. Pressly M. Millen
press.millen@wbd-us.com
Mr. Samuel B. Hartzell
Sam.hartzell@wbd-us.com
Womble Bond Dickinson (US) LLP
P O Box 831
Raleigh, NC 27602
*Attorneys for DMARC ADVISOR BV,*
*f/k/a dmarcian Europe BV*


This the 4th day of February, 2025.


*/s/ Pamela S. Duffy*
Pamela S. Duffy, N.C.S.B. No. 18329
*pamela.duffy@elliswinters.com*
Ellis & Winters LLP
PO Box 2752
Greensboro, NC 27402
Telephone: (336) 217-4193
*Attorney for Plaintiff*

23